# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **MIDWEST PILOTS MERGER COMMITTEE,** ) | |
| ) | |
| **CARL SCHWERMAN, in his Capacity as Chairperson of the MIDWEST PILOTS MERGER COMMITTEE,** ) | |
| ) | |
| **DONALD TILL, in his Individual Capacity and in his Capacity as Vice Chairperson of the MIDWEST PILOTS MERGER COMMITTEE,** ) | |
| ) | |
| *and* ) | |
| ) | |
| **MARK E. WARD,** ) | |
| ) | |
| *Plaintiffs*, ) | **Civil Action No.** |
| ) | |
| *v.* ) | |
| ) | |
| **FRONTIER AIRLINES, INC.** ) | |
| ) | |
| *and* ) | |
| ) | |
| **FRONTIER AIRLINE PILOTS ASSOCIATION,** ) | |
| ) | |
| *Defendants.* ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiffs MIDWEST PILOTS MERGER COMMITTEE, its Chairperson and Vice-Chairperson, as well as an individual pilot, bring this action to resolve a dispute among plaintiffs and defendants FRONTIER AIRLINES, INC. and the FRONTIER AIRLINE PILOTS ASSOCIATION (FAPA) over whether Frontier and FAPA's constituent the FRONTIER PILOTS MERGER COMMITTEE (FPMC) must arbitrate with the MPMC, as Section V(c) of the November 3, 2009 Dispute Resolution Agreement (DRA) provides, "disputes arising out of the interpretation or

application" of the DRA. Compelling arbitration enforces the obligations imposed by Section 2 First and 204 of the Railway Labor Act (RLA), 45 U.S.C. §§ 152 First and 184. This suit is also to enforce the duty that RLA § 2 Fourth, 45 U.S.C. § 152 Fourth, imposes on defendant FAPA to represent *all* Frontier pilots fairly and without discrimination or hostility towards any Frontier pilot, including those who were formerly employed by Midwest Airlines and enjoy integrated seniority ranking.

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff **MIDWEST PILOTS MERGER COMMITTEE** (MPMC) is a voluntary association of pilots who were employed by Midwest Airlines, Inc. in 2009 when Midwest was acquired by Republic Airways Holdings Inc. (RAH). MPMC was formed under the Constitution and By-Laws of the Air line Pilots Association, International (ALPA), which at that time was the duly designated representative for purposes of the RLA of the craft or class of pilots employed by Midwest. MPMC was formed to represent, under the authority delegated to it by ALPA, the interests of Midwest pilots in integrating in a fair and equitable manner the seniority of Midwest pilots with that of the pilots of the other airlines which formed the single transportation system known as "Republic Airlines, et al./Frontier." Plaintiff MPMC was continued in existence in 2011 by the International Brotherhood of Teamsters (IBT), through its Airline Division, in accordance with Section V(h) of the DRA, which provides that the duly designated representative of the integrated craft or class of pilots "shall continue the Merger Committees in existence and delegate to the Merger Committees authority solely for the purposes of adjusting any dispute or disputes that might arise as to the interpretation or application of the [Seniority Integration] award, including authority to compromise such disputes, and to initiate, defend, mediate, and litigate such issues in the dispute

resolution mechanism under" the DRA. Plaintiff MPMC is a "representative" as that term is defined in RLA § 1 Sixth, 45 U.S.C. § 151 Sixth, and used in RLA § 2 Sixth, 45 U.S.C. § 152 Sixth.

2.      Plaintiff **CARL SCHWERMAN** is an airline pilot who holds seniority on the Integrated Seniority List devised by the Seniority List Integration Award, effective August 27, 2011 (commonly called the "IMSL Award"), and is currently employed as a pilot by one of RAH's operating subsidiaries. He also holds seniority under that integrated list at Frontier Airlines, Inc. He is the Chairperson of the MPMC and is suing in his capacity as the Chairperson of MPMC. He resides in the State of Wisconsin.

3.      Plaintiff **DONALD Till** is an airline pilot who held seniority on the Integrated Seniority List devised by the IMSL Award, effective August 27, 2011. His name was removed from that list by RAH in 2012, but he, through the IBT and MPMC, is challenging the validity of the removal of his name from that list. He maintains that he currently holds integrated seniority at the RAH operating entities and at Frontier. He resides in the State of Wisconsin.

4.      Plaintiff **MARK E. WARD** is an airline pilot who held seniority on the seniority list applicable to Midwest Airlines' pilots and now holds seniority on the Integrated Seniority List devised by the IMSL Award, effective August 27, 2011. He is currently employed as a pilot by Frontier Airlines. He is now represented for collective-bargaining purposes by FAPA. He resides in the State of Wisconsin.

5.      Defendant **FRONTIER AIRLINES, INC.** is a corporation authorized to do business in the State of Wisconsin and is a common carrier by air as that term is used in Section 201 of the RLA, 45 U.S.C. § 181, providing scheduled passenger airline service throughout the United States, including in this judicial district. On October 1, 2009, Frontier was acquired by RAH and became

-3-

a part of the single transportation system known as Republic Airlines, et al./Frontier. On November 3, 2009, RAH entered into the DRA "on behalf of itself and its wholly-owned affiliates [including] . . . Frontier Airlines, Inc. . . ." Subsequently, on December 3, 2013, RAH completed the sale of all of the outstanding shares of Frontier's parent, Frontier Airlines Holdings, Inc., to the Falcon Acquisition Group, Inc., and on March 31, 2014, the National Mediation Board (NMB) found that Frontier was no longer a part of the Republic single carrier, but "is operating as a single transportation system for the craft or class of Pilots." *In re Frontier Airlines' Pilots*, 41 NMB 31 (2014).

