## SECTION 13(b) DISPUTE RESOLUTION AGREEMENT

**WHEREAS,** Section 13(b) of the *Allegheny-Mohawk* Labor Protective Provisions (LPPs) authorizes the parties to devise an alternative method to resolve the seniority integration issues which are subject to Section 3 of the *Allegheny-Mohawk* LPPs' command that the parties integrate seniority in a fair and equitable manner, and the parties to this Agreement desire to devise that alternative dispute resolution process;

**THEREFORE**, Republic Airways Holdings Inc. (RAH), on behalf of itself and its wholly-owned affiliates Republic Airline Inc., Chautauqua Airlines, Inc. and Shuttle America Corp. (hereinafter collectively, "Republic"), Midwest Airlines, Inc., Frontier Airlines, Inc. and Lynx Aviation, Inc. (RAH and its affiliates together one "party" under this Agreement), and the Republic, Midwest, Frontier and Lynx pilots, as represented by their respective Seniority Merger Committees (the "Merger Committees") as duly created and authorized by each pilot group's duly designated representative (each such Merger Committee another "party" under this Agreement) agree to establish the following procedures for resolving the seniority integration issue in accordance with Sections 3 and 13 of the LPPs:

### Section I: Production of Information

(a). No later than twenty-one (21) days from the effective date of this Agreement, each Merger Committee may submit to RAH, in writing, a list of specific information that is relevant, material and necessary to seniority integration. Within five (5) business days of the request, RAH shall provide such available information, subject to a confidentiality/non-disclosure agreement, or otherwise inform the Committee that the information is not available or does not meet the requirements of this paragraph. Nothing in this Agreement shall require that RAH or its affiliates create documents that are not otherwise in existence.

(b). If, during the course of the seniority integration process pursuant to this Agreement, RAH modifies the operational fleet plan previously produced to the Merger Committees, such modified plan(s) will be provided to the Merger Committees, subject to a confidentiality/non-disclosure agreement.

(c). Upon request of a Merger Committee, RAH shall facilitate a meeting with appropriate management individual(s) and all Merger Committees for the purpose of addressing any follow-up questions raised by the information produced pursuant to paragraphs (a) or (b) above.

(d). Any dispute over any party's compliance with the requirements noted in this Section I that is not resolved by the disputants five (5) days after the dispute arises may be referred by a party to the dispute to the arbitrator selected pursuant to this agreement for final and binding resolution on an expedited basis by oral decision rendered as soon as possible after the record on that dispute is closed. The oral decision shall be followed by a written order memorializing the decision.

### Section II: Negotiation of the Integrated List

(a). No later than ten (10) days after the completion of the discovery process set forth in Section I(a), but in no event later than forty (40) days after the effective date of this

Agreement, the Merger Committees shall exchange with each other and with RAH their respective seniority lists containing the seniority number, date of hire, date of birth, and adjustments to longevity, if any, as specified in the applicable collective bargaining agreements and/or established practices. They shall also exchange with each other, but not with RAH (unless specifically requested to do so by RAH), all applicable collective bargaining agreements, including Pilot Working Agreements, and Letters of Agreement, and all pending grievances related in any way to seniority or reinstatement of pilots.

(b). No later than five (5) days after the exchange of the seniority lists, the Merger Committees shall exchange with each other, but not with RAH, their respective proposals for the integration of the pilot seniority lists on a fair and equitable basis.

(c). No later than ten (10) days after the Merger Committees exchange integration proposals, they shall confer in an effort to reach an agreement for the fair and equitable integration of their respective airlines' pilot seniority lists. In the event of differences in the rules affecting adjustments to longevity under the parties' agreements and/or established practices, the Merger Committees shall meet in an effort to reach agreement on how to resolve those differences, but failing to reach agreement the dispute may be referred to the arbitrator selected pursuant to Section IV for resolution as part of the integration. Any adjustment of longevity to resolve such differences shall not affect any pilot's longevity pursuant to the applicable collective bargaining agreement for any other purpose, such as pay or benefits.

(d). If the Merger Committees are able to reach a written agreement, they shall jointly transmit that agreement as a proposal to RAH by the next calendar day. RAH and the Merger Committees shall meet within five (5) days after transmittal of the agreement for the purpose of securing RAH's agreement to the seniority integration.

(e). If the parties are able to reach an agreement for the fair and equitable integration of the pilot seniority lists, they shall include in that agreement a date when the integration will become effective, which date shall not be before the National Mediation Board (NMB) issues its ruling on whether the RAH affiliates comprise a single transportation system and certifies the Organization, if any, that is the duly designated representative of the pilot craft or class on that transportation system.

(f). If the Merger Committees are unable within forty-five (45) days after conferences begin under Section II (c) to reach an agreement for the fair and equitable integration of the pilot seniority lists, any Committee may refer the dispute to the arbitrator selected pursuant to Section IV for final and binding resolution. If the Merger Committees reach an agreement, but then are unable to secure RAH's agreement within ten (10) days after such conferences begin under Section II (d), any party may refer the dispute to the arbitrator selected pursuant to Section IV for final and binding resolution.

MPMC Ex. 1

**Section III: Mediation**

(a). No earlier than fifteen (15) days after negotiations begin under Section II (c), any Merger Committee may request that the mediator selected pursuant to Section IV (b) assist the Merger Committees in reaching agreement for a fair and equitable integration of the seniority lists. All Merger Committees shall cooperate in the mediation of the dispute.

(b). If all parties agree, mediation may continue after the dispute is submitted to the arbitrator selected pursuant to Section IV (b), but shall cease on the date the arbitrator establishes for submitting comments under Section V (f) on the proposed award.

(c). The salary and expenses of the mediator and the costs of the mediation process shall be shared equally by the Merger Committees.

**Section IV: Selection of the Mediator and Arbitrator**

(a). Within ten (10) days of the effective date of this Agreement, each Merger Committee shall submit to the other Merger Committees and RAH a list of at least three (3) arbitrators/mediators who will be acceptable to that Merger Committee to mediate under Section III, or to hear and decide any dispute under this Agreement, or over the fair and equitable integration of the pilot seniority lists. RAH shall submit to the Merger Committees by that same time period a list of three (3) arbitrators who would be acceptable to RAH to hear and decide any dispute under this Agreement, or over the fair and equitable integration of the pilot seniority lists.

(b). No later than fifteen (15) days after the effective date of this Agreement, all parties shall meet either in person or by phone to select an arbitrator and, for the Merger Committees, a separate mediator from the lists of acceptable arbitrators/mediators produced by the parties. If the parties are unable at that meeting to select an arbitrator and/or a mediator from the Section IV (a) lists, any party to this Agreement may immediately request from the NMB a list of eleven (11) available arbitrators knowledgeable of, and experienced in, airline labor disputes, from which list the parties shall select the arbitrator. That list shall also be used by the Merger Committees to select the mediator. The parties shall first select the arbitrator by alternatively striking names until one name remains or the parties agree upon the arbitrator; the Merger Committees shall then use the same list, with the arbitrator's name removed, to select the mediator by the same strike method. The parties participating in the selection process shall determine by agreement or by lot the order of striking. The selection process shall not be delayed if a party declines to participate in the selection process.

(c). If the arbitrator or mediator selected is unwilling to serve, or subsequently withdraws, the parties shall select another arbitrator and/or mediator by the above methods.

(d). One half of the salary and expenses of the arbitrator and the costs of the arbitration (such as hearing facilities and court reporter) shall be borne by RAH and the other half by the

Merger Committees. Each party shall be responsible for the compensation and expenses of its representatives and participants in the arbitration process.

## Section V: The Arbitration Hearing

(a). No later than ten (10) days after the submission of the integration dispute under Section II (f) for final and binding resolution, the arbitrator shall commence a prehearing conference to determine the issues in dispute, set the date for the commencement of the hearing in accordance with Section V (b), establish the order of presentation of evidence, and determine any other matter that the arbitrator believes will be conducive to a just and orderly resolution of the dispute, including procedural issues.

(b). No later than thirty (30) days after the submission of the integration dispute under Section II (f) for final and binding resolution, the arbitrator shall commence the hearing on the dispute at which the parties shall be permitted to produce evidence as to the fair and equitable integration of the seniority lists, including conditions that the parties believe are necessary for a fair and equitable integration of the seniority rights of the pilot groups. The hearing shall take place at a location(s) agreed-to by the parties but, barring such agreement, shall take place at a location(s) designated by the arbitrator.

(c). In addition to jurisdiction to resolve disputes under Section I and to devise the fair and equitable integration of seniority, the arbitrator shall have the authority to resolve any dispute arising out of the interpretation or application of this Agreement.

(d). The arbitrator shall conduct the hearing and schedule any post-hearing briefing so that the proposed award may be made within sixty (60) days after the hearing commences, unless the parties agree to an extension of the date for the issuance of an award.

(e). Unless during the hearing process the parties reach an agreement as to the manner in which the pilot seniority is to be integrated, the integration, including any conditions thereto, shall be devised by the arbitrator.

(f). Prior to issuing the final award, the arbitrator shall submit the proposed award to the parties for their review. The parties may submit written comments as to the proposed award, with suggested changes, if any, with copies to the other parties. No new evidence may be submitted. The arbitrator, in his or her sole and unreviewable discretion, may schedule oral argument on the comments. This comment and review process shall be conducted so that it is concluded in a twenty (20) day time period, with the final award being issued by the twentieth day from when the proposed award was issued.

(g). The award of the arbitrator shall be stated in writing and shall be final and binding on the parties to this Agreement and on the pilots employed by RAH and its affiliates. The award shall include the date on which the seniority integration will become effective, which date shall not be before the NMB issues its ruling on whether the RAH affiliates comprise

a single transportation system and certifies the Organization, if any, that is the duly designated representative of the pilot craft or class on that transportation system.

(h). The Organization, if any, designated by the NMB as the duly designated representative of the combined craft or class of Flight Deck Crew Members for the single transportation system shall continue the Merger Committees in existence and delegate to the Merger Committees authority solely for the purpose of adjusting any dispute or disputes that might arise as to the interpretation or application of the award, including authority to compromise such disputes, and to initiate, defend, mediate, and litigate such issues in the dispute resolution mechanism under this Agreement. The Organization shall have authority over the manner in which the Merger Committees' operations are financed. The Merger Committees which are parties to this agreement represent that they have been authorized by their principals (the duly designated representative of their airline's pilots) to enter into the commitments set forth in this paragraph and in this Agreement. Each Merger Committee shall fill its own vacancies by selection made by the remaining members of that Merger Committee.

(i). In case a dispute arises involving an interpretation of the award within one hundred and twenty (120) days of the date that the seniority integration becomes effective, the arbitrator, upon request by a party to this Agreement, shall interpret the award in light of the dispute. Any such dispute must be submitted to the arbitrator within sixty (60) days after the dispute arises.

(j). The award of the arbitrator issued under either Section V (g) or V (i) shall be considered as a part of the collective bargaining agreement(s) applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system. Any dispute arising out of the interpretation or application of the award more than one-hundred and twenty (120) days after the effective date of the seniority integration shall be handled in the usual manner by the applicable Merger Committees up to and including the highest carrier official designated to handle such disputes, but failing to reach an adjustment in this manner, the dispute may be submitted by any party to the dispute to the adjustment board established by the designated representative of the combined craft or class and the single carrier for final and binding resolution. All Merger Committees shall be given notice of the dispute and, in addition to the Merger Committee invoking the adjustment board jurisdiction, may be heard by the system board of adjustment in resolving the dispute, with the decision of the board being made by the arbitrator selected pursuant to the applicable agreement to sit with the system board (without a vote by the other members of the system board).

**Section VI: Effective Date**

This Agreement shall be effective as of November 3, 2009.

Section 13(b) Agreement
November 3, 2009
Page 6 of 6

For Republic Airways Holdings, Inc. and affiliates:

_____/s/ Ronald C. Henson_____
Ronald C. Henson, Vice President–Labor Relations
Date: November 3, 2009

For the Republic Airways Holdings, Inc. Pilot Merger Committee:

_____/s/ Daniel Sneddon_____
Daniel Sneddon, Republic Pilots' Integration Committee
Date: November 3, 2009

For the Midwest Airlines Pilot Merger Committee:

_____/s/ Don Till_____
Don Till, Midwest Pilots' Merger Committee
Date: November 3, 2009

For the Frontier Airlines, Inc. Pilot Merger Committee:

_____/s/ John Stemmler_____
John Stemmler, President, Frontier Airline Pilots Association
Date: November 3, 2009

For the Lynx Aviation, Inc. Pilot Merger Committee:

_____/s/ Mark Manausa_____
Mark Manausa, Lynx Pilots' Merger Committee
Date: November 3, 2009

# RESOLUTION OF DISPUTES ARISING OUT OF

**INTERPRETATION OR APPLICATION OF THE DISPUTE RESOLUTION AGREEMENT OF NOVEMBER 3, 2011**

### AND

**INTERPRETATIONS OF THE ARBITRATED IMSL AWARD DATED FEBRUARY 19, 2011**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**In Seniority List Integration Arbitration Under the Dispute Resolution Agreement Effective November 3, 2010, Among and Between The Merger Committees Of The Pilots Of:**

**REPUBLIC AIRLINES/CHAUTAUQUA AIRLINES/SHUTTLE AMERICA,**

 **-and-**

**FRONTIER AIRLINES, INC.,**

**-and-**

**MIDWEST AIRLINES, INC.,**

**-and-**

**LYNX AVIATION, INC.**

**-and-**

**REPUBLIC AIRWAYS HOLDINGS, INC., ("RAH")**

  **[On behalf of itself and its affiliates: Chautauqua Airlines, Inc., Republic Airline, Inc., Shuttle America, Inc., Frontier Airlines, Inc., Midwest Airlines, Inc., and Lynx Aviation, Inc.]**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>APPEARANCES</u>

| | |
|---|---|
| **For Lynx M C:** | Clinton J. Miller, III, UTU General Counsel |
| **For Midwest M C:** | Highsaw, Mahoney & Clarke, P.C. By John O'Brien Clarke, Jr. |
| **For Frontier M C:** | Allison, Slutsky and Kennedy, P.C. By Wesley G. Kennedy |
| **For Republic M C:** | Baptiste & Wilder, P.C. By William R. Wilder |
| **For RAH, Inc.** | Ford & Harrison, LLP By Thomas J. Kassin Lilia R. Bell |

1

## **PERTINENT PROVISIONS OF THE NOVEMBER 3, 2010 DRA**

WHEREAS, Section 13(b) of the Allegheny-Mohawk Labor Protective Provisions ("LPP"s) authorizes the parties to devise an alternative method to resolve the seniority integration issues which are subject to Section 3 of the Allegheny-Mohawk LPPs' command that the parties integrate seniority in a fair and equitable manner, and the parties to this Agreement desire to devise that alternative dispute resolution process;

THEREFORE, Republic Airways Holdings Inc. ("RAH"), on behalf of itself and its wholly-owned affiliates Republic Airline Inc., Chautauqua Airlines, Inc. and Shuttle America Corp. (hereinafter collectively, "Republic"), Midwest Airlines, Inc., Frontier Airlines, Inc. and Lynx Aviation, Inc. (RAH and its affiliates together one "party" under this Agreement), and the Republic, Midwest, Frontier and Lynx pilots, as represented by their respective Seniority Merger Committees (the "Merger Committees") as duly created and authorized by each pilot group's duly designated representative (each such Merger Committee another "party" under this Agreement) agree to establish the following procedures for resolving the seniority integration issue in accordance with Sections 3 and 13 of the LPPs:

### **Section I: Production of Information**

d). Any dispute over any party's compliance with the requirements noted in this Section I that is not resolved by the disputants five (5) days after the dispute arises may be referred by a party to the dispute to the arbitrator selected pursuant to this agreement for final and binding resolution on an expedited basis by oral decision rendered as soon as possible after the record on that dispute is closed. The oral decision shall be followed by a written order memorializing the decision.

\* \* \*

### **Section V: The Arbitration Hearing**

(c). In addition to jurisdiction to resolve disputes under Section I and to devise the fair and equitable integration of seniority, the arbitrator shall have the authority to resolve any dispute arising out of the interpretation or application of this Agreement.

(e). Unless during the hearing process the parties reach an agreement as to the manner in which the pilot seniority is to be integrated, the integration, including any conditions thereto, shall be devised by the arbitrator

(g). The award of the arbitrator shall be stated in writing and shall be final and binding on the parties to this Agreement and on the pilots employed by RAH and its affiliates. The award shall include the date on which the seniority integration will become effective, which date shall not be before the NMB issues its ruling on whether the RAH affiliates comprise a single transportation system and certifies the Organization, if any, that is the duly designated representative of the pilot craft or class on that transportation system.

(h). The Organization, if any, designated by the NMB as the duly designated representative of the combined craft or class of Flight Deck Crew Members for the single transportation system shall continue the Merger Committees in existence and delegate to the Merger Committees authority solely for the purpose of adjusting any dispute or disputes that might arise as to the interpretation

or application of the award, including authority to compromise such disputes, and to initiate, defend, mediate, and litigate such issues in the dispute resolution mechanism under this Agreement. The Organization shall have authority over the manner in which the Merger Committees' operations are financed. The Merger Committees which are parties to this agreement represent that they have been authorized by their principals (the duly designated representative of their airline's pilots) to enter into the commitments set forth in this paragraph and in this Agreement. Each Merger Committee shall fill its own vacancies by selection made by the remaining members of that Merger Committee.

(i). In case a dispute arises involving an interpretation of the award within one hundred and twenty (120) days of the date that the seniority integration becomes effective, the arbitrator, upon request by a party to this Agreement, shall interpret the award in light of the dispute. Any such dispute must be submitted to the arbitrator within sixty (60) days after the dispute arises.

(j). The award of the arbitrator issued under either Section V (g) or V (i) shall be considered as a part of the collective bargaining agreement(s) applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system. Any dispute arising out of the interpretation or application of the award more than one-hundred and twenty (120) days after the effective date of the seniority integration shall be handled in the usual manner by the applicable Merger Committees up to and including the highest carrier official designated to handle such disputes, but failing to reach an adjustment in this manner, the dispute may be submitted by any party to the dispute to the adjustment board established by the designated representative of the combined craft or class and the single carrier for final and binding resolution. All Merger Committees shall be given notice of the dispute and, in addition to the Merger Committee invoking the adjustment board jurisdiction, may be heard by the system board of adjustment in resolving the dispute, with the decision of the board being made by the arbitrator selected pursuant to the applicable agreement to sit with the system board (without a vote by the other members of the system board).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>THE IMSL AWARD OF FEBRUARY 19, 2011</u>

### A. THE INTEGRATED MASTER SENIORITY LIST (IMSL)

The IMSL for the pilots of Republic Airline/Chautauqua Airlines/Shuttle America (RAH), Frontier Airlines, Midwest Airlines and Lynx Aviation shall be the List attached to this Award as Appendix A.

### B. CONDITIONS/RESTRICTIONS

1.    These conditions and restrictions are an integral part of the IMSL and shall remain in full force and effect until they expire by their terms.

2.    Pilots hired after October 1, 2009 shall be junior to all pilots on the IMSL and shall be listed in order of date of hire.

3.    Neither the implementation of the integrated seniority list nor the implementation or expiration of a condition or restriction of the IMSL, in and of itself, may cause the displacement of any pilot from his or her then-current position (including pilots who have been awarded positions but had not commenced or completed training).

