# EXHIBIT 3

LAW OFFICES

## ALLISON, SLUTSKY & KENNEDY, P.C.

SUITE 2600
230 WEST MONROE STREET
CHICAGO, ILLINOIS 60606
www.ask-attorneys.com

THOMAS D. ALLISON
MICHAEL H. SLUTSKY
WESLEY G. KENNEDY
KAREN I. ENGELHARDT
N. ELIZABETH REYNOLDS
(LICENSED IN ILLINOIS AND TEXAS)
ANGIE COWAN HAMADA
SARA S. SCHUMANN
RYAN M. THOMA

TELEPHONE
(312) 364-9400

FACSIMILE
(312) 364-9410

October 10, 2014

**BY EMAIL AND FIRST CLASS MAIL**

Arbitrator Dana E. Eischen
P.O. Box 730
Spencer, New York 14883-0730

> Re: Frontier Airlines, Inc.
> (Request to Invoke November 3, 2009 Dispute
> Resolution Agreement)

Dear Arbitrator Eischen:

On behalf of the Frontier Airline Pilots Association ("FAPA"), as the certified bargaining representative of the separate Frontier Airlines pilot craft or class, this is in response to Mr. Clarke's emails of September 24 and 25, and October 8, 2014, purporting to invoke Section V.c. of the November 3, 2009 Dispute Resolution Agreement ("DRA"). As more fully discussed below, (1) the DRA is no longer in effect; (2) even if the DRA were otherwise effective, you would lack authority over either the substance of the issue asserted by Mr. Clarke, or the interpretation or application of the DRA in connection therewith; and (3) there is no basis on which to consolidate Mr. Clarke's request with the previously-pending claims asserted by the Midwest Merger Committee. There is no agreement to submit these matters to you; accordingly, these are all issues of substantive arbitrability, over which you have no authority.

## Background

### The Eischen Award

As you know, on February 19, 2011 you issued your Award (the "Eischen Award") creating an Integrated Master Seniority List ("IMSL") and accompanying conditions and restrictions. However, because the parties had placed "the cart before the horse" (Eischen Award, at 43), you made the IMSL effective only 60 days following the future certification by the National Mediation Board ("NMB") of a single bargaining representative for the combined craft or class in a single transportation system. The IMSL was thus conditioned on a series of contingencies, including the existence of a single transportation system; and the certification of a single bargaining representative representing the combined pilot craft or class in that single transportation system. Among other

things, you made clear that "[i]t is unknown whether the NMB will find a single transportation system for the pilot craft or class; if so, which of the pre-acquisition carriers will be included; and what organization, if any, will be certified by the NMB as the representative of the combined pilot craft and class in such a single transportation system" (Eischen Award, at 42); and therefore provided that the IMSL would not become effective until 60 days following the certification of a single bargaining representative for the combined craft or class following a finding of a single transportation system. (Id., at 49.) You also held that, "if the NMB concludes that Frontier is not part of the Republic single transportation system for the pilot craft or class, the integration methodology of the Award will be applied with the Frontier pilots excluded." (Id., at 45.)

## Frontier's Hiring of Former Midwest
## Pilots as New-Hires Under the Frontier CBA

You will also recall that, in March 2011 – while those contingencies were still unknown, and the IMSL was therefore not effective – Frontier Airlines, Inc. ("Frontier") hired certain former Midwest Pilots as new-hire Frontier pilots. Those pilots' seniority at Frontier was determined in accordance with Section 3.A.1. of the Frontier CBA, which provides, in part: "The seniority of a Pilot shall begin to accrue from the date the Pilot is first placed on the Company payroll as a Pilot …."

## The NMB's 2011 Single Carrier Finding
## and Certification of the IBT

Thereafter, the NMB found a single transportation system including Frontier; and certified the International Brotherhood of Teamsters, Airline Division (the "IBT") as the bargaining representative of the combined pilot craft or class in that single transportation system. 28 NMB 138 (2011); 38 NMB 245 (2011). As a result, the IMSL became effective on August 27, 2011. However, no further agreement implementing the IMSL was ever negotiated, as a result of which Frontier's flight operations remained separate from those of RAH's other affiliates; and Section 3 and the other seniority-related provisions of the Frontier CBA otherwise remained in effect without modification following the effective date of the Eischen Award.

## The October 2011 Supplemental Award

In your October 25, 2011 Supplemental Award ("October 2011 Supplemental Award"), you confirmed that the IMSL conferred only placement on the seniority list and that, absent an implementing agreement providing otherwise, bidding for vacant positions remained governed by the provisions of the existing collective bargaining agreements:

> 3)     The IMSL confers upon each listed pilot a specific seniority rank status, which differs from the seniority rank status that s/he held under the old

pre-acquisition seniority lists now superseded by the IMSL. Unless and until the Company and the IBT agree upon collectively bargained contractual modifications or new Agreements, the IMSL does so in the context of the RJET/IBT Agreement and the Frontier/FAPA Agreement Various collectively bargained provisions in those respective Agreements address the invocation, utilization, administration, implementation and retention of the seniority rank status conferred upon a pilot by the IMSL.

> 4) The Conditions/Restrictions set forth expressly in Part B of my February 19, 2011 Award are the only conditions, restrictions, exceptions, qualifications or limitations of the invocation, utilization, administration, implementation and retention of the IMSL seniority rank status conferred upon a pilot by Appendix A that are contained in or intended by the Award.

(October 2011 Supplemental Award, at 14.) You further held that the Eischen Award did not support or require any conditions or restrictions upon the exercise of IMSL seniority rank status for schedule, vacation and other recurrent bidding purposes, including the exercise of IMSL seniority by the Midwest Pilots hired by Frontier in March 2011 based on the effectiveness of the Eischen Award:

> 5) Nothing contained in or intended by the Award supports or requires the conditions, restrictions or limitations imposed during the September and October 2011 bidding periods upon the exercise of IMSL seniority rank status for schedule, vacation and other recurrent bidding by certain furloughed former Midwest pilots who were hired as Frontier First Officers during the period between February 19, 2011 and August 27, 2011.

