UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MIDWEST PILOTS MERGER COMMITTEE,

CARL SCHWERMAN, in his Capacity as
Chairperson of the MIDWEST PILOTS
MERGER COMMITTEE,

DONALD TILL, in his Individual Capacity and in
his Capacity as Vice Chairperson of the
MIDWEST PILOTS MERGER COMMITTEE,                    Case No. 14-cv-01441-RTR

and

MARK E. WARD,

                        Plaintiffs,

               -against-

FRONTIER AIRLINES, INC.,

and

FRONTIER AIRLINE PILOTS ASSOCIATION,

                     Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF FRONTIER AIRLINES, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

---

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................... 1

STATEMENT OF FACTS ............................................................................ 4

    A.    RAH's Acquisition of Midwest and Frontier........................................ 4

    B.    The Dispute Resolution Agreement and the IMSL Award.................... 4

    C.    The NMB's Single Carrier and Certification Decisions ...................... 7

    D.    The Fall 2011 Interpretative Disputes and Resulting Supplemental Award.......... 7

    E.    RAH's Sale of Frontier and Subsequent NMB Decisions ..................... 8

    F.    Arbitrator Eischen's September 12, 2014 Supplemental Award ........... 9

    G.    Letter of Agreement 71 ................................................................... 10

    H.    The Midwest Pilots Grievance and Proceedings Before the Frontier/FAPA System Board of Adjustment ................................. 11

    I.    The MPMC's Invocation of Arbitrator Eischen's Jurisdiction and the October 29, 2014 Decision ................................................. 12

ARGUMENT ......................................................................................... 13

I.    COUNT I FAILS TO STATE A CLAIM BECAUSE THE FRONTIER/FAPA SYSTEM BOARD OF ADJUSTMENT HAS EXCLUSIVE JURISDICTION OVER THIS DISPUTE AND THE DRA NO LONGER APPLIES TO FRONTIER OR ITS PILOTS. ................................................................ 13

    A.    This Is a Minor Dispute Within the Exclusive Jurisdiction of the Frontier/FAPA System Board of Adjustment........................ 13

    B.    The DRA No Longer Applies to Frontier or its Pilots........................ 15

II.    COUNT II FAILS TO STATE A CLAIM BECAUSE PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO STATE A CLAIM AGAINST FAPA OR FRONTIER FOR BREACH OF THE DUTY OF FAIR REPRESENTATION........................................................................ 19

CONCLUSION....................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Line Pilots Ass'n v. Guilford Transp. Indus., Inc.,*
399 F.3d 89 (1st Cir. 2005) .................................................................. 14

*Air Line Pilots Ass'n v. O'Neill,*
499 U.S. 65 (1991) .......................................................................... 19

*Air Wisc. Pilots Protection Comm. v. Sanderson,*
124 F.R.D. 615 (N.D. Ill. 1988) ............................................................ 20

*Am. Postal Workers Union, Local 6885 v. Am. Postal Workers Union,*
665 F.2d 1096 (D.C. Cir. 1981) ............................................................ 20

*Andrews v. Louisville & Nashville R.R. Co.,*
406 U.S. 320 (1972) ........................................................................ 13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................ 13

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
475 U.S. 643 (1986) ........................................................................ 15

*Beanstalk Grp., Inc. v. AM Gen. Corp.,*
283 F.3d 856 (2002) ........................................................................ 18

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................ 13

*Belsky v. Field Imports, Inc.,*
No. 13-1758, 2013 U.S. Dist. LEXIS 154775 (N.D. Ill. Oct. 29, 2013) ................. 18

*Bergholm v. Peoria Life Ins. Co.,*
284 U.S. 489 (1932) ........................................................................ 15

*Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.,*
373 U.S. 33 (1963) ......................................................................... 13

*Bogie v. Rosenberg,*
705 F.3d 603 (7th Cir. 2013) ............................................................... 5

*Calvert v. Trans World Airlines,*
959 F.2d 698 (8th Cir. 1992) .............................................................. 14

*Carroll v. Bhd. of R.R. Trainmen,*
417 F.2d 1025 (1st Cir. 1969) ............................................................. 20

*Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.,*
692 F.3d 580 (7th Cir. 2012) ............................................................... 5

*Cunningham v. United Airlines, Inc.,*
No. 13-5522, 2014 U.S. Dist. LEXIS 13414 (N.D. Ill. Feb. 4, 2014) ............... 14, 20

# TABLE OF AUTHORITIES
## (cont'd)

*Del Casal v. E. Airlines, Inc.*,
  634 F.2d 295 (5th Cir. 1981) .................................................................................. 14

*Druco Restaurants, Inc. v. Steak N Shake Enters., Inc.*,
  765 F.3d 776 (7th Cir. 2014) ................................................................................. 15

*Elgin, Joliet & E. Ry. Co. v. Burley*,
  325 U.S. 711 (1945).............................................................................................. 13

*Gibson v. Neighborhood Health Clinics, Inc.*,
  121 F.3d 1126 (7th Cir. 1997) ............................................................................... 15

*Gullaksen v. United Air Lines, Inc.*,
  No. 1:13-1235, 2014 U.S. Dist. LEXIS 131213 (D.D.C. Sept. 17, 2014).............. 14

*Haney v. Chesapeake & Ohio R.R. Co.*,
  498 F.2d 987 (D.C. Cir. 1974) ............................................................................... 14

*Henry Techs. Holdings, LLC v. Giordano*,
  No 14-63, 2014 WL 3845870 (W.D. Wis. Aug. 5, 2014) ...................................... 15

*In re Frontier Airline Pilots Ass'n*,
  41 NMB 31 (Mar. 31, 2014).............................................................................. 8, 16

*In re Int'l Bhd. of Teamsters*,
  38 NMB 138 (Apr. 7, 2011) ..................................................................................... 7

*In re Int'l Bhd. of Teamsters*,
  38 NMB 199 (May 2, 2011) ..................................................................................... 7

*In re Representation of Employees of Frontier Airlines, Inc. Pilots*,
  41 NMB 88 (June 13, 2014) ..................................................................................... 9

