# EXHIBIT B


# Frontier Airline Pilots Association

October 9, 2014

**Letter of Agreement 71**

Scott Gould
Vice President of Flight Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, CO 80249-7312

**Seniority List**

Dear Captain Gould:

This Agreement is entered into by FRONTIER AIRLINES, INC. ("Frontier" or the "Company") and the FRONTIER AIRLINE PILOTS ASSOCIATION ("FAPA" or the "Association") confirming the parties' mutual understandings as to the correct interpretation and application of the seniority-related provisions of the Frontier CBA and the reasonable seniority system to be followed at Frontier as a separate carrier, and shall constitute Letter of Agreement 71 to the collective bargaining agreement governing the terms and conditions of employment of the Pilot employees of Frontier (the "Frontier CBA").

WHEREAS Section 1.B.2. of the Frontier CBA provides: "The purpose of this Agreement, in the mutual interest of the Company and the Association, is to provide for the operation of the Company under methods which shall further, to the fullest extent possible, the safety of air transportation, the efficiency of operation, the sustained profitability of the Company and the continued employment of all Pilots under reasonable working conditions and with proper compensation;" and, as a legitimate subject of collective bargaining, the seniority rights of the pilot employees of Frontier are governed by the Frontier CBA;

WHEREAS Section 1.F.1. of the Frontier CBA requires that all flying performed by the Company shall be performed by Pilots whose names appear on the Frontier Airlines, Inc. Pilots System Seniority List (the "Seniority List");

WHEREAS Section 3.A.1. of the Frontier CBA provides, in part: "The seniority of a Pilot shall begin to accrue from the date the Pilot is first placed on the Company payroll as a Pilot ...;" and Section 3.B. of the Frontier CBA requires that the Seniority List be maintained, updated and published in accordance with the provisions thereof;

WHEREAS, effective October 31, 2009, Frontier Holdings, Inc. and its affiliates, including the Company, were acquired by Republic Airways Holdings, Inc. ("RAH");

WHEREAS, in connection with the RAH acquisition, the Company and FAPA entered into Letter of Agreement 39 to the Frontier CBA ("LOA 39"), which provided, in part, for the creation of a Master Seniority List ("MSL" or "IMSL") including the pilots of Frontier and the other RAH affiliates, in accordance with Sections 3 and 13 of the Allegheny/Mohawk Labor Protective Provisions, but also provided, with respect thereto:

> Such MSL list shall be applied for transfer of pilots between the Company and any RAH entity only as may be hereafter agreed to by RAH, FAPA (or any properly-designated successor to FAPA) and the properly-designated representative of Republic pilots or any other pilot group of an RAH entity. The carriers will be operated separately under their respective CBAs without integration of the Pilot seniority lists until such integration and implementation is agreed to and concluded in accordance with Sections 3 and 13 of the Allegheny- Mohawk LPPs;

WHEREAS, on November 3, 2009, a Dispute Resolution Agreement ("DRA") establishing the procedure for the creation of the IMSL was entered into among "Republic Airways Holdings Inc. (RAH), on behalf of itself and its wholly owned affiliates Republic Airline Inc., Chautauqua Airlines, Inc. and Shuttle America Corp. (hereinafter collectively, "Republic"), Midwest Airlines, Inc., Frontier Airlines, Inc. and Lynx Aviation, Inc. (RAH and its affiliates together one "party" under this Agreement), and the Republic, Midwest, Frontier and Lynx pilots, as represented by their respective Seniority Merger Committees (the "Merger Committees") as duly created and authorized by each pilot group's duly designated representative (each such Merger Committee another "party" under this Agreement);" and Frontier was thus a party to the DRA only insofar as it was a "wholly owned affiliate" of RAH;

WHEREAS, pursuant to Section II.(e) and V.(g) of the DRA, an IMSL could not become effective before "the National Mediation Board (NMB) issues its ruling on whether the RAH affiliates comprise a single transportation system and certifies the Organization, if any, that is the duly designated representative of the pilot craft or class on that transportation system;" Section V.(g) of the DRA provided that the seniority arbitrator's award be final and binding on the single carrier and "the pilots employed by RAH and its affiliates;" Section V.(h) of the DRA provided for the continued existence of the Merger Committees solely pursuant to the authority of "[t]he Organization, if any, designated by the NMB as the duly designated representative of the combined craft or class of Flight Deck Crew Members for the single transportation system;" and Section V.(j) of the DRA required that the seniority arbitrator's award be considered to be a part of "the collective bargaining agreement(s) applicable to the combined craft or class," and provided for the resolution of disputes arising from the interpretation and application of the award before "the adjustment board established by the designated representative of the combined

craft or class and the single carrier of Flight Deck Crew Members for the single transportation system final and binding on the single carrier;"