6.     Defendant **FRONTIER AIRLINE PILOTS ASSOCIATION** (FAPA) is an unincorporated labor organization which represented the craft or class of pilots employed by Frontier at all material times prior to June 28, 2011. While it was the representative of the Frontier pilots, FAPA formed the Frontier Pilots Merger Committee and authorized FPMC to represent Frontier pilots in the negotiation and then arbitration and enforcement of an integrated seniority list. FPMC, with FAPA's authorization, entered into the DRA on November 3, 2009. FAPA ceased to be the representative of the craft or class of Frontier pilots on June 28, 2011, when the NMB certified the IBT as the representative for collective-bargaining purposes under the RLA of the craft or class of pilots employed by the single transportation system Republic Airlines, et al./Frontier. Following Frontier's emergence as a separate carrier from the RAH transportation system, FAPA was certified by the NMB on June 13, 2014 as the duly designated representative of the craft or class of pilots employed by Frontier. *In re Frontier Airlines, Inc. Pilots*, 41 NMB 88 (2014). FAPA and FPMC are "representatives" as that term is defined in RLA § 1 Sixth, 45 U.S.C. § 151 Sixth, and used in RLA § 2 Sixth, 45 U.S.C. § 152 Sixth. Pilots who reside in this judicial district are members of FAPA.

-4-

7.     This Court has jurisdiction to consider this Complaint under 28 U.S.C. §§ 1331 and 1337(a) since it arises under an Act of Congress regulating interstate commerce, namely the RLA. This Court also has jurisdiction under 28 U.S.C. § 2201(a) to declare the rights and other legal relations of plaintiffs and defendants concerning whether defendants must arbitrate with MPMC the disputes MPMC has raised under the DRA.

8.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(1) and (2).

## FACTUAL BACKGROUND

9.     In 2008 RAH, which operated airline services by providing "capacity" for other airlines using RAH's planes and pilots, decided to acquire its own "brands" so as to operate its own airline services. On June 23, 2009, RAH announced that it had entered into an agreement with Midwest Airlines' parent to acquire that holding company and Midwest Airlines, which it did on July 31, 2009. Subsequently, RAH sponsored Frontier Airways Holding, Inc.'s plan of reorganization, acquiring Frontier Holdings and its operating subsidiaries, Frontier Airlines, Inc. and Lynx Aviation, Inc., as of October 1, 2009, when they emerged from reorganization under 11 U.S.C. § 1101, *et seq.* On April 7, 2011, the NMB issued its Findings Upon Investigation that RAH's pre-June 2009 operating subsidiaries–Republic Airlines Inc., Shuttle America Corp. and Chautauqua Airlines, Inc.– and "Frontier and Lynx are operating as a single transportation system (Republic Airlines et al./Frontier) for the craft or class of Pilots, and further, that Midwest Pilots are included in the single transportation system." *In re Pilots of Republic Airlines, et al.*, 38 NMB 138-39 (2011).

10.     RAH's acquisition of Midwest's and Frontier's parents brought together in a single transportation system four separate pilot groups, each represented for collective-bargaining purposes by separate labor organizations. The IBT represented the pilots employed by RAH's pre-2009

-5-

operating subsidiaries–Republic, Shuttle and Chautauqua; ALPA represented Midwest's pilots; and FAPA represented Frontier's pilots, while the recently certified United Transportation Union (UTU) represented Lynx's pilots. All but the Lynx pilots were covered by collective-bargaining agreements (CBAs), which required that, in the event of a "successorship transaction" which resulted in an operational merger, the pilots' seniority should be integrated in a fair and equitable manner as provided in Sections 3 and 13 of the Labor Protective Provisions (LLP) imposed by the Civil Aeronautics Board in the *Allegheny-Mohawk Merger Case. E.g.*, Midwest/ALPA CBA § 1.D.3.a. It was recognized by the four pilot groups that, even though the Lynx pilots were not covered by a CBA, they were entitled to a fair and equitable integration of their seniority by virtue of the McCaskill-Bond Amendment, 42 U.S.C. § 42112 note.

A.      **The DRA.**

11.     On November 3, 2009, defendant RAH, "on behalf of itself and its wholly-owned affiliates Republic Airline Inc., Chautauqua Airlines, Inc. and Shuttle America Corp. (hereinafter collectively, 'Republic'), Midwest Airlines, Inc., Frontier Airlines, Inc. and Lynx Aviation, Inc. (RAH and its affiliates together one 'party' under this Agreement), and the Republic, Midwest, Frontier and Lynx pilots, as represented by their respective Seniority Merger Committees (the 'Merger Committees') as duly created and authorized by each pilot group's duly designated representative (each such Merger Committee another 'party' under this Agreement) agree to establish . . . procedures for resolving the seniority integration issue in accordance with Sections 3 and 13 of the LPPs . . . ." That Agreement, captioned the "Section 13(b) Dispute Resolution Agreement," provided the process whereby the airlines and the pilot groups would integrate the pilots' seniority in a fair and equitable manner as required by Section 3 of the *Allegheny-Mohawk* LPPs, first through

-6-

negotiations, then mediation and, finally if necessary, through arbitration. It also provided the manner in which the parties would resolve disputes over the interpretation and enforcement of the seniority conferred upon the pilots through that process. A true and accurate copy of that Dispute Resolution Agreement (DRA) is attached hereto as MPMC Exhibit No. 1.

12.     As relevant here, Section V(g) of the DRA provided that in the event the parties submitted the seniority integration dispute to an arbitrator for resolution: "The award of the arbitrator shall be stated in writing and shall be final and binding on the parties to this Agreement and on the pilots employed by RAH and its affiliates." MPMC Ex. 1 at 4. DRA § V(j) further provided that: "The award of the arbitrator issued under either Section V (g) or V (i) [a provision providing for disputes arising within 120 days after the Award became effective] shall be considered as a part of the collective bargaining agreement(s) applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system." MPMC Ex. 1 at 5.