3

4.    There shall be no requirement for pilots to be compensated for flying not performed as a result of the seniority integration. This restriction does not bar application of pay protection provisions of any applicable collective bargaining agreement.

5.    A.    For the period of seven (7) years, beginning with the first bid period after the date on which the seniority integration becomes effective, Frontier Pilots will have priority for all CA and FO jobs on Airbus 320 family aircraft (A318, A319, A320, and A321); including aircraft acquired to replace such aircraft removed from the fleet.

      B.    For the period of seven (7) years, beginning with the first bid period after the date on which the seniority integration becomes effective, Republic Pilots, Midwest Pilots and Lynx Pilots will have priority for all CA and FO jobs on CRJ 200, E-135, E-140, E-145, E- 170 and E-175 aircraft; including aircraft acquired to replace such aircraft removed from the fleet.

6.    Paragraphs 5A and 5B, above, shall expire on the seventh (7th) anniversary of the date on which the seniority integration becomes effective. Any bid awards or displacements effective after that date will not be subject to those restriction.

7.    Dispute resolution procedures shall be in accordance with Section V. of the DRA. To the extent specified in Sections V(c) and V( i), the undersigned Arbitrator retains jurisdiction to resolve any unresolved disputes between the pre-merger pilot groups as to the terms of the DRA and/or the interpretation or application of this Award.

8.    In the event of inadvertent error or unintended omission by the Technical Advisory Team ("TAT") in the certified IMSL attached hereto as Appendix A, the TAT may agree upon and make an appropriate correction.  Failing such agreement, the Party seeking such a correction may file a petition for correction with the undersigned Arbitrator.

## C. EFFECTIVE/APPLICABLE DATE OF THE IMSL

The IMSL (Appendix A) shall become effective for purposes of the second sentence of DRA §V (g) and applicable for purposes of the first sentence of DRA §V (j) on the sixtieth (60th) day following the date of the National Mediation Board rulings and certification referenced in DRA §V (g), unless an earlier date is agreed upon by the designated pilot representative and the single carrier.

The awarded seniority integration shall be implemented on the specified effective/applicable date, with appropriate adjustments to the IMSL (Appendix A), if the NMB rules that fewer than all of the carriers are included in a single transportation system for the pilot craft or class.

## BACKGROUND

On February 19, 2011 I issued the above-quoted Award, with the Integrated Master Seniority List ("IMSL") incorporated by reference therein as Attachment A, and an accompanying 47-page Opinion. On April 8, 2011, the National Mediation Board ("NMB") found a single transportation system in the pilot craft or class, which included the combined pilots of all of the pre-transaction carriers. 39 NMB 138 (2011). On June 28, 2011, following a representation election among the members of that bargaining unit, the NMB certified the IBT as the exclusive bargaining representative of that combined craft or class of pilots. Republic Airlines, 38 NMB 245 (June 28, 2011).

Thereafter, the IBT and RAH, Inc. entered into collective bargaining negotiations for an implementation agreement and/or a consolidated CBA. To date, no such agreements have been consummated. Nor did the IBT and RAH bargainers agree upon an earlier effective date for the IMSL than that specified in the express language of Section C of the Award. By operation of Part C of the Award, the IMSL became "effective for purposes of the second sentence of DRA §V (g) and applicable for purposes of the first sentence of DRA §V (j)" on August 27, 2011.

### The Frontier Merger Committee Interpretation Request Under DRA § V (c)

In the meantime, under date of May 18, 2011, the members of the Frontier Merger Committee ("FMC") had filed a Complaint to Vacate Arbitration Award in the U. S. District Court for the District of Colorado, seeking review of the February 19, 2011 Award under the McCaskill Bond Act, 49 U.S.C. § 42112, note, § 117(a), and the Railway Labor Act, 45 U.S.C. §§ 151 et seq. Thomas, et al v. Republic Airways Holdings. Inc. et al (No. 11-CV-1313-RPM-BNB ("the Lawsuit").

In a series of letters dated July 8, 2011, the IBT invoked, *inter alia*, DRA § V (h) as authority for directing the members of the FMC and its counsel to dismiss the Lawsuit and for notifying FMC's legal counsel that his services were terminated. Separately, IBT also directed the Frontier Airline Pilots Association ("FAPA") to account for and turn over custody of its assets to the IBT. In response, the FMC, its legal counsel and FAPA all notified IBT that they would not comply with any of those directives.

By letter dated August 2, 2011, the IBT further notified the members of the FMC that they were "removed from your positions as members of the Frontier Pilots Merger Committee effective immediately", for refusal to comply with the directives of the July 18, 2011 IBT letters. The IBT then filed a timely Answer with the District Court and the parties stipulated to the IBT's intervention in the Lawsuit. Countervailing motions and cross-motions of these litigants for summary judgment are pending in that forum.

By letter dated September 12, 2011, the FMC requested DRA interpretation:

The foregoing raises a dispute regarding the interpretation and application of § V (h) and any other applicable provision of the Section 13(b) Agreement. The FMC disputes the asserted authority of the IBT to take any of the actions purportedly taken in its correspondence to the Frontier Merger Committee or that Committee's counsel. This dispute over the interpretation and application of the Section 13(b) Agreement is within your jurisdiction under §V(c) of the Agreement.

Each of the other three Merger Committees filed motions to dismiss the FMC request for DRA interpretation, on grounds of *functus officio* and, *arguendo*, that substantive issues of union governance were beyond the scope of my arbitral jurisdiction and authority under DRA §§V(c) and (h). The Company eschewed the opportunity to take a position on the dispute between IBT and the FMC or to comment on the positions advanced by the various Merger Committees concerning that dispute.

## The MMC, RMC and LMC Interpretation Requests Under DRA § V (i)

The IMSL was the seniority list used by RAH, Inc. during the September and October 2011 bidding periods under both the RJET/IBT Agreement and the Frontier/FAPA Agreement. In separate communications dated September 13, 2011 and modified or supplemented on September 14, 2011, the Republic Merger Committee ("RMC") and the Midwest Merger Committee ("MMC"), [joined by the Lynx Merger Committee (LMC")], invoked my retained jurisdiction under DRA §V (i) to resolve differences which arose over the Company's interpretation and application of the IMSL Award seniority of certain former Midwest pilots during the September bidding period for October flying in the fenced Frontier operation.

The present controversy concerns the Company's handling of IMSL seniority of a number of former furloughed Midwest pilots hired at Frontier Airlines during the time period between the February 19, 2011 issuance date of the IMSL Award and its effective date of August 27, 2011. Those furloughed Midwest pilots, as well as some then current Chautauqua, Republic and Shuttle America ("RJET") pilots, were hired, not in any particular seniority order, to fill vacant First Officer positions at Frontier. Pending issuance of the IMSL Award, all were placed, in the order of their respective dates of hire in Spring 2011, at the bottom of the pre-acquisition Frontier Seniority List then applicable under the Frontier/FAPA Agreement.

Each RJET pilot hired into a vacant First Officer position on the Frontier operation in Spring 2011 was required, as a condition of obtaining employment at Frontier, to resign her/his position on the pre-acquisition RJET Seniority List. The record indicates that the Company's administration of the seniority of these former RJET pilots' seniority

during September 2011 bidding of First Officer October 2011 flying under the Frontier/FAPA Agreement was consistent with IMSL Award Part B.2 for post-acquisition new hire pilots: "Pilots hired after October 1, 2009 shall be junior to all pilots on the IMSL and shall be listed in order of date of hire."

The furloughed Midwest pilot Frontier first officer new hires were not required to resign or forfeit their positions on the pre-acquisition Midwest Seniority List. Thus, each was awarded a new seniority rank status number on the IMSL, effective August 27, 2011, for use during the September 2011 bidding period under the Frontier/FAPA Agreement. The dispute arises out of the Company's interpretation of the Part B.5.A fence provisions of the Award as a bar to the full exercise of that IMSL seniority rank status by the formerly furloughed Midwest pilots in September 2011 bidding for Frontier First Officer schedules, vacations and other seniority-based terms of employment.

The controversy surfaced when the Company announced, in a September 9, 2011 e-mail, that it would "maintain the status quo" at Frontier, pending my arbitral resolution of the dispute. On that basis, during the September 2011 bidding period (and apparently also during the October bidding period), the Company limited the exercise of IMSL seniority-based bidding rights by these former Midwest pilot to "competitive bid" only between and among themselves and the former RJET Frontier First Officer new hires in the fenced Frontier operation.

In short, former furloughed Midwest pilots hired as Frontier First Officers during the period between the issuance and the effective dates of the Award were not allowed to use their the IMSL Award seniority to bid against pre-merger Frontier First Officers with "priority rights" in the IMSL Award Part B.5.A fenced Frontier operation. The record

shows that this limitation or restriction was and is being applied only in the IMSL Award Part B.5.A fenced Frontier operation covered by the Frontier/FAPA CBA.  Former Midwest and Lynx pilots in positions on the RJET side of the operation, including the IMSL Award Part B.5.B fenced operation, currently are using their IMSL seniority for all "competitive bidding" purposes under the RJET/IBT CBA.

The MMC (joined by the LMC) and the RMC objected that this handling of the former Midwest pilots in Frontier operations was not in accord with the IMSL Award. By letters dated September 13 and 14, 2011, they requested DRA § V (i) arbitral interpretations of the following issues:

> (1) Does IMSL Seniority control for competitive bidding purposes (schedule bidding, vacation allocations and all other matters which depend upon relative seniority within the domicile) within a fenced operation and when a pilot assumes an open position in the other fenced operation (*i.e.* A Republic/Midwest/Lynx pilot assuming an open position at Frontier or a Frontier pilot assuming an open position in the Embraer 145/175 operation)?

> (2) Does a pilot with priority rights in the Embraer (Republic, Midwest or Lynx) fenced operation at RJET or the Frontier fenced operations who assumes an open position in the other fenced operation surrender or forfeit his/her priority rights in his/her original operation?

The FMC asserts that these requests by the other Committees are premature on the theory that the IMSL Award cannot be  "effective and applicable" until an implementing agreement or consolidated CBA has been signed.  A*rguendo*, the FMC maintains that the Company correctly administered the IMSL in the September 2011 bidding period at Frontier.  RAH, Inc. contests my jurisdiction to resolve the second issue, *supra*, and responds to the first issue as follows: "[In] Frontier operation, the Company has maintained the *status quo* until the parties could receive clarification . . .These pilots bid IMSL seniority among themselves but they would be subordinate as to the remainder of

Frontier pilots. . . As these pilots were hired out of any particular seniority order, the Company's interpretation of the IMSL Award is that these pilots bid IMSL seniority among themselves".

## The Republic Merger Committee Request for Corrections of IMSL (Appendix A)

The September 13, 2011 letter from the RMC also asked for my arbitral correction of an asserted erroneous purge and omission of RAH Pilot Arvid Ligard from the IMSL (DOH 01/25/2007, DOB 08/10/1980, Junior to RAH Pilot Adam Gall), as well as several asserted Date of Birth ("DOB") errors in the IMSL (Appendix A). Those requests are remanded to the Technical Advisory Team for prompt handling in accordance with the language of Award Part B Conditions/Restrictions No. 8, with retained arbitral jurisdiction, as follows:

> 8.    In the event of inadvertent error or unintended omission by the Technical Advisory Team ("TAT") in the certified IMSL attached hereto as Appendix A, the TAT may agree upon and make an appropriate correction. Failing such agreement, the Party seeking such a correction may file a petition for correction with the undersigned Arbitrator.

During the period September 12-October 10, 2011, briefs, reply briefs, responses, rebuttals, surrebuttals, replies and surreplies, all with attached exhibits and numerous cited judicial, administrative and arbitral authorities, were filed with me and exchanged among and between respective Counsel. The issues presented by the FMC request of September 12 and the RMC and MMC requests of September 13 and 14 thus were fully joined and no hearing is necessary. All of that voluminous submitted material was reviewed, analyzed and studied with care in rendering the attached:

1) **DRA Dispute Resolution Award No. 1** of the dispute over the interpretation and application of DRA § V (h) presented by the IBT letters of July 8/August 2, 2011 and the FMC letter of September 12, 2011.

2) **IMSL AWARD Interpretation Award No. 1** in light of the disputes presented by the MMC and RMC letters of September 13 and 14, 2011.

10

# DRA DISPUTE RESOLUTION AWARD No. 1

## AUTHORITY

The following Award is rendered in the exercise of authority vested in me by

DRA §V (c) (Emphasis added):

> (c). In addition to jurisdiction to resolve disputes under Section I [Production of Information] and to devise the fair and equitable integration of seniority, **the arbitrator shall have the authority to resolve any dispute arising out of the interpretation or application of this Agreement.**

## FINDINGS

The IBT invoked DRA §V (h) expressly in support of its directives in the July 8, 2011 letter to the FMC Members and by implication in the July 8, 2011 letter to FMC Counsel and the August 2, 2011 letter to the FMC Members. The FMC and its Counsel seek a determination whether the DRA authorizes the IBT to take those actions. The post-Award resolution of that dispute over the interpretation and application of DRA §V (h) is within the scope of my retained arbitral jurisdiction and reserved arbitral authority.

The IBT letter of July 8, 2011 to the President of FAPA and the respective responses by FAPA and its Counsel do not present any issue within the scope of my retained arbitral jurisdiction and reserved arbitral authority.

The language of DRA §V (h) is plain, clear and unambiguous. No hearing or augmentation by parole evidence is required for me to render a fully informed resolution of the instant dispute over its interpretation or application.

The Merger Committees remain in existence following issuance of the Award, with authority limited by DRA §V (h) solely to that delegated by the IBT for the purpose of adjusting any dispute or disputes that might arise as to the interpretation or application of the award, including authority to compromise such disputes, and to initiate, defend, mediate, and litigate such issues in the dispute resolution mechanisms under DRA §§V (c), V (i) and V (j).

Except for the authority delegated by the IBT under DRA §V (h) and reserved to the Merger Committees by DRA §§V (i) and (j), the DRA provides no authority for any Merger Committee to undertake any other post-Award purpose or activity.

Resolution of disputes concerning whether, or to what extent, the law of principal/agent relationships, the Railway Labor Act [45 U.S.C. § 151, *et seq.*] and/or the Labor-Management Reporting and Disclosure ("Landrum-Griffin") Act of 1959 [29 U.S.C.A. § 401 *et seq.*] authorizes the disputed post-Award actions of the FMC and the IBT is beyond the limited scope of the reserved arbitral jurisdiction and authority conferred upon me by the terms of DRA § V (c) and retained by me in the Award.

## HOLDINGS

1)      The directives of the IBT in the July 8, 2011 letter to the members of the Frontier Merger Committee are supported by and consistent with the express provisions of DRA §V (h).

2)      The directives of the IBT in the August 2, 2011 letter to the members of the Frontier Merger Committee are not supported by the express provisions of DRA §V (h).

3)      No opinion is expressed or implied herein concerning whether or what extent the law of principal/agent relationships, the Railway Labor Act [45 U.S.C. § 151, *et seq*.] and/or the Labor-Management Reporting and Disclosure ("Landrum-Griffin") Act of 1959 [29 U.S.C.A. § 401 *et seq*.] do or do not support either the initiation and prosecution of the Lawsuit in <u>Thomas, *et al* v. Republic Airways Holdings. Inc. *et a*</u>l  (No. 11-CV-1313-RPM-BNB) or the IBT letters of July 8 and August 2, 2011 to the members of the Frontier Merger Committee.

*Dana E. Eischen*
_____
/s/ Dana Edward Eischen

On this 22nd day of October 2011, I, DANA E. EISCHEN, do hereby certify that I am the individual described herein and that I executed the foregoing instrument on that date, which I affirm upon my oath as Arbitrator to be my **DISPUTE RESOLUTION No. 1** under the terms of § V (c) of the Dispute Resolution Agreement of November 3, 2009.

## IMSL AWARD INTERPRETIVE AWARD NO. 1

### AUTHORITY

This Interpretation No. 1 of the IMSL Award of February 19, 2011 is rendered under authority vested in me by DRA §V (i) (Emphasis added):

> (i). **In case a dispute arises involving an interpretation of the award** within one hundred and twenty (120) days of the date that the seniority integration becomes effective, **the arbitrator, upon request by a party to this Agreement, shall interpret the award in light of the dispute.** Any such dispute must be submitted to the arbitrator within sixty (60) days after the dispute arises.

### FINDINGS

The written arbitration Award of February 19, 2011 ["Award"], which includes "the date on which the seniority integration will become effective", is "final and binding on the parties to [the DRA] Agreement and on the pilots employed by RAH and its affiliates." [*See* DRA §V (j)].

> Part A of the Award devised the "manner in which the pilot seniority is to be integrated" as the hierarchical ranking of pilots in the combined craft or class on the integrated master seniority list ["IMSL"] set forth in Appendix A.

> Part B of the Award devised "any conditions thereto" as the set of express "Conditions and Restrictions" set forth therein and made an integral part of that IMSL. [*See* DRA §V (e)].

> Part C of the Award expressly made the IMSL (Appendix A) and its integral Conditions and Restrictions, "effective for purposes of the second sentence of DRA §V (g) and applicable for purposes of the first sentence of DRA §V (j)" on "the sixtieth (60th) day following the date of the National Mediation Board rulings and certification referenced in DRA §V (g), unless an earlier date is agreed upon by the designated pilot representative and the single carrier".

The language of DRA §V (j) and Part C of the Award is plain, clear and unambiguous. No hearing or augmentation by parole evidence is required for me to render a fully informed resolution of the instant dispute over its interpretation or application.

Under the express terms of DRA §V (j) and Part C of the Award, the lack of any new agreement(s) between RAH and the IBT governing implementation and administration of the Award did not prevent Parts A and B of that Award from becoming "a part of the collective bargaining agreement(s) applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system".

## HOLDINGS

1)      Effective August 27, 2011, the IMSL (Appendix A) and its integral Conditions/ Restrictions are "a part of" both the RJET/IBT Agreement and the Frontier/FAPA Agreement. [No opinion is expressed or implied by me herein regarding whether or to what extent the Midwest/ALPA Agreement retains vitality or constitutes a "collective bargaining agreement applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system".]

2)      On and after August 27, 2011, the IMSL (Appendix A) and its integral Conditions/Restrictions comprise the seniority list that is to be used in the administration of seniority status based provisions of both the RJET/IBT Agreement and the Frontier/FAPA Agreement.

3)      The IMSL confers upon each listed pilot a specific seniority rank *status*, which differs from the seniority rank *status* that s/he held under the old pre-acquisition seniority lists now superseded by the IMSL.  Unless and until the Company and the IBT agree upon collectively bargained contractual modifications or new Agreements, the IMSL does so in the context of the RJET/IBT Agreement and the Frontier/FAPA Agreement. Various collectively bargained provisions in those respective Agreements address the i*nvocation, utilization, administration, implementation and retention* of the seniority rank *status* conferred upon a pilot by the IMSL.

4)      The Conditions/Restrictions set forth expressly in Part B of my February 19, 2011 Award are the only conditions, restrictions, exceptions, qualifications or limitations of the *invocation, utilization, administration, implementation and retention* of the IMSL seniority rank *status* conferred upon a pilot by Appendix A that are contained in or intended by the Award.