(Id.) Pursuant to your October 2011 Supplemental Award, the former Midwest Pilots hired by Frontier in March 2011 were thereafter permitted to exercise their IMSL seniority for schedule, vacation and other recurrent bidding, based on the effectiveness of the IMSL at that time.

**The NMB's 2014 Separate Carrier Finding
and Certification of FAPA**

As you also know, on October 1, 2013 RAH announced that it had entered into a definitive agreement to sell Frontier Holdings and Frontier to an investment fund affiliated with Indigo Partners, LLC. On December 3, 2013, RAH announced that it had closed on the sale of Frontier. On December 17, 2013, FAPA filed a petition with the NMB, seeking a finding that Frontier is a separate transportation system, and certification as the exclusive bargaining representative of the pilot craft and class in that system. On March 31, 2014, the NMB issued its Findings Upon Investigation, finding that Frontier is a separate carrier from the RAH-affiliated carriers. 41 NMB

31 (2014). The NMB found, *inter alia*, as follows:

<u>Seniority Integration Agreement</u>

Arbitrator Eischen issued the IMSL on February 19, 2011, before the Board's single system determination. <u>Eischen noted that if the Board were to find Frontier separate from the Republic system, "the integration methodology of the Award will be applied with the Frontier pilots excluded." Further, the Award noted that its application may change if "facts and circumstances have materially changed."</u>

<u>While the 2011 IMSL covers all Pilots at Frontier and the RAH carriers, no collectively-bargained implementing agreement has even been concluded.</u> Jacalyn Peters, Senior Director of Human Resources and Labor Relations for Frontier, stated that since the IBT's certification, Frontier has dealt with the IBT on a number of matters including contractual grievances, disciplinary investigations, and to enforce union dues. However, the IBT has not sought to enter into any Letters of Agreement or otherwise modify the existing Pilot CBA language. Further, neither the IBT nor Republic has requested negotiations over a joint CBA governing Pilots of the single transportation system determined by the NMB in 2011.

<u>Accordingly, the Pilots at Frontier continue to work separately under the Frontier CBA</u> ...

.... .

There still remains an IMSL covering all Pilots on the formerly-found Republic Airlines, et al./Frontier single transportation system. However, <u>no collectively bargained implementing agreement was ever concluded so the Frontier Pilots have been effectively operating separately under the Frontier CBA. Further, the only indicia still supporting Frontier's inclusion in the RAH single transportation system is the IMSL. This factor alone is insufficient to support finding Frontier part of the RAH transportation system.</u> *See Republic Airlines, et al./Frontier*, 38 NMB 138, 154 (2011), *Northwest Airlines, Inc./Delta Air Lines, Inc.*, 37 NMB 88 (2009) (Board finds a single transportation system only when there is substantial integration of operations, financial control, and labor and personnel functions.); *See also Precision Valley Aviation, Inc., d/b/a Precision Airlines and Valley Flying Serv., Inc., d/b/a Northeast Express Reg'l Airlines*, 20 NMB 619 (1993) (a substantial degree of overlapping ownership, senior management, and Boards of Directors is critical to finding a single transportation system.).

41 NMB at 39, 41 (emphasis added).

Pursuant to that separate carrier finding, the NMB conducted an election among the pilots employed by Frontier, not including pilots on the IMSL who were not Frontier employees. The vote totals were:

| Eligible Employees | 651 |
|---|---|
| Total Valid Votes | 583 |
| IBT | 3 |
| FAPA | 507 |
| Write In (ALPA) | 73 |

Pursuant to that tally, on June 13, 2014, FAPA was certified by the NMB as the exclusive bargaining representative of the pilot craft or class in the separate Frontier transportation system. The IBT's certification was extinguished as of that date as it applied to Frontier.  41NMB 88 (2014).

## The September 2014 Supplemental Award

In the meantime, as you are aware, pursuant to the DRA and a separate November 26, 2013 Agreement to Arbitrate, the parties had submitted to you the issues whether the Eischen Award compelled Frontier to offer new first officer positions on Airbus aircraft to pilots on the IMSL according to their IMSL seniority before Frontier hired new pilots off the street; and whether the Eischen Award compelled Frontier to create and offer a bid process by which Republic pilots could bid for new first officer positions on Airbus aircraft based on their IMSL status before Frontier hired new pilots off the street.[1]  That matter was pending before you at the time the NMB found that Frontier is a separate carrier and certified FAPA as the bargaining representative at that separate carrier.  You solicited input from the parties as to the impact of the NMB's actions, in response to which the carriers and the Frontier Pilots Merger Committee took the position that, while you retained authority over the issues submitted to you for the period covered by the DRA, the DRA ceased to be effective upon the NMB's finding that Frontier is a separate carrier, since the conditions for the effectiveness of the DRA (and the IMSL) no longer obtained.

In your September 12, 2014 Supplemental Award (the "September 2014 Supplemental Award"), you held that the Eischen Award did not compel Frontier to offer new first officer positions on Airbus aircraft to pilots on the IMSL according to their IMSL seniority before Frontier hired new pilots off the street; or to create and offer a bid process by which Republic pilots could bid for new

---

[1]        As discussed below, the Midwest Merger Committee also sought to submit additional issues involving, *inter alia*, the status of the former Midwest CBA and the treatment of former Midwest Pilots who were removed from the IMSL after failing to accept recall at the RAH-affiliated carriers; and who have never been employed by Frontier.  Those matters were excluded from the proceeding leading to the September 2014 Supplemental Award; and the Midwest Merger Committee's attempt to submit those matters to you remains pending for decision.

first officer positions on Airbus aircraft based on their IMSL status before Frontier hired new pilots off the street. Those holdings made it unnecessary for you to reach the question of the status of the DRA or your authority in light of the NMB's separate carrier finding and certification of FAPA.