*In re Representation of Employees of Republic Airlines et al.*,
  38 NMB 245 (June 28, 2011) ................................................................................... 7

*Kennedy v. Nat'l Juvenile Detention Ass'n*,
  187 F.3d 690 (7th Cir. 1999) ........................................................................... 15, 18

*Rakestraw v. United Airlines, Inc.*,
  765 F. Supp. 474 (N.D. Ill. 1991), *aff'd in relevant part, rev'd in part*,
  981 F.2d 1524 (7th Cir. 1992) ............................................................................... 20

*Safety Solutions, Inc. v. Chicago*,
  No. 11-1305, 2011 U.S. Dist. LEXIS 92347 (N.D. Ill. Aug. 18, 2011) ................. 19

*Smith v. Nw. Mutual Life Ins. Co.*,
  No. 11-71, 2011 U.S. Dist. LEXIS 104394 (E.D. Wis. Sept. 13, 2011)............ 5, 18

*Stumo v. United Air Lines, Inc.*,
  382 F.2d 780 (7th Cir. 1967) ................................................................................. 14

*United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*,
  756 F.2d 1274 (7th Cir. 1985) ......................................................................... 19, 20

*United States v. ARG Corp.*,
  No. 3:10-311, 2011 U.S. Dist. LEXIS 86423 (N.D. Ind. Aug. 4, 2011) ................................ 18

*Vaca v. Sipes*,
  386 U.S. 171 (1967) ................................................................................................................ 19

**Statutes**

45 U.S.C. § 152 ............................................................................................................................. 5

45 U.S.C. § 184 ....................................................................................................................... 13, 19

**Other Authorities**

Nat'l Mediation Bd. Representation Manual
  § 19.6 (Mar. 25, 2013) ............................................................................................................. 5

Restatement (Second) of Contracts § 202(3)(a) ......................................................................... 15

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................... 4, 5, 13, 21

Case 2:14-cv-01441-RTR   Filed 01/16/15   Page 5 of 26   Document 17

## PRELIMINARY STATEMENT

In 2009, Republic Airways Holdings, Inc. ("RAH"), the parent of Republic Airline, Inc. ("Republic"), Chautauqua Airlines, Inc. ("Chautauqua"), and Shuttle America Corp. ("Shuttle America"), acquired defendant Frontier Airlines, Inc. ("Frontier") and Midwest Airlines, Inc. ("Midwest"). Following these acquisitions, RAH entered an agreement, referred to as the Dispute Resolution Agreement ("DRA"), with committees representing pilots at each of its airline subsidiaries to address the formulation of an integrated seniority list for pilots at those subsidiaries.

Pursuant to the DRA, an arbitration to establish an integrated seniority list was conducted before arbitrator Dana E. Eischen, and on February 19, 2011, he issued a decision (the "Award") establishing an integrated master seniority list ("IMSL"). Both the DRA and the Award expressly provide that they are only applicable to those subsidiaries of RAH that the National Mediation Board ("NMB") determines to constitute a single transportation system for pilots—which means that the NMB deems them a single entity for purposes of union representation. On April 7, 2011, the NMB determined that all of RAH's airline subsidiaries were operating as a single carrier for purposes of pilot representation, and on June 28, 2011, the NMB certified the International Brotherhood of Teamsters ("IBT") as the representative of the combined group of pilots employed by RAH.

Frontier subsequently hired several former Midwest pilots, and a dispute arose under the DRA as to whether those pilots should use the date they were first placed on the Frontier payroll as pilots or their IMSL ranking to bid for monthly flying schedules at Frontier. The parties submitted the dispute to Arbitrator Eischen, and he held that the Midwest pilots were entitled to use their IMSL ranking to bid.

On December 3, 2013, RAH sold Frontier to an independent private equity group. On that basis, on March 31, 2014, the NMB ruled that Frontier is a separate carrier and no longer part of the RAH single transportation system. And on June 13, 2014, the NMB certified defendant Frontier Airline Pilots Association ("FAPA") as the representative of Frontier's pilots. Frontier and FAPA subsequently entered into Letter of Agreement 71 ("LOA 71"), in which they agreed that the Award is no longer effective under the collective bargaining agreement governing Frontier's pilots ("Frontier/FAPA CBA"), and that the seniority of pilots at Frontier shall be based on the date they were first placed on the Frontier payroll as pilots.

On October 13, 2014, the former Midwest pilots at Frontier filed a grievance under the Frontier/FAPA CBA, alleging that this change in seniority violated the Frontier/FAPA CBA. As required by the Railway Labor Act ("RLA"), and in accordance with the Frontier/FAPA CBA, the grievance has proceeded through the first two steps and is now scheduled for a hearing on March 18-19, 2015, before the Frontier/FAPA System Board of Adjustment.

Plaintiff Midwest Pilots Merger Committee ("MPMC"), however, also requested that Arbitrator Eischen resolve this same dispute under the DRA. In response, Frontier and FAPA took the position they maintain in this litigation: the DRA no longer applies to Frontier and FAPA following the NMB's March 31, 2014 separate carrier ruling, and thus they are not required to arbitrate regarding the seniority rights of former Midwest pilots working for Frontier. Frontier and FAPA also asserted that only a court and not Arbitrator Eischen could resolve this question of substantive arbitrability under the DRA. On October 29, 2014, Arbitrator Eischen agreed, concluding that the parties raised a question of substantive arbitrability, and on that basis, he denied the MPMC's request to arbitrate under the DRA.

2

By Count I of this lawsuit, Plaintiffs now ask this Court to resolve that question in their favor, seeking to compel Frontier and FAPA to arbitrate under the DRA to resolve the dispute. Count I fails to state a claim against Frontier for two reasons. First, the Frontier/FAPA System Board of Adjustment has exclusive jurisdiction to resolve this dispute. The RLA, which governs here, requires that disputes such as this one involving the interpretation or application of a collective bargaining agreements—known as "minor disputes"—are subject to the exclusive jurisdiction of an the applicable System Board of Adjustment, which here is the Frontier/FAPA System Board of Adjustment. Plaintiffs have acknowledged this fact by pursuing their grievance before the Frontier/FAPA System Board of Adjustment.