WHEREAS, pursuant to the DRA, an arbitration was held before Arbitrator Dana E. Eischen resulting in a February 19, 2011 Award creating and IMSL subject to specified conditions (the "Eischen Award");

WHEREAS, in his Award, Arbitrator Eischen acknowledged that "[i]t is unknown whether the NMB will find a single transportation system for the pilot craft or class; if so, which of the pre-acquisition carriers will be included; and what organization, if any, will be certified by the NMB as the representative of the combined pilot craft and class in such a single transportation system," and therefore provided in the Eischen Award that the IMSL would not become effective until 60 days following the certification of a single bargaining representative for the combined craft or class following a finding of a single transportation system;

WHEREAS Arbitrator Eischen also acknowledged in his Award that "[m]y arbitral authority under the DRA does not extend to elimination or modification of existing contract language or to resolution of issues unrelated to the seniority integration, which must be addressed in another forum or at the negotiations table;" and that, "[a]fter the NMB makes its determinations, the designated single representative and the Company must negotiate an implementing agreement and/or consolidate the applicable CBAs;"

WHEREAS the Eischen Award assumed a future finding by the NMB that a single transportation system existed including Frontier and the Frontier Pilots, and that, "if the NMB concludes that Frontier is not part of the Republic single transportation system for the pilot craft or class, the integration methodology of the Award will be applied with the Frontier pilots excluded;"

WHEREAS in March 2011, before the Eischen Award became effective, Frontier hired certain former Midwest Pilots as new hires at Frontier, at which time said pilots were first placed on the Company payroll as pilots, with seniority determined in accordance with Section 3.A.1. of the Frontier CBA;

WHEREAS, pursuant to an application by the International Brotherhood of Teamsters, Airline Division (the "IBT"), on April 7, 2011 the NMB found that a single transportation system existed including, *inter alia*, Frontier and the RAH-affiliated carriers, pursuant to which, on June 28, 2011, the NMB certified the IBT as the single bargaining representative for the combined pilot craft or class,

WHEREAS, the Eischen Award therefore became effective on August 27, 2011; but no agreement implementing the Eischen Award and/or modifying LOA 39 was ever negotiated, as a result of which Frontier's flight operations remained separate from those of RAH's other affiliates; and Section 3 and the other seniority-related provisions of the Frontier CBA otherwise remained in effect without modification following the effective date of the Eischen Award;3

WHEREAS, in a Supplemental Award issued on October 22, 2011 (the "October 2011 Supplemental Award"), Arbitrator Eischen reiterated that, while the IMSL "confer[red] on each pilot a specific seniority rank status", "[u]nless and until the Company and the IBT agree upon collectively bargained contractual modifications or new Agreements, the IMSL does so in the context of the RJET/IBT Agreement and the Frontier/FAPA Agreement. Various collectively bargained provisions in those respective Agreements address the invocation, utilization, administration, implementation and retention of the seniority rank status conferred upon a pilot by the IMSL;"

WHEREAS, in the October 2011 Supplemental Award, Arbitrator Eischen held that the Eischen Award did not support or require any conditions or restrictions upon the exercise of IMSL seniority rank status for schedule, vacation and other recurrent bidding purposes, including the exercise of IMSL seniority by the Midwest Pilots hired by Frontier in March 2011 based on the effectiveness of the Eischen Award;

WHEREAS, in a further Supplemental Award issued on September 12, 2014 (the "September 2014 Supplemental Award"), Arbitrator Eischen reiterated that "'seniority rank status' through placement on the IMSL does not, in and of itself, confer any specific contractual right to the 'invocation, utilization, administration or implementation' of that status for any given position—all of which must be determined by reference to the terms of the existing CBAs," and that 'the hard work of amending currently applicable contractual provisions to facilitate expanded utilization of the seniority rank status conferred by the IMSL must be done at the bargaining table, not by an end run through the arbitration forum;" and held that the Eischen Award does not compel the awarding of vacancies at Frontier except through the contractual processes of the Frontier CBA;

WHEREAS, pursuant to Letter of Agreement 67 of the Frontier CBA ("LOA 67"), between June 24, 2011 and December 3, 2013, RAH and Frontier took various actions to separate Frontier from RAH and the other RAH affiliates; effective December 3, 2013, RAH sold a 100 per cent interest in Frontier to an investment group controlled by Indigo Partners, LLC, in which RAH had no interest; and, effective December 3, 2013, Frontier ceased to be an affiliate of RAH;