13.     The parties recognized that various disputes could arise out of the integration award and they provided processes for the handling of those disputes. First, they recognized that seniority-integration disputes present an inherent conflict for the certified representative of the integrated craft or class, or, as the award terms it, the "combined craft or class," and they provided for the continued existence of the Merger Committees, delegating to them the authority of the certified representative to represent the interests of their pre-integration group following the integration where the dispute arises out of the interpretation or application of the award. As relevant here, DRA § V(h) provides (MPMC Ex. 1 at 5):

> The Organization, if any, designated by the NMB as the duly designated representative of the combined craft or class of Flight Deck Crew Members for the single transportation system shall continue the Merger Committees in existence and delegate to the

Merger Committees authority solely for the purpose of adjusting any dispute or disputes that might arise as to the interpretation or application of the award, including authority to compromise such disputes, and to initiate, defend, mediate, and litigate such issues in the dispute resolution mechanism under this Agreement. The Organization shall have authority over the manner in which the Merger Committees' operations are financed. The Merger Committees which are parties to this agreement represent that they have been authorized by their principals (the duly designated representative of their airline's pilots) to enter into the commitments set forth in this paragraph and in this Agreement. Each Merger Committee shall fill its own vacancies by selection made by the remaining members of that Merger Committee.

14.     Second, the DRA provided for two separate dispute resolution procedures for disputes arising from the integration award, depending upon when the dispute arose. Disputes "involving an interpretation of the award" that arose "within one hundred and twenty (120) days of the date that the seniority integration becomes effective" (DRA § V(i)) were to be presented to the integration arbitrator, who "shall interpret the award in light of the dispute." *Id*.

15.     Disputes arising after the 120-day period were to be handled under DRA § V(j), which provides that (MPMC Ex. 1 at 5):

Any dispute arising out of the interpretation or application of the award more than one-hundred and twenty (120) days after the effective date of the seniority integration shall be handled in the usual manner by the applicable Merger Committees up to and including the highest carrier official designated to handle such disputes, but failing to reach an adjustment in this manner, the dispute may be submitted by any party to the dispute to the adjustment board established by the designated representative of the combined craft or class and the single carrier for final and binding resolution. All Merger Committees shall be given notice of the dispute and, in addition to the Merger Committee invoking the adjustment board jurisdiction, may be heard by the system board of adjustment in resolving the dispute, with the decision of the board being made by the arbitrator selected pursuant to the applicable agreement to sit with the system board (without a vote by the other members of the system board).

-8-

16.     The parties also contemplated that disputes might arise out of the interpretation or application of the DRA itself and they provided in DRA § V(c) that (MPMC Ex. 1 at 4; emphasis added):

> In addition to jurisdiction to resolve disputes under Section I [dealing with discovery] and to devise the fair and equitable integration of seniority, *the arbitrator shall have the authority to resolve any dispute arising out of the interpretation or application of this Agreement.*

**B.     Frontier Pilots Refuse To Accept The Seniority Integration Award.**

17.     The four pilot groups were unable to reach an agreement on a unified integration proposal; thereafter, Dana E. Eischen was selected as the Arbitrator under DRA § IV. Arbitrator Eischen conducted hearings and received post-hearing briefs, as well as comments on a proposed award. After considering those comments, Arbitrator Eischen issued his award on February 19, 2011–commonly referred to as the "IMSL Award"–establishing a single seniority list for the RAH airlines, integrating the seniority of the four pilot groups. That list became effective on August 27, 2011, and, as provided in Section V(j) of the Section 13(b) Dispute Resolution Agreement, became at that time "a part of the collective bargaining agreement(s) applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system." MPMC Ex. 1 at 5.

18.     FPMC had proposed that the first 341 positions on the integrated seniority list be assigned to Frontier pilots and that the remaining 305 Frontier pilots be integrated with 62 of the 383 Midwest pilots. Republic pilots, who made up the majority of the combined pilots with 2,041 pilots, were to be integrated below all Frontier pilots. Arbitrator Eischen rejected that proposal, and instead assigned the first 962 positions on the integrated list to 650 Republic pilots and 312 Frontier pilots. The next 1,155 positions were assigned to the next 700 Republic pilots, the remaining 334 Frontier

pilots and 121 Midwest pilots. The next 660 positions were populated with 559 Republic pilots and 101 Lynx pilots, while the last 204 positions were assigned to the remaining Midwest pilots. Arbitrator Eischen also imposed "Conditions/Restrictions," which provided *inter alia* that, for a period of seven (7) years, Frontier pilots would have priority for all Captain and First Officer positions on Airbus aircraft flown by Frontier.

19.     The Integration Arbitrator further provided in his Award that (IMSL Award at 49, Part B, § 7; emphasis added):

> *To the extent specified in Sections V(c)* and V(i), the undersigned Arbitrator *retains jurisdiction to resolve any unresolved disputes between the pre-merger pilot groups as to the terms of the DRA* and/or the interpretation or application of this Award.

20.     FAPA disagreed with the IMSL Award and they took steps to avoid or at the least limit its application.

21.     On May 18, 2011, FPMC's members as the Merger Committee brought suit in the United States District Court for the District of Colorado against RAH and the Chairpersons of the three other Merger Committees seeking to set aside the IMSL Award because, among other reasons, they claimed it exceeded the arbitrator's authority by changing the Frontier/FAPA CBA. *Thomas v. RAH*, D. CO. Case No. 1:11-cv-01313-RPM. On March 2, 2012, the District Court entered a Memorandum Opinion and Order, and a judgment, dismissing FPMC's suit.

22.     On June 10, 2011, FAPA and RAH entered into a tentative agreement whereby, in exchange for wage and benefit concessions by Frontier pilots, RAH agreed to provide an equity interest in Frontier Airlines to its pilots, a profit sharing plan, and to separate Frontier from the Republic Airlines, et al./Frontier single transportation system by December 31, 2014. That tentative agreement was replaced on June 24, 2011, by Letter of Agreement 67 between FAPA and Frontier,

which set forth the concessions. LOA 67 further provided that the concessions would cease "if any of the conditions contained in Paragraph C of the Commercial Agreement [which RAH and Frontier entered into with FAPA Invest, LLC] are not met." The referenced Commercial Agreement provided for an equity participation in Frontier for pilots employed by Frontier on the date LOA 67 was effective and further provided that RAH was to separate Frontier from its single transportation system on or before December 31, 2014. FAPA's position in June 2011 and to date is that if Frontier ceased to be part of the Republic Airlines, et al./Frontier single transportation system, the IMSL Award would no longer apply.