5)      Nothing contained in or intended by the Award supports or requires the conditions restrictions or limitations imposed during the September and October 2011 bidding periods upon the exercise of IMSL seniority rank status for schedule, vacation and other recurrent bidding by certain furloughed former Midwest pilots who were hired as Frontier First Officers during the period between February 19, 2011 and August 27, 2011.

6)      Nothing contained in or intended by the Award requires that a pilot with Part B.5.A priority rights in the fenced operation at Frontier or Part B.5.B priority rights in the fenced operation at RJET must surrender or forfeit his/her priority rights in the original fenced operation as a condition precedent or a condition subsequent to assuming an open position in the other fenced operation.

7)     Resolution of disputes concerning whether, or to what extent, collectively bargained provisions of the RJET/IBT Agreement and/or the Frontier/FAPA Agreement may, can or do constitute enforceable contractual limitations, exceptions or qualifications upon the *invocation, exercise, administration, implementation and retention* of the seniority right *status* conferred upon a pilot by Part A and Appendix A of the IMSL Award is beyond the limited scope of the reserved arbitral jurisdiction and authority conferred upon me by § V (i) of the DRA and retained by me in the Award.

8)     Resolution of disputes concerning whether or to what extent the interpretation and application of various contractual provisions of the current RJET/IBT and Frontier FAPA Agreements, inclusive of Parts A (Appendix A) and (B) Conditions/Restrictions of the IMSL Award [which are also now a part of those Agreements], may or may not be impacted by decisions of the judiciary, arbitration decisions, administrative decisions of the NMB and other regulatory agencies, statutory provisions of the Railway Labor Act [45 U.S.C. § 151, *et seq*.] and/or the "McCaskill Bond" legislation [Public Law No.110-61 (December 26, 2007)] is beyond the limited scope of the reserved arbitral jurisdiction and authority conferred upon me by the terms of DRA § V (i) and retained by me in the Award.

9)     In accordance with the express terms of the first sentence of DRA § V (j), this **IMSL Award Interpretation Award No. 1** shall be considered as a part of the collective bargaining agreement(s) applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system.

*Dana E. Eischen*

/s/ Dana Edward Eischen

On this 25th day of October 2011, I, DANA E. EISCHEN, do hereby certify that I am the individual described herein and that I executed the foregoing instrument on that date, which I affirm upon my oath as Arbitrator to be my **IMSL Award Interpretation Award No. 1** under the terms of § V (i) of the Dispute Resolution Agreement of November 3, 2009.

**ARBITRATION UNDER THE NOVEMBER 3, 2009 DISPUTE
RESOLUTION AGREEMENT, § V.(J)
and
FRONTIER/REPUBLIC/IBT ARBITRATION AGREEMENT DATED
NOVEMBER 26, 2013**
*********************************************************************************
**In the Matter of a Dispute Between:**

**REPUBLIC AIRLINES, INC.;
CHAUTAUQUA AIRLINES, INC.; SHUTTLE AMERICA CORP.
("Republic") and FRONTIER AIRLINES, INC. ("Frontier")**

       **-and-**

**REPUBLIC PILOT MERGER COMMITTEE ("RPMC")**

       **-and-**

**FRONTIER PILOTS MERGER COMMITTEE ("FPMC")**

       **-and-**

**MIDWEST PILOT MERGER COMMITTEE ("MPMC")**

       **-and-**

**LYNX PILOTS MERGER COMMITTEE ("LPMC")**
*********************************************************************************
<u>**APPEARANCES**</u>

| | |
|---|---|
| **For Frontier:** | O'Melveny & Myers LLP<br>    by Robert A. Siegel |
| **For Republic:** | Ford Harrison LLP<br>    by Lilia R. Bell |
| **For RPMC:** | Baptiste & Wilder, P.C.<br>    By William R. Wilder. |
| **For FPMC:** | Allison, Slutsky & Kennedy, P.C.<br>    by Wes Kennedy |
| **For MPMC:** | Highsaw, Mahoney & Clarke, P.C.<br>    By John O'Brien Clarke, Jr. |

1

## PROCEEDINGS

In August 2013, a dispute arose between Frontier Airlines, Inc. and IBT Local 357, concerning Frontier's hiring and training of new pilots for its operations. When that matter deadlocked on the property, Counsel for Frontier, Republic[1] and the IBT entered into an Arbitration Agreement, dated November 26, 2013, creating this one-person Board of Arbitration to adjust the dispute. Due notice was provided to the other Merger Committees; all of whom, with the exception of the Lynx Pilots Merger Committee, responded and participated through Counsel in the arbitration[2].

The Parties mutually waived a hearing and established the case record by a detailed Joint Stipulation of Facts, with some 42 joint exhibits, dated January 27, 2014, *infra*. In mid-March 2014, they submitted and exchanged briefs and reply briefs on the merits of the dispute. At the request of the Arbitrator, the Parties also filed another set of briefs and reply briefs in mid-June 2014, addressing the impact on these proceedings, if any, of the National Mediation Board's March 31, 2014 Findings Upon Investigation and May 2, 2014 Notice.

In Case No. R-7381, the NMB reversed its April 7, 2011 determination that post-merger Frontier Airline and the Republic carriers were "a single transportation system". *Cf.*, 38 NMB 138. Citing the sale of Frontier to an unaffiliated party, the NMB determined that Frontier now is a separate carrier

---

[1] The reference to Republic is to the three Republic air carrier signatories to the Arbitration Agreement: Republic Airlines, Inc.; Chautauqua Airlines, Inc., and Shuttle America Corp.

[2] On approximately October 24, 2013, Cory Sewell, Chair of the Lynx Pilots Merger Committee was provided notice of this dispute. Mr. Sewell did not respond to the notice. (Stipulation, at 1 n.1.)

2

and no longer is part of the "Republic, *et al*/Frontier" single transportation system.  On June 13, 2014, five days before the second set of briefs was filed in these proceedings, the NMB certified the Frontier Airline Pilots Association ("FAPA") as the bargaining representative of "the craft or class of Pilots, employees of Frontier Airlines, Inc.".  *See* 41 NMB No. 22: *In the Matter of the Representation of Employees of Frontier Airlines, Inc.-- Pilots.*

## ISSUES[3]

The principal Parties agree generally that the issues involve whether the so-called "Eischen Award"[4] grants pilots at Republic a right of first refusal and/or bidding rights for new pilot positions at Frontier.  *See* Arbitration Agreement, *infra*, 2nd "WHEREAS" clause.

The RPMC originally proposed the following formulation of the submitted issue:

> Whether the Eischen Award compels Frontier to offer new first officer positions on Airbus aircraft to pilots on the IMSL, according to their IMSL seniority, before Frontier may hire new pilots off the street?

---

[3] After the execution of the Arbitration Agreement, the MPMC sought to include, within the scope of the submitted issues, the treatment of former Midwest Pilots who have never been actively employed by Chautauqua, Republic, or Shuttle America, under both the Eischen Award and the Midwest and Chautauqua collective bargaining agreements.  The RPMC disputed that submission to the Arbitrator.  The Carriers and the FPMC disputed both the inclusion of those matters within the scope of the issue, and the Arbitrator's authority to decide that arbitrability issue.  In a January 25, 2014 ruling, I held:

> 1) The dispute submitted to arbitration under the Arbitration Agreement of November 26, 2013, concerns the "rights of pilots at Republic to bid for new pilot positions at Frontier" and "the correct interpretation of the February 19, 2011 and October 25, 2011 Eischen Award ".
>
> 2) That dispute includes all pilots in service at Republic, irrespective of their premerger status as Lynx, Midwest or Republic pilots. That dispute does not include the issues and individuals identified by the Midwest Pilot Merger Committee in correspondence of December 17 and December 27, 2013.

[4] The "Eischen Award" referred to in the Arbitration Agreement is the February 2011 IMSL Award (Ex. 5) and the October 22 2011 and October 25, 2011 Supplemental Awards (Ex. 31).

3

Republic Airlines and Frontier Airline proposed the following statement of the issue:[5]

Whether the Eischen Award compels Frontier to create and offer a bid process by which Republic pilots may bid for new first officer positions on Airbus aircraft based on their IMSL status before Frontier may hire new pilots off the street?

For its part, the Midwest Pilots Merger Committee ("MPMC") submit the following issues are presented by this dispute:[6]

1. Whether the Seniority Integration Award, with its provision making the IMSL and its Conditions/Restrictions "a part of the collective bargaining agreement(s) applicable to the combined craft or class of Flight Deck Crew Members" for Republic Airlines *et al.*/Frontier (DRA § V(j)), compels Frontier Airlines, Inc. to offer new First Officer positions on Airbus aircraft to pilots on the IMSL according to their IMSL seniority before Frontier may hire new pilots off the street?

2. Whether the IMSL and its Conditions/Restrictions, which have been made "a part of the collective bargaining agreement(s) applicable to the combined craft or class of Flight Deck Crew Members" for Republic Airlines *et al.*/Frontier (DRA § V(j)), require Frontier to make the "Staffing Adjustment" process in Section 6 of the Frontier CBA available to Republic pilots, so they may use their IMSL seniority to bid for unfilled First Officer positions on Airbus aircraft before Frontier may hire new pilots off the street?

## PERTINENT AGREEMENT PROVISIONS

### * * * * * *
### The November 3, 2010 Dispute Resolution Agreement

### * * *

(j). The award of the arbitrator issued under either Section V (g) or V (i) shall be considered as a part of the collective bargaining agreement(s) applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system. Any dispute arising out of the interpretation or application of the award more than one-hundred and twenty (120) days after the effective date of the seniority integration shall be handled in the usual manner by the applicable Merger Committees up to and including the highest carrier official designated to handle such disputes, but failing to reach an adjustment in this manner, the dispute may be submitted by any party to the

---

[5] The FPMC concurred with the Carriers' formulation.

[6] The RPMC subsequently advised that it concurred with these MPMC reformulations of the issues.

dispute to the adjustment board established by the designated representative of the combined craft or class and the single carrier for final and binding resolution. All Merger Committees shall be given notice of the dispute and, in addition to the Merger Committee invoking the adjustment board jurisdiction, may be heard by the system board of adjustment in resolving the dispute, with the decision of the board being made by the arbitrator selected pursuant to the applicable agreement to sit with the system board (without a vote by the other members of the system board).

\* \* \* \* \* \*

## Republic/Frontier/IBT Arbitration Agreement of November 26, 2013

Republic Airlines, Inc., Chautauqua Airlines, Inc., and Shuttle America Corp. (together "Republic") and Frontier Airlines, Inc. ("Frontier") (collectively, the "Carriers"), and the International Brotherhood of Teamsters, Airline Division (the "IBT"), hereby agree as follows:

**WHEREAS**, Frontier is hiring and training new pilots for its operations, and these new pilots are scheduled to complete training and commence flying the line for Frontier in December 2013;

**WHEREAS**, a dispute has been raised pursuant to Section V(j) of the November 3, 2009 Section 13(b) Dispute Resolution Agreement (the "DRA") regarding the rights of pilots at Republic to bid for these new pilot positions at Frontier (August 8, 2013 IBT statement attached);

**WHEREAS**, the dispute involves the correct interpretation of two arbitration awards issued by Arbitrator Dana E. Eischen on February 19, 2011, and October 25, 2011 (collectively, the "Eischen Award"), which among other things, established the Integrated Master Seniority List (the "IMSL"); and

**NOW, THEREFORE**, in consideration of the mutual promises contained herein, the Carriers and the IBT, intending to be legally bound, agree as follows:

**1.** The dispute shall be submitted to final and binding arbitration before a one- person Board of Adjustment pursuant to the requirements of the Railway Labor Act and the DRA. The participants in the arbitration shall be the parties to the DRA—the Carriers and the Republic Pilots Merger Committee (the "RMC"), the Frontier Pilots Merger Committee, the Lynx Pilots Merger Committee, and the Midwest Pilots Merger Committee (collectively, the "Merger Committees").

**2.** The arbitrator shall be Dana E. Eischen

**3.** The RMC's proposed statement of the issue for resolution in the arbitration is: "Whether the Eischen Award compels Frontier to offer new first officer positions on Airbus aircraft to pilots on the IMSL according to their IMSL seniority before Frontier may hire new pilots off the street?"

**4.** The Carriers' proposed statement of the issue for resolution in the arbitration is: "Whether the Eischen Award compels Frontier to create and offer a bid process by which

Republic pilots may bid for new first officer positions on Airbus aircraft based on their IMSL status before Frontier may hire new pilots off the street?"

**5.** The IBT has provided notice of this dispute and arbitration to the Merger Committees, including providing a copy of this Agreement.

**6.** The Merger Committees shall have the opportunity to participate fully in the arbitration as permitted by Section V(h) of the DRA, including making an appearance through counsel, submitting a proposed formulation of the issue, and presenting argument and evidence in the same manner as the Carriers.

**7.** The Merger Committees and the Carriers will make reasonable, good faith efforts to complete the arbitration on an expedited basis.

**8.** If a contrary arbitration decision has not been issued beforehand, Frontier has indicated that it intends to continue to hire, train, and place new pilots on the line as scheduled. Frontier's position is without prejudice to the Merger Committees' respective positions in this proceeding.

**9.** The Merger Committees and the Carriers will use their best efforts to reach agreement on and provide the arbitrator with ground rules for the conduct of the arbitration, provided that the arbitrator shall determine the ground rules in the absence of such agreement.

**10.** The Merger Committees and the Carriers will have the right to submit both argument and relevant facts, including documents and testimony. In doing so, the Merger Committees and the Carriers will make good faith efforts to expedite the process, including through the possible use of stipulated facts and joint exhibits, and possible use of written direct testimony (subject to cross-examination). The Carriers and Merger Committees will each have the right to submit an opening brief, and if a factual record is made at a hearing, a closing brief, which will be submitted within 10 business days of receipt of the hearing transcript.

**11.** A court reporter with real-time transcript capabilities shall be retained to attend a hearing and prepare a written transcript. The cost of the court reporter's attendance and the preparation of an original transcript with attached exhibits (which shall be provided to the arbitrator) shall be split one-half to be paid by the Carriers and one-half to be paid by the IBT. The Merger Committees and the Carriers shall each separately bear the cost of any additional services requested by that party (such as additional copies of the transcript or provision of a real-time transcript feed).

**12.** The fees and expense of the arbitrator shall be split one-half to be paid by the Carriers and one-half to be paid by the IBT.

**13.** The Merger Committees and the Carriers shall each be responsible for the compensation, travel, and expenses of their representatives, witnesses, and other participants.

**14.** The arbitration hearing shall be conducted in Washington, D.C., and any cost related to the location shall be split one-half to be paid by the Carriers and one-half to be paid by the IBT.

**15**. In addition to jurisdiction to resolve the dispute referenced above, Arbitrator Eischen shall have authority to resolve any dispute arising out of the interpretation or application of this Agreement. Arbitrator Eischen's jurisdiction shall not extend to changes or modifications to the existing Frontier or Republic pilot collective bargaining agreements. Nothing in this Agreement shall constitute a waiver of, or in any manner prejudice, the Carriers' argument that Arbitrator Eischen did not have and does not have authority or jurisdiction to order a change in the bidding system in the Frontier or Republic pilot collective bargaining agreements.

\* \* \* \* \* \*

## The IMSL Award of February 19, 2011

\* \* \*

## Conditions and Restrictions

7.     Dispute resolution procedures shall be in accordance with Section V. of the DRA. To the extent specified in Sections V(c) and V(j), the undersigned Arbitrator retains jurisdiction to resolve any unresolved disputes between the pre-merger pilot groups as to the terms of the DRA and/or the interpretation or application of this Award.

\* \* \*

## C. EFFECTIVE/APPLICABLE DATE OF THE IMSL

The IMSL (Appendix A) shall become effective for purposes of the second sentence of DRA §V (g) and applicable for purposes of the first sentence of DRA §V (j) on the sixtieth (60th) day following the date of the National Mediation Board rulings and certification referenced in DRA §V (g), unless an earlier date is agreed upon by the designated pilot representative and the single carrier.

The awarded seniority integration shall be implemented on the specified effective/applicable date, with appropriate adjustments to the IMSL (Appendix A), if the NMB rules that fewer than all of the carriers are included in a single transportation system for the pilot craft or class.

\* \* \* \* \* \*

## IMSL Award Interpretation No. 1 of October 25, 2011

\* \* \* \* \* \*

## HOLDINGS

1)     Effective August 27, 2011, the IMSL (Appendix A) and its integral Conditions/ Restrictions are "a part of" both the RJET/IBT Agreement and the Frontier/FAPA Agreement. [No opinion is expressed or implied by me herein regarding whether or to what extent the Midwest/ALPA Agreement retains vitality or constitutes a "collective bargaining agreement applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system".]

2)     On and after August 27, 2011, the IMSL (Appendix A) and its integral Conditions/Restrictions comprise the seniority list that is to be used in the administration of seniority status based provisions of both the RJET/IBT Agreement and the Frontier/FAPA Agreement.

3)     The IMSL confers upon each listed pilot a specific seniority rank status, which differs from the seniority rank status that s/he held under the old pre-acquisition

seniority lists now superseded by the IMSL. Unless and until the Company and the IBT agree upon collectively bargained contractual modifications or new Agreements, the IMSL does so in the context of the RJET/IBT Agreement and the Frontier/FAPA Agreement. Various collectively bargained provisions in those respective Agreements address the invocation, utilization, administration, implementation and retention of the seniority rank status conferred upon a pilot by the IMSL.

4)   The Conditions/Restrictions set forth expressly in Part B of my February 19, 2011 Award are the only conditions, restrictions, exceptions, qualifications or limitations of the invocation, utilization, administration, implementation and retention of the IMSL seniority rank status conferred upon a pilot by Appendix A that are contained in or intended by the Award.

5)   Nothing contained in or intended by the Award supports or requires the conditions restrictions or limitations imposed during the September and October 2011 bidding periods upon the exercise of IMSL seniority rank status for schedule, vacation and other recurrent bidding by certain furloughed former Midwest pilots who were hired as Frontier First Officers during the period between February 19, 2011 and August 27, 2011.

6)   Nothing contained in or intended by the Award requires that a pilot with Part B.5.A priority rights in the fenced operation at Frontier or Part B.5.B priority rights in the fenced operation at RJET must surrender or forfeit his/her priority rights in the original fenced operation as a condition precedent or a condition subsequent to assuming an open position in the other fenced operation.

7)   Resolution of disputes concerning whether, or to what extent, collectively bargained provisions of the RJET/IBT Agreement and/or the Frontier/FAPA Agreement may, can or do constitute enforceable contractual limitations, exceptions or qualifications upon the invocation, exercise, administration, implementation and retention of the seniority right status conferred upon a pilot by Part A and Appendix A of the IMSL Award is beyond the limited scope of the reserved arbitral jurisdiction and authority conferred upon me by § V (i) of the DRA and retained by me in the Award.

8)   Resolution of disputes concerning whether or to what extent the interpretation and application of various contractual provisions of the current RJET/IBT and Frontier FAPA Agreements, inclusive of Parts A (Appendix A) and (B) Conditions/Restrictions of the IMSL Award [which are also now a part of those Agreements], may or may not be impacted by decisions of the judiciary, arbitration decisions, administrative decisions of the NMB and other regulatory agencies, statutory provisions of the Railway Labor Act [45 U.S.C. § 151, et seq.] and/or the "McCaskill Bond" legislation [Public Law No.110-61 (December 26, 2007)] is beyond the limited scope of the reserved arbitral jurisdiction and authority conferred upon me by the terms of DRA § V (i) and retained by me in the Award.