## The Events Leading to Mr. Clarke's Emails

Following the September 2014 Supplemental Award, in its capacity as exclusive bargaining representative, FAPA reiterated to Frontier that, as of no later than June 13, 2014, the IMSL was no longer effective, and requested that Frontier forthwith interpret and administer seniority in accordance with the terms of the Frontier CBA, pending the conclusion of a written document memorializing the parties' understandings. (Enclosure 1 hereto.) Frontier agreed. (Enclosure 2 hereto.) Among other things, this had the effect that, effective with the October 2014 bid month, the former Midwest Pilots hired by Frontier prior to the effective date of the IMSL reverted to their original contractual seniority under the Frontier CBA, which now applies for purposes of bidding for schedule, vacation and other recurrent bidding.

Frontier and FAPA have entered into a Letter of Agreement, confirming this interpretation and application of the terms of the Frontier CBA. In addition, irrespective of that interpretation and application of the Frontier CBA, Frontier and FAPA further agreed that, in the event of any dispute or inconsistency regarding the correct interpretation and application of such provisions, the agreed-upon administration of seniority will, in light of the same circumstances, represent reasonable working conditions and be consistent with proper compensation, by treating all pilots' seniority rights similarly based on the first date each pilot appeared on the payroll as a pilot employee of Frontier; restoring the normal seniority system historically used at Frontier as a separate carrier; and thereby furthering stability and the stated purposes of the Frontier CBA. (Enclosure 3 hereto.) The Letter of Agreement recites, in detail, the basis for the understandings confirmed therein. Pursuant to the FAPA Constitution and Bylaws, that Letter of Agreement has been submitted to membership ratification, which is pending.

As reflected in Mr. Clarke's September 25 email and the attachments thereto, commencing by email on September 20, 2014 he purported to invoke the processes of the DRA with respect to the Company's actions. (Clarke September 25, 2014 Email, Attachment.) By letter dated September 24, 2014, I responded on FAPA's behalf, explaining in detail that the DRA is no longer effective. (Id.) Frontier has concurred in that position. (Id.)[2]

---

2

In my September 24, 2014 letter, I also explained that, "[t]o the extent that the affected Frontier Pilots who you represent believe that Frontier is improperly administering seniority under the Frontier CBA, those pilots (although not the Midwest Merger Committee) may invoke the grievance procedure of that CBA pursuant to the terms thereof. FAPA will fulfill its obligations with respect to the processing of any such grievance in accordance with the CBA."

**1.**

### The DRA Is No Longer In Effect

The DRA is no longer applicable to the separate Frontier transportation system, or to FAPA as the bargaining representative in the pilot craft or class in that separate system, for the reasons set forth in detail in my September 24, 2014 letter to Mr. Clarke; that explanation is by this reference incorporated herein. To the extent that there is a minor dispute over the application of seniority at Frontier under the Frontier CBA, the proper recourse is through the minor dispute resolution provisions of that CBA. However, the DRA confers no authority with respect to the matters raised in Mr. Clarke's September 24 and 25, 2014 emails.[3]

**2.**

### Even If The DRA Were Otherwise Effective,
### You Have No Authority Over The Matters Asserted By Mr. Clarke

Even if the DRA otherwise remained effective with respect to Frontier or FAPA – which, as just stated, it is not – the DRA confers no authority on you with respect to the matters encompassed by Mr. Clarke's September 24 and 25, 2014 emails.

Even if the DRA was effective, your authority with respect to disputes over the interpretation or application of the Eischen Award extended only to disputes arising within 120 days of the effective date of the Eischen Award, pursuant to Section V.j. of the DRA. The matter asserted by Mr. Clarke arose more than 120 days following the effective date of the Eischen Award, and would therefore be subject to Section V.j. of the DRA. That provision did not designate you as the neutral with respect to such matters. There is obviously no agreement to submit this matter to you, and you therefore have no authority over the merits of the claim asserted by Mr. Clarke.

Nor, contrary to Mr. Clarke's assertion, do you have authority under Section V.c. of the DRA over the interpretation and application of the DRA in this matter, even if the DRA was otherwise effective. Section V.c. of the DRA does not provide jurisdiction in perpetuity, as conceded by Mr. Clarke in prior correspondence. In a September 16, 2011 letter from Mr. Clarke, argued that your jurisdiction to interpret the DRA under Section V.c. ceased when you issued the Eischen Award, and thereafter your only jurisdiction was pursuant to Section V.i. to resolve disputes regarding

---

[3]      The issue of responsibility for your fees and expenses has been raised. Mr. Clarke has indicated that, if you find that you lack authority under the DRA, responsibility for those fees and expenses will fall on the party seeking unsuccessfully to invoke the DRA. For the record, FAPA agrees with that conclusion.

interpretation of your award. (Enclosure 4 hereto.) In that letter, Mr. Clarke stated:

> [W]hile the Midwest pilots agree that DRA § V(c) gave you jurisdiction to resolve any dispute arising out of the interpretation or application of the DRA while you still had jurisdiction to devise the integrated seniority list, once that list was devised your jurisdiction is limited to the jurisdiction the Agreement reserved to you: Disputes over the interpretation of the *Award* that arise within the first 120 days of the list's effective date. DRA §V(I). Thus, the dispute has to involve an interpretation of the Award to be within your reserved jurisdiction, but the issues the Frontier pilots seek to raise do not involve a disputed *interpretation* of the *Award*. ... While the DRA provides in Section V(I) for a limited retention of jurisdiction, there is no indication whatsoever in the Agreement that the jurisdiction conferred by Section V(c) was intended to be a stand-alone authorization, continuing *after* you decided your primary charge and became *functus officio*. Indeed, the retention of jurisdiction in the DRA is expressly limited to resolving disputes "involving the interpretation of the award [that arise] within ... 120 days of the date the seniority integration becomes effective ..."

(See *id*. [emphasis in original].) Accordingly, there is no agreement to submit to you the interpretation or application of the DRA in this matter.

3.

**There Is No Basis For Consolidating Mr. Clarke's Present
Request With The Pending Midwest Merger Committee Claims**

As you noted in your September 2014 Supplemental Award, pending before you is Mr. Clarke's January 27, 2014 submission on behalf of the Midwest Merger Committee. That submission involves the treatment of former Midwest Pilots who were furloughed at the time the IMSL became effective, and were thereafter removed from the IMSL when they did not accept recall from furlough at the RAH carriers under the Chautauqua CBA. Unlike the pilots affected by the present matter, those pilots were never employed by Frontier. The Midwest Merger Committee's claims also involve, *inter alia*, the status of the pre-acquisition Midwest CBA. The carriers and the Frontier Merger Committee have taken the position that the January 27, 2014 submission is substantively inarbitrable; and that you lack authority under Section V.c. of the DRA to interpret or apply the DRA in connection therewith.