Second, by its plain and unambiguous terms, the DRA no longer applies to Frontier because Frontier has been deemed a separate carrier by the NMB. This is repeatedly confirmed by multiple provisions of the DRA, as well as the Award. Indeed, it is inconceivable that the DRA, entered for the purpose of creating an IMSL for the airline subsidiaries in the RAH single transportation system, would apply to a separate carrier with no legal relationship to RAH whatsoever, whose pilots are represented by a different union.

In Count II, Plaintiffs allege that FAPA violated its duty of fair representation ("DFR") by refusing to arbitrate under the DRA and entering into LOA 71, and that Frontier colluded in FAPA's alleged DFR breach. The collusion claim against Frontier cannot be sustained if the alleged DFR claim against FAPA is dismissed, and as demonstrated in FAPA's concurrently-filed motion to dismiss, Plaintiffs have not stated a DFR claim against FAPA. Moreover, even if a plausible claim for breach of DFR has been alleged against FAPA, Count II still fails to state a claim against Frontier because Plaintiffs have not alleged any evidence of discriminatory or

arbitrary intent *by Frontier* when it entered the agreement with FAPA concerning seniority bidding rights.

For these reasons, all claims alleged against Frontier in the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF FACTS[1]

**A.    RAH's Acquisition of Midwest and Frontier**

In July 2009, RAH, the parent of Republic, Chautauqua, and Shuttle America, acquired Midwest and its parent holding company, and shortly thereafter, in October 2009, RAH acquired Frontier Holdings, Inc., a holding company, and its operating subsidiaries, Lynx Aviation, Inc. ("Lynx") and defendant Frontier.  (Compl. ¶ 9.)

**B.    The Dispute Resolution Agreement and the IMSL Award**

Following those transactions, on November 3, 2009, "Republic Airways Holdings, Inc. (RAH), on behalf of itself and its wholly owned affiliates Republic Airline, Inc., Chautauqua Airlines, Inc. and Shuttle America Corp. (hereinafter collectively, 'Republic'), Midwest Airlines, Inc., Frontier Airlines, Inc. and Lynx Aviation, Inc. (RAH and its affiliates together one 'party' under this Agreement)" and seniority merger committees formed to represent the interests of pilots employed at each of those carriers entered into the DRA in order to address seniority integration of these various pilot groups.  (*Id.* ¶ 11, Ex. 1 at 1.)  The DRA establishes a process for negotiation and mediation of the IMSL for the pilots of RAH's subsidiaries and provides that, if such process was not successful, an arbitrator should formulate the IMSL.  (*Id.* at 1-2)

The parties were unable to reach agreement on an IMSL pursuant to the DRA's negotiation and mediation process, and thus they proceeded to arbitration.  The parties selected

---

[1]    To the extent Frontier relies on facts alleged in the Complaint, it assumes those facts to be true solely for purposes of this motion.

4

Dana E. Eischen as the arbitrator, who subsequently issued his February 19, 2011 IMSL Award. (Compl. ¶ 17; Declaration of Mark W. Robertson in Support of Frontier's Motion to Dismiss Plaintiffs' Complaint ("Robertson Decl.") ¶ 2, Ex. A.)[2]

In the Award, Arbitrator Eischen stated that "[i]t is unknown whether the NMB will find a single transportation system for the pilot craft or class; if so, which of the pre-acquisition carriers will be included; and what organization, if any, will be certified by the NMB as the representative of the combined pilot craft and class in such a single transportation system."[3] (*Id.* at 42.) The Award provided that the IMSL would not become effective until 60 days following the certification of a single bargaining representative for the combined craft or class of pilots following a finding of a single transportation system. (*Id.* at 49.) The Award noted that the parties agreed that "if the NMB concludes that Frontier is not part of the Republic single transportation system for the pilot craft or class, the integration methodology of the Award will be applied with the Frontier pilots excluded." (*Id.* at 45.)

----

[2]    Although the Award is not attached as an exhibit to the Complaint, it is appropriate for this Court to consider the Award because it is central to Plaintiffs' claims and Plaintiffs repeatedly cite to and rely on it in support of their Complaint (*see* Compl. ¶¶ 2-4, 17-29, 32-38, 44-45, 52, 54, 59, and 61-63). *See Smith v. Nw. Mutual Life Ins. Co.*, No. 11-71, 2011 U.S. Dist. LEXIS 104394, at *6-7 (E.D. Wis. Sept. 13, 2011) (Randa, J.) ("Documents that are referred to in the complaint and that are central to a claim that is made may be considered to be a part of the complaint even if it is not actually attached to the complaint.") (internal quotation marks and citations omitted) (Robertson Decl. ¶ 9, Ex. H); *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012) (on a 12(b)(6) motion, courts may consider "documents attached to or referenced in the pleading if they are central to the claim"); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (same).

[3]    A single transportation system determination by the NMB is a finding that multiple airlines/carriers are sufficiently integrated that they should be treated as a single carrier for a specific group of employees for purposes of representation by a union. The determination reclassifies previously separate employee groups from different carriers into a single unit, known as a "craft or class." Under the RLA, employees may only be represented on a "craft or class" basis. *See* 45 U.S.C. § 152, Fourth, Ninth; Nat'l Mediation Bd. Representation Manual § 19.6 (Mar. 25, 2013).

The Award followed the provisions of the DRA, which repeatedly confirms that the IMSL does not apply to carriers outside the RAH single transportation system. For example, the DRA states that an IMSL could not become effective before the NMB "issues its ruling on whether *the RAH affiliates comprise a single transportation system and certifies the Organization, if any, that is the duly designated representative of the pilot craft or class on that transportation system*." (*Id.* §§ II(e), V(g) (emphasis added).) The DRA also states that "[t]he award of the arbitrator shall be … final and binding on the parties to this Agreement and *on the pilots employed by RAH and its affiliates*" and "shall be considered as a part of the collective bargaining agreement(s) *applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system*." (*Id.* §§ V(g), (j) (emphasis added).)