WHEREAS, on March 31, 2014, pursuant to a petition by FAPA, the NMB found that Frontier is a separate carrier from the RAH-affiliated carriers, noting, in part:

> Arbitrator Eischen issued the IMSL on February 19, 2011, before the Board's single system determination. Eischen noted that if the Board were to find Frontier separate from the Republic system, "the integration methodology of the Award will be applied with the Frontier pilots excluded." Further, the Award noted that its application may change if "facts and circumstances have materially changed ...;"

WHEREAS, on June 13, 2014, the NMB certified FAPA as the exclusive bargaining representative of the Frontier Pilot craft or class;

WHEREAS, based on the foregoing, as of June 13, 2014 and thereafter, Frontier is not an affiliate of RAH; Frontier is not part of a single transportation system with the RAH-affiliated carriers; the Frontier Pilots are not employed by RAH or any RAH affiliate; the Frontier Pilots are not part of a combined craft or class; FAPA is not the bargaining representative of a combined craft of class; and the Frontier CBA is not a collective bargaining agreement applicable to a combined craft or class;

WHEREAS, accordingly, as of June 13, 2014 none of the conditions for the application of the Eischen Award and IMSL with respect to Frontier exist, and Section 3 and the other seniority-related provisions of the Frontier CBA apply by their terms without modification;

WHEREAS, Frontier and FAPA have mutually agreed on the correct interpretation and application of the seniority-related provisions of the Frontier CBA in light of the foregoing;

WHEREAS, in addition to representing the correct interpretation and application of the existing seniority-related provisions of Frontier CBA, Frontier and FAPA have agreed that, in the event of any dispute or inconsistency regarding the correct interpretation and application of such provisions, the administration of seniority agreed upon in this Letter of Agreement will, in light of the same circumstances, represent reasonable working conditions and be consistent with proper compensation, by treating all pilots' seniority rights similarly based on the first date each pilot appeared on the payroll as a pilot employee of Frontier; restoring the normal seniority system historically used at Frontier as a separate carrier; and thereby furthering stability and the stated purposes of the Frontier CBA;

WHEREAS, as of September 13, 2014, at FAPA's request the Company is administering the Frontier CBA in accordance with those understandings; and

WHEREAS it is desirable to set out with specificity the parties' mutual understandings as to the correct interpretation and application of the seniority-related provisions of the Frontier CBA, and in any event the reasonable seniority system to follow for Frontier as a separate carrier; and the Company and the Association accordingly wish to confirm in writing those understandings;

IT IS NOW THEREFORE AGREED AS FOLLOWS:

1. Effective June 13, 2014, the Eischen Award and the IMSL (including any restriction on a pilot's exercise of contractual seniority), are no longer effective with respect to seniority under the Frontier CBA.

2. Effective June 13, 2014, the seniority of a Pilot under the Frontier CBA shall be determined based on the date on which the Pilot was first placed on the

Company payroll as a pilot, in accordance with Section 3.A.1. of the Frontier CBA; and the Frontier Airlines, Inc. Pilot System Seniority List or "Seniority List" shall be determined in accordance with Section 3.B. of the Frontier CBA.

3. A copy of the Seniority List, effective as of June 13, 2014, is attached as Appendix 1 to this Letter of Agreement, and shall constitute the Seniority List as defined in Section 3.B. of the Frontier CBA.

4. The Company will maintain and post an accurate copy of the Seniority List, as updated, in accordance with Section 3.B.3 of the Frontier CBA.

5. A Pilot may protest his position on the Seniority List in accordance with Section 3.C. of the Frontier CBA.

6. Unless otherwise specifically provided in this Letter of Agreement, all terms in this Letter of Agreement shall have the meaning they have under the Frontier CBA.

7. This written Letter of Agreement, confirming the parties' mutual understandings as to the correct interpretation and application of the seniority-related provisions of the Frontier CBA and the reasonable seniority system to be followed at Frontier as a separate carrier, shall be effective upon ratification of this written Letter of Agreement pursuant to FAPA Constitution and Bylaws.

IN WITNESS WHEREOF, the parties hereto have signed this Letter of Agreement this 9th day of October, 2014

FOR: Frontier Airlines, Inc.

Captain Scott Gould, VP-Flight Operations

FOR: Frontier Airline Pilots Association

First Officer Brian Ketchum, President