23.    On June 22, 2011, relying upon LOA 67 and its Commercial Agreement with Frontier's pilots, RAH asked the NMB to postpone the election that was underway to decide which labor organization represented the craft or class of pilots employed by its singe transportation system since its corporate restructuring and divestiture of ownership of Frontier "would prospectively affect whether Frontier was part of the Republic Airlines, et al/Frontier single transportation system." *In re Frontier Airlines, Inc. Pilots*, 41 NMB 31, 32 (2014). The NMB denied that request and on June 28, 2011, certified the IBT as the duly designated representative of the pilots at Republic Airlines, et al./Frontier. That certification triggered the sixty-day period after which the IMSL Award would become effective.

24.    During the period between the date on which the IMSL Award was issued and its effective date, Frontier hired eight (8) furloughed Midwest pilots, each of whom was within the first 121 Midwest pilots that were integrated with Frontier First Officers by the IMSL Award. However, since the IMSL Award was not effective when they were hired, they were considered by Frontier to be "new-hires," and were assigned seniority dates that coincided with their Dates-Of-Hire (DOH)

-11-

at Frontier. When the IMSL Award became effective on August 27, 2011, MPMC asserted that the integrated seniority replaced the seniority established under the Frontier/FAPA CBA and required that Frontier allow the eight former Midwest pilots at Frontier to use their IMSL seniority in bidding for schedules, vacations and other purposes; FPMC opposed that position, asserting that the integrated list was not, and would not be, effective until RAH and the IBT reached either a consolidated CBA or an interim agreement implementing the IMSL Award. In response to FPMC's opposition to the use of the integrated seniority in bidding for the September 2011 schedule, Frontier claimed "neutrality" and continued to use the eight former Midwest pilots' DOH as their seniority for schedule and vacation bidding purposes. MPMC invoked the jurisdiction of the IMSL Arbitrator under DRA § V(i) to resolve that dispute.

25.    Shortly after it became the certified representative of the combined craft or class of pilots, the IBT notified FPMC and its officers on July 8, 2011 that the DRA did not authorize them to bring suit to challenge the IMSL Award and instructed them to dismiss the *Thomas* suit. FPMC responded by invoking the Integration Arbitrator's jurisdiction under DRA § V(c) to resolve the dispute that had arisen between it and IBT over the proper interpretation and application of DRA § V(h).

26.    By an award dated October 22, 2011, Arbitrator Eischen issued DRA Dispute Resolution Award No. 1, a true and accurate copy of which is attached hereto as part of MPMC Exhibit No. 2. The Arbitrator found that the "post-Award resolution of that dispute over the interpretation and application of DRA § V(h) [as to whether DRA § V(h) authorized the IBT to issue instructions to FPMC] is within the scope of my retained arbitral jurisdiction and reserved arbitral authority." MPMC Ex. 2 at 11. He further ruled that (*Id*.):

-12-

The language of DRA § V (h) is plain, clear and unambiguous. No hearing or augmentation by parole evidence is required for me to render a fully informed resolution of the instant dispute over its interpretation or application.

The Merger Committees remain in existence following issuance of the Award, with authority limited by DRA §V (h) solely to that delegated by the IBT for the purpose of adjusting any dispute or disputes that might arise as to the interpretation or application of the award, including authority to compromise such disputes, and to initiate, defend, mediate, and litigate such issues in the dispute resolution mechanisms under DRA §§V (c), V (i) and V (j).

27.     By an Award dated October 25, 2011, Arbitrator Eischen issued IMSL Award

Interpretative Award No. 1, a true and accurate copy of which is included in MPMC Ex. 2. Arbitrator

Eischen held that (MPMC Ex. 2 at 14, ¶ 1; first bracketed material added; second bracketed materials

in original):

Effective August 27, 2011, the IMSL (Appendix A [to the IMSL Award]) and its integral Conditions/Restrictions are a "part of" both the RJET/IBT Agreement and the Frontier/FAPA Agreement. [No opinion is expressed or implied by me herein regarding whether or to what extent the Midwest/ALPA Agreement retains vitality or constitutes a "collective bargaining agreement applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system".]

28.     He also held that (MPMC Ex. 2 at 14, ¶¶ 2-5; emphasis in original)):

2)     On or after August 27, 2011, the IMSL (Appendix A) and its integral Conditions/Restrictions comprise the seniority list that is to be used in the administration of seniority status based provisions of both the RJET/IBT Agreement and the Frontier/FAPA Agreement.

3)     The IMSL confers upon each listed pilot a specific seniority rank *status*, which differs from the seniority rank *status* that s/he held under the old pre-acquisition seniority lists now superseded by the IMSL. Unless and until the Company and the IBT agree upon collectively bargained contractual modifications or new Agreements, the IMSL does so in the context of the RJET/IBT Agreement and the Frontier/FAPA Agreement. Various collectively bargained provisions

-13-

in those respective Agreements address the *invocation, utilization, administration, implementation and retention* of the seniority rank *status* conferred upon a pilot by the Award.

4)     The Conditions/Restrictions set forth expressly in Part B of my February 19, 2011 Award are the only conditions, restrictions, exceptions, qualifications or limitations of the *invocation, utilization, administration, implementation and retention* of the IMSL seniority rank *status* conferred upon a pilot by Appendix A that are contained in or intended by the Award.

5)     Nothing contained in or intended by the Award supports or requires the conditions[,] restrictions or limitations imposed during the September and October 2011 bidding periods upon the exercise of IMSL seniority rank status for schedule, vacation and other recurrent bidding by certain furloughed former Midwest pilots who were hired as Frontier First Officers during the period between February 19, 2011 and August 27, 2011.