9)   In accordance with the express terms of the first sentence of DRA § V (j), this IMSL Award Interpretation Award No. 1 shall be considered as a part of the collective bargaining agreement(s) applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system.

* * * * * *

## BACKGROUND

This dispute arose in August 2013 when the first surplus vacancies occurred at Frontier following the August 27, 2011 implementation of the SLI Award. IBT presented to the Company its position on the proper awarding of those vacancies under the SLI Award. (Exhibit 39). It proposed that Frontier permit pilots at Republic to bid for the positions under the "FLICA" electronic bidding system. Frontier did not respond to this proposal and instead asserted it was not obligated to offer the surplus positions to pilots on the IMSL. Frontier then hired approximately 65 pilots off the street to fill the positions, notwithstanding the Union's position.

The parties subsequently agreed to submit the issues articulated, *supra*, to arbitration under the DRA and the November 26, 2013 arbitration agreement. In lieu of a formal hearing, the Parties mutually agreed to establish the record in these proceedings by means of the following Joint Stipulation of Facts (together with some 42 referenced and incorporated exhibits); after which they submitted and exchanged written briefs and reply briefs plus supplemental briefs:

## JOINT STIPULATION OF FACTS

Republic Airlines, Inc. ("Republic"), Chautauqua Airlines, Inc. ("Chautauqua"), Shuttle America Corp. ("Shuttle America"), and Frontier Airlines, Inc. ("Frontier") (collectively, the "Carriers"), and the Republic Pilots Merger Committee, the Frontier Pilots Merger Committee, and the Midwest Pilots Merger Committee (collectively, the "Merger Committees"), hereby stipulate to the following facts, for purposes of this proceeding under Section V.(j) of the November 3, 2009 Dispute Resolution Agreement and the November 26,2013 Agreement to Arbitrate:

### The Pre-Merger Carriers and Bargaining Relationships

1. At all relevant times, Frontier has been a mainline air carrier operating Airbus A-319, A-320, and/or A-321 aircraft under its own brand, with its own Operating Certificate from the Federal Aviation Administration ("FAA").

2. Frontier Holdings, Inc. ("Frontier Holdings") was founded in 2006 as a holding company, with Frontier as an operating subsidiary. Lynx Aviation, Inc. ("Lynx") was founded in 2006 as a separate operating subsidiary of Frontier Holdings. Lynx was an air carrier offering turbo-prop service under the Frontier brand, operating with its own FAA Operating Certificate until its cessation of operations on or about March 19,2011.

3. At all relevant times, Republic, Chautauqua, and Shuttle America have been wholly-owned subsidiaries of Republic Airways Holdings Inc. ("RAH"), a holding company; and have been regional air carriers operating regional jet aircraft on a "code share" or "fee for departure" basis, under the brands of other air carriers pursuant to contracts with such other carriers. Republic, Chautauqua and Shuttle America have at all times each operated with its own FAA Operating Certificate.

4. At all times prior to November 3,2009, Midwest Airlines, Inc. ("Midwest") was a mainline air carrier, operating MD-80 and/or B-717 aircraft on its own brand, and with its own pilots and FAA operating certificate. Midwest surrendered its FAA Operating Certificate in December 2009.

5. At all times prior to June 28, 2011 the Frontier Airline Pilots' Association ("FAPA") was the duly recognized bargaining representative of the Frontier Pilots under the Railway Labor Act ("RLA"). Frontier and FAPA were parties to a collective bargaining agreement governing the terms and conditions of employment of the Frontier Pilots (the "Frontier CBA"). Attached, as Exhibit 1, is a true and correct copy of the Frontier CBA, as amended.

6. From September 3, 2009 until June 28,2011, the United Transportation Union ("UTU") was the duly recognized bargaining representative of the Lynx Pilots under the RLA.  Lynx and the UTU never concluded a collective bargaining agreement.

7. At all relevant times prior to June 28, 2011, the International Brotherhood of Teamsters, Airline Division (the "IBT") was the duly recognized bargaining representative of the Chautauqua, Republic, and Shuttle America Pilots under the RLA. Chautauqua and the IBT were (and are) parties to a collective bargaining agreement governing the terms and conditions of employment of the Chautauqua, Republic, and Shuttle America Pilots (the "Chautauqua CBA"), which has been amendable within the meaning of the RLA since October 17,2007.  Attached, as Exhibit 2, is a true and correct copy of the Chautauqua CBA.

8. At all relevant times prior to June 28, 2011, the Air Line Pilots Association, International ("ALPA") was the duly recognized bargaining representative of the Midwest Pilots under the RLA. Midwest and ALPA were parties to a collective bargaining agreement governing the terms and conditions of employment of the Midwest Pilots (the "Midwest CBA"), which became amendable within the meaning of the RLA in or about September 2008.

## RAH's Acquisitions of Midwest. Frontier and Lvnx

9. RAH acquired Midwest Air Group, the parent of Midwest, pursuant to an acquisition agreement entered into on June 23, 2009, which closed on July 31, 2009.

10. Effective on or about October 1, 2009, RAH acquired Frontier Holdings, Frontier, and Lynx pursuant to a Second Amended and Restated Investment Agreement approved

by the United States Bankruptcy Court. *In re Frontier Airlines Holdings. Inc., et al,* L 08-11298 (S.D.N. Y.). Attached, as Exhibit 3, is a true and correct copy of the Second Amended and Restated Investment Agreement.

11. As a condition of RAH's purchase of Frontier Holdings, Frontier, and Lynx, FAPA and Frontier (on behalf of RAH) entered into Letter of Agreement 39 in connection with RAH's acquisition of Frontier Holdings, effective September 30,2009. Letter of Agreement 39 has remained part of the Frontier CBA since that date.

## The Eischen Arbitration and Integrated Master Seniority List
12. On November 3, 2009, the Carriers, along with Midwest Airlines, Inc. and Lynx Aviation, Inc., and the Merger Committees, including the Lynx Pilots Merger Committee, entered into a Dispute Resolution Agreement (the "DRA") to address pilot seniority integration. Attached as Exhibit 4 is a true and correct copy of the DRA.

13. The parties were unable to devise a seniority integration through negotiation or mediation pursuant to the DRA. That matter was thereupon submitted to arbitration before Arbitrator Dana E. Eischen pursuant to the DRA.

14. Arbitrator Eischen conducted 13 days of evidentiary hearings, commencing on March 15, 2010, and concluding on August 11,2010.

15. On February 19,2011, Arbitrator Eischen issued his final Opinion and Award (the "Eischen Award"), a true and correct copy of which is attached as Exhibit 5.

## March 2011 IBT Dispute
16. On March 19,2011, Lynx Aviation ceased operations, and its aircraft and pilots were absorbed into Republic.

17. On or about March 11,2011, RAH announced that 20 Airbus First Officer positions were to be filled at Frontier. The jobs were filled as new-hire First Officer positions. Pilots employed by Chautauqua, Republic, Shuttle America and Lynx (including, but not limited to, former Midwest Pilots) were permitted to apply for those positions, as were Midwest Pilots on furlough. Pilots hired for the Frontier First Officer positions were not selected in IMSL or any other seniority order. Any pilot at Chautauqua, Republic and Shuttle America who assumed such a position at Frontier was required to resign his integrated seniority status rank, as well as Republic seniority, and be treated as a post-transaction new hire as to all pilots on the IMSL when the integrated list later became effective. Pilots furloughed from Midwest, who had not become employees of Chautauqua, Republic or Shuttle America, were not required to surrender their integrated seniority status rank to assume such a position at Frontier.

18. By letter dated March 15,2011, a true and correct copy of which is attached as Exhibit 6, the Republic Merger Committee sought to initiate a dispute before Arbitrator Eischen, asserting that RAH was in violation of the Eischen Award by requiring RAH Pilots to resign their pre-merger seniority as a condition of applying for the vacant Frontier Airbus First Officer positions.

19. A true and correct copy of RAH's response to the Republic Merger Committee's submission is attached as Exhibit 7. A true and correct copy of the Frontier Merger

Committee's response is attached as Exhibit 8. A true and correct copy of the Midwest Merger Committee's response is attached as Exhibit 9.

20. The Republic Merger Committee replied by letter dated March 18,2011, a true and correct copy of which is attached as Exhibit 10. The Frontier Merger Committee replied by letter dated March 19, 2011, a true and correct copy of which is attached as Exhibit 11.

21. By letter dated March 20,2011, a true and correct copy of which is attached as Exhibit 12, Arbitrator Eischen declined to consider the Republic Merger Committee's request.

## Single Carrier Proceeding

22. On or about October 10,2010, the IBT applied to the NMB for a finding that Chautauqua, Republic, Shuttle America, Frontier and Lynx (but not Midwest) comprised a single transportation system for purposes of the pilot craft and class under the RLA. On April 7,2011, the NMB found that Chautauqua, Republic, Shuttle America, Frontier and Lynx were operating as a single transportation system, and that former Midwest Pilots were included in the single transportation system. Republic Airlines. et al 38 NMB 138.

23. On or about May 2,2011, the NMB directed that an election be conducted among the Carriers' pilots. 38 NMB 199 (2011). The NMB conducted an election and, on June 28, 2011, the NMB certified the IBT as the pilots' collective bargaining representative. 38 NMB 245(2011).

24. At all relevant times since June 28,2011, Frontier, Chautauqua, Republic, and Shuttle America, each have continued to operate pursuant to separate FAA Operating Certificates.

## Implementation of the Eischen Award

25. Following the NMB's certification of the IBT, RAH and the IBT entered into negotiations over implementation/transition issues related to the IMSL, pursuant to the terms of the Eischen Award. On August 26,2011, RAH made an opening proposal to the IBT regarding IMSL implementation/transition issues. A true and correct copy of the August 26,2011 proposal is attached as Exhibit 13.

26. On August 27, 2011, the IMSL became effective pursuant to the terms of the Award.

27. On August 31, 2011, the IBT made a counterproposal regarding IMSL implementation/transition issues in response to RAH's August 26,2011 proposal. A true and correct copy of the IBT's August 31,2011 proposal is attached as Exhibit 14.

28. On or about September 9, 2011, IBT Local 357 issued an update to its membership, a true and correct copy of which is attached as Exhibit 15.

29. On September 23,2011, representatives of the Company and the IBT met to discuss their IMSL implementation/transition proposals. Following those discussions RAH made an additional IMSL implementation/transition proposal. A true and correct copy of the September 23,2011 proposal is attached as Exhibit 16.

30. March 8, 2012, representatives of RAH and the IBT again met and discussed the IMSL implementation/transition proposals, at which time the IBT re-submitted its August 31, 2011 proposal (Exhibit 14) without change.

31. Since the March 8, 2012 meeting, there have been no further meetings or proposals exchanged regarding IMSL implementation/transition issues, and no agreement has been reached regarding implementation/transition issues related to the IMSL. The Carriers and the IBT have not agreed on an agreement further implementing the terms of the Eischen Award. The separate Frontier and Chautauqua CBAs remain in effect without any such modification, each governing the Frontier or Chautauqua/Republic/Shuttle America operations, respectively.

32. RAH and the IBT have been, and continue to be, engaged in negotiations for a successor agreement to the Republic/IBT CBA pursuant to Section 6 of the RLA. In connection with those negotiations, the IBT informed Republic management that it wished to conclude Section 6 negotiations for a standalone successor Republic/IBT CBA before negotiating for a consolidated collective bargaining agreement covering pilots at the Carriers.

**The Fall 2011 Interpretive Disputes**

33. Attached as Exhibit 17 is a true and correct copy of a letter dated September 8, 2011 from the Frontier Merger Committee to RAH, and RAH's response thereto.

34. Attached as Exhibit 18 is a true and correct copy of the Frontier Merger Committee's September 12,2011 submission to Arbitrator Eischen.

35. Attached as Exhibit 19 is a true and correct copy of the Midwest Merger Committee's September 13,2011 submission to Arbitrator Eischen.

36. Attached as Exhibit 20 is a true and correct copy of RAH Merger Committee's September 14,2011 submission to Arbitrator Eischen.

37. Attached as Exhibit 21 is a true and correct copy of an email exchange between Arbitrator Eischen and counsel, from September 14 to 20,2011.

38. Attached as Exhibit 22 is a true and correct copy of the Midwest Merger Committee's September 16,2011 submission to Arbitrator Eischen.

39. Attached as Exhibit 23 is a true and correct copy of RAH's September 23, 2011 submission to Arbitrator Eischen.

40. Attached as Exhibit 24 is a true and correct copy of the Frontier Merger Committee's September 25,2011 submission to Arbitrator Eischen.

41. Attached as Exhibit 25 is a true and correct copy of the RAH Merger Committee's September 26,2011 submission to Arbitrator Eischen.

42. Attached as Exhibit 26 is a true and correct copy of the Midwest Merger Committee's September 28,2011 submission to Arbitrator Eischen.

43. Attached as Exhibit 27 is a true and correct copy of the Frontier Merger Committee's October 10,2011 submission to Arbitrator Eischen.

44. Attached as Exhibit 28 is a true and correct copy of the second Frontier Merger Committee October 10,2011 submission to Arbitrator Eischen.

45. Attached as Exhibit 29 is a true and correct copy of the Midwest Merger Committee's October 10,2011 submission to Arbitrator Eischen.

46. Attached as Exhibit 30 is a true and correct copy of further email exchange with Arbitrator Eischen on October 10,2011.

47. October 22,2011, Arbitrator Eischen issued Dispute Resolution No. 1, and on October 25, 2011, Arbitrator Eischen issued IMSL Award Interpretation Award No. 1 (collectively, the "Supplemental Award") addressing the disputes raised in September 2011 by the Merger Committees, a true and correct copy of which is attached as Exhibit 31.

48. Attached as Exhibit 32 is a true and correct copy of emails and correspondence between the Merger Committees and Arbitrator Eischen regarding the payment of compensatory relief pursuant to Arbitrator Eischen's Interpretation Award No. 1 to those pre-transaction Midwest Pilots who had been hired as new-hire Frontier Pilots in March 2011. That issue was resolved in a written grievance settlement agreement between Frontier and the IBT under the Frontier CBA, dated December 23,2011, a true and correct copy of which is attached as Exhibit 33.

**The 2013 IBT Grievance**
49. On January 10,2013, the IBT submitted a grievance to Frontier (assigned Grievance No. 12-12-9155) claiming that, in December 2012, Frontier First Officers should have been allowed to bid to an EMB-190 upgrade class for Captain positions at Republic. A true and correct copy of the grievance is attached as Exhibit 34. On January 25,2013, Frontier denied the grievance. A true and correct copy of Frontier's denial is attached as Exhibit 35.  On February 2, 2013, IBT re-submitted the grievance as a second level grievance. A true and correct copy of IBT's second level grievance is attached as Exhibit 36. On February 14,2013, Frontier denied IBT's second level grievance. A true and correct copy of Frontier's denial is attached as Exhibit 37. On February 17,2013, IBT filed a notice of appeal to the system board. A true and correct copy of IBT's notice of appeal is attached as Exhibit 38. Grievance No. 12-12-9155 has not yet been scheduled for arbitration before the system board. No notice to the Merger Committees was provided with respect to the dispute asserted in Grievance No. 12-12-9155.

**Hiring/Recalls Since 2011**
50. Since August 28,2011, Chautauqua, Republic and/or Shuttle America have from time to time hired new-hire First Officers. Those new-hire positions have not been offered to incumbent Frontier Pilots before hiring pilots off of the street.

51. Effective on or about August 30,2012, Frontier closed its Milwaukee pilot domicile and opened a Chicago pilot domicile, pursuant to a Voluntary Staffing Adjustment under the Frontier CBA. Displacements and vacancy awards in that bidding process were administered based on Frontier date of hire, not on IMSL seniority order. No grievance or claim was initiated as a result of that bidding process.

52. The status of the Midwest CBA is the subject of a pending suit in the United ^-s States District Court for the Eastern District of Wisconsin, *Freitas v. RAH*, E.D. WI No. 11-cv-0358-RTR, and an arbitration proceeding between the IBT and Midwest before a

System Board of Adjustment chaired by Richard Bloch, pursuant to the Order of the United States District Court in *Freitas*, 2011 WL 5506679 (E.D. Wis. 2011).

53. Since the effective date of the Eischen Award (August 27,2011), no additional pilots (including no pre-merger Midwest Pilot, Chautauqua Pilot, Republic Pilot, Shuttle America Pilot, or Lynx Pilot) have been hired or employed by Frontier until the instant dispute.

## The Current Dispute

54. Commencing with training starting on September 16, 2013, Frontier has initiated voluntary staffing adjustments pursuant to the need for additional staffing of Airbus First Officer positions. Pursuant to those staffing adjustments, as of January 6, 2014, Frontier has hired approximately 68 new-hire pilots pursuant to the Frontier CBA, and has assigned those pilots to Airbus First Officer positions.

55. On or about August 8,2013, the IBT transmitted a document to Frontier management, a true and correct copy of which is attached as Exhibit 39.

## RAH's Sale of Frontier to Indigo Partners, LLC

56. On October 1, 2013, RAH announced that it had entered into a definitive agreement to sell Frontier Holdings and Frontier to an investment fund affiliated with Indigo Partners, LLC.

57. On November 26, 2013, the parties entered the Arbitration Agreement regarding arbitration of the instant dispute, a true and correct copy of which is attached as Exhibit 40.

58. On December 3,2013, RAH announced that it had closed on the sale of Frontier. A true and correct copy of RAH's December 3, 2013 press release is attached as Exhibit 41.

59. On December 17,2013, FAPA filed a petition with the NMB, seeking a finding that Frontier is a separate transportation system, and certification as the exclusive bargaining representative of the pilot craft and class in that system. A true and correct copy of FAPA's petition is attached as Exhibit 42. The NMB assigned FAPA's petition NMB File no. CR-7107.

60. In addition to the exhibits attached, the parties agree that any and all other correspondence submitted to Arbitrator Eischen by the parties in conjunction with the prior matters/disputes that resulted in the Eischen Award and the Supplemental Award, as well as any documents or exhibits submitted in conjunction with those matters/disputes and hearing transcripts from those matters/disputes, shall be considered part of the record in this dispute.

61. The parties agree that this factual stipulation has been entered for purposes of this proceeding only, and that it will not be used for any other proceedings.

62. While the parties agree that the above facts and attached exhibits are accurate, the parties reserve all of their rights regarding the relevancy, importance and weight to be given to the facts agreed to in this stipulation.

# POSITIONS OF THE DISPUTANTS

The following positions were edited from the briefs and reply briefs submitted by Counsel for the Merger Committees and the Carriers:

## The RPMC

The Arbitrator has already resolved that all pilots on the Integrated Master Seniority List hold active seniority rights under the Frontier pilot agreement. Frontier is therefore obligated to provide the contractually established method for awarding vacancies to these pilots. Nothing in the Frontier Pilot Agreement or the SLI Award precludes this result.