There is no basis for consolidating Mr. Clarke's September 24 and 25, 2014 emails with that pending matter, for at least two reasons. First, the pending matter has been fully briefed and awaiting decision since April 2014. There is no reason to further delay your decision in that pending matter by injecting Mr. Clarke's new claims.

Second, the facts and issues raised by Mr. Clarke's present submission are distinct from those raised in the previously-pending matter. That matter involves, as noted, the treatment of the former Midwest CBA, and former Midwest Pilots who were removed from the IMSL by RAH, not Frontier, and who have never been employed by Frontier. The present matter, in contrast, involves the treatment of affected incumbent Frontier Pilots and the treatment of seniority under the current Frontier CBA following the NMB's finding of a separate carrier and certification of a separate bargaining representative. Even the issues regarding the status of the DRA are potentially distinct – the previously-pending matter involves facts arising during the period in which IBT was the single representative of a combined craft or class; while the present matter arose following the NMB's finding that Frontier is again a separate transportation system, and certification of FAPA as the bargaining representative at that separate carrier.

For these reasons, there is no agreement to the consolidation of these matters.

* * * * *

In summary, the DRA is no longer in effect; even if the DRA were otherwise effective, you would lack authority over either the substance of the issue asserted by Mr. Clarke, or the interpretation or application of the DRA in connection therewith; and there is no basis on which to consolidate Mr. Clarke's request with the previously pending claims asserted by the Midwest Merger Committee.

There is no agreement to submit these matters to you; accordingly, these are all issues of substantive arbitrability, over which you have no authority.

Thank you for your attention.

Very truly yours,

Wesley Kennedy

WK:td
encl.

cc w/encl. (By Email): Robert Siegel, Esq.
        Mark Robertson, Esq.
        Lilia Bell, Esq.
        William Wilder, Esq.
        Cory Sewell
        Brian Ketchum, FAPA
        Joseph Goldhammer, Esq.



# FAPA Frontier Airline Pilots Association

September 13, 2014

**BY EMAIL**

Scott Gould, Vice President - Flight Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 60249

Dear Mr. Gould:

As you know, Section 1.F.1. of the Frontier CBA requires that all flying performed by the Company shall be performed by Pilots whose names appear on the Frontier Airlines, Inc. Pilots System Seniority List (the "Seniority List"). Section 3.A.1. of the Frontier CBA provides, in part: "The seniority of a Pilot shall begin to accrue from the date the Pilot is first placed on the Company payroll as a Pilot ..." Section 3.B. of the Frontier CBA requires that the Seniority List be maintained, updated and published in accordance with the provisions thereof.

Pursuant to the November 3, 2009 Dispute Resolution Agreement ("DRA"), Arbitrator Eischen's February 19, 2011 Eischen Award established an Integrated Master Seniority List ("IMSL"). However, among other things:

\* Frontier was a party to the DRA and the Eischen Award only as an "affiliate" of Republic Airways Holdings, Inc. ("RAH").

\* In his Award, Arbitrator Eischen acknowledged that "[i]t is unknown whether the NMB will find a single transportation system for the pilot craft or class; if so, which of the pre-acquisition carriers will be included; and what organization, if any, will be certified by the NMB as the representative of the combined pilot craft and class in such a single transportation system;" and therefore provided in the Eischen Award that the IMSL would not become effective until 60 days following the certification of a single bargaining representative for the combined craft or class following a finding of a single transportation system.

\* Arbitrator Eischen also acknowledged in his Award that "[m]y arbitral authority under the DRA does not extend to elimination or modification of existing contract language or to resolution of issues unrelated to the seniority integration, which must be addressed in another forum or at the negotiations table;" that "applicable CBAs will remain applicable,

in accordance with their terms, until consolidated or otherwise modified by valid mutual agreement between the affected single carrier and a certified single pilot craft or class bargaining representative, if any;" and that, "[a]fter the NMB makes its determinations, the designated single representative and the Company must negotiate an implementing agreement and/or consolidate the applicable CBAs."

\*     The Eischen Award assumed a future finding by the NMB that a single transportation system existed including Frontier and the Frontier Pilots. Arbitrator Eischen found that, "if the NMB concludes that Frontier is not part of the Republic single transportation system for the pilot craft or class, the integration methodology of the Award will be applied with the Frontier pilots excluded."

\*     Although the IMSL became effective on or about August 27, 2011, 60 days following the certification of the IBT as the bargaining representative of the combined craft or class, no agreement implementing the Award was ever negotiated. In particular, Section 3 and the other provisions of the Frontier CBA regarding seniority have at all times remained in the Frontier CBA without modification.

As of December 3, 2013, Frontier ceased to be an "affiliate" of RAH. On March 31, 2014, the NMB found that Frontier now constitutes a separate transportation system. On June 13, 2014, the NMB certified FAPA as the exclusive bargaining representative of the pilot craft or class in that separate Frontier transportation system. As of June 13, 2014, Frontier is not an affiliate of RAH; Frontier is not part of a single transportation system with the RAH-affiliated carriers; the Frontier Pilots are not employed by RAH or any RAH affiliate; the Frontier Pilots are not part of a combined craft or class; FAPA is not the bargaining representative of a combined craft of class; and the Frontier CBA is not a collective bargaining agreement applicable to a combined craft or class. Accordingly, as of June 13, 2014 none of the conditions for the application of the Eischen Award and IMSL with respect to Frontier exist, and Section 3 and the other seniority-related provisions of the Frontier CBA apply by their terms without modification.

In his Supplemental Award issued on September 12, 2014, Arbitrator Eischen has confirmed that there are no contractual mechanisms for the transfer of pilots with IMSL seniority from the RAH operation to Frontier. Together with the NMB's findings and certification, that decision removes any practical risk that additional pilots would be granted the right to use IMSL seniority under the Frontier CBA.