The DRA includes dispute resolution procedures, which provide that Arbitrator Eischen would interpret the Award to resolve disputes arising within 120 days of its effective date. The DRA further provides that disputes involving interpretation or application of the Award after that time would "be handled in the usual manner by the applicable Merger Committees up to and including the highest carrier official designated to handle such disputes." If a dispute were not resolved, any party to the dispute could submit it to "*the adjustment board established by the designated representative of the combined craft or class and the single carrier for final and binding resolution*." (*Id.* §§ V(i), (j) (emphasis added).)

The DRA also provides that "[t]he Organization, if any, *designated by the NMB as the duly designated representative of the combined craft or class of Flight Deck Crew Members for the single transportation system* shall continue the Merger Committees in existence and delegate to the Merger Committees authority solely for the purpose of adjusting any dispute or disputes

that might arise as to the interpretation or application of the award…." (*Id.* § V(h) (emphasis added).)

## C. <u>The NMB's Single Carrier and Certification Decisions</u>

On October 4, 2010, the IBT filed an application with the NMB for a determination that RAH's subsidiaries collectively constituted a single transportation system for labor law purposes, and that the IBT should be certified to represent a single combined pilot bargaining unit. *See In re Int'l Bhd. of Teamsters*, 38 NMB 138, 139 (Apr. 7, 2011) (Robertson Decl. ¶ 4, Ex. C). On April 7, 2011, the NMB issued a decision holding that Republic, Shuttle America, Chautauqua, Frontier, and Lynx were operating as a single transportation system for the craft or class of pilots and that Midwest pilots were included in the single transportation system. *See id.* at 157. The NMB also ordered an election among those carriers' pilots to determine whether and by whom they would be represented. *See In re Int'l Bhd. of Teamsters*, 38 NMB 199 (May 2, 2011) (Robertson Decl. ¶ 5, Ex. D).

On June 28, 2011, following an election, the NMB certified the IBT as the collective bargaining representative of the pilots at RAH's subsidiaries. *See In re Representation of Employees of Republic Airlines et al.*, 38 NMB 245 (June 28, 2011) (Robertson Decl. ¶ 6, Ex. E); (Compl. ¶ 10.). Accordingly, 60 days later on August 27, 2011, pursuant to its terms, the Award became effective. (Compl. ¶¶ 23-24.)

## D. <u>The Fall 2011 Interpretative Disputes and Resulting Supplemental Award</u>

Following issuance of the Award, a dispute arose regarding its proper interpretation in the context of Frontier's hiring of eight former furloughed Midwest pilots—who were assigned seniority based on the date they were first placed on the Frontier payroll as pilots and not based on their IMSL ranking. (Compl. ¶ 24.) The MPMC asserted that the IMSL replaced the seniority established under the Frontier/FAPA CBA. (*Id.*)

In a supplemental award issued on October 25, 2011, Arbitrator Eischen held that the Midwest pilots could use their IMSL seniority status to bid for or preference monthly flying schedules at Frontier, given that the IMSL was incorporated into the Frontier/FAPA CBA. (Compl. ¶ 27, Ex. 2 at 14.) Arbitrator Eischen noted, however, that "[u]nless and until the Company and the IBT agree upon collectively bargained contractual modifications or new Agreements, the IMSL does so in the context of the RJET/IBT Agreement and the Frontier/FAPA Agreement. Various collectively bargained provisions in those respective Agreements address the *invocation, utilization, administration, implementation and retention* of the seniority rank status conferred upon a pilot by the IMSL." (*Id.* (emphasis in original))[4]

**E.      RAH's Sale of Frontier and Subsequent NMB Decisions**

Effective December 3, 2013, RAH sold Frontier to an investment group, and Frontier ceased to be a subsidiary or affiliate of RAH. (Compl. ¶ 30.) On December 18, 2013, FAPA (the union that represented Frontier's pilots prior to its acquisition by RAH) filed an application with the NMB for a determination that Frontier was no longer part of the RAH single transportation system and that FAPA (rather than the IBT) should be certified as the collective bargaining representative of the Frontier pilots. *See In re Frontier Airline Pilots Ass'n*, 41 NMB 31, 33 (Mar. 31, 2014) (Robertson Decl. ¶ 7, Ex. F).

On March 31, 2014, the NMB found that Frontier is a separate carrier from the RAH-affiliated carriers, noting, in part:

---

[4]      As a result, the former Midwest pilots used their IMSL seniority at Frontier, instead of the date they were first placed on the Frontier payroll as a pilot. This result was contrary to the seniority rules in the Frontier/FAPA CBA that had been in place before the NMB's single carrier determination and the formulation of the IMSL by Arbitrator Eischen. (*See* Compl. ¶ 39, Ex. 8 at 2 & Ex. 9 at 1.)

> Arbitrator Eischen issued the IMSL on February 19, 2011, before the Board's single system determination. Eischen noted that if the Board were to find Frontier separate from the Republic system, "the integration methodology of the Award will be applied with the Frontier pilots excluded." Further, the Award noted that its application may change if "facts and circumstances have materially changed…."

*Id.* at 38.

On June 13, 2014, the NMB certified FAPA as the exclusive bargaining representative of the Frontier pilot craft or class. *See In re Representation of Employees of Frontier Airlines, Inc. Pilots*, 41 NMB 88, 89 (June 13, 2014) (Robertson Decl. ¶ 8, Ex. G).

## F.     Arbitrator Eischen's September 12, 2014 Supplemental Award

In August 2013, a dispute arose between the carriers and the Frontier Pilots Merger Committee (the "FPMC") on the one hand, and the Republic Pilots Merger Committee (the "RPMC") and the MPMC on the other, when the first surplus pilot vacancies occurred at Frontier following the effective date of the Award. (Compl. ¶ 33, Ex. 3 at 9.) The RPMC and the MPMC took the position that the Award compelled Frontier to create and offer a bid process by which Republic pilots could bid for new pilot positions on Airbus aircraft based on their IMSL status before Frontier could hire new pilots off the street. (*Id.* at 4.) The dispute was submitted to Arbitrator Eischen. (*Id.* at 2.)