29.     Frontier complied with Interpretative Award No. 1, but the Frontier pilots continued to resist implementing the integrated seniority. Several Frontier pilots, with the active assistance of FAPA, caused a hostile work environment to be created for the eight former Midwest pilots. Additionally, when Frontier closed its Milwaukee, Wisconsin pilot domicile in August 2012 where the eight former Midwest pilots were assigned, and opened a new pilot domicile in Chicago, Illinois, Frontier did not allow the former Midwest pilots to use their IMSL ranking when it displaced those pilots and awarded vacancies at the new base. Rather, as advocated by FAPA, Frontier administered those displacements and vacancies based on the Midwest pilots' DOH at Frontier.

## C.     Frontier Becomes A Separate Carrier And, At FAPA's Insistence, Abrogates The IMSL.

30.     On October 1, 2013, RAH announced that it had entered into a definitive agreement to sell Frontier Holdings, including Frontier, to an investment fund. On December 3, 2013, RAH completed the sale of all of the outstanding shares of its wholly-owned subsidiary, Frontier Airlines

-14-

Holdings, Inc. to the Falcon Acquisition Group, Inc., an affiliate of Indigo Partners, LLC. Two weeks later, FAPA filed an application with the NMB on December 18, 2013 to represent the pilots employed by Frontier.

31.     On March 31, 2014, the NMB issued its Findings Upon Investigation in connection with FAPA's representation application, concluding that "Frontier is operating as a single transportation system for the craft or class of pilots." *In re Frontier Airlines, Inc. Pilots*, 41 NMB at 31. The NMB then conducted an election among the Frontier pilots and on June 13, 2014 certified FAPA as the duly designated and authorized representative for purposes of the RLA of the craft or class of Pilots employed by Frontier. *In re Frontier Airlines, Inc. Pilots*, 41 NMB 88 (2014).

32.     Shortly before RAH disposed of its ownership interest in Frontier, a dispute arose among the Republic Pilots Merger Committee (RPMC), FPMC and Frontier over whether Frontier must offer new-hire First Officer positions to pilots holding seniority on the IMSL before it hired new pilots "off the street." That dispute was presented to an adjustment board formed under DRA § V(j) and by agreement among Frontier, RAH and the IBT, with Dana E. Eischen being selected as the arbitrator. As authorized by DRA § V(j), MPMC participated in that proceeding.

33.     After the NMB found that Frontier was a separate carrier, Frontier and FPMC took the position before Arbitrator Eischen that the DRA and the IMSL Award were no longer applicable to Frontier and its pilots. On September 12, 2014, Arbitrator Eischen issued his award on the RPMC dispute, ruling that the IMSL Award did not compel Frontier to offer new hire positions to pilots holding IMSL seniority. A true and accurate copy of that Award is attached hereto as MPMC No. 3. In his Award, Arbitrator Eischen noted the argument Frontier and FPMC had made as to the continued effectiveness of the DRA and IMSL Award, stating (Ex. 3 at 19, n. 7):

-15-

It was not necessary for me to reach or address the collateral NMB question to fully resolve the merits of the issues submitted to me for determination in these proceedings by the Arbitration Agreement of November 26, 2013. Accordingly, nothing contained in this Opinion or Award is intended to express or imply a resolution of any question relating to the application of the DRA or the Eischen Award following the NMB's separate carrier designation of Frontier or whether I have authority to decide such issues.

34.     On September 13, 2014, the day after that Award was issued, FAPA notified several of the five remaining Midwest pilots at Frontier that they should rebid the October 2014 schedules since, as a result of Eischen's latest award, they no longer had IMSL seniority, but rather, from that date forward, must use their DOH at Frontier as their seniority date. Frontier proceeded to award the former Midwest pilots' bid for the October schedule by using their DOH, which deprived them of their preferred schedules.

35.     On September 20, 2014, the MPMC requested FAPA to implement DRA § V(h) by informing Frontier "that the MPMC and the other merger committees have been delegated by FAPA with the authority to adjust any dispute or disputes that might arise as to the interpretation or application of the February 19, 2011 Seniority Integration Award and subsequent interpretative awards, including the authority to compromise such disputes, and to initiate, defend, mediate, and litigate such issues in the dispute resolution mechanism under the DRA." A true and accurate copy of that request is attached hereto as MPMC Exhibit No. 4. MPMC further requested that FAPA acknowledge "that it will pay the Merger Committees' expenses incurred in the adjusting of such disputes for Frontier pilots, including the Committees' arbitration expenses and fees, lost time for Committee members, and Committee attorney's fees." *Id*. at 1.

36.     Relying upon the authority vested in it by DRA § V(h), MPMC initiated the grievance process on September 23, 2014, under Section 12 of the Frontier/FAPA CBA to challenge Frontier's

-16-

and FAPA's decision to abrogate the former Midwest pilots IMSL seniority at Frontier. A true and accurate copy of that grievance is attached hereto as MPMC Exhibit No. 5. MPMC asserted that Frontier's actions in using DOH as the former Midwest pilots' seniority ranking "violates the IMSL Award, the October 2011 Interpretative Award, and the Frontier Pilots CBA of which the IMSL was made an immutable part." MPMC Ex. 5 at 1.

37.    On September 24, 2014, FAPA responded to the MPMC's invocation of DRA § V(h), asserting that the DRA "is no longer applicable to Frontier Airlines, Inc. . . . or FAPA" referring to the language of the DRA and the terms of the IMSL Award to support its interpretation of those instruments. FAPA then stated: "Accordingly, [MPMC] . . . request to invoke the arbitration provisions of the DRA are without basis, and substantively inarbitrable." A true and accurate copy of that response is attached hereto as MPMC Exhibit No. 6. FAPA also asserted that since the DRA was no longer applicable, MPMC could not invoke the CBA's grievance procedure. MPMC Ex. 6 at 4. It added that (*Id*.):

> To the extent that the affected Frontier Pilots who you [*i.e.*, MPMC's counsel] represent believe that Frontier is improperly administering seniority under the Frontier CBA, those pilots (although not the Midwest Merger Committee) may invoke the grievance procedure of that CBA pursuant to the terms thereof. FAPA will fulfill its obligations with respect to the processing of any such grievance in accordance with the CBA.