Frontier Airlines, Inc., Republic Airways and the Frontier Pilot Merger Committee rest their position on an argument that the Arbitrator lacks authority to interpret provisions of the Frontier pilot collective bargaining agreement in order to resolve the parties' dispute submitted to him. Their positions lack merit since Section V.j of the DRA and the November 26, 2013 Arbitration Agreement between the carriers and the IBT provide that the Arbitrator shall resolve the dispute and contains no restriction on the Arbitrator's authority to interpret provisions of the CBA required to resolve the instant dispute. Moreover, the Carriers and the Frontier Pilot Merger Committee are precluded by the doctrine of *res judicata* from again challenging the authority of the Arbitrator to construe and alter the parties' collective bargaining agreements through the SLI Award.

To the extent any provision of the Frontier Pilot CBA in place prior to the SLI Award precluded that result, the provision was modified by the SLI Award to remove any inhibition against the requirement that surplus positions be offered to affected pilots according to the IMSL. The Republic Pilots do not believe any provision of the Frontier pilot contract actually needs to be modified to permit pilots on the IMSL to be awarded these unfenced positions at Frontier. If that is required, however, the Arbitrator should also rule that his authority extends to directing Frontier to use an effective process for offering these positions to pilots on the IMSL and should direct that action by Frontier.

The Republic Pilots submit that the Arbitrator should answer its proposed issue in the affirmative and rule that new First Officer positions at Frontier must first be offered to pilots on the Integrated Master Seniority List ("IMSL") established under the February 19, 2011 Seniority List Integration Award ("SLI Award") and in the relative seniority order established on that IMSL prior to Frontier Airlines hiring pilots off the street.

## The MPMC

By providing that the final decision maker for an "interpretation or application" dispute is to be the System Board of Adjustment established by the single carrier and IBT, the import of § V (j) is clear: That Board is to have jurisdiction over the applicable agreements, which, as the first sentence of DRA § V (j) provides, includes the Integration Award and Interpretative Award No. 1, so as to be able to resolve the entire dispute. Authority to resolve disputes arising out of the interpretation or application of the Integration Award includes the authority to construe applicable CBAs, whose provisions govern the manner in which IMSL seniority is to be exercised and administered.

Despite the Carriers' and FPMC's biased reading of Interpretative Award No. 1, that Award held that the Integration Award modified the applicable CBAs to make that new seniority a part of those CBAs as of August 27, 2011. It is evident, from the Integration Award's effective-date provision and Interpretative Award No. 1, that the integrated list became "a part" of each applicable CBA and exercisable as provided in that CBA, as of August 27, 2011.

When Part C is given its proper effect, provisions of the Frontier CBA that literally would delay the effectiveness of the IMSL or create a separate seniority list limited to pilots on Frontier's payroll –such as LOA 39 and the definitions of "Company" and "Pilot"–are superseded by Part C's effective-date provision. When viewed in that manner, it becomes clear that, under Frontier CBA § 6.A.1, Republic pilots have the seniority to bid for Frontier First Officer positions before Frontier hires new pilots "off the street." Frontier has a contractual obligation under § 6.C to make its Master Bid system available to all pilots who hold seniority rights to pilot positions at Frontier, including those who have yet to be placed on its payroll.

## **Frontier**

The Arbitration Agreement governing this dispute expressly states that your jurisdiction "shall not extend to changes or modifications to the existing Frontier or Republic pilot collective bargaining agreements." Moreover, the IMSL Award and Supplemental Award both expressly confirm that you do not have jurisdiction to modify the parties' existing CBAs.

The Frontier CBA and the Republic CBA (which the RPMC ignores altogether) include numerous provisions that would have to be eliminated or modified to allow pilots at Republic to bid for vacancies at Frontier— provisions that exist to protect the carriers' operations and control expenses. Thus, at best, the RPMC has established that the parties have a dispute regarding whether those provisions constitute enforceable contractual limitations on the exercise of the seniority status conferred by the IMSL Award. And as you expressly held in the Supplemental Award, resolution of such a CBA interpretation dispute is beyond your jurisdiction.

The MPMC ignores the plain language of your Supplemental Award addressing this exact issue and holding that the Frontier and Republic CBAs continue to govern the exercise of the seniority status conferred by your IMSL Award—unless and until the parties modify those CBAs or reach new agreements. The MPMC also contends that Section 6 of the Frontier CBA provides a process by which Republic pilots can bid for positions at Frontier. Frontier's position, as well as RAH and the FPMC's position, however, is that numerous provisions in the Frontier CBA and the Republic CBA (which the MPMC ignores altogether) prevent Republic pilots from bidding for vacancies at Frontier.

Regardless of which party's interpretation of these provisions is correct, your Supplemental Award found resolution of such a dispute is also beyond your jurisdiction. As your prior awards expressly held, the changes to the Republic and Frontier CBAs that would be necessary to establish a process for cross-bidding between Republic and Frontier can only be accomplished through negotiations for a joint CBA.

## The FPMC

Seniority rights are not natural law; they are contractual. "Seniority rank status" through placement on the IMSL does not confer any specific contractual right to the "invocation, utilization, administration, or implementation" of that status for any given position; that must be determined by the terms of the existing CBAs. As much as the RPMC and MPMC might wish it, these holdings of the Eischen Award and the October 2011 Interpretation distinguishing seniority **status** from seniority bidding **rights** cannot be wished away.

The RPMC asserts that "[n]o rule in the Frontier pilot contract governing the '*invocation, utilization, administration, implementation and retention* of the seniority rank' precludes the awarding of these new vacancies on the IMSL." The MPMC agrees, indeed arguing that Section 6 of the Frontier CBA applies by its terms to RAH Pilots. According to the MPMC, under Section 6.A.1.a. of the Frontier CBA, "before Frontier may hire new pilots, it must offer 'staffing adjustment' positions – *i.e.*, vacancies – to pilots who hold seniority at that airline,' including "IMSL pilots who are not on Frontier's payroll ..." These assertions ignore the actual, collective-bargained language of the Frontier CBA and the MPMC flatly misquotes Section 6.a.1. Rather than provide for "Staffing Adjustments" to "pilots who hold seniority" (MMC Br., at 8), Section 6.a.1. states that "Staffing Adjustments" are "filled according to Pilots' Master Bids and the Seniority List," first "through the vacancy procedure" and "through secondary vacancies," followed ultimately "with New Hire Pilots as needed…"

Wishes are not horses, and pilot CBAs do not materialize from thin air. The RMC and MMC have indulged the same fantasy since 2011, when they asserted that pilots could use their IMSL seniority to move between Frontier and the RAH carriers without any contractual mechanism to do so. In short, the RPMC's claim would require ignoring or modifying both the Frontier and Chautauqua CBAs. Any argument by the RPMC or MPMC to the contrary would itself, at the very least, raise an issue of the interpretation and application of those provisions. The RPMC and MPMC also ignore Section V.j of the DRA, which confers authority only over disputes concerning "the interpretation and application of the Eischen Award." They also ignore the unambiguous terms of Section 15 of the November 26, 2013 Arbitration Agreement itself, which disclaims precisely the authority now asserted.

## Republic

The argument that the dispute at issue involves the "effectiveness" of the Eischen Award is nothing but a red herring. The RPMC and the MPMC give lip service to the Arbitrator's prior guidance that any fence crossing would be in accordance with "the terms and conditions of applicable CBA provisions". But ultimately their view is that no such provisions are applicable and IMSL seniority is the be-all and end-all factor; with any contractual restriction merely an irrelevancy for the Arbitrator to ignore or modify, under the guise of making the IMSL Award "effective". This is baseless.

Nothing in the Republic CBA addresses the posting or award of pilots vacancies at an operation covered by a different CBA and nothing in the IMSL Award requires or could require that Republic post for bid pilot vacancies at another carrier, including Frontier. Without negotiated terms for the posting of Frontier vacancies to Republic pilots, there

18

is no means by which a Republic pilot could exercise any seniority, including his integrated seniority rank status, to bid for a pilot vacancy at Frontier. Moreover, the contractual terms that do exist would prohibit any Republic pilot from occupying a Frontier FO vacancy. [Republic points to these provisions not to place some contractual dispute before the Arbitrator, but merely to show some of the existing, non-seniority rank status provisions that address vacancy bidding rights and are outside governance by the IMSL Award].

The Arbitrator has already made it clear in prior decisions that seniority "status" is not the same thing as a seniority "right" to invoke and utilize status, except as provided in the applicable CBAs. For reasons already explained by the Arbitrator and for all the reasons advanced herein, the RPMC claim must be denied.

<u>**DISCUSSION**</u>

The Parties and this Arbitrator are intimately familiar with the events leading to the issuance of the Eischen Award and surrounding genesis of the present controversy that they presented for arbitral determination in these proceedings. Beyond that, all material facts necessary for a fully-informed understanding of the submitted issues are set forth in the Joint Stipulation of Facts and some 42 referenced and incorporated exhibits. Finally, I have had the benefit of five sets of briefs and reply briefs and supplemental submissions by learned Counsel on the submitted issues; as well as similar briefs and reply briefs on related questions concerning the impact on these proceedings, if any, of the NMB's March and June determinations concerning single carrier status and bargaining representation at Frontier.[7] I carefully analyzed, studied and considered each and all of these evidentiary matters of record in reaching my decision in this case.

---

[7]I It was not necessary for me to reach or address the collateral NMB question to fully resolve the merits of the issues submitted to me for determination in these proceedings by the Arbitration Agreement of November 26, 2013. Accordingly, nothing contained in this Opinion or Award is intended to express or imply a resolution of any questions relating to the application of the DRA or the Eischen Award following the NMB's separate carrier designation of Frontier or whether I have authority to decide such issues.

The RPMC and the MPMC assert that the "Eischen Award" compels Frontier to offer new first officer positions on Airbus aircraft to current Republic pilots on the IMSL, according to their IMSL seniority, before Frontier may hire new pilots off the street." Republic, Frontier and the Frontier Pilots Merger Committee ("FPMC") dispute that assertion, contending that, absent an applicable agreement between management and the IBT providing for cross-CBA vacancy bidding rights, nothing in the IMSL Award compels Frontier to provide such rights.

The RPMC and MPMC rely on Section V.g of the DRA (requiring the Arbitrator to determine the "effective date" of the IMSL); Section V.j. of the DRA, (providing that the IMSL would be considered "part of" the applicable CBAs); the February 2011 Eischen Award holding that the IMSL would be "effective" sixty (60) days after certification of a single bargaining representative; and confirmation in the October 2011 Supplemental Award that the IMSL became "effective" on August 27, 2011 and conferred a "seniority rank status" on each pilot as part of the applicable CBAs.

Neither the assertion that Republic pilots have positions on the IMSL nor the assertion that the IMSL is "a part of the Frontier CBA" is at issue. Nor does affirmation of those two uncontested facts provide an answer to the questions submitted for determination in this case. What is at issue is the conclusion reached by the RMC and the MPMC that, mere rank status on the IMSL, compels Frontier to offer First Officer vacancy bidding rights to Republic pilots.

The Opinion which accompanied the February 2011 Award pointed out that, for reasons they considered good and sufficient, these Parties all agreed in the DRA to create their IMSL prior to creating any contractual mechanism for implementing awarded IMSL seniority across the fenced operations.[8]    Disputes such as those presented here are one consequence of that cart-before-the-horse approach to seniority list integration.

The original Eischen Award specifically addressed the scenario now presented, *i.e.,* when "fenced positions remain open after the exercise of a protected groups priority rights" (at 38); holding that pilots on the IMSL could access such positions "in accordance with their integrated seniority and the terms and conditions of applicable CBA provisions ".   In the Fall 20011 Supplemental Awards, I reiterated that although the IMSL was "effective" and "a part of" the respective fenced agreements, cross-fence application of IMSL seniority status would have to be determined by collective bargaining between the single carrier and the designated single bargaining representative for an implementing agreement and/or by amending or consolidating the applicable CBAs.

The assertion that, as a result of the seniority integration, *per se*, pilots acquired cross-CBA vacancy notice and bidding rights, without restriction other than the fence provisions of the Award, is erroneous.  The Eischen Award never said the Conditions and Restrictions of the Award were the only limitations on

---

[8] The following observations by the late Harry Shulman are applicable in the facts and circumstances presented to me on this record: "The negotiators were not tyros in the art. They were skilled hands who worked hard, intelligently, and alertly.  The agreement was not negotiated in a hurry or under pressure.  Careful study was given to the language after agreement was reached on the substance." <u>Ford Motor Co</u>., 1 ALAA ¶ 67,126, p. 67,265 (1945), quoted in Elkouri & Elkouri, *supra*, at 507.

the invocation, utilization, etc. of IMSL seniority rank status. Rather, I held that the Conditions and Restrictions are the only such restrictions "<u>contained in or intended **by the Award**</u>. (Emphasis added). The October 2011 interpretations and Supplemental Award made more than clear that the Award does not supersede any limitations, qualification and restrictions on the exercise of IMSL seniority contained in the applicable collective bargaining agreements.

At all times both before and after the effective date of the IMSL Award, the Frontier and Republic operations have been governed by two separate CBAs, without any agreement on how a pilot covered by one CBA could cross over into the other CBA. Each CBA, as is standard in the industry, contains rules for the posting and awarding of vacancies arising under that CBA. Nothing in the Republic CBA addresses the posting or award of pilot vacancies at an operation covered by a different CBA. By the same token, the staffing of Frontier pilot vacancies is governed by the Frontier CBA, and nothing in that CBA provides for the award of a vacancy posted to pilots covered by a different CBA. Despite post Award efforts by management and the IBT, there still is no negotiated agreement providing rules for the transfer of pilots between Republic and Frontier.

The IMSL Award, *per se*, does not and could not provide a mechanism for Republic pilots to bid for and be awarded Frontier pilot vacancies. In the October 25, 2011 Supplemental Award, I specifically addressed whether placement on the IMSL, by itself, gives RAH Pilots the right to positions at Frontier. In the passages now selectively cited by the RPMC and MPMC, I affirmed that the IMSL was "effective" and "confers upon each listed pilot a specific seniority rank status."

On that basis, the RPMC and MPMC now assert that the Eischen Award, without more, compels a holding that incumbent Chautauqua/Republic/Shuttle America Pilots ("RAH Pilots") may bid for and be awarded vacant Frontier Airbus First Officer positions which remain open after the Frontier Pilots' exercise of their Airbus priority under the Eischen Award. Nothing in the IMSL Award compels or could compel that result.

Those selective citations misread my meaning in making the IMSL "effective," and ignore the manifest distinction I found between the "effectiveness" of the IMSL and the utilization of the IMSL under the specific provisions of the governing CBAs. In the very next sentence – which the RPMC and MPMC ignore or misconstrue– I reiterated that the Award's effective grant of **seniority status** does not, by itself or *per se*, confer enforceable contractual **seniority rights**:

> ... Unless and until the Company and the IBT agree upon collectively bargained contractual modifications or new Agreements, the IMSL does so in the context of the RJET/IBT Agreement and the Frontier/FAPA Agreement. Various collectively bargained provisions in those respective Agreements address the *invocation, utilization, administration, implementation and retention* of the seniority rank *status* conferred upon a pilot by the IMSL. (*See* Exhibit 31, at 14 [Italics in original; emphasis added].

A river cannot rise higher than its source. Within the ambit of the authority vested in me by the DRA, the Eischen Award established relative seniority rank status. The "effectiveness" of the IMSL and making it "part of" the respective fenced agreements, standing alone, does not constitute a contractual mechanism to effect the transfer of pilots from RAH to Frontier, or *vice versa*. "Seniority rank status" through placement on the IMSL does not, in and of itself,

confer any specific contractual right to the "invocation, utilization, administration, or implementation" of that status for any given position--all of which must be determined by reference to the terms of the existing CBAs.

Contractually enforceable seniority rights and limits on the exercise of the seniority status of the IMSL derive from mechanisms and processes set forth in the applicable collective bargaining agreement(s). Reduced to its essence, the position advanced by the RPMC and the MPMC is that the Eischen Award somehow repeals, supersedes or rewrites, *sub silentio*, provisions of the Frontier and Chautauqua CBAs that limit or qualify unfettered use of IMSL seniority rank status. Assertions that the IMSL Award, *ipso facto,* worked a wholesale elimination of any collectively bargained provisions in those agreements that limit, qualify or inhibit the exercise of IMSL seniority rank status are erroneous.

Superseding, voiding or rewriting solemnly negotiated collectively bargained seniority right provisions in those agreements cannot rightly or properly be done by me under the guise of arbitral interpretation of the Eischen Award or my October 2011 Supplemental Award. [*See* ¶ 15 of the November 26, 2013 Arbitration Agreement: "*Arbitrator Eischen's jurisdiction shall not extend to changes or modifications to the existing Frontier or Republic pilot collective bargaining agreements*"]. The hard work of amending currently applicable contractual provisions to facilitate expanded utilization of the seniority rank status conferred by the IMSL must be done at the bargaining table, not by an end run through the arbitration forum.

## **AWARD**

1)     The Eischen Award does not compel Frontier to offer new first officer positions on Airbus aircraft to pilots on the IMSL, according to their IMSL seniority, before Frontier may hire new pilots off the street.

2)     The Eischen Award does not compel Frontier to create and offer a bid process by which Republic pilots may bid for new first officer positions on Airbus aircraft, based on their IMSL status, before Frontier may hire new pilots off the street

3)     The Seniority Integration Award, with its provision making the IMSL and its Conditions/Restrictions "a part of the collective bargaining agreement(s) applicable to the combined craft or class of Flight Deck Crew Members" for Republic Airlines *et al.*/Frontier (DRA § V (j)), does not compel Frontier Airlines, Inc. to offer new First Officer positions on Airbus aircraft to pilots on the IMSL, according to their IMSL seniority, before Frontier may hire new pilots off the street.

 4) The IMSL and its Conditions/Restrictions, which have been made "a part of the collective bargaining agreement(s) applicable to the combined craft or class of Flight Deck Crew Members" for Republic Airlines *et al.*/Frontier (DRA § V (j)), does not require Frontier to make the "Staffing Adjustment" process in Section 6 of the Frontier CBA available to Republic pilots, so they may use their IMSL seniority to bid for unfilled First Officer positions on Airbus aircraft, before Frontier may hire new pilots off the street.

*Dana E. Eischen*
_____
/s/ Dana Edward Eischen

On this 12th day of September 2014, I, DANA E. EISCHEN, do hereby certify that I am the individual described herein and that I executed the foregoing instrument on that date, which I affirm upon my oath as Arbitrator to be my Award, pursuant to the Frontier/Republic/IBT Arbitration Agreement of November 26, 2013.

**MIDWEST PILOTS MERGER COMMITTEE**
W295 S5458 Holiday Oak Dr.
Waukesha, WI 53189

September 20, 2014

Brian Ketchum, President
Frontier Airline Pilots Association
18300 E 71st Ave., Suite 140
Denver, CO 80249

      Re:    Implementing Section V(h) of the November 3, 2009 Dispute Resolution
            Agreement

Dear President Ketchum:

      This letter is submitted on behalf of the Midwest Pilots Merger Committee (MPMC), of
which I am Chairman, to request that the Frontier Airline Pilots Association (FAPA), now that it
is the duly designated representative of Frontier pilots, implement Section V(h) of the November
3, 2009 Dispute Resolution Agreement by informing Frontier Airlines, Inc. that the MPMC and
the other merger committees have been delegated by FAPA with authority to adjust any dispute
or disputes that might arise as to the interpretation or application of the February 19, 2011
Seniority Integration Award and subsequent interpretative awards, including the authority to
compromise such disputes, and to initiate, defend, mediate, and litigate such issues in the dispute
resolution mechanism under the DRA.