Based on the foregoing, FAPA requests that the Company forthwith implement and apply the Frontier CBA in accordance with the foregoing interpretation for all contractual purposes, pending the conclusion of an appropriate agreed-upon written document memorializing the following:

1.     Effective June 13, 2014, the Eischen Award and the IMSL are no longer effective with respect to seniority under the Frontier CBA.

2.     Effective June 13, 2014, the seniority of a Pilot under the Frontier CBA shall be determined based on the date on which the Pilot was first placed on the Company payroll as a pilot, in accordance with Section 3.A.1. of the Frontier CBA; and the Frontier Airlines, Inc. Pilot System Seniority List or "Seniority List" shall be determined in accordance with Section 3.B. of the Frontier CBA.

3.     The Company will issue the Seniority List, effective as of June 13, 2014, which shall constitute the Seniority List a defined in Section 3.B. of the Frontier CBA.

4.     The Company will maintain and post an accurate copy of the Seniority List, as updated, in accordance with Section 3.B.3 of the Frontier CBA.

5.     A Pilot may protest his position on the Seniority List in accordance with Section 3.C. of the Frontier CBA.

Please provide your immediate acknowledgment of this letter, and confirmation that the Company will proceed accordingly. We can then move forward with the formal written confirmation of the parties' understandings.

Thank you for your attention.

Very truly yours,

Brian Ketchum
President, FAPA

cc (By Email):          FAPA Board of Directors
                        Jacalyn W. Peter

| | |
|---|---|
| **From:** | Brian Ketchum <brian.ketchum@fapapilots.com> |
| **Sent:** | Monday, September 22, 2014 11:44 AM |
| **To:** | Wes Kennedy |
| **Subject:** | Fwd: Frontier Pilot Seniority List |
| **Attachments:** | Seniority_List.pdf; Untitled attachment 00305.htm |

Sent from my iPhone

Begin forwarded message:

**From:** "Gould, Scott" <SGould@flyfrontier.com>
**Date:** September 13, 2014 at 2:44:43 PM PDT
**To:** Brian Ketchum <brian.ketchum@fapapilots.com>
**Cc:** "Peter, Jacalyn" <jpeter@flyfrontier.com>, Manke Spencer
<spencer.manke@fapapilots.com>, Kugler John <john.kugler@fapapilots.com>, Haffling
Michael <mike.haffling@fapapilots.com>, Peterson Craig <craig.peterson@fapapilots.com>,
Maynard Michael <michael.maynard@fapapilots.com>, Coons Dave
<dave.coons@fapapilots.com>, "Siegel, David N." <David.Siegel@flyfrontier.com>, "Bob
Siegel (rsiegel@omm.com)" <rsiegel@omm.com>, "Biffle, Barry L."
<Barry.Biffle@flyfrontier.com>, "Meehan, Bill" <Bill.Meehan@flyfrontier.com>, "Ryan,
Patrick J." <Patrick.Ryan@flyfrontier.com>
**Subject: RE: Frontier Pilot Seniority List**

Brian,

Frontier acknowledges and consents to the attached request from FAPA. The FLiCA bid system
will be adjusted as requested to be effective for the current bid close (0900 September 14, 2014)
for the October Monthly Bid Period. The seniority list will be adjusted and posted no later than
October 1, 2014 per Section 3.B.3. This email shall constitute notice of the change in accordance
with Section 3.B.2. of the CBA.

Pursuant to this request, we expect FAPA shall notify the affected pilots of the requested changes
prior to the bid close to allow for adjustments to bids.

Scott Gould

Vice President, Flight Operations
FRONTIER AIRLINES
720-374-4288
sgould@flyfrontier.com
www.FLYFRONTIER.com

-----Original Message-----
From: Brian Ketchum [mailto:brian.ketchum@fapapilots.com]

1

Sent: Saturday, September 13, 2014 2:05 PM
To: Gould, Scott
Cc: Peter, Jacalyn; Manke Spencer; Kugler John; Haffling Michael; Peterson Craig; Maynard Michael; Coons Dave
Subject: Frontier Pilot Seniority List

Scott,

In light of yesterday's Eischen arbitration decision, attached is a document describing FAPA's position regarding the correct application of the Frontier Pilot seniority list, including our request to adjust the list accordingly. Please advise if you have any questions.

Respectfully,

Brian Ketchum

Letter of Agreement 71

First Officer Brian Ketchum
President
Frontier Airline Pilots Association
18300 E. 71st Avenue, Suite 140
Denver, CO 80249

**Seniority List**

Dear First Officer Ketchum:

This Agreement is entered into by FRONTIER AIRLINES, INC. ("Frontier" or the "Company") and the FRONTIER AIRLINE PILOTS ASSOCIATION ("FAPA" or the "Association") confirming the parties' mutual understandings as to the correct interpretation and application of the seniority-related provisions of the Frontier CBA and the reasonable seniority system to be followed at Frontier as a separate carrier, and shall constitute Letter of Agreement 71 to the collective bargaining agreement governing the terms and conditions of employment of the Pilot employees of Frontier (the "Frontier CBA").