In a supplemental award issued on September 12, 2014, Arbitrator Eischen ruled in favor of the carriers and the FPMC and "reiterated that the Award's effective grant of **seniority status** does not, by itself or *per se*, confer enforceable contractual **seniority rights**." (*Id.* at 23 (emphasis in original).) The award states:

9

'Seniority rank status' through placement on the IMSL does not, in and of itself, confer any specific contractual right to the "invocation, utilization, administration, or implementation" of that status for any given position—all of which must be determined by reference to the terms of the existing CBAs … The hard work of amending currently applicable contractual provisions to facilitate expanded utilization of the seniority rank status conferred by the IMSL must be done at the bargaining table, not by an end run through the arbitration forum.

(*Id.* at 23-24.)

## G.     Letter of Agreement 71

Following the September 12, 2014 award and the NMB's findings and certification, on October 9, 2014, Frontier and FAPA entered into LOA 71.  (Robertson Decl. ¶ 3, Ex. B.)[5]  In LOA 71, Frontier and FAPA agreed that the IMSL was by its express terms no longer applicable to Frontier and was no longer part of the Frontier/FAPA CBA, and therefore the existing seniority rules in the Frontier/FAPA CBA were applicable and binding.  Under those rules, pilots are allowed to bid for monthly flying schedules based on the date they are first placed on the Frontier payroll as a pilot.  (*See* Robertson Decl. ¶ 3, Ex. B at 1, 5-6; Compl. ¶ 34.)

LOA specifically provides:

1. Effective June 13, 2014 [the date FAPA was certified by the NMB], the Eischen Award and the IMSL (including any restriction on a pilot's exercise of contractual seniority), are no longer effective with respect to seniority under the Frontier CBA.

2. Effective June 13, 2014, the seniority of a Pilot under the Frontier CBA shall be determined based on the date on which the Pilot was first placed on the Company payroll as a pilot, in accordance with Section 3.A.1. of the Frontier CBA; and the Frontier Airlines, Inc. Pilot System Seniority List or "Seniority List" shall be determined in accordance with Section 3.B. of the Frontier CBA …

---

[5]     Like the Award, LOA 71 is central to Plaintiffs' claims, and Plaintiffs repeatedly cite to and rely on it in support of their Complaint (*see* Compl. ¶¶ 44-45, 61-63).  LOA 71 was also attached to the letter that is Exhibit 8 of the Complaint but removed by Plaintiffs for filing.  (*Id.* ¶ 39, Ex. 8.)  Thus, although not attached as an exhibit to the Complaint, it is appropriate for the Court to consider LOA 71.  *See supra* n.2.

[I]n addition to representing the correct interpretation and application of the existing seniority-related provisions of Frontier CBA, Frontier and FAPA … agreed that, in the event of any dispute or inconsistency regarding the correct interpretation and application of such provisions, the administration of seniority agreed upon in [LOA 71] will, in light of the same circumstances, represent reasonable working conditions and be consistent with proper compensation, by treating all pilots' seniority rights similarly based on the first date each pilot appeared on the payroll as a pilot employee of Frontier; restoring the normal seniority system historically used at Frontier as a separate carrier; and thereby furthering stability and the stated purposes of the Frontier CBA.

(Robertson Decl. ¶ 3, Ex. B at 5.)

## H.    The Midwest Pilots Grievance and Proceedings Before the Frontier/FAPA System Board of Adjustment

On October 13, 2014, the former Midwest pilots at Frontier filed a grievance under the Frontier/FAPA CBA, asserting that the changes to their seniority at Frontier violate that CBA.[6] (Compl. ¶ 44, Ex. 13.)  That grievance was denied at the first two steps of the grievance process because the IMSL is no longer incorporated into the Frontier/FAPA CBA per the express terms of the DRA, Award, and LOA 71.  (*See* Compl. ¶ 44, Exs. 13-14; Robertson Decl. ¶ 3, Ex. B.) As the next step in the contractual grievance process, Frontier and FAPA have scheduled a hearing for March 18-19, 2015, before the Frontier/FAPA System Board of Adjustment, comprised of two Frontier-appointed and two FAPA-appointed members.  The Frontier/FAPA CBA provides that if there is a deadlock among the Board of Adjustment members at this hearing, the grievance will be submitted to the Board sitting with a neutral arbitrator as the fifth member.  (*See* Compl. ¶ 45.)  The Frontier/FAPA System Board of Adjustment is established under mandate of the RLA as the exclusive forum to determine disputes regarding the interpretation and application of the Frontier/FAPA CBA on a final and binding basis.  In

---

[6]      The grievance was initially filed by the MPMC on September 23, 2014, but because it does not represent any pilots at Frontier, FAPA processed the grievance on behalf of the Midwest pilots instead, including plaintiff Mark E. Ward.  (Compl. ¶ 36, Ex. 5.)

advance of that hearing, FAPA has conveyed to the grievants that it would "not oppose a request by some or all of [the grievants] to appear before the System Board of Adjustment, separately from and in addition to FAPA, with legal representation if [they] so request."  (Compl. ¶ 44, Exs. 13-14.)

## I.    The MPMC's Invocation of Arbitrator Eischen's Jurisdiction and the October 29, 2014 Decision

In addition to filing a grievance under the Frontier/FAPA CBA, on September 24-25, 2014, the MPMC also attempted to challenge the change to the Midwest pilots' seniority rights at Frontier before Arbitrator Eischen under the DRA.  The MPMC specifically requested that Arbitrator Eischen determine whether the change in seniority was a violation of the Award (i.e., whether the IMSL continued to be incorporated into the Frontier/FAPA CBA, even though the NMB had determined that Frontier was no longer a part of the Republic single transportation system).  (*See* Compl. ¶ 38, Ex. 7.)