38.    On September 24 and 25, 2014, MPMC invoked the jurisdiction of Arbitrator Eischen under DRA § V(c) to resolve the two disputes that had arisen between MPMC and both Frontier and the Frontier pilots over (1) whether, as FAPA maintains, the DRA and IMSL Award no longer applies at Frontier; and (2) whether DRA § V(h) requires FAPA to authorize the Merger Committees to handle seniority integration disputes. A true and accurate copy of emails in that chain (less

-17-

attachments) is attached hereto as MPMC Exhibit No. 7. MPMC also asked that Arbitrator Eischen consolidate that invocation of his jurisdiction under DRA § V(c) with an earlier invocation of his DRA § V(c) jurisdiction involving both Frontier and RAH that was pending before him.

39.     FAPA responded on October 10, 2014 to the MPMC's purported invocation of Arbitrator Eischen's jurisdiction under DRA § V(c) by asserting that the "DRA is no longer in effect; [and] (2) even if the DRA were otherwise effective, you would lack authority over either the substance of the issue asserted by [MPMC] . . . , or the interpretation or application of the DRA in connection therewith . . . . There is no agreement to submit these matters to you; accordingly, these are all issues of substantive arbitrability, over which you have no jurisdiction." A true and accurate copy of FAPA's response (less attachments) is attached hereto as MPMC Exhibit No. 8, while the September 13, 2014 FAPA letter, which was attached to FAPA's response, is attached hereto as MPMC Exhibit No. 9.

40.     Frontier responded on October 10, 2014 to the MPMC's purported invocation of Arbitrator Eischen's jurisdiction under DRA § V(c) by adopting the reasoning set forth in FAPA's response and by asserting that it has not agreed to submit the disputes raised by MPMC to Arbitrator Eischen. It also incorporated by reference its earlier submissions to Arbitrator Eischen where it argued that the DRA no longer applied to Frontier once it became a separate carrier. A true and accurate copy of Frontier's October 10, 2014 response is attached hereto as MPMC Exhibit No. 10.

41.     On October 29, 2014, Arbitrator Eischen issued his ruling on the MPMC's purported invocations of his jurisdiction under DRA § V(c), ruling that Frontier had raised "a colorable issue of substantive arbitrability . . . ." A true and accurate copy of that ruling is attached hereto as MPMC Exhibit No. 11. As Eischen explained: "It is apparent to me that the Parties have a *bona fide*

-18-

disagreement over whether they in fact have an agreement to arbitrate disputes such as those raised in [MPMC's] letters. Nor is there any clear and unmistakable provision between them empowering me rather than the courts to resolve that threshold issue." MPMC Ex. 11 at 2.

42. FAPA's CBA with Frontier places FAPA as the gatekeeper for the processing of grievances past the initial informal claim. Sections 12.B.1 and 12.C.1 of that CBA provide that, within fourteen (14) days of the occurrence, the "concerned pilot shall first present the dispute to the Chief Pilot . . . for discussion in an effort to informally resolve the dispute . . . ." Frontier's Chief Pilot is to render his decision within twenty-one (21) days of the occurrence (CBA § 12.C.2), and thereafter further processing of the grievance is controlled by FAPA. CBA § 12.D provides that: "If the Association is not satisfied with the informal resolution of the dispute by the Chief Pilot or his designee, the Association may present a written grievance to the Senior Manager of Labor Relations." CBA § 12.E provides that: "If the Association is not satisfied with the Senior Manager of Labor Relations' decision at the First Level of Grievance . . . , the Association may appeal the Senior Manager of Labor Relations' decision to the Vice President of Labor Relations . . . ." And as provided by CBA § 12.F: "If the Association is not satisfied with the Vice President of Labor Relations' decision at the Second Level of Grievance, the President of the Association or his designee (limited to a member of the Association Board) may appeal the decision to the System Board of Adjustment in accordance with the Procedures in Section 14, System Board of Adjustment."

43. Relying upon the authority granted to it by DRA § V(h), MPMC invoked each step of the CBA's grievance process. But at each step to which either Frontier or FAPA responded, they denied that MPMC had the authority to invoke that grievance process. On November 10, 2014,

MPMC invoked the jurisdiction of the Frontier/FAPA CBA board of adjustment under DRA § V(j) and CBA §§ 12.F and 14 "to resolve the disputes raised by its earlier grievances," including the procedural defenses raised by defendants. A true and accurate copy of that invocation of jurisdiction is attached hereto as MPMC Exhibit No. 12. MPMC further added that (MPMC Ex. 12 at 2):

> Should FAPA and/or Frontier deny that the MPMC has the authority under DRA § V(h) to process this grievance or to invoke DRA § V(j) and Frontier/FAPA adjustment board process, the MPMC once again asks that Frontier and FAPA agree to submit to Arbitrator Eischen under DRA § V(c) the dispute raised by their contrary interpretation and application of the DRA.

44.     In the interim, FAPA progressed a separate grievance for each of the five former Midwest pilots employed as First Officers at Frontier, and on November 8, 2014 invoked the jurisdiction of the Frontier/FAPA System Board of Adjustment (SBA) to hear their claims. A true and accurate copy of FAPA's notification to the five pilots and the appeal notice to the SBA for plaintiff Ward are attached hereto as MPMC Exhibit Nos. 13 and 14, respectively. That appeal notification sets forth FAPA's position as: "The Association's position is as set forth in its letter to Frontier dated September 13, 2014, and in Letter of Agreement 71 of the CBA." MPMC Ex. 14. FAPA's September 13, 2014 letter to Frontier asserted that the IMSL Award no longer applied and maintained that Frontier should use a pilot's DOH at Frontier as the pilot's seniority date. MPMC Ex. 9 at 2-3. Frontier accepted that position. Subsequently, Frontier and FAPA memorialized that interpretation of the DRA and IMSL Award into an agreement, LOA 71, which was submitted to FAPA's membership for ratification.