      The MPMC further requests that FAPA acknowledge that it will pay the Merger
Committees' expenses incurred in the adjusting of such disputes for Frontier pilots, including the
Committees' arbitration expenses and fees, lost time for Committee members, and Committee
attorney's fees.

      I would appreciate your prompt response since the MPMC is protesting the recent
decision by Frontier and FAPA to strip former Midwest pilots of their IMSL seniority.

      Please address FAPA's response to the Committee's attorney, John O'B. Clarke, Jr. at the
following address:

                    Highsaw, Mahoney & Clarke, P.C.
                    4142 Evergreen Drive
                    Fairfax, Virginia 22032-1018

Brian Ketchum
September 20, 2014
Page 2 of 2

Thank you for your prompt response.

Fraternally Yours,

Carl Schwerman
Chairman, MPMC

cc:     Robert Layman (via email)
        Don Till (via email)
        Craig A. Moffatt, (via email)
        William R. Wilder (via email)
        Wesley G. Kennedy (via email)
        Cory Sewell (via email)
        John O'B. Clarke, Jr.

**MIDWEST PILOTS MERGER COMMITTEE**
W295 S5458 Holiday Oak Dr.
Waukesha, WI 53189

September 23, 2014

J. P. Thibodeau, Chief Pilot
Frontier Airlines, Inc.
7001 Tower Road
Denver, CO 80249

> Re:  Dispute By Midwest Pilots Merger Committee Pursuant To November 3, 2009
> Dispute Resolution Agreement §§ V(h) and V(j) And By Former Midwest Pilots
> In the Employ of Frontier Protesting The Decision By Frontier And FAPA to
> Abrogate February 19, 2011 Seniority Integration Award And The October 2011
> Interpretative Award No. 1.

Dear Chief Pilot Thibodeau:

This dispute is submitted by the Midwest Pilots Merger Committee (MPMC) pursuant to
the authority granted to it Section V(h) of the November 3, 2009 Dispute Resolution Agreement
(DRA) and in accordance with DRA § V(j), as well as by First Officers Gary Drska, Dan Norden,
Mark Ward and Marty Burian pursuant to Section 12.B.1 of the Collective Bargaining
Agreement (CBA) applicable to Frontier Pilots represented by the Frontier Airline Pilots
Association (FAPA). This grievance protests the Company's and FAPA's recent decision to
abrogate and no longer apply to former Midwest Airline Pilots employed by Frontier the seniority
promulgated by the February 19, 2011 Seniority Integration Award (IMSL Award). On or around
September 13, 2014, former Midwest pilots hired by Frontier in 2011 were informed by FAPA
that they would no longer be allowed to use the seniority ranking awarded to them by the IMSL
Award in bidding for monthly schedules and vacations. That alteration of seniority rights was
implemented when Frontier awarded the October 2014 schedules using the Frontier date of hire
for the four former Midwest pilots who had submitted monthly scheduling bids, rather than their
IMSL ranking. This violates the IMSL Award, the October 2011 Interpretative Award No. 1, and
the Frontier Pilots CBA of which the IMSL was made an immutable part. By this protest, the
MPMC and First Officers Drska, Norden, Ward and Burian request that the IMSL seniority be
restored and that Midwest pilots employed by Frontier be made whole for being deprived of that
seniority in the period until their rightful seniority is restored.

This dispute supplements the dispute the MPMC raised in its Grievance of January 28,
2014, in which it protested on behalf of the former Midwest pilots Frontier's refusal to allow
Midwest pilots employed by Frontier to use their IMSL seniority for any purpose other than
monthly and vacation bidding. January 28, 2014 Grievance at 2. The MPMC is currently seeking
to arbitrate that dispute and, by a copy of this grievance to Frontier's Director-Human Relations

J.P. Thibodeau, Chief Pilot
September 23, 2014
Page 2 of 2

Jacalyn Peter, requests that the dispute raised by this grievance be consolidated with the January 28 Grievance for resolution and that all further on the property handling of this grievance be waived.

Please address all further correspondence in connection with this dispute and the request to consolidate to the Committee's attorney, John O'B. Clarke, Jr. at:

> Highsaw, Mahoney & Clarke, P.C.
> 4142 Evergreen Drive
> Fairfax, Virginia 22032-1018
> (202) 296-8500

If the parties do not agree to consolidate this protest with the pending January 28, 2014 grievance, MPMC and First Officers Drska, Norden, Ward and Burian request that the parties discuss this grievance by telephone on Friday, September 25, at 11:00 a.m., EDT, by calling Mr. Clarke at 855-228-7494 and entering user code 1234.

Sincerely,

Carl Schwerman
Chairman, MPMC

cc:     Gary Drska (via email)
        Dan Norden (via email)
        Mark Ward (via email)
        Marty Burian (via email)
        Robert Layman (via email)
        Don Till (via email)
        Brian Ketchum
        Jacalyn Peter
        William R. Wilder (via email)
        Wesley G. Kennedy (via email)
        Robert A. Siegel
        Lilia R. Bell
        John O'B. Clarke, Jr.

LAW OFFICES
**ALLISON, SLUTSKY & KENNEDY, P.C.**
Suite 2600
230 West Monroe Street
CHICAGO, ILLINOIS 60606
www.ask-attorneys.com

THOMAS D. ALLISON
MICHAEL H. SLUTSKY
WESLEY G. KENNEDY
KAREN I. ENGELHARDT
N. ELIZABETH REYNOLDS
     (LICENSED IN ILLINOIS AND TEXAS)
ANGIE COWAN HAMADA
SARA S. SCHUMANN
RYAN M. THOMA

TELEPHONE
(312) 364-9400

FACSIMILE
(312) 364-9410

September 24, 2014

**BY EMAIL**

John O'B. Clarke, Esq.
Highsaw, Mahoney & Clarke, P.C.
4142 Evergreen Drive
Fairfax, Virginia 22032

> Re:   Requests to Invoke November 3, 2009
>        Dispute Resolution Agreement

Dear John:

      As you know, I represent the Frontier Airline Pilots Association ("FAPA"). This is in response to the various correspondence from you and your clients regarding the above-referenced matter on September 20 and 23, 2014. The November 3, 2014 Dispute Resolution Agreement ("DRA") is no longer applicable to Frontier Airlines, Inc. ("Frontier") or FAPA. Accordingly, your clients' request to invoke the arbitration provisions of the DRA are without basis, and substantively inarbitrable.

      As you are aware, as of December 3, 2013, Frontier ceased to be an "affiliate" of RAH. On March 31, 2014, the NMB found that Frontier now constitutes a separate transportation system. On June 13, 2014, the NMB certified FAPA as the exclusive bargaining representative of the pilot craft or class in that separate Frontier transportation system. As of June 13, 2014, Frontier is not an affiliate of RAH; Frontier is not part of a single transportation system with the RAH-affiliated carriers; the Frontier Pilots are not employed by RAH or any RAH affiliate; the Frontier Pilots are not part of a combined craft or class; FAPA is not the bargaining representative of a combined craft of class; and the Frontier CBA is not a collective bargaining agreement applicable to a combined craft or class. Accordingly, as of June 13, 2014 none of the conditions for the application of the Eischen Award and IMSL with respect to Frontier exist, and Section 3 and the other seniority-related provisions of the Frontier CBA apply by their terms without modification.

      In his Supplemental Award issued on September 12, 2014, Arbitrator Eischen has confirmed that there are no contractual mechanisms for the transfer of pilots with IMSL seniority from the RAH operation to Frontier. Together with the NMB's findings and certification, that decision removes any practical risk that additional pilots would be granted the right to use IMSL seniority under the

John O'B. Clarke, Esq.                                      September 24, 2014
                                                                        Page 2

Frontier CBA. We understand that, at FAPA's request, following Arbitrator Eischen's supplemental award, Frontier is administering the seniority-related provisions of the Frontier CBA in accordance with the terms of those provisions.

Any attempt to invoke the procedures of the DRA with respect to this Company action is not well-grounded, as the DRA is no longer applicable to Frontier and FAPA, and there is no agreement to arbitrate through the DRA disputes arising at Frontier now that the conditions of the DRA no longer obtain. It is clear from the face of the document that the DRA was intended to apply to Frontier only insofar as Frontier was part of a single transportation system and the Frontier Pilots were part of a combined craft or class. For example:

*     The carrier party to the DRA is defined as follows in the DRA: "Republic Airways Holdings Inc. (RAH), on behalf of itself and its wholly owned affiliates Republic Airline Inc., Chautauqua Airlines, Inc. and Shuttle America Corp. (hereinafter collectively, 'Republic'), Midwest Airlines, Inc., Frontier Airlines, Inc. and Lynx Aviation, Inc. (RAH and its affiliates together one 'party' under this Agreement)." (DRA, at 1 [emphasis added].) Accordingly, the only carrier party to the DRA is RAH. Frontier is subject to the DRA only insofar as it is "a wholly owned affiliate" of RAH. Since the purchase was closed on December 3, 2013, Frontier has no longer been an affiliate of RAH; and now has no relationship with RAH whatsoever.

*     Section II.e. of the DRA provided that any agreement on an integrated seniority list "shall not be before the National Mediation Board (NMB) issues its ruling on whether the RAH affiliates comprise a single transportation system and certifies the Organization, if any, that is the duly designated representative of the pilot craft or class on that transportation system." (DRA, at 2 [emphasis added].)

*     Similarly, Section V.g. of the DRA provided, in the event of a seniority integration arbitration: "The award of the arbitrator shall be stated in writing and shall be final and binding on the parties to this Agreement and on the pilots employed by RAH and its affiliates. The award shall include the date on which the seniority integration will become effective, which date shall not be before the NMB issues its ruling on whether the RAH affiliates comprise a single transportation system and certifies the Organization, if any, that is the duly designated representative of the pilot craft or class on that transportation system." (DRA, at 4-5 [emphasis added].)

Indeed, it is clear from the face of Sections V.h. and V.J. of the DRA that the dispute resolution process established by the DRA has no application at Frontier to events after the date on which Frontier became a separate carrier based on the NMB's finding, and certainly following the certification of a separate bargaining representative for the Frontier pilot craft or class:

(h). The Organization, if any, <u>designated by the NMB as the duly designated representative of the combined craft or class of Flight Deck Crew Members for the single transportation system</u> shall continue the Merger Committees in existence and delegate to the Merger Committees authority solely for the purpose of adjusting any dispute or disputes that might arise as to the interpretation or application of the award, including authority to compromise such disputes, and to initiate, defend, mediate, and litigate such issues in the dispute resolution mechanism under this Agreement. The Organization shall have authority over the manner in which the Merger Committees' operations are financed. The Merger Committees which are parties to this agreement represent that they have been authorized by their principals (the duly designated representative of their airline's pilots) to enter into the commitments set forth in this paragraph and in this Agreement. Each Merger Committee shall fill its own vacancies by selection made by the remaining members of that Merger Committee.

...

(j). The award of the arbitrator issued under either Section V (g) or V (I) shall be considered as a part of the collective bargaining agreement(s) <u>applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system</u>. Any dispute arising out of the interpretation or application of the award more than one-hundred and twenty (120) days after the effective date of the seniority integration shall be handled in the usual manner by the applicable Merger Committees up to and including the highest carrier official designated to handle such disputes, but failing to reach an adjustment in this manner, the dispute may be submitted by any party to the dispute to <u>the adjustment board established by the designated representative of the combined craft or class and the single carrier for final and binding resolution</u>. All Merger Committees shall be given notice of the dispute and, in addition to the Merger Committee invoking the adjustment board jurisdiction, may be heard by the system board of adjustment in resolving the dispute, with the decision of the board being made by the arbitrator selected pursuant to the applicable agreement to sit with the system board (without a vote by the other members of the system board).

(DRA, at 5 [emphasis added].) Thus, under Section V.h., the obligation to maintain the Merger Committees in existence extends only to "[t]he Organization, if any, designated by the NMB as the duly designated representative of <u>the combined craft or class of Flight Deck Crew Members for the single transportation system;</u>" the Eischen Award was to be considered part of "the collective bargaining agreement(s) <u>applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system;</u>" and arbitration under Section V.j. is before "the adjustment board established by <u>the designated representative of the combined craft or class and the single carrier</u> for

final and binding resolution." That DRA process has no application at Frontier once Frontier is no longer an "affiliate" of RAH and no longer part of a "single carrier" obliged to establish an adjustment board with "the designated representative of the combined craft or class ...;" the Frontier CBA is no longer a "collective bargaining agreement[] applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system;" and/or the Frontier pilots are no longer represented by "[t]he Organization, if any, designated by the NMB as the duly designated representative of the combined craft or class of Flight Deck Crew Members for the single transportation system."

There is thus no agreement to arbitrate the issues raised by your correspondence under the DRA, and the matters you assert are substantively inarbitrable under that Agreement. Accordingly, your request for a "conference" pursuant to the DRA on September 26, 2014, is similarly misplaced. Since it has not agreed to the application of the DRA in these circumstances, FAPA will not consent to or participate in such a conference, or any other effort to process the claims asserted in your correspondence under the DRA.

To the extent that the affected Frontier Pilots who you represent believe that Frontier is improperly administering seniority under the Frontier CBA, those pilots (although not the Midwest Merger Committee) may invoke the grievance procedure of that CBA pursuant to the terms thereof. FAPA will fulfill its obligations with respect to the processing of any such grievance in accordance with the CBA.

Thank you for your attention.

Very truly yours,

Wesley Kennedy

cc (By Email):        Robert Siegel, Esq.
                      Lilia Bell, Esq.
                      William Wilder, Esq.
                      Brian Ketchum, FAPA
                      Joseph Goldhammer, Esq.

## John O'B. Clarke Jr.

| | |
|---|---|
| **From:** | John O'B. Clarke Jr. <jclarke@highsaw.com> |
| **Sent:** | Tuesday, October 07, 2014 10:41 AM |
| **To:** | 'Dana Edward Eischen' |
| **Cc:** | 'Siegel, Robert'; 'wes kennedy'; 'Lilia Bell'; 'William R. Wilder'; 'Carl Schwerman'; 'Robert Layman'; 'Don Till' |
| **Subject:** | FW: MPMC's Invocation Of DRA § V(c) Jurisdiction |
| **Attachments:** | DRA § V(h) ltr 9-20-14.pdf; Response re 9-26 conf & Frontier response Email 9-24.pdf; WK Letter to Clarke 9-24-14.pdf; Sept 23, 2014 Grievance--Fax.pdf |

Dana:

I thought your email on 9/25 that you had not received a purported invocation of your jurisdiction on 9/24, but just a portion of an email stream with an irrelevant attachment, referred to my 9/24 email. My 9/24 had purported to invoke your jurisdiction by stating that: "Wes: the MPMC disagrees with the FPMC's and FAPS's reading of the DRA and, as authorized by DRA Section V(c), hereby invokes the jurisdiction of Dana Eischen to hear this dispute." I followed up that 9/24 email with the below email and attachments on 9/25, which I assumed made it clear that the MPMC was invoking your DRA § V(c) jurisdiction. Apparently, my intent was not that clear, so by this email the MPMC reiterates that it invokes your reserved and retained jurisdiction under DRA § V(c) to resolve the two DRA interpretation and application disputes raised in the below email.

Least there be any doubt, please consider this email as a confirmation that the MPMC asks that you exercise your retained & reserved jurisdiction under DRA § V(c) to resolve the disputes identified in the below attached email which grow out of the interpretation and application of the DRA.

On February 27, 2014, MPMC invoked your DRA § V(c) jurisdiction to resolve several disputes that MPMC asserted involved the interpretation and application of the DRA and both Frontier and RAH responded that you did not have jurisdiction under DRA § V(c) because that jurisdiction ceased long ago. I responded by asking that you address the threshold jurisdictional issue and then set a conference to set a briefing schedule to address the merits issue. That matter has been pending fully briefed since April 9.

While the merits of the DRA interpretation issues raised by the MPMC in September 2014 are different from the merits of the DRA interpretation issues raised by the February invocation, the threshold jurisdictional issue is identical: Do you have jurisdiction under DRA § V(c) to resolve DRA interpretation disputes to which Frontier, RAH, and FPMC/FAPA are disputants?

In response to your question as to who is financially responsible for the expenses incurred in invoking your DRA § V(c) jurisdiction, MPMC submits that DRA § IV(d) governs. If, however, you conclude that you do not have DRA § V(c) jurisdiction, then MPMC—as the party which purported to invoke your jurisdiction—will be financially responsible for your fees.

John Clarke

---

**From:** John O'B. Clarke Jr. [mailto:jclarke@highsaw.com]
**Sent:** Thursday, September 25, 2014 6:09 PM
**To:** 'Dana Edward Eischen'
**Cc:** 'Siegel, Robert'; 'wes kennedy'; 'William R. Wilder'; 'sewell.cory@gmail.com'; 'Lilia Bell'
**Subject:** MPMC's Invocation Of DRA § V(c) Jurisdiction

Dear Dana:

This email follows up on the email I sent to you yesterday in which I, on behalf of the Midwest Pilots Merger Committee (MPMC), invoked your jurisdiction under Section V(c) of the November 3, 2009 Dispute Resolution Agreement (DRA) to resolve a dispute that has arisen among Frontier and the Frontier pilots and MPMC on behalf of five former Midwest pilots employed at Frontier. Recently, Frontier and FAPA have taken the position that the DRA—and the IMSL Award--no longer apply to Frontier and its pilots because Frontier is no longer part of the single transportation system the NMB found existed for RAH and its subsidiaries in 2009. FAPA has also refused to comply with DRA § (h) and designate the MPMC as authorized to handle disputes arising from the application of the IMSL Award to Frontier pilots because it maintains the DRA by its own terms no longer applies to Frontier.

Both positions (*i.e.*, (1) that the DRA and IMSL Award no longer apply to Frontier and, as a result, former Midwest pilots at Frontier no longer have IMSL seniority but simply date-of-hire at Frontier; and (2) that FAPA has no obligation under DRA § V(h) to authorize the merger committees to handle seniority integration related disputes) raise "dispute[s] arising out of the interpretation or application of" the DRA and, thus, are within your exclusive jurisdiction to resolve.

The MPMC asks that this latest invocation of your DRA § V(c) jurisdiction be consolidated with the MPMC's pending request and that you first address the threshold jurisdictional issue Frontier and RAH have raised in claiming that you have no jurisdiction over DRA "interpretation or application" disputes.

I have attached the following to this email to explain the genesis of this dispute: (1) the September 20, 2014 letter the MPMC sent to FAPA requesting that FAPA implement DRA § V(h); (2) the September 23, 2014 Grievance the MPMC filed challenging Frontier's and FAPA's recent decision to alter the seniority of five Frontier pilots who were formerly Midwest pilots when they declared that the IMSL no longer applied to Frontier pilots; (3) a letter dated September 24, 2014 from FAPA's attorney explaining that FAPA reads the DRA and the IMSL Award as no longer having any application to Frontier now that Frontier has been separated from RAH; and (4) an email stream by which Frontier and FAPA decline to participate in an informal conference over the seniority-related dispute and in which the MPMC invoked your jurisdiction under DRA § V(c).