WHEREAS Section 1.B.2. of the Frontier CBA provides: "The purpose of this Agreement, in the mutual interest of the Company and the Association, is to provide for the operation of the Company under methods which shall further, to the fullest extent possible, the safety of air transportation, the efficiency of operation, the sustained profitability of the Company and the continued employment of all Pilots under reasonable working conditions and with proper compensation;" and, as a legitimate subject of collective bargaining, the seniority rights of the pilot employees of Frontier are governed by the Frontier CBA;

WHEREAS Section 1.F.1. of the Frontier CBA requires that all flying performed by the Company shall be performed by Pilots whose names appear on the Frontier Airlines, Inc. Pilots System Seniority List (the "Seniority List");

WHEREAS Section 3.A.1. of the Frontier CBA provides, in part: "The seniority of a Pilot shall begin to accrue from the date the Pilot is first placed on the Company payroll as a Pilot ...;" and Section 3.B. of the Frontier CBA requires that the Seniority List be maintained, updated and published in accordance with the provisions thereof;

WHEREAS, effective October 31, 2009, Frontier Holdings, Inc. and its affiliates, including the Company, were acquired by Republic Airways Holdings, Inc. ("RAH");

WHEREAS, in connection with the RAH acquisition, the Company and FAPA entered into Letter of Agreement 39 to the Frontier CBA ("LOA 39"), which provided, in part, for the creation of a Master Seniority List ("MSL" or "IMSL") including the pilots of Frontier and the other RAH affiliates, in accordance with Sections 3 and 13 of the Allegheny/Mohawk Labor Protective Provisions, but also provided, with respect thereto:

1

Such MSL list shall be applied for transfer of pilots between the Company and any RAH entity only as may be hereafter agreed to by RAH, FAPA (or any properly-designated successor to FAPA) and the properly-designated representative of Republic pilots or any other pilot group of an RAH entity. The carriers will be operated separately under their respective CBAs without integration of the Pilot seniority lists until such integration and implementation is agreed to and concluded in accordance with Sections 3 and 13 of the Allegheny-Mohawk LPPs;

WHEREAS, on November 3, 2009, a Dispute Resolution Agreement ("DRA") establishing the procedure for the creation of the IMSL was entered into among "Republic Airways Holdings Inc. (RAH), on behalf of itself and its wholly owned affiliates Republic Airline Inc., Chautauqua Airlines, Inc. and Shuttle America Corp. (hereinafter collectively, "Republic"), Midwest Airlines, Inc., Frontier Airlines, Inc. and Lynx Aviation, Inc. (RAH and its affiliates together one "party" under this Agreement), and the Republic, Midwest, Frontier and Lynx pilots, as represented by their respective Seniority Merger Committees (the "Merger Committees") as duly created and authorized by each pilot group's duly designated representative (each such Merger Committee another "party" under this Agreement);" and Frontier was thus a party to the DRA only insofar as it was a "wholly owned affiliate" of RAH;

WHEREAS, pursuant to Section II.(e) and V.(g) of the DRA, an IMSL could not become effective before "the National Mediation Board (NMB) issues its ruling on whether the RAH affiliates comprise a single transportation system and certifies the Organization, if any, that is the duly designated representative of the pilot craft or class on that transportation system;" Section V.(g) of the DRA provided that the seniority arbitrator's award be final and binding on the single carrier and "the pilots employed by RAH and its affiliates;" Section V.(h) of the DRA provided for the continued existence of the Merger Committees solely pursuant to the authority of "[t]he Organization, if any, designated by the NMB as the duly designated representative of the combined craft or class of Flight Deck Crew Members for the single transportation system;" and Section V.(j) of the DRA required that the seniority arbitrator's award be considered to be a part of "the collective bargaining agreement(s) applicable to the combined craft or class," and provided for the resolution of disputes arising from the interpretation and application of the award before "the adjustment board established by the designated representative of the combined craft or class and the single carrier of Flight Deck Crew Members for the single transportation system final and binding on the single carrier;"

WHEREAS, pursuant to the DRA, an arbitration was held before Arbitrator Dana E. Eischen resulting in a February 19, 2011 Award creating and IMSL subject to specified conditions (the "Eischen Award");

WHEREAS, in his Award, Arbitrator Eischen acknowledged that "[i]t is unknown whether the NMB will find a single transportation system for the pilot craft or class; if so, which of the pre-acquisition carriers will be included; and what organization, if any, will be certified by the NMB as the representative of the combined pilot craft and class in such a single

transportation system," and therefore provided in the Eischen Award that the IMSL would not become effective until 60 days following the certification of a single bargaining representative for the combined craft or class following a finding of a single transportation system;

WHEREAS Arbitrator Eischen also acknowledged in his Award that "[m]y arbitral authority under the DRA does not extend to elimination or modification of existing contract language or to resolution of issues unrelated to the seniority integration, which must be addressed in another forum or at the negotiations table;" and that, "[a]fter the NMB makes its determinations, the designated single representative and the Company must negotiate an implementing agreement and/or consolidate the applicable CBAs;"

WHEREAS the Eischen Award assumed a future finding by the NMB that a single transportation system existed including Frontier and the Frontier Pilots, and that, "if the NMB concludes that Frontier is not part of the Republic single transportation system for the pilot craft or class, the integration methodology of the Award will be applied with the Frontier pilots excluded;"

WHEREAS in March 2011, before the Eischen Award became effective, Frontier hired certain former Midwest Pilots as new hires at Frontier, at which time said pilots were first placed on the Company payroll as pilots, with seniority determined in accordance with Section 3.A.1. of the Frontier CBA;

WHEREAS, pursuant to an application by the International Brotherhood of Teamsters, Airline Division (the "IBT"), on April 7, 2011 the NMB found that a single transportation system existed including, *inter alia*, Frontier and the RAH-affiliated carriers, pursuant to which, on June 28, 2011, the NMB certified the IBT as the single bargaining representative for the combined pilot craft or class,

WHEREAS, the Eischen Award therefore became effective on August 27, 2011; but no agreement implementing the Eischen Award and/or modifying LOA 39 was ever negotiated, as a result of which Frontier's flight operations remained separate from those of RAH's other affiliates; and Section 3 and the other seniority-related provisions of the Frontier CBA otherwise remained in effect without modification following the effective date of the Eischen Award;

WHEREAS, in a Supplemental Award issued on October 22, 2011 (the "October 2011 Supplemental Award"), Arbitrator Eischen reiterated that, while the IMSL "confer[red] on each pilot a specific seniority rank status", "[u]nless and until the Company and the IBT agree upon collectively bargained contractual modifications or new Agreements, the IMSL does so in the context of the RJET/IBT Agreement and the Frontier/FAPA Agreement. Various collectively bargained provisions in those respective Agreements address the invocation, utilization, administration, implementation and retention of the seniority rank status conferred upon a pilot by the IMSL;"

WHEREAS, in the October 2011 Supplemental Award, Arbitrator Eischen held that the Eischen Award did not support or require any conditions or restrictions upon the exercise of