Frontier and FAPA took the position they maintain in this matter:  there is no agreement to arbitrate the change to the Midwest pilots' seniority under the DRA because the proper recourse is through the minor dispute resolution procedures of the Frontier/FAPA CBA and the DRA is no longer in effect at to Frontier.  (Compl. ¶ 39, Ex. 8 at 7; Compl. ¶ 40, Ex. 10.)  On October 29, 2014, Arbitrator Eischen declined to provide arbitral intervention in the dispute because the parties had "a *bona fide* disagreement over whether they in fact have an agreement to arbitrate [the] dispute[]."  (Compl. ¶ 41, Ex. 11 at 2.)

Plaintiffs then filed this lawsuit on November 17, 2014, seeking to compel Frontier and FAPA to participate in an arbitration before Arbitrator Eischen pursuant to the DRA regarding the same seniority issue that is currently scheduled for hearing before the Frontier/FAPA System Board of Adjustment.

<u>**ARGUMENT**</u>

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Neither of Plaintiffs' counts against Frontier satisfy this standard.

**I.** <u>**COUNT I FAILS TO STATE A CLAIM BECAUSE THE FRONTIER/FAPA SYSTEM BOARD OF ADJUSTMENT HAS EXCLUSIVE JURISDICTION OVER THIS DISPUTE AND THE DRA NO LONGER APPLIES TO FRONTIER OR ITS PILOTS.**</u>

This Court cannot compel Frontier to arbitrate before Arbitrator Eischen regarding the question of whether it violated the Frontier/FAPA CBA by returning the former Midwest pilots to the date they were first placed on the Frontier payroll as pilots because: (1) exclusive jurisdiction to resolve this dispute is with the Frontier/FAPA System Board of Adjustment; and (2) the DRA is no longer applicable to Frontier or its pilots.

**A.** <u>**This Is a Minor Dispute Within the Exclusive Jurisdiction of the Frontier/FAPA System Board of Adjustment.**</u>

Arbitrator Eischen does not have jurisdiction to resolve this "minor dispute" because it falls exclusively within the purview of the Frontier/FAPA System Board of Adjustment, as required by the RLA and the Frontier/FAPA CBA. A "minor dispute" is a grievance or matter involving the interpretation or application of a collectively-bargained agreement. *Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 722-23 (1945). Under the RLA's statutory scheme, a minor dispute falls within the "mandatory, exclusive and comprehensive" jurisdiction of the appropriate board of adjustment. *Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.*, 373 U.S. 33, 36-38 (1963); 45 U.S.C. § 184; *see, e.g., Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 322-24 (1972).

This case unquestionably raises a minor dispute. Plaintiffs allege that Frontier has breached the Frontier/FAPA CBA by interpreting it to mean that the seniority of the former Midwest pilots under the CBA shall be determined based on the date the pilot was first placed on the Frontier payroll. Because resolution of this dispute requires interpretation of the Frontier/FAPA CBA, it is a textbook example of a minor dispute, and thus falls within the exclusive jurisdiction of the Frontier/FAPA System Board of Adjustment. *See*, *e.g.*, *Air Line Pilots Ass'n v. Guilford Transp. Indus., Inc.*, 399 F.3d 89, 99 (1st Cir. 2005) (finding a dispute to be minor because it requires interpretation of the CBA); *Calvert v. Trans World Airlines*, 959 F.2d 698, 700 (8th Cir. 1992) (same). Indeed, Plaintiffs themselves concede this by pursuing this same dispute pursuant to the Frontier/FAPA's CBA grievance procedures.[7]

---

[7] Plaintiff MPMC attempted to file a grievance and appeal it to the Frontier/FAPA System Board of Adjustment. (*See* Compl. ¶ 43, Ex. 12.) FAPA has pursued a grievance on behalf of the individual grievants, including plaintiff Mark E. Ward, which will be heard by the Frontier/FAPA System Board in March 2015. (*See* Compl. ¶ 44, Exs. 13-14.)

Plaintiffs assert that arbitrating under the DRA is preferred because a hearing before the Frontier/FAPA System Board of Adjustment would not be "fair" given that it is comprised of members appointed by Frontier and FAPA (and a neutral arbitrator only upon deadlock). (Compl. ¶¶ 43, 45.) Plaintiff MPMC previously asked FAPA to waive a hearing on the current dispute before the contractual Frontier/FAPA System Board of Adjustment, but FAPA denied the request on the basis that the grievant pilots must invoke the grievance procedure pursuant to the Frontier/FAPA CBA. As a matter of law, courts will not assume that Board of Adjustment members, who are "obligated to determine disputes … in an independent, impartial manner," are partial or biased simply because a certain party selected them or because there is "no one on the board 'partisan' to the employees' interests." *Del Casal v. E. Airlines, Inc.*, 634 F.2d 295, 299 (5th Cir. 1981); *see also Cunningham v. United Airlines, Inc.*, No. 13-5522, 2014 U.S. Dist. LEXIS 13414, at *19-20 (N.D. Ill. Feb. 4, 2014) (Robertson Decl. ¶ 10, Ex. I). For that reason, courts regularly uphold the composition of system boards of adjustment like the one here, including where the union and company both disagree with the grievant's contract interpretation. *See, e.g.*, *Stumo v. United Air Lines, Inc*., 382 F.2d 780, 787 (7th Cir. 1967); *Cunningham*, 2014 U.S. Dist. LEXIS 13414, at *19-20; *Haney v. Chesapeake & Ohio R.R. Co.*, 498 F.2d 987, 992 (D.C. Cir. 1974); *Gullaksen v. United Air Lines, Inc.*, No. 1:13-1235, 2014 U.S. Dist. LEXIS 131213, at *16 (D.D.C. Sept. 17, 2014) (Robertson Decl. ¶ 11, Ex. J).

**B.    The DRA No Longer Applies to Frontier or its Pilots.**

Frontier also cannot be compelled to arbitrate under the DRA because the plain and unambiguous language of the DRA confirms that, because Frontier is no longer an affiliate of RAH and has been deemed a separate carrier by the NMB, the DRA no longer applies to Frontier.  (*See*, *e.g.*, Compl. ¶ 11, Ex. 1 at 1, §§ II(e), V(g)-(j).)