45.     Since decisions of the SBA are made by majority vote of the partisan members of the Board, and only by a neutral arbitrator if the partisan members deadlock, and since both FAPA and Frontier assert that LOA 71 rather than the DRA and IMSL Award controls, plaintiffs submit that

the only fair way the Frontier/FAPA adjustment board process could decide this dispute is if the partisan members agreed to bypass the SBA, as CBA § 14 authorizes, and to go directly to a board of arbitration under CBA § 14.J.2 for a final and binding resolution of the dispute by the neutral arbitrator. That is the process DRA § V(j) provides.

## COUNT I (RLA OBLIGATIONS TO ARBITRATE)

46.    Plaintiffs reiterate and incorporate herein the allegations set forth in Paragraphs 1 through and including 45 of this Complaint.

47.    Section 2 First of the RLA, 45 U.S.C. § 152 First, provides that:

> It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

48.    Section 204 of the RLA, 45 U.S.C. § 184, provides in pertinent part that:

> The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, . . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board, as hereinafter provided, with a full statement of the facts and supporting data bearing upon the disputes.

> It shall be the duty of every carrier and of its employees, acting through their representatives, selected in accordance with the provisions of this title, to establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 3, title I, of this Act [45 U.S.C. § 153].

-21-

> Such boards of adjustment may be established by agreement between employees and carriers either on any individual carrier, or system, or group of carriers by air and any class or classes of its or their employees . . . .

49.     Defendant Frontier is a signatory to the DRA and is bound by DRA § V(c) by which, as authorized by RLA § 204, Frontier agreed that the Integration Arbitrator would have "authority to resolve any dispute arising out of the interpretation or application of" the DRA. MPMC Ex. 1 at 4, § V(c). Frontier, therefore, has an obligation under RLA §§ 2 First and 204 to arbitrate disputes within the scope of DRA § V(c) when, as here, a party to that agreement invokes the jurisdiction of that agreement's dispute resolution process to resolve that dispute.

50.     Defendant FAPA authorized its agent FPMC to enter into the DRA and to agree that FAPA would be bound by "commitments set forth in this paragraph [*i.e.*, DRA § V(h)] and this Agreement [i.*e*., the DRA]." FAPA thereby agreed that the Integration Arbitrator would have "authority to resolve any dispute arising out of the interpretation or application of" the DRA. MPMC Ex. 1 at 4, § V(c). Defendant FAPA, therefore, has an obligation under RLA §§ 2 First and 204 to arbitrate through the Merger Committees disputes within the scope of DRA § V(c) affecting pilots it represents.

51.     FPMC, acting pursuant to the authority delegated to it by defendant FAPA, agreed on behalf of FAPA to act as the pre-acquisition Frontier pilots' duly authorized representative in utilizing the RLA § 204 arbitration process set forth in DRA § V(c) "to resolve any dispute arising out of the interpretation or application of" the DRA. MPMC Ex. 1 at 4.

52.     MPMC's position that FAPA is required by DRA § V(h) to fund the Merger Committees and to delegate to the Merger Committees FAPA's authority to handle under DRA § V(j) "dispute[s] arising out of the interpretation or application of the [IMSL] award" (MPMC Ex.

-22-

1 at 5, § V(j)), and FAPA's defense that the DRA is no longer applicable, present disputes "arising out of the interpretation or application" of the DRA and, thus, disputes within the exclusive jurisdiction of the Integration Arbitrator to resolve under DRA § V(c).

53.     Defendants Frontier's and FAPA's position that the DRA was intended to apply *only* to the Republic Airlines, et al./Frontier single transportation system, and therefore no longer applies to Frontier, presents a dispute "arising out of the interpretation or application" of the DRA within the meaning of DRA § V(c), and, thus, a dispute within the exclusive jurisdiction of the Integration Arbitrator to resolve under DRA § V(c).

54.     Defendants Frontier's and FAPA's position that they may modify by agreement the seniority ranking established by the IMSL Award raises a dispute "arising out of the interpretation or application" of the DRA within the meaning of DRA § V(c) since it requires the interpretation of DRA §§ V(g) and V(j), and, thus, a dispute within the exclusive jurisdiction of the Integration Arbitrator to resolve under DRA § V(c).

55.     Defendants Frontier and FAPA have violated their obligations under RLA §§ 2 First and 204 by refusing to arbitrate before the Integration Arbitrator under DRA § V(c) the disputes MPMC and they have raised as to the interpretation and application of the DRA.

### COUNT II (DUTY OF FAIR REPRESENTATION)

56.     Plaintiffs reiterate and incorporate herein the allegations set forth in Paragraphs 1 through and including 45 of this Complaint, as well as in Paragraphs 47 and 48 hereof.

57.     Defendant FAPA, as the duly designated representative of the craft or class of pilots employed by Frontier, has a duty imposed by RLA § 2 Fourth, 45 U.S.C. § 152 Fourth, to serve the interests of all members of the craft or class without hostility or discrimination toward any, to

Case 2:14-cv-01441-RTR   Filed 11/17/14   Page 23 of 28   Document 1

exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct in performing that representation.

58.    Defendant Frontier is precluded by RLA § 2 Seventh from "chang[ing] the rates of pay, rules, or working conditions of its employees, as a class as embodied in agreements except in the manner prescribed in such agreements or in section 6 of this Act." 45 U.S.C. § 152 Seventh.

59.    Defendants FAPA and Frontier have a duty imposed by RLA § 2 First "to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions" (45 U.S.C. § 152 First), including maintaining the seniority ranking devised by the IMSL Award that was "final and binding" on them, and made a "part" of the Frontier/FAPA CBA as of August 27, 2011.

60.    Frontier also has a duty imposed by RLA § 2 First to refrain from colluding with FAPA in knowingly aiding FAPA in breaching FAPA's duty to represent the interest of *all* Frontier pilots fairly.