John O'B. Clarke, Jr.
Highsaw, Mahoney & Clarke, P.C.
4142 Evergreen Drive
Fairfax, Virginia 22032-1018
(202) 296-8500

LAW OFFICES
## ALLISON, SLUTSKY & KENNEDY, P.C.
Suite 2600
230 West Monroe Street
### CHICAGO, ILLINOIS 60606
www.ask-attorneys.com

THOMAS D. ALLISON
MICHAEL H. SLUTSKY
WESLEY G. KENNEDY
KAREN I. ENGELHARDT
N. ELIZABETH REYNOLDS
    (LICENSED IN ILLINOIS AND TEXAS)
ANGIE COWAN HAMADA
SARA S. SCHUMANN
RYAN M. THOMA

TELEPHONE
(312) 364-9400

FACSIMILE
(312) 364-9410

October 10, 2014

## BY EMAIL AND FIRST CLASS MAIL

Arbitrator Dana E. Eischen
P.O. Box 730
Spencer, New York  14883-0730

Re:    Frontier Airlines, Inc.
(Request to Invoke November 3, 2009 Dispute
Resolution Agreement)

Dear Arbitrator Eischen:

On behalf of the Frontier Airline Pilots Association ("FAPA"), as the certified bargaining representative of the separate Frontier Airlines pilot craft or class, this is in response to Mr. Clarke's emails of September 24 and 25, and October 8, 2014, purporting to invoke Section V.c. of the November 3, 2009 Dispute Resolution Agreement ("DRA"). As more fully discussed below, (1) the DRA is no longer in effect; (2) even if the DRA were otherwise effective, you would lack authority over either the substance of the issue asserted by Mr. Clarke, or the interpretation or application of the DRA in connection therewith; and (3) there is no basis on which to consolidate Mr. Clarke's request with the previously-pending claims asserted by the Midwest Merger Committee. There is no agreement to submit these matters to you; accordingly, these are all issues of substantive arbitrability, over which you have no authority.

## Background

### The Eischen Award

As you know, on February 19, 2011 you issued your Award (the "Eischen Award") creating an Integrated Master Seniority List ("IMSL") and accompanying conditions and restrictions. However, because the parties had placed "the cart before the horse" (Eischen Award, at 43), you made the IMSL effective only 60 days following the future certification by the National Mediation Board ("NMB") of a single bargaining representative for the combined craft or class in a single transportation system. The IMSL was thus conditioned on a series of contingencies, including the existence of a single transportation system; and the certification of a single bargaining representative representing the combined pilot craft or class in that single transportation system. Among other

things, you made clear that "[i]t is unknown whether the NMB will find a single transportation system for the pilot craft or class; if so, which of the pre-acquisition carriers will be included; and what organization, if any, will be certified by the NMB as the representative of the combined pilot craft and class in such a single transportation system" (Eischen Award, at 42); and therefore provided that the IMSL would not become effective until 60 days following the certification of a single bargaining representative for the combined craft or class following a finding of a single transportation system. (Id., at 49.) You also held that, "if the NMB concludes that Frontier is not part of the Republic single transportation system for the pilot craft or class, the integration methodology of the Award will be applied with the Frontier pilots excluded." (Id., at 45.)

**Frontier's Hiring of Former Midwest**
**Pilots as New-Hires Under the Frontier CBA**

You will also recall that, in March 2011 – while those contingencies were still unknown, and the IMSL was therefore not effective – Frontier Airlines, Inc. ("Frontier") hired certain former Midwest Pilots as new-hire Frontier pilots. Those pilots' seniority at Frontier was determined in accordance with Section 3.A.1. of the Frontier CBA, which provides, in part: "The seniority of a Pilot shall begin to accrue from the date the Pilot is first placed on the Company payroll as a Pilot ..."

**The NMB's 2011 Single Carrier Finding**
**and Certification of the IBT**

Thereafter, the NMB found a single transportation system including Frontier; and certified the International Brotherhood of Teamsters, Airline Division (the "IBT") as the bargaining representative of the combined pilot craft or class in that single transportation system. 28 NMB 138 (2011); 38 NMB 245 (2011). As a result, the IMSL became effective on August 27, 2011. However, no further agreement implementing the IMSL was ever negotiated, as a result of which Frontier's flight operations remained separate from those of RAH's other affiliates; and Section 3 and the other seniority-related provisions of the Frontier CBA otherwise remained in effect without modification following the effective date of the Eischen Award.

**The October 2011 Supplemental Award**

In your October 25, 2011 Supplemental Award ("October 2011 Supplemental Award"), you confirmed that the IMSL conferred only placement on the seniority list and that, absent an implementing agreement providing otherwise, bidding for vacant positions remained governed by the provisions of the existing collective bargaining agreements:

3)      The IMSL confers upon each listed pilot a specific seniority rank status, which differs from the seniority rank status that s/he held under the old

pre-acquisition seniority lists now superseded by the IMSL.  Unless and until the
Company and the IBT agree upon collectively bargained contractual modifications
or new Agreements, the IMSL does so in the context of the RJET/IBT Agreement
and the Frontier/FAPA Agreement Various collectively bargained provisions in those
respective Agreements address the invocation, utilization, administration,
implementation and retention of the seniority rank status conferred upon a pilot by
the IMSL.

> 4)    The Conditions/Restrictions set forth expressly in Part B of my
> February 19, 2011 Award are the only conditions, restrictions, exceptions,
> qualifications or limitations of the invocation, utilization, administration,
> implementation and retention of the IMSL seniority rank status conferred upon a pilot
> by Appendix A that are contained in or intended by the Award.

(October 2011 Supplemental Award, at 14.)  You further held that the Eischen Award did not
support or require any conditions or restrictions upon the exercise of IMSL seniority rank status for
schedule, vacation and other recurrent bidding purposes, including the exercise of IMSL seniority
by the Midwest Pilots hired by Frontier in March 2011 based on the effectiveness of the Eischen
Award:

> 5)    Nothing contained in or intended by the Award supports or requires
> the conditions, restrictions or limitations imposed during the September and October
> 2011 bidding periods upon the exercise of IMSL seniority rank status for schedule,
> vacation and other recurrent bidding by certain furloughed former Midwest pilots
> who were hired as Frontier First Officers during the period between February 19,
> 2011 and August 27, 2011.

(Id.)  Pursuant to your October 2011 Supplemental Award, the former Midwest Pilots hired by
Frontier in March 2011 were thereafter permitted to exercise their IMSL seniority for schedule,
vacation and other recurrent bidding, based on the effectiveness of the IMSL at that time.

### The NMB's 2014 Separate Carrier Finding and Certification of FAPA

As you also know, on October 1, 2013 RAH announced that it had entered into a definitive
agreement to sell Frontier Holdings and Frontier to an investment fund affiliated with Indigo
Partners, LLC. On December 3, 2013, RAH announced that it had closed on the sale of Frontier.  On
December 17, 2013, FAPA filed a petition with the NMB, seeking a finding that Frontier is a
separate transportation system, and certification as the exclusive bargaining representative of the
pilot craft and class in that system.   On March 31, 2014, the NMB issued its  Findings Upon
Investigation, finding that Frontier is a separate carrier from the RAH-affiliated carriers.  41 NMB

31 (2014).  The NMB found, *inter alia*, as follows:

Seniority Integration Agreement

Arbitrator Eischen issued the IMSL on February 19, 2011, before the Board's single system determination. Eischen noted that if the Board were to find Frontier separate from the Republic system, "the integration methodology of the Award will be applied with the Frontier pilots excluded." Further, the Award noted that its application may change if "facts and circumstances have materially changed."

While the 2011 IMSL covers all Pilots at Frontier and the RAH carriers, no collectively-bargained implementing agreement has even been concluded. Jacalyn Peters, Senior Director of Human Resources and Labor Relations for Frontier, stated that since the IBT's certification, Frontier has dealt with the IBT on a number of matters including contractual grievances, disciplinary investigations, and to enforce union dues. However, the IBT has not sought to enter into any Letters of Agreement or otherwise modify the existing Pilot CBA language. Further, neither the IBT nor Republic has requested negotiations over a joint CBA governing Pilots of the single transportation system determined by the NMB in 2011.

Accordingly, the Pilots at Frontier continue to work separately under the Frontier CBA ...

... .

There still remains an IMSL covering all Pilots on the formerly-found Republic Airlines, et al./Frontier single transportation system. However, no collectively bargained implementing agreement was ever concluded so the Frontier Pilots have been effectively operating separately under the Frontier CBA. Further, the only indicia still supporting Frontier's inclusion in the RAH single transportation system is the IMSL. This factor alone is insufficient to support finding Frontier part of the RAH transportation system, *See Republic Airlines, et al./Frontier*, 38 NMB 138, 154 (2011), *Northwest Airlines, Inc./Delta Air Lines, Inc.*, 37 NMB 88 (2009) (Board finds a single transportation system only when there is substantial integration of operations, financial control, and labor and personnel functions.); *See also Precision Valley Aviation, Inc., d/b/a Precision Airlines and Valley Flying Serv., Inc., d/b/a Northeast Express Reg'l Airlines*, 20 NMB 619 (1993) (a substantial degree of overlapping ownership, senior management, and Boards of Directors is critical to finding a single transportation system.).

41 NMB at 39, 41 (emphasis added).

Pursuant to that separate carrier finding, the NMB conducted an election among the pilots employed by Frontier, not including pilots on the IMSL who were not Frontier employees. The vote totals were:

| | |
|---|---|
| Eligible Employees | 651 |
| Total Valid Votes | 583 |
| IBT | 3 |
| FAPA | 507 |
| Write In (ALPA) | 73 |

Pursuant to that tally, on June 13, 2014, FAPA was certified by the NMB as the exclusive bargaining representative of the pilot craft or class in the separate Frontier transportation system. The IBT's certification was extinguished as of that date as it applied to Frontier. 41NMB 88 (2014).

## The September 2014 Supplemental Award

In the meantime, as you are aware, pursuant to the DRA and a separate November 26, 2013 Agreement to Arbitrate, the parties had submitted to you the issues whether the Eischen Award compelled Frontier to offer new first officer positions on Airbus aircraft to pilots on the IMSL according to their IMSL seniority before Frontier hired new pilots off the street; and whether the Eischen Award compelled Frontier to create and offer a bid process by which Republic pilots could bid for new first officer positions on Airbus aircraft based on their IMSL status before Frontier hired new pilots off the street.[1]  That matter was pending before you at the time the NMB found that Frontier is a separate carrier and certified FAPA as the bargaining representative at that separate carrier.  You solicited input from the parties as to the impact of the NMB's actions, in response to which the carriers and the Frontier Pilots Merger Committee took the position that, while you retained authority over the issues submitted to you for the period covered by the DRA, the DRA ceased to be effective upon the NMB's finding that Frontier is a separate carrier, since the conditions for the effectiveness of the DRA (and the IMSL) no longer obtained.

In your September 12, 2014 Supplemental Award (the "September 2014 Supplemental Award"), you held that the Eischen Award did not compel Frontier to offer new first officer positions on Airbus aircraft to pilots on the IMSL according to their IMSL seniority before Frontier hired new pilots off the street; or to create and offer a bid process by which Republic pilots could bid for new

---

[1]        As discussed below, the Midwest Merger Committee also sought to submit additional issues involving, *inter alia*, the status of the former Midwest CBA and the treatment of former Midwest Pilots who were removed from the IMSL after failing to accept recall at the RAH-affiliated carriers; and who have never been employed by Frontier.  Those matters were excluded from the proceeding leading to the September 2014 Supplemental Award; and the Midwest Merger Committee's attempt to submit those matters to you remains pending for decision.

first officer positions on Airbus aircraft based on their IMSL status before Frontier hired new pilots off the street. Those holdings made it unnecessary for you to reach the question of the status of the DRA or your authority in light of the NMB's separate carrier finding and certification of FAPA.

### The Events Leading to Mr. Clarke's Emails

Following the September 2014 Supplemental Award, in its capacity as exclusive bargaining representative, FAPA reiterated to Frontier that, as of no later than June 13, 2014, the IMSL was no longer effective, and requested that Frontier forthwith interpret and administer seniority in accordance with the terms of the Frontier CBA, pending the conclusion of a written document memorializing the parties' understandings. (Enclosure 1 hereto.) Frontier agreed. (Enclosure 2 hereto.) Among other things, this had the effect that, effective with the October 2014 bid month, the former Midwest Pilots hired by Frontier prior to the effective date of the IMSL reverted to their original contractual seniority under the Frontier CBA, which now applies for purposes of bidding for schedule, vacation and other recurrent bidding.

Frontier and FAPA have entered into a Letter of Agreement, confirming this interpretation and application of the terms of the Frontier CBA. In addition, irrespective of that interpretation and application of the Frontier CBA, Frontier and FAPA further agreed that, in the event of any dispute or inconsistency regarding the correct interpretation and application of such provisions, the agreed-upon administration of seniority will, in light of the same circumstances, represent reasonable working conditions and be consistent with proper compensation, by treating all pilots' seniority rights similarly based on the first date each pilot appeared on the payroll as a pilot employee of Frontier; restoring the normal seniority system historically used at Frontier as a separate carrier; and thereby furthering stability and the stated purposes of the Frontier CBA. (Enclosure 3 hereto.) The Letter of Agreement recites, in detail, the basis for the understandings confirmed therein. Pursuant to the FAPA Constitution and Bylaws, that Letter of Agreement has been submitted to membership ratification, which is pending.

As reflected in Mr. Clarke's September 25 email and the attachments thereto, commencing by email on September 20, 2014 he purported to invoke the processes of the DRA with respect to the Company's actions. (Clarke September 25, 2014 Email, Attachment.) By letter dated September 24, 2014, I responded on FAPA's behalf, explaining in detail that the DRA is no longer effective. (Id.) Frontier has concurred in that position. (Id.)[2]

---

[2]

In my September 24, 2014 letter, I also explained that, "[t]o the extent that the affected Frontier Pilots who you represent believe that Frontier is improperly administering seniority under the Frontier CBA, those pilots (although not the Midwest Merger Committee) may invoke the grievance procedure of that CBA pursuant to the terms thereof. FAPA will fulfill its obligations with respect to the processing of any such grievance in accordance with the CBA."

**1.**

**The DRA Is No Longer In Effect**

The DRA is no longer applicable to the separate Frontier transportation system, or to FAPA as the bargaining representative in the pilot craft or class in that separate system, for the reasons set forth in detail in my September 24, 2014 letter to Mr. Clarke; that explanation is by this reference incorporated herein.  To the extent that there is a minor dispute over the application of seniority at Frontier under the Frontier CBA, the proper recourse is through the minor dispute resolution provisions of that CBA.  However, the DRA confers no authority with respect to the matters raised in Mr. Clarke's September 24 and 25, 2014 emails.[3]

**2.**

**Even If The DRA Were Otherwise Effective,
You Have No Authority Over The Matters Asserted By Mr. Clarke**

Even if the DRA otherwise remained effective with respect to Frontier or FAPA – which, as just stated, it is not – the DRA confers no authority on you with respect to the matters encompassed by Mr. Clarke's September 24 and 25, 2014 emails.

Even if the DRA was effective, your authority with respect to disputes over the interpretation or application of the Eischen Award extended only to disputes arising within 120 days of the effective date of the Eischen Award, pursuant to Section V.j. of the DRA.  The matter asserted by Mr. Clarke arose more than 120 days following the effective date of the Eischen Award, and would therefore be subject to Section V.j. of the DRA.  That provision did not designate you as the neutral with respect to such matters.  There is obviously no agreement to submit this matter to you, and you therefore have no authority over the merits of the claim asserted by Mr. Clarke.

Nor, contrary to Mr. Clarke's assertion, do you have authority under Section V.c. of the DRA over the interpretation and application of the DRA in this matter, even if the DRA was otherwise effective.  Section V.c. of the DRA does not provide jurisdiction in perpetuity, as conceded by Mr. Clarke in prior correspondence.  In a September 16, 2011 letter from Mr. Clarke, argued that your jurisdiction to interpret the DRA under Section V.c. ceased when you issued the Eischen Award, and thereafter your only jurisdiction was pursuant to Section V.i. to resolve disputes regarding

---

[3]        The issue of responsibility for your fees and expenses has been raised.  Mr. Clarke has indicated that, if you find that you lack authority under the DRA, responsibility for those fees and expenses will fall on the party seeking unsuccessfully to invoke the DRA.  For the record, FAPA agrees with that conclusion.

interpretation of your award. (Enclosure 4 hereto.) In that letter, Mr. Clarke stated:

> [W]hile the Midwest pilots agree that DRA § V(c) gave you jurisdiction to resolve any dispute arising out of the interpretation or application of the DRA while you still had jurisdiction to devise the integrated seniority list, once that list was devised your jurisdiction is limited to the jurisdiction the Agreement reserved to you:  Disputes over the interpretation of the *Award* that arise within the first 120 days of the list's effective date.  DRA §V(I).  Thus, the dispute has to involve an interpretation of the Award to be within your reserved jurisdiction, but the issues the Frontier pilots seek to raise do not involve a disputed *interpretation* of the *Award*. ... While the DRA provides in Section V(I) for a limited retention of jurisdiction, there is no indication whatsoever in the Agreement that the jurisdiction conferred by Section V(c) was intended to be a stand-alone authorization, continuing *after* you decided your primary charge and became *functus officio*.  Indeed, the retention of jurisdiction in the DRA is expressly limited to resolving disputes "involving the interpretation of the award [that arise] within ... 120 days of the date the seniority integration becomes effective ..."

(See id. [emphasis in original].)   Accordingly, there is no agreement to submit to you the interpretation or application of the DRA in this matter.

3.

**There Is No Basis For Consolidating Mr. Clarke's Present
Request With The Pending Midwest Merger Committee Claims**

As you noted in your September 2014 Supplemental Award, pending before you is Mr. Clarke's January 27, 2014 submission on behalf of the Midwest Merger Committee.  That submission involves the treatment of former Midwest Pilots who were furloughed at the time the IMSL became effective, and were thereafter removed from the IMSL when they did not accept recall from furlough at the RAH carriers under the Chautaqua CBA. Unlike the pilots affected by the present matter, those pilots were never employed by Frontier. The Midwest Merger Committee's claims also involve, *inter alia*, the status of the pre-acquisition Midwest CBA.  The carriers and the Frontier Merger Committee have taken the position that the January 27, 2014 submission is substantively inarbitrable; and that you lack authority under Section V.c. of the DRA to interpret or apply the DRA in connection therewith.

There is no basis for consolidating Mr. Clarke's September 24 and 25, 2014 emails with that pending matter, for at least two reasons.  First, the pending matter has been fully briefed and awaiting decision since April 2014.  There is no reason to further delay your decision in that pending matter by injecting Mr. Clarke's new claims.

Second, the facts and issues raised by Mr. Clarke's present submission are distinct from those raised in the previously-pending matter. That matter involves, as noted, the treatment of the former Midwest CBA, and former Midwest Pilots who were removed from the IMSL by RAH, not Frontier, and who have never been employed by Frontier. The present matter, in contrast, involves the treatment of affected incumbent Frontier Pilots and the treatment of seniority under the current Frontier CBA following the NMB's finding of a separate carrier and certification of a separate bargaining representative. Even the issues regarding the status of the DRA are potentially distinct – the previously-pending matter involves facts arising during the period in which IBT was the single representative of a combined craft or class; while the present matter arose following the NMB's finding that Frontier is again a separate transportation system, and certification of FAPA as the bargaining representative at that separate carrier.