3

IMSL seniority rank status for schedule, vacation and other recurrent bidding purposes, including the exercise of IMSL seniority by the Midwest Pilots hired by Frontier in March 2011 based on the effectiveness of the Eischen Award;

WHEREAS, in a further Supplemental Award issued on September 12, 2014 (the "September 2014 Supplemental Award"), Arbitrator Eischen reiterated that "'seniority rank status' through placement on the IMSL does not, in and of itself, confer any specific contractual right to the 'invocation, utilization, administration or implementation' of that status for any given position—all of which must be determined by reference to the terms of the existing CBAs," and that 'the hard work of amending currently applicable contractual provisions to facilitate expanded utilization of the seniority rank status conferred by the IMSL must be done at the bargaining table, not by an end run through the arbitration forum;" and held that the Eischen Award does not compel the awarding of vacancies at Frontier except through the contractual processes of the Frontier CBA;

WHEREAS, pursuant to Letter of Agreement 67 of the Frontier CBA ("LOA 67"), between June 24, 2011 and December 3, 2013, RAH and Frontier took various actions to separate Frontier from RAH and the other RAH affiliates; effective December 3, 2013, RAH sold a 100 per cent interest in Frontier to an investment group controlled by Indigo Partners, LLC, in which RAH had no interest; and, effective December 3, 2013, Frontier ceased to be an affiliate of RAH;

WHEREAS, on March 31, 2014, pursuant to a petition by FAPA, the NMB found that Frontier is a separate carrier from the RAH-affiliated carriers, noting, in part:

Arbitrator Eischen issued the IMSL on February 19, 2011, before the Board's single system determination. Eischen noted that if the Board were to find Frontier separate from the Republic system, "the integration methodology of the Award will be applied with the Frontier pilots excluded." Further, the Award noted that its application may change if "facts and circumstances have materially changed ...;"

WHEREAS, on June 13, 2014, the NMB certified FAPA as the exclusive bargaining representative of the Frontier Pilot craft or class;

WHEREAS, based on the foregoing, as of June 13, 2014 and thereafter, Frontier is not an affiliate of RAH; Frontier is not part of a single transportation system with the RAH-affiliated carriers; the Frontier Pilots are not employed by RAH or any RAH affiliate; the Frontier Pilots are not part of a combined craft or class; FAPA is not the bargaining representative of a combined craft of class; and the Frontier CBA is not a collective bargaining agreement applicable to a combined craft or class;

WHEREAS, accordingly, as of June 13, 2014 none of the conditions for the application of the Eischen Award and IMSL with respect to Frontier exist, and Section 3 and the other seniority-related provisions of the Frontier CBA apply by their terms without modification;

WHEREAS, Frontier and FAPA have mutually agreed on the correct interpretation and application of the seniority-related provisions of the Frontier CBA in light of the foregoing;

WHEREAS, in addition to representing the correct interpretation and application of the existing seniority-related provisions of Frontier CBA, Frontier and FAPA have agreed that, in the event of any dispute or inconsistency regarding the correct interpretation and application of such provisions, the administration of seniority agreed upon in this Letter of Agreement will, in light of the same circumstances, represent reasonable working conditions and be consistent with proper compensation, by treating all pilots' seniority rights similarly based on the first date each pilot appeared on the payroll as a pilot employee of Frontier; restoring the normal seniority system historically used at Frontier as a separate carrier; and thereby furthering stability and the stated purposes of the Frontier CBA;

WHEREAS, as of September 13, 2014, at FAPA's request the Company is administering the Frontier CBA in accordance with those understandings; and

WHEREAS it is desirable to set out with specificity the parties' mutual understandings as to the correct interpretation and application of the seniority-related provisions of the Frontier CBA, and in any event the reasonable seniority system to follow for Frontier as a separate carrier; and the Company and the Association accordingly wish to confirm in writing those understandings;

IT IS NOW THEREFORE AGREED AS FOLLOWS:

1.      Effective June 13, 2014, the Eischen Award and the IMSL (including any restriction on a pilot's exercise of contractual seniority), are no longer effective with respect to seniority under the Frontier CBA.

2.      Effective June 13, 2014, the seniority of a Pilot under the Frontier CBA shall be determined based on the date on which the Pilot was first placed on the Company payroll as a pilot, in accordance with Section 3.A.1. of the Frontier CBA; and the Frontier Airlines, Inc. Pilot System Seniority List or "Seniority List" shall be determined in accordance with Section 3.B. of the Frontier CBA.

3.      A copy of the Seniority List, effective as of June 13, 2014, is attached as Appendix 1 to this Letter of Agreement, and shall constitute the Seniority List as defined in Section 3.B. of the Frontier CBA.

4.      The Company will maintain and post an accurate copy of the Seniority List, as updated, in accordance with Section 3.B.3 of the Frontier CBA.

5.      A Pilot may protest his position on the Seniority List in accordance with Section 3.C. of the Frontier CBA.

5

6.      Unless otherwise specifically provided in this Letter of Agreement, all terms in this Letter of Agreement shall have the meaning they have under the Frontier CBA.

7.      This written Letter of Agreement, confirming the parties' mutual understandings as to the correct interpretation and application of the seniority-related provisions of the Frontier CBA and the reasonable seniority system to be followed at Frontier as a separate carrier, shall be effective upon ratification of this written Letter of Agreement pursuant to FAPA Constitution and Bylaws.

IN WITNESS WHEREOF, the parties hereto have signed this Letter of Agreement this 9th day of October, 2014

FOR: Frontier Airlines, Inc.                    FOR: Frontier Airline Pilots Association


_____            _____

Captain Scott Gould                         First Officer Brian Ketchum
VP-Flight Operations                        President

# Highsaw, Mahoney & Clarke, P.C.

4142 Evergreen Drive
Fairfax, Virginia 22032
(202) 296-8500

JOHN O'B. CLARKE, JR.