"[A]rbitration is a matter of contract," and "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *Druco Restaurants, Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 781, 784 (7th Cir. 2014) (plaintiff failed to demonstrate the existence of valid agreements to arbitrate).  Because Plaintiffs seek to compel arbitration, they bear the burden of demonstrating that the DRA requires Frontier to arbitrate.  *See Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997); *Henry Techs. Holdings, LLC v. Giordano*, No 14-63, 2014 WL 3845870, at *3 (W.D. Wis. Aug. 5, 2014) (same) (Robertson Decl. ¶ 12, Ex. K).  Plaintiffs cannot meet their burden.

It is well-established that "contracts are to be construed as they are written.  When the language is plain and unambiguous, a reviewing court must construe the contract as it stands.  In construing the contract, terms are to be given their plain and ordinary meaning."  *See Kennedy v. Nat'l Juvenile Detention Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999) (internal citations omitted) (granting motion to dismiss based on the unambiguous contract language at issue); *see also Bergholm v. Peoria Life Ins. Co.*, 284 U.S. 489, 492 (1932) ("Contracts … must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary and popular sense."); Restatement (Second) of Contracts § 202(3)(a) (same).

As an initial matter, Frontier is not an individual party to the DRA. The carrier party to the DRA is "Republic Airways Holdings, Inc. (RAH), on behalf of itself and its wholly owned affiliates Republic Airline Inc., Chautauqua Airlines, Inc. and Shuttle American Corp. (hereinafter collectively, 'Republic'), Midwest Airlines, Inc., Frontier Airlines, Inc. and Lynx Aviation, Inc. (RAH and its affiliates together one 'party' under this Agreement)." (Compl. ¶ 11, Ex. 1 at 1.) Thus, Frontier is subject to the DRA only insofar as it is a "wholly owned affiliate" of RAH. Since Frontier's purchase on December 3, 2013, however, Frontier has had no relationship with RAH.

Moreover, by its express and plain terms, the DRA repeatedly confirms that it and the resulting Award only apply to the carriers (and their pilots) who are part of the RAH single transportation system. For example, Section V.(g) of the DRA states: "The award of the arbitrator shall be stated in writing and shall be final and binding on the parties to this Agreement and *on the pilots employed by RAH and its affiliates*." (*Id.* § V.(g) (emphasis added).) The Frontier pilots, however, are not employed by "RAH" or "its affiliates" because Frontier is now a separate carrier with no legal relationship whatsoever to RAH. *See In re Frontier Airline Pilots Ass'n*, 41 NMB 31, 38 (Mar. 31, 2014).

And Section V.(h) of the DRA states: "The Organization, if any designated by the NMB as the duly designated representative *of the combined craft or class of Flight Deck Crew Members for the single transportation system* shall continue the Merger Committees in existence and delegate to the Merger Committees authority solely for the purpose of adjusting any dispute or disputes that might arise as to the interpretation or application of the award…." (Compl. ¶ 11, Ex. 1 § V.(h) (emphasis added).) Thus, the plain language of Section V.(h) confirms that the obligation to maintain the Merger Committees, including the MPMC, extends only to the union

representing pilots of the RAH single transportation system—which no longer exists as to Frontier and the Frontier pilots, who are now represented by an entirely different union.

Likewise, Section V.(j) of the DRA states: "The award of the arbitration issued under either Section V(g) or V(i) shall be considered as a part of the collective bargaining agreement(s) *applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system*"—which also no longer exists as to Frontier and the Frontier pilots. (*Id.* § V.(j) (emphasis added).)

These provisions all confirm that the DRA applies to Frontier only insofar as Frontier is part of the RAH single transportation system and the Frontier pilots are part of the combined craft or class of pilots. As of June 13, 2014, however, Frontier is not an "affiliate" of RAH; Frontier is not part of the RAH "single carrier" obliged to establish an adjustment board with "the designated representative of the combined craft or class"; the Frontier/FAPA CBA is not a "collective bargaining agreement[] applicable to the combined craft or class of [pilots] for the [RAH] single transportation system"; and the Frontier pilots are no longer represented by "[t]he [union] designated by the NMB as the duly designated representative of the combined craft or class of [pilots] for the [RAH] single transportation system."

Like the DRA, the Award, by its express terms, also confirms that it was only intended to apply to the carriers and their pilots constituting the RAH single transportation system and further confirms that the parties unanimously agreed that the Award would only apply to carriers who are part of the single transportation system—using Frontier as the example:

The Award also expressly provides that the awarded seniority integration would still be implemented, with appropriate adjustments in the IMSL, if the NMB rules that fewer than all of the carriers are included in a single transportation system for the pilot craft or class. This comports with the unanimous agreement of the Parties, as expressly set forth in the written record. *For example, all Parties to the DRA agree that, if the NMB concludes that Frontier is not part of the Republic single transportation system for the pilot craft or class, the integration methodology of the Award will be applied with the Frontier pilots excluded.* Thus, the Award makes clear that this is the intended result in the event that the NMB so rules in the instant case.

(Robertson Decl. ¶ 2, Ex. A at 45 (emphasis added).)

As a result of the NMB's single carrier ruling as to Frontier, the DRA and the Award by their express terms no longer apply to Frontier, and thus Frontier cannot be compelled to arbitrate under the DRA. Indeed, it is inconceivable that the DRA, entered for the purpose of creating an integrated seniority list for the RAH single transportation system, applies to a separate carrier with no legal relationship to RAH and whose pilots are represented by a different bargaining representative.