61.    Plaintiffs maintain that the DRA provisions making the IMSL Award "final and binding on the parties to this Agreement and on the pilots employed by RAH and its affiliates" (MPMC Ex. 1 at 4, § V(g)) and making it a "part" of the Frontier/FAPA CBA as of August 27, 2011 (MPMC Ex. 1 at 5, § V(j)), preclude FAPA and Frontier from using the RLA major dispute process to alter the "seniority rank status" established by the IMSL Award. *See*, MPMC Ex. 2 at 14, ¶¶ 1-2. Defendants, on the other hand, maintain that they are not precluded by the DRA from changing that seniority rank status and, accordingly, have entered into LOA 71 to change that ranking. This disagreement presents a dispute within the exclusive jurisdiction of the DRA § V(c) dispute resolution process, in which defendants have refused to participate.

-24-

62.     Defendant FAPA has breached its duty to fairly represent the former Midwest pilots, who are a part of the craft or class of pilots it has been certified to represent, by causing Frontier to deprive the former Midwest pilots of the IMSL seniority in direct conflict with DRA §§ V(g) and V(j) and the IMSL Award; by refusing to delegate to plaintiff MPMC the authority DRA § V(h) provides is delegated to the Merger Committees to represent pre-acquisition pilots in adjusting seniority-integration disputes in which the certified representative is conflicted; by refusing to submit to the jurisdiction of the DRA § V(c) adjustment board to resolve disputes arising from its interpretation and application of the DRA; by impeding MPMC in its invocation of the jurisdiction of the adjustment board required by DRA § V(j) to resolve disputes over its application of the IMSL Award; and by both proposing and entering into LOA 71. It has taken those actions with the intent to discriminate against the former Midwest pilots, in bad faith, and with hostility towards the former Midwest pilots as a class.

63.     Defendant Frontier has knowingly and willingly participated in FAPA's breach of its duty of fair representation, by abrogating the IMSL seniority ranking, by entering into LOA 71; by refusing to recognize the authority DRA § V(h) delegates to plaintiff MPMC; and by otherwise actively impeding plaintiffs in their efforts to utilize the DRA and the Frontier/FAPA adjustment board dispute resolution processes to enforce the IMSL Award and the former Midwest pilots' contractual rights.

### RELIEF REQUESTED

Plaintiffs respectfully request that this Court enter judgment in their favor providing the following relief:

-25-

A.     Issue a declaratory judgment declaring that Frontier is bound by the DRA to arbitrate with MPMC and the other Merger Committees under DRA § V(c) disputes arising out of the interpretation or application of the DRA, including the disputes over the authority delegated to MPMC under DRA § V(h), disputes over whether the DRA and the IMSL Award remain applicable at Frontier, and the dispute over whether the IMSL ranking is "immutable;"

B.     Issue a declaratory judgment that FPMC, through the authority delegated to it by FAPA, is bound by DRA § V(c) to arbitrate with MPMC, the other Merger Committees, and with Frontier disputes arising out of the interpretation or application of the DRA, including the dispute over the authority and funding rights that DRA V(h) confers upon MPMC, the dispute FAPA and FPMC have raised as to the continued viability of the DRA and IMSL Award at Frontier; and the dispute over whether the IMSL ranking is "immutable;"

C.     Issue an injunction (1) directing defendant Frontier and FPMC to arbitrate before the Integration Arbitrator under DRA § V(c) the issues at bar, including any defense either Frontier or FPMC may have arising from the terms of the DRA as to the jurisdiction of the Arbitrator to consider DRA interpretation or application claims, and (2) directing Frontier and FAPA to pay the arbitrator's fees and expenses;

D.     Reserve jurisdiction to enforce RLA §§ 2 First and 2 Fourth by requiring defendants to annul LOA 71 if the DRA Integration Arbitrator concludes that the IMSL ranking is immutable and may not be changed even by agreement; and

E.     Grant such other relief as this Court deems just and proper, including requiring defendants to reimburse plaintiffs for their attorney's fees and costs in enforcing defendants' obligations under the RLA to comply with their agreement to arbitrate the disputes at bar and in

-26-

enforcing the duty imposed upon FAPA to represent fairly former Midwest pilots employed at

Frontier.

Respectfully Submitted,

John O'B. Clarke, Jr.
HIGHSAW, MAHONEY & CLARKE, P.C.
4142 Evergreen Drive
Fairfax, Virginia 22032-1018
Phone: (202) 296-8500
Fax: (202) 296-7143
Email: jclarke@highsaw.com

Date: November 17, 2014          Attorney for Plaintiffs

-27-

# LIST OF MPMC EXHIBITS

1.      November 3, 2009 Section 13(b) Dispute Resolution Agreement.. . . . . . . . . . . . . . . 1-6
2.      October 2011 Dispute Resolution And Interpretative Award. . . . . . . . . . . . . . . . . 7-21
3.      September 12, 2014 Eischen Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-46
4.      MPMC September 20, 2014 Letter. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47-48
5.      MPMC September 23, 2014 Grievance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49-50
6.      FAPA September 24, 2014 Response To MPMC. . . . . . . . . . . . . . . . . . . . . . . . . 51-54
7.      MPMC September 24, 2014 Email to Eischen. . . . . . . . . . . . . . . . . . . . . . . . . . . 55-56
8.      FAPA October 10, 2014 Response to Eischen re jurisdiction (Less Attachments). . . 57-65
9.      FAPA September 13, 2014 Letter to Frontier. . . . . . . . . . . . . . . . . . . . . . . . . . . 66-68
10.    Frontier's October 10, 2014 Response to Eischen re jurisdiction. . . . . . . . . . . . . . . 69
11.    Eischen's October 29, 2014 Ruling re arbitrability. . . . . . . . . . . . . . . . . . . . . . . . 70-71
12.    MPMC November 10, 2014 Appeal to Adjustment Boards. . . . . . . . . . . . . . . . . . 72-73
13.    FAPA Notice To Grievants re Appeals to System Board of Adjustment. . . . . . . . . . . 74
14.    FAPA Appeal to System Board of Adjustment for Plaintiff Ward. . . . . . . . . . . . . . . 75