For these reasons, there is no agreement to the consolidation of these matters.

* * * * *

In summary, the DRA is no longer in effect; even if the DRA were otherwise effective, you would lack authority over either the substance of the issue asserted by Mr. Clarke, or the interpretation or application of the DRA in connection therewith; and there is no basis on which to consolidate Mr. Clarke's request with the previously pending claims asserted by the Midwest Merger Committee.

There is no agreement to submit these matters to you; accordingly, these are all issues of substantive arbitrability, over which you have no authority.

Thank you for your attention.

Very truly yours,

Wesley Kennedy

WK:td
encl.

cc w/encl. (By Email):          Robert Siegel, Esq.
                                Mark Robertson, Esq.
                                Lilia Bell, Esq.
                                William Wilder, Esq.
                                Cory Sewell
                                Brian Ketchum, FAPA
                                Joseph Goldhammer, Esq.

 Frontier Airline Pilots Association

September 13, 2014

**<u>BY EMAIL</u>**

Scott Gould, Vice President - Flight Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 60249

Dear Mr. Gould:

As you know, Section 1.F.1. of the Frontier CBA requires that all flying performed by the Company shall be performed by Pilots whose names appear on the Frontier Airlines, Inc. Pilots System Seniority List (the "Seniority List"). Section 3.A.1. of the Frontier CBA provides, in part: "The seniority of a Pilot shall begin to accrue from the date the Pilot is first placed on the Company payroll as a Pilot ..." Section 3.B. of the Frontier CBA requires that the Seniority List be maintained, updated and published in accordance with the provisions thereof.

Pursuant to the November 3, 2009 Dispute Resolution Agreement ("DRA"), Arbitrator Eischen's February 19, 2011 Eischen Award established an Integrated Master Seniority List ("IMSL"). However, among other things:

* Frontier was a party to the DRA and the Eischen Award only as an "affiliate" of Republic Airways Holdings, Inc. ("RAH").

* In his Award, Arbitrator Eischen acknowledged that "[i]t is unknown whether the NMB will find a single transportation system for the pilot craft or class; if so, which of the pre-acquisition carriers will be included; and what organization, if any, will be certified by the NMB as the representative of the combined pilot craft and class in such a single transportation system;" and therefore provided in the Eischen Award that the IMSL would not become effective until 60 days following the certification of a single bargaining representative for the combined craft or class following a finding of a single transportation system.

* Arbitrator Eischen also acknowledged in his Award that "[m]y arbitral authority under the DRA does not extend to elimination or modification of existing contract language or to resolution of issues unrelated to the seniority integration, which must be addressed in another forum or at the negotiations table;" that "applicable CBAs will remain applicable,

in accordance with their terms, until consolidated or otherwise modified by valid mutual agreement between the affected single carrier and a certified single pilot craft or class bargaining representative, if any;" and that, "[a]fter the NMB makes its determinations, the designated single representative and the Company must negotiate an implementing agreement and/or consolidate the applicable CBAs."

\*     The Eischen Award assumed a future finding by the NMB that a single transportation system existed including Frontier and the Frontier Pilots. Arbitrator Eischen found that, "if the NMB concludes that Frontier is not part of the Republic single transportation system for the pilot craft or class, the integration methodology of the Award will be applied with the Frontier pilots excluded."

\*     Although the IMSL became effective on or about August 27, 2011, 60 days following the certification of the IBT as the bargaining representative of the combined craft or class, no agreement implementing the Award was ever negotiated. In particular, Section 3 and the other provisions of the Frontier CBA regarding seniority have at all times remained in the Frontier CBA without modification.

As of December 3, 2013, Frontier ceased to be an "affiliate" of RAH. On March 31, 2014, the NMB found that Frontier now constitutes a separate transportation system. On June 13, 2014, the NMB certified FAPA as the exclusive bargaining representative of the pilot craft or class in that separate Frontier transportation system. As of June 13, 2014, Frontier is not an affiliate of RAH; Frontier is not part of a single transportation system with the RAH-affiliated carriers; the Frontier Pilots are not employed by RAH or any RAH affiliate; the Frontier Pilots are not part of a combined craft or class; FAPA is not the bargaining representative of a combined craft of class; and the Frontier CBA is not a collective bargaining agreement applicable to a combined craft or class. Accordingly, as of June 13, 2014 none of the conditions for the application of the Eischen Award and IMSL with respect to Frontier exist, and Section 3 and the other seniority-related provisions of the Frontier CBA apply by their terms without modification.

In his Supplemental Award issued on September 12, 2014, Arbitrator Eischen has confirmed that there are no contractual mechanisms for the transfer of pilots with IMSL seniority from the RAH operation to Frontier. Together with the NMB's findings and certification, that decision removes any practical risk that additional pilots would be granted the right to use IMSL seniority under the Frontier CBA.

Based on the foregoing, FAPA requests that the Company forthwith implement and apply the Frontier CBA in accordance with the foregoing interpretation for all contractual purposes, pending the conclusion of an appropriate agreed-upon written document memorializing the following:

---

1.      Effective June 13, 2014, the Eischen Award and the IMSL are no longer effective with respect to seniority under the Frontier CBA.

2.      Effective June 13, 2014, the seniority of a Pilot under the Frontier CBA shall be determined based on the date on which the Pilot was first placed on the Company payroll as a pilot, in accordance with Section 3.A.1. of the Frontier CBA; and the Frontier Airlines, Inc. Pilot System Seniority List or "Seniority List" shall be determined in accordance with Section 3.B. of the Frontier CBA.

3.      The Company will issue the Seniority List, effective as of June 13, 2014, which shall constitute the Seniority List a defined in Section 3.B. of the Frontier CBA.

4.      The Company will maintain and post an accurate copy of the Seniority List, as updated, in accordance with Section 3.B.3 of the Frontier CBA.

5.      A Pilot may protest his position on the Seniority List in accordance with Section 3.C. of the Frontier CBA.

Please provide your immediate acknowledgment of this letter, and confirmation that the Company will proceed accordingly.  We can then move forward with the formal written confirmation of the parties' understandings.

Thank you for your attention.

Very truly yours,

Brian Ketchum
President, FAPA

cc (By Email):          FAPA Board of Directors
                        Jacalyn W. Peter



## O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
CENTURY CITY
HONG KONG
JAKARTA†
LONDON
NEWPORT BEACH

**400 South Hope Street**
**Los Angeles, California  90071-2899**

TELEPHONE **(213) 430-6000**
FACSIMILE **(213) 430-6407**
**www.omm.com**

NEW YORK
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

OUR FILE NUMBER
**0288766**

**VIA EMAIL (deearb@gmail.com)**

October 10, 2014

Dana Edward Eischen
Arbitrator
P.O. Box 730
Spencer, NY 14883

WRITER'S DIRECT DIAL
**(213) 430-6005**

WRITER'S E-MAIL ADDRESS
**rsiegel@omm.com**

Re:  *Frontier Airlines' Response To John Clarke's E-mails of September 24-25, 2014*

Dear Arbitrator Eischen:

On behalf of Frontier Airlines, Inc. ("Frontier"), we write in response to Mr. Clarke's e-mails of September 24 and 25, 2014, purporting to invoke Section V(c) of the November 3, 2009 Dispute Resolution Agreement ("DRA") on behalf of the Midwest Pilots Merger Committee ("MPMC").  By submitting this response as a courtesy to you, Frontier does not waive and expressly reserves its argument that the question of arbitrability that exists here can only be resolved by a court.  *See, e.g.*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946 (1995) (arguing the arbitrability issue to an arbitrator does not indicate a willingness to arbitrate that issue).

For all of the reasons set forth in the Frontier Airline Pilots Association's ("FAPA's") October10, 2014 letter to you, which Frontier agrees with and incorporates by reference, Frontier does not agree to submit the matters raised in those e-mails to you, nor agree to consolidate those matters with the MPMC's February 27, 2014 attempt to invoke the DRA.  Frontier also incorporates by reference its June 2, 2014, and June 17, 2014 submissions to you.

As to the issue of your fees, Frontier believes that if you find that you lack authority under the DRA, responsibility for your fees and expenses should fall on the party seeking unsuccessfully to invoke the DRA.

Sincerely,

_____/s/  Robert A. Siegel_____
Robert A. Siegel
Counsel for Frontier Airlines

# DANA EDWARD EISCHEN, Attorney at Law
*Arbitration and Mediation of Labor Disputes and Employment Litigation*
P. O. BOX 730  SPENCER, NEW YORK  14883-0730 • T (607)-589-6261/F 589-9907  Admitted:  NY & DC

29 October 2014

John O'B. Clarke, Jr.
Highsaw, Mahoney & Clarke, P.C.
4142 Evergreen Drive
Fairfax, Virginia 22032-1018

Re: Invocation Of Jurisdiction Under DRA § V(c) To Resolve Disputes Over The Interpretation And Application Of The November 3, 2009 Dispute Resolution Agreement

Dear John:

By letters dated February 27, March 12 and September 24, 2014, you invoked Section V(c) of the November 3, 2009 Dispute Resolution Agreement (DRA) on behalf of the MPMC and asked me to resolve certain disputes, *viz.*:

1)      Whether the 2003 Midwest collective-bargaining agreement ("Former Midwest CBA") is a CBA "applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system" to which the seniority list award has been made a part by the first sentence of DRA V(j);

(2)      Whether certain issues the MPMC raised in a grievance filed with Frontier Airlines on January 28, 2014, are within the scope of Section V(j) of the DRA;

3)      Whether DRA § V(j) requires "the single carrier" to establish a system board of adjustment with jurisdiction to resolve the grievances raised by the MPMC arising out of the Seniority Integration Award and the applicable CBAs, in the absence of a consolidated CBA;

4)      Whether the DRA and IMSL Award still apply to Frontier after the NMB's March and June determinations concerning single carrier status and bargaining representation at Frontier;

5)      Whether FAPA is obligated under DRA § V(h) to authorize the merger committees to handle seniority integration related disputes.

Comment and legal memoranda were invited and filed with me by all Parties to the DRA.  IBT supported your application and Republic opposed it.  Frontier and FAPA also opposed and each made "special appearances" to raise substantive arbitrability objections, without waiving and expressly reserving the argument that whether a party has agreed to arbitrate the substance of a dispute is for the courts.  *See, e.g., First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 946 (1995) (arguing the threshold arbitrability issue to an arbitrator does not indicate a willingness to arbitrate that issue).

- 1 of 2-

John O'B. Clarke, Jr., October 29, 2014

After careful consideration of all of the arguments, evidence and authorities presented by Counsel concerning these matters, I find the substantive arbitrability objections advanced by Frontier well founded. It is apparent to me that the Parties have a *bona fide* disagreement over whether they in fact have an agreement to arbitrate disputes such as those submitted in your letters. Nor is there any clear and unmistakable provision between them empowering me rather than the courts to resolve that threshold issue.

In those circumstances, I conclude a colorable issue of substantive arbitrability is presented, over which the courts rather than the arbitrator has jurisdiction. *See AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator"). Beyond that, for most of the issues you submitted, *res judicata* arguments raised by the opposing parties appear to be supported by the U.S. District Court decision in *Frietas v. Republic Airways Holdings, Inc.,* 2011 WL 5506679 (E.D. Wis. Nov. 10, 2011).

Based upon all of the foregoing, I must respectfully decline your requests on behalf of the MPMC for my arbitral intervention.

Sincerely,

*Dana*

Dana E Eischen

cc:    Lilia Bell, Esq.
        Wes Kennedy, Esq.
        Robert Siegel. Esq.
        William Wilder, Esq.

LAW OFFICES
HIGHSAW, MAHONEY & CLARKE, P.C.
4142 EVERGREEN DRIVE
FAIRFAX, VIRGINIA 22032
(202) 296-8500
FAX (202) 296-7143
www.highsaw.com

JOHN O'B. CLARKE, JR.
jclarke@highsaw.com

JAMES L. HIGHSAW
1970 – 1992

Of Counsel
WILLIAM G. MAHONEY*
C. MADISON BREWER*
* Admitted in DC., Not Virginia

November 10, 2014

**VIA EMAIL**

Jacalyn Peter, Director-Human Relations
c/o Robert A. Siegel
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, California 90071-2899

Brian Ketchum, President
Frontier Airline Pilots Association
c/o Wesley G. Kennedy
Allison, Slutsky & Kennedy, P.C.
230 West Monroe Street, Suite 2600
Chicago, Illinois 60606

Re:  Appeal To Adjustment Board To Resolve Dispute By MPMC and Five Frontier
     First Officers Challenging Frontier's And FAPA's Abrogation Of IMSL Award

Dear Messrs. Siegel and Kennedy:

This letter is submitted on behalf of the Midwest Pilots Merger Committee (MPMC) and
my clients Frontier First Officers Gary Drska, Thomas Daniels, Mark Ward, Martin Burian, and
Daniel Norden, to appeal to the adjustment board that Section 204 of the Railway Labor Act, 45
U.S.C. § 184, requires be available to resolves disputes between a carrier and its employees
growing out of grievances, or out of the interpretation or application of agreements concerning
rates of pay, rules, or working conditions not resolved by handling on the property. This appeal is
being addressed to you as attorneys for your respective clients in light of your insistence that all
communications with your clients be through you.

As authorized by Section V(h) of the November 3, 2009 Dispute Resolution Agreement
(DRA), the MPMC invoked the dispute resolution processes of the Frontier/FAPA Collective-
Bargaining Agreement in Section 12 of that CBA to adjust the dispute raised by the decision of
Frontier Airlines, Inc. and the Frontier Airline Pilots Association (FAPA) to change the seniority
placement awarded by the February 19, 2011 Seniority Integration Award (IMSL Award) to
former Midwest pilots employed by Frontier. Frontier, with FAPA's concurrence has taken the

Jacalyn Peter, Director-Human Relations and
Brian Ketchum FAPA President
c/o Robert A. Siegel & Wesley G. Kennedy
November 10, 2014
Page 2 of 2

position that MPMC has no standing to invoke the CBA's dispute-resolution processes and both
parties have refused to address the merits of this dispute. The last such invocation of that process
occurred on October 16, 2014 when the MPMC invoked the Second Level for Grievances.
Neither Frontier nor FAPA have responded within the time frame provided by Frontier/FAPA
CBA § 12.E.2.b.

Accordingly, based upon the authority conferred upon the MPMC by DRA § V(h), the
MPMC hereby informs Frontier, FAPA and the other Merger Committees, including the Frontier
Pilots Merger Committee, that MPMC invokes the jurisdiction of the Frontier/FAPA board of
adjustment under DRA § V(j) and Sections 12.F and 14 of the Frontier/FAPA CBA. MPMC
invokes the adjustment board process to resolve the disputes raised by its earlier grievances,
including as set forth in its Second Level Grievance dated October 16, 2014. Further, as
authorized by § 14.D.2 of the Frontier/FAPA CBA, MPMC requests that the parties bypass the
CBA's SBA and go directly to a board of arbitration.

Should FAPA and/or Frontier deny that the MPMC has the authority under DRA § V(h)
to process this grievance or to invoke the DRA § V(j) and Frontier/FAPA adjustment board
process, the MPMC once again asks that Frontier and FAPA agree to submit to Arbitrator
Eischen under DRA § V(c) the dispute raised by their contrary interpretation and application of
the DRA.

Sincerely,

John O'B. Clarke, Jr.
Attorney for MPMC and Individual Grievants

cc:     Gary Drska (via email)
        Dan Norden (via email)
        Mark Ward (via email)
        Marty Burian (via email)
        Tom Daniels (via email)
        Carl Schwerman (via email)
        Robert Layman (via email)
        Don Till (via email)
        William R. Wilder (via email)
        Corey Sewell (via email)

11/8/2014

TO:     Gary Drska
        Dan Norden
        Marty Burian
        Mark Ward
        Tom Danials

Gentlemen:

As you know, on October 13, 2014, FAPA submitted your individual grievances to the First Step of the grievance procedure pursuant to Section 12.D.1. of the Frontier/FAPA CBA.   The Company denied those grievances pursuant to Section 12.D.2. of the CBA, and FAPA appealed those denials to the Second Step of the contractual grievance procedure pursuant to Section 12.E.1.b. of the CBA.  On October 30, 2014, the Company denied those Second Step appeals pursuant to Section 12.E.2.b. of the CBA. The next available step of the grievance procedure is submission of the grievances to the System Board of Adjustment established under the CBA pursuant to Section 14.C. of the CBA.

FAPA had no obligation to process your grievances under the CBA, but has done so.   In addition, although FAPA does not concede that it has any contractual, statutory or other obligation to submit your grievances to a System Board of Adjustment, based on the unique circumstances of this case and on a non-precedential basis FAPA intends to submit the grievances to the System Board of Adjustment within the time limits provided under Section 14.C. of the CBA.  In addition, although the CBA does not so provide, based on the unique circumstances of this case and on a non-precedential basis FAPA will not oppose a request by some or all of you to appear before the System Board of Adjustment, separately from and in addition to FAPA, with legal representation if you so request.  The System Board of Adjustment would otherwise be administered in accordance with the CBA.

FAPA will provide you with copies of the submission of the grievances to the System Board of Adjustment, and will notify you of the System Board Adjustment hearing.

Very truly yours,



Brian Ketchum
President

cc:     Jackie Peter
        FAPA Officers



November 8, 2014

# Confirmation of Appeal to the System Board of Adjustment

The following shall serve notice of the Association's appeal per Section 12.F of the FAPA CBA on behalf of Mark Ward.

**Grievance Number Assigned**: 9-271-2014

**The question or questions at issue and the alleged Section(s) of the Agreement to have been violated.**
The Grievance alleges that the Company violated Section 3 and/or other seniority-related provisions of the CBA by changing the Grievant's placement on the seniority list.

**A brief statement of the relevant information.**
Among other things, on December 3, 2013, Republic Airways Holdings sold Frontier to an entity controlled by Indigo Partners, LLC. On March 31, 2014, the National Mediation Board found that Frontier is a separate transportation system. On June 13, 2014, the NMB certified FAPA as the bargaining representative of the pilots craft or class in that transportation system. On September 12, 2014, Arbitrator Eischen issued his Supplemental Award, holding that Frontier has no obligation to award First Officer vacancies to incumbent RAH Pilots before hiring off of the street. Frontier has ceased applying the Integrated Master Seniority List, and is administering seniority as defined in Section 3 and related provisions of the CBA.

**A summary of the Position of the Association.**
The Association's position is as set forth in its letter to Frontier dated September 13, 2014, and in Letter of Agreement 71 of the CBA. However, based on the unique circumstances of this case and on a non-precedential basis, FAPA is submitting the Grievance to the System Board of Adjustment pursuant to Section 14.C. of the CBA. In addition, although the CBA does not so provide, based on the unique circumstances of this case and on a non-precedential basis, FAPA will not oppose a request by the Grievant to appear before the System Board of Adjustment, separately from and in addition to FAPA, with legal representation if the Grievant so requests. The System Board of Adjustment would otherwise be administered in accordance with the CBA.

**A summary of the Position of the Company.**
The Company has denied the Grievance.

**The requested relief.**
The Association understands that the Grievant requests rescission of the challenged management action, and other relief.

### Frontier Airline Pilots Association

18300 E. 71st, Suite 140

Denver, CO 80249