Fax: (202) 296-7143
WWW.HIGHSAW.COM

JAMES L. HIGHSAW
1970-1992

OF COUNSEL
WILLIAM G. MAHONEY*
C. MADISON BREWER*

* Admitted in D.C. Only

September 16, 2011

**BY ELECTRONIC MAIL AND FIRST CLASS MAIL**

Dana E. Eischen
P.O. Box 730
Spencer, New York 14883-0730

> Re:  *In re*: Republic Airways Holdings Inc./Midwest Airlines, Inc., *et al*–Pilot Seniority
> Integration Dispute
> Request By Frontier Pilots For Interpretation of DRA Section V(h)

Dear Mr. Eischen:

This letter is respectfully submitted by the Midwest Airlines Pilots' Merger Committee in response to the request by certain Frontier pilots through Mr. Kennedy for an interpretation of Section V(h) of the Section 13(b) Dispute Resolution Agreement (DRA). The Midwest Committee submits that you do not have jurisdiction over the disputes the Frontier pilots seek to place before you.

As the Frontier pilots' letter notes, Section V(h) of the DRA expressly provides for the continuation of the four Merger Committees. It spells out the Committees' authority and provides that the labor organization designated as the representative for the craft or class of pilots employed by the single carrier "shall have the authority over the manner in which the Merger Committees' operations are financed." Relying upon Section V(c) of the DRA, which gives the Section 13(b) Arbitrator the power "to resolve any dispute arising out of the interpretation or application of this Agreement", the Frontier pilots assume that you therefore have jurisdiction to determine whether the actions of the International Brotherhood of Teamsters (IBT), about which the Frontier pilots complain, breached the Section 13(b) Agreement. That assumption, however, is mistaken, for two reasons. First, the Section 13(b) Agreement cannot be viewed as giving you jurisdiction over the IBT, which was not a party to the Agreement and is not a party to the multi-party board of adjustment established by that Agreement. And second, while the Midwest pilots agree that DRA § V(c) gave you jurisdiction to resolve any dispute arising out of the interpretation or application of the DRA while you still had jurisdiction to devise the integrated seniority list, once that list was devised your jurisdiction is limited to the jurisdiction the Agreement reserved to you: Disputes over the interpretation of the *Award* that arise within the first 120 days of the list's effective date. DRA

§ V(i). Thus, the dispute has to involve an interpretation of the *Award* to be within your reserved jurisdiction, but the issues the Frontier pilots seek to raise do not involve a disputed *interpretation* of the *Award*.

The disputes the Frontier pilots seek to place before you deal with the actions the IBT took in response to the Frontier pilots' suit to set aside your Award, something that is not *expressly* authorized by DRA § V(h). Indeed, it is difficult to conceive of it even being *implicitly* authorized, for claiming that the Award exceeded your jurisdiction is not "adjusting any dispute or disputes that might arise as to the interpretation or application of the award" (DRA § V(h)), all of which presume that there is a valid award. While the Frontier pilots and the IBT are correct in looking in part to Section V(h) of the DRA to define the Frontier Committee's *continued* authority, that is only one aspect of many that must be examined, for the scope of the Committee's authority is governed by Section 2 Fourth of the Railway Labor Act (RLA), 45 U.S.C. § 152 Fourth, and the federal common law of agency, contracts and labor-management relations–matters over which you have not been given jurisdiction. Moreover, it involves an actor–the IBT–that it is not a party to the DRA and, thus, is not subject to your jurisdiction. Nor can it be argued that the dispute is one within the contemplation of RLA § 204 and, thus, within this Board's jurisdiction, because a dispute between a union and the *employees* it represents, that does not involve a carrier, is *not* a minor dispute under the RLA. *Czosek v. O'Mara*, 397 U.S. 25, 27-28 (1970) ("And surely it is beyond cavil that a suit against the union for breach of its duty of fair representation is not within the jurisdiction of the National Railroad Adjustment Board or subject to the ordinary rule that administrative remedies should be exhausted before resort to the courts").[1/] Since the actual dispute between the Frontier pilots and the IBT is not before you, what the Frontier pilots are asking from you is an advisory opinion–something that the DRA does not authorize you to issue.

Additionally, it is an unwarranted extension of your jurisdiction to assume, as the Frontier pilots do, that an arbitrator who has completed his primary function continues to retain jurisdiction under the RLA § 204 agreement establishing the adjustment board to resolve collateral issues that have arisen *after* he has completed his primary assignment and become *functus officio*. It is well established–albeit frequently critiqued–that once an arbitrator has performed his office he is discharged from it. *Glass Workers v. Excelsior Foundry Co.*, 56 F.3d 844, 845 (7th Cir. 1995) ("The arbitrator has performed his office and having done so has been discharged from it"); *Anderson v. Norfolk & Western Ry.*, 773 F.2d 880, 883 (7th Cir. 1985) ("'It is undisputed that, after a final decision by an arbitrator, the arbitrator becomes *functus officio* and lacks the power to reconsider or amend the decision'") (citation omitted).[2/] While the DRA provides in Section V(i) for a limited retention of jurisdiction, there is no indication whatsoever in the Agreement that the jurisdiction conferred by Section V(c) was intended to be a stand-alone authorization, continuing *after* you

---

[1/]     A copy of that decision is attached hereto.

[2/]     Copies of both Seventh Circuit decisions are attached to this response.

decided your primary charge and became *functus officio*. Indeed, the retention of jurisdiction in the DRA is expressly limited to resolving disputes "involving an interpretation of the *award* [that arise] within one hundred and twenty (120) days of the date the seniority integration becomes effective . . . ." DRA § V(i) (emphasis added). Since the dispute the Frontier pilots seek to raise is not one involving an interpretation of your Award, they cannot point to any jurisdiction you retained or have under the DRA to consider their issues.

For the reasons set forth above, the Midwest Committee submits that you should dismiss the Frontier pilots' submission for lack of jurisdiction.

Respectfully Submitted,

John O'B. Clarke, Jr.
Attorney for Midwest Pilots' Merger Committee

Enclosures

cc:    Lilia R. Bell
       William Wilder
       Wesley Kennedy
       Clinton J. Miller, III
       Capt. Tony Freitas (via email only)
       Capt. Don Till (via email only)
       First Officer Rich Higgins (via email only)