Accordingly, Count I should also be dismissed based on the plain language of the DRA. *See, e.g.*, *Smith*, 2011 U.S. Dist. LEXIS 104394, at *7-13 (Randa, J.) (granting motion to dismiss based on "clear and unambiguous" contract language); *United States v. ARG Corp.*, No. 3:10-311, 2011 U.S. Dist. LEXIS 86423, at *5 (N.D. Ind. Aug. 4, 2011) (same; "[W]hen a contract is unambiguous, the terms expressed within the four corners of the document are conclusive.") (Robertson Decl. ¶ 13, Ex. L); *Kennedy*, 187 F.3d at 694-95 (same); *Beanstalk Grp., Inc. v. AM Gen. Corp.*, 283 F.3d 856, 859, 863 (2002) (same); *Belsky v. Field Imports, Inc.*, No. 13-1758, 2013 U.S. Dist. LEXIS 154775, at *37 n.14, 42 (N.D. Ill. Oct. 29, 2013) (same) (Robertson Decl.

¶ 14, Ex. M); *Safety Solutions, Inc. v. Chicago*, No. 11-1305, 2011 U.S. Dist. LEXIS 92347, at *23-24 (N.D. Ill. Aug. 18, 2011) (same) (Robertson Decl. ¶ 15, Ex. N).[8]

## II.     COUNT II FAILS TO STATE A CLAIM BECAUSE PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO STATE A CLAIM AGAINST FAPA OR FRONTIER FOR BREACH OF THE DUTY OF FAIR REPRESENTATION.

For their Count II, Plaintiffs allege that FAPA violated its DFR to the former Midwest pilots by not applying and arbitrating under the DRA, and by entering into LOA 71—and that Frontier has willingly colluded in FAPA's alleged breach of its DFR by doing the same.  Count II also fails as a matter of law for two reasons.

First, to allege adequately that Frontier colluded in FAPA's purported breach of its DFR, Plaintiffs must first allege a plausible claim against FAPA that survives a motion to dismiss.  *See United Indep. Flight Officers, Inc. v. United Air Lines, Inc.,* 756 F.2d 1274, 1283 (7th Cir. 1985) ("If the RLA-based DFR claim against the union is dismissed, the claim against the employer must also be dismissed").  As demonstrated in FAPA's concurrently-filed motion to dismiss (Docket No. 14), Plaintiffs have not met that standard, which requires that a union engage in conduct that is "arbitrary, discriminatory, or in bad faith."  *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991); *see also Vaca v. Sipes*, 386 U.S. 171, 190 (1967).

Second*,* even if a plausible breach of DFR claim were alleged against FAPA,  Plaintiffs have not alleged *conduct by Frontier* evidencing its bad faith, discrimination, or hostility towards

---

[8]     Although Plaintiffs seek to enforce an alleged contractual arbitration obligation under the DRA in Count I, they also allege that Frontier is obligated to arbitrate under the DRA pursuant to its RLA statutory obligations, specifically Section 2, First, and Section 204.  (*See* Compl. ¶¶ 47-50, 55.)  But Plaintiffs' allegations are misguided.  Section 204 expressly confirms that this dispute must be presented to the Frontier/FAPA System Board of Adjustment, not under the DRA, which does not even apply to Frontier and its pilots.  *See* 45 U.S.C. § 184 ("The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions … may be referred by petition of the parties or by either party to an appropriate adjustment board….")

Plaintiffs, which is necessary to state a claim against Frontier for collusion in the union's alleged breach of DFR. *See Rakestraw v. United Airlines, Inc.*, 765 F. Supp. 474, 493 (N.D. Ill. 1991), *aff'd in relevant part, rev'd in part*, 981 F.2d 1524 (7th Cir. 1992). Rather, Plaintiffs have only alleged that Frontier negotiated LOA 71, and negotiation between a carrier and a union cannot form the basis for a claim asserting participation in a DFR claim against a carrier. *See United Indep. Flight Officers*, 756 F.2d at 1282-83 (rejecting as "patently fallacious" the argument that negotiation between a carrier and union "necessarily entails collusion"); *Cunningham v. United Airlines, Inc.*, 2014 U.S. Dist. LEXIS 13414, at *16-17 (holding that plaintiffs did not plead a breach of the DFR by alleging that the carrier and union entered into a letter agreement); *Air Wisc. Pilots Protection Comm. v. Sanderson,* 124 F.R.D. 615, 617 (N.D. Ill. 1988) (finding it improper to include the carrier as a defendant given the failure to allege conspiracy or collusion).

In *Rakestraw*, the district court dismissed the plaintiffs' claim against the carrier as a matter of law, even though the carrier was well-aware of the animosity between the union and the minority group, because there was no "evidence that [the carrier] acted in bad faith or discriminated against plaintiffs in accepting [the union's] proposal." 765 F. Supp. at 493. The reasoning of *Rakestraw* is soundly based in labor policy. Without requiring allegations of *carrier* misconduct, courts would effectively impose an affirmative obligation on the employer to supervise the union at the bargaining table. *See Cunningham*, 2014 U.S. Dist. LEXIS 13414, at *18 ("[T]his court is loath to place an affirmative obligation on an employer to supervise unions, which are the entity properly entrusted with the employees' interests at the collective bargaining table…."); *Am. Postal Workers Union, Local 6885 v. Am. Postal Workers Union*, 665 F.2d 1096, 1109 (D.C. Cir. 1981) (same); *Carroll v. Bhd. of R.R. Trainmen*, 417 F.2d 1025, 1028 (1st Cir. 1969) (same).

20

Accordingly, Count II should be dismissed as to Frontier pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **<u>CONCLUSION</u>**

For the foregoing reasons, Frontier respectfully requests that all claims alleged against it in the Complaint be dismissed with prejudice.

Dated: January 16, 2015

Respectfully submitted,

/s/ Jennifer L. Ciralsky
Jennifer L. Ciralsky (SBN 1068092)
LITTLER MENDELSON, P.C.
111 East Kilbourn Avenue, Suite 1000
Milwaukee, Wisconsin 53202-4108
Telephone: (414) 291-5536
Facsimile: (414) 291-5526
E-mail: jciralsky@littler.com

Robert A. Siegel
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
E-mail: rsiegel@omm.com

Mark W. Robertson
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (213) 326-2061
E-mail: mrobertson@omm.com

*Attorneys for Frontier Airlines, Inc.*