# EXHIBIT F



**NATIONAL MEDIATION BOARD**
WASHINGTON, DC 20572

(202) 692-5000

| In the Matter of the Application of the<br><br>FRONTIER AIRLINE PILOTS ASSOCIATION (FAPA)<br><br>alleging a representation dispute pursuant to Section 2, Ninth, of the Railway Labor Act, as amended<br><br>involving employees of<br><br>FRONTIER AIRLINES, INC. | 41 NMB No. 11<br><br>CASE NO. R-7381<br>(File No. CR-7107)<br><br>FINDINGS UPON INVESTIGATION<br><br>March 31, 2014 |
|---|---|

This determination addresses the application filed pursuant to the Railway Labor Act (RLA)[1] by the Frontier Airline Pilots Association (FAPA). FAPA requests the National Mediation Board (NMB or Board) to investigate whether Frontier Airlines, Inc. (Frontier) now constitutes a separate system from the other carriers that compromised the Republic Airlines, et al./Frontier, single system for the craft or class of Pilots. *See Republic Airlines, et al./Frontier*, 38 NMB 138 (2011) (single system determination finding Frontier part of a single transportation system for the craft or class of Pilots, including Republic Airlines (RA), Shuttle America (Shuttle), and Chautauqua Airlines (Chautauqua)).[2]

The current investigation establishes that Frontier is operating as a single transportation system for the craft or class of Pilots.

---

1 45 U.S.C. § 151, *et. seq.*

2 This system also included the former Lynx Aviation and Midwest Airlines Pilots.

PROCEDURAL BACKGROUND

On October 4, 2010, the International Brotherhood of Teamsters, Airline Division, (IBT) filed an application alleging a representation dispute involving the craft or class of Pilots at the Republic Airways Holdings (RAH) system (including RA, Shuttle, Chautauqua, and Frontier, as well as the former Lynx Aviation and Midwest Airlines). The IBT represented the Pilots at Chautauqua (R-6199). *Chautauqua Airlines, Inc.*, 20 NMB 567 (1993). The IBT also represented the Pilots at Republic and Shuttle through a voluntary recognition agreement. FAPA represented the Pilots at Frontier (R-6630). *Frontier Airlines*, 26 NMB 94 (1998).

After an investigation, the Board issued a determination finding that Frontier was appropriately part of the Republic Airlines, et al./Frontier single transportation system and directed an election. *Republic Airlines, et al./Frontier*, 38 NMB 138 (2011). FAPA filed a Motion for Reconsideration on the Board's single system finding which was denied. *Republic Airlines, et al./Frontier*, 38 NMB 175 (2011).

RAH filed a submission on June 22, 2011, seeking to postpone the election due to a planned corporate restructuring and divestiture of majority ownership of Frontier which would prospectively affect whether Frontier was part of the Republic Airlines, et al/Frontier single transportation system. *Republic Airlines, et al./Frontier*, 38 NMB 242 (2011). RAH stated that it entered into a Letter of Agreement ("commercial agreement") with FAPA, effective June 17, 2011 and fully ratified by the Frontier Pilots, "detailing the Frontier restructuring effort and reflecting the Company's changed business strategy to have Frontier ultimately operate as a separate corporate entity." In exchange for FAPA's agreement to modify its collective bargaining agreement (CBA) and agree to significant labor cuts, RAH agreed to: maintain separate Frontier websites for all sales, operational and recruitment purposes; further separate the Frontier management structure to include appointing a separate Frontier Chief Operating Officer and an independent Director of Labor Relations for Frontier; create separate Frontier Human Resources and Payroll functions; maintain a separate and unique Frontier Employee Handbook; and document arms-length agreements with any RAH subsidiary that operates on behalf of Frontier. *Id.* at 243. RAH also agreed to divest itself of its majority equity stake in Frontier no later than December 31, 2014, after which a separate Frontier Board of Directors would be established. *Id.* The Board denied FAPA's request citing its mandate under Section 2, Ninth to resolve



Case 2:14-cv-01441-RTR Filed 01/16/15 Page 3 of 18 Document 18-6

representation disputes as expeditiously as possible and "on the present status and interests of employees involved...." *Id.* at 244. On June 28, 2011, the IBT was certified as the representative of the Pilots at Republic Airlines, et. al./Frontier. *Republic Airlines, et. al./Frontier,* 38 NMB 245 (2011) (R-7284).

On December 3, 2013, RAH completed the sale of all of the outstanding shares of its wholly-owned subsidiary, Frontier Airlines Holdings, Inc. (which owns Frontier) to the Falcon Acquisition Group, Inc., an affiliate of Indigo Partners, LLC. On December 18, 2013, FAPA filed a representation application for the Pilots on Frontier seeking a single transportation investigation and an election. Cristina Bonaca was assigned as the Investigator. The participants filed their initial position statements on January 24, 2013. The Investigator granted an opportunity for all participants to file supplemental position statements which were submitted February 18, 2014. FAPA, Frontier, and IBT all submitted a final position statement on March 11, 2014.

## ISSUES

Is Frontier separate from the Republic Airlines, et al. system for the craft or class of Pilots? If so, what are the representation consequences?

## CONTENTIONS

### IBT

The IBT contends that the Board should dismiss FAPA's application as barred by the certification bar per its holding in *Virgin Atlantic Airways*, 21 NMB 183 (1994). IBT argues that *Virgin Atlantic Airways* dictates that the two year certification bar of 29 C.F.R. § 1206.4(a) "be tolled during a period in which a carrier violates its Section 2, Ninth absolute duty to deal with the representative certified by the NMB." Here, IBT argues that Frontier refused to deal with it concerning the rates of pay, rules and working conditions of Frontier's Pilots following the IBT's certification as the representative of all Pilots on the RAH single system. Specifically, IBT takes issue at the creation of the commercial agreement between RAH, Frontier, and FAPAInvest, LLC which covered concessions' conditions and "upside" benefits.[3] The commercial

[3] The commercial agreement also includes two amendments, a December 20, 2011 profit sharing agreement, and a June 1, 2012 Phantom Equity Investment Agreement.

agreement was entered into June 17, 2011, just four days prior to the IBT's certification as representative of the craft or class of Pilots on the system. The issue of whether Frontier, RAH, and FAPAInvest, LLC violated Section 2, Ninth is the subject of litigation by the IBT pending in the United States District Court for the District of Colorado. *See Int'l Brotherhood of Teamsters, Airline Division v. Frontier Airlines, Inc., et al*, Case No. 11-cv-2007 (D. Colo.).

The IBT also argues that the application should be dismissed as improper because FAPA has provided an insufficient showing of interest to support its application. IBT contends that FAPA must provide a 50 percent showing of interest among all the Pilots at RA, Shuttle, Chautauqua and Frontier, who all hold places on the Frontier seniority list.

IBT advises the Board to consider the fact that a merged seniority list governs the Frontier Pilots as well as the Pilots of the other RAH carriers. IBT writes that the Integrated Master Seniority List (IMSL) covering all Pilots at Frontier and the Republic operating subsidiaries "counsels in favor of maintaining the current single system in order to preserve rational and stable labor relations." The issue of whether all Pilots on the IMSL have present and vested rights to jobs at Frontier was scheduled to be briefed before Arbitrator Eischen on March 24, 2014.

FAPA

FAPA asserts that circumstances have changed materially since the Board's earlier single carrier decision finding Frontier part of the Republic Airlines, et al./Frontier system for the craft or class of Pilots. On December 3, 2013, Indigo Partners, LLP purchased one hundred percent of all ownership and assets of Frontier from RAH. FAPA asserts that the management structure, labor relations and personnel policies, and operational control of Frontier are totally separate from any carrier owned by RAH. Further, FAPA contends that Frontier maintains its own schedules and routes, has its own uniforms separate from the other carriers, and is operating on a separate Federal Aviation Administration (FAA) Operating Certificate. While an IMSL was created after the single system determination, no collectively-bargained implementing agreement was ever negotiated and the IMSL has never been applied to effect the transfer of a Pilot to Frontier from the Chautauqua/RA/Shuttle system. Therefore, FAPA asserts that Pilots at Frontier have at all times continued to operate separately subject to the Frontier CBA. Finally, an integrated seniority list is only one factor that



Case 2:14-cv-01441-RTR Filed 01/16/15 Page 5 of 18 Document 18-6

supports a single system determination – and, from FAPA's perspective, the only factor that still remains in support of finding Frontier part of the Republic system.

In response to the IBT, FAPA states that the NMB's certification bar is inapplicable to FAPA's application as it does not cover "the same craft or class of employees on the same carrier" as the IBT's 2011 certification. *See* NMB Rule § 1206.4(a). FAPA additionally contends that the *Virgin Atlantic* decision, 21 NMB 183 (1994), is distinguishable as Frontier has recognized and treated with the IBT, and there has been no judicial finding that Frontier has violated Section 2, Ninth of the RLA or that the commercial agreement is within the scope of Frontier's bargaining relationship with the IBT. Finally, FAPA contends that even if the certification bar were applicable, "the complete separation" of Frontier from the other RAH carriers are "unusual or extraordinary circumstances" calling for the lifting of the bar. *See* NMB Rule § 1206.4.

FAPA contends that it has submitted a showing of interest supported by over 50 percent of the Pilots at Frontier. *See* NMB Rule § 1206.2. FAPA disputes IBT's claim that the showing of interest needs to be from all Pilots on the previously-found Republic system. FAPA argues that the only showing of interest required to initiate an investigation of whether Frontier is now a separate carrier, is a showing of interest in the applied-for craft or class of Pilots employed by Frontier. Accordingly, FAPA requests that the NMB proceed with a system determination followed by a representation election.

## FRONTIER

Frontier submits that it is now a single transportation system for purposes of the craft or class of Pilots as: it was sold in its entirety from RAH to Indigo Partners, LLC; its Board of Directors, senior management team, and labor relations executives are wholly separate from that of RAH and its carriers; the Pilot operations and FAA Operating Certificate are wholly separate from RAH and its carriers; and finally, Frontier is held out to the public as a separate entity and is no longer included in RAH's consolidated reporting. For all these reasons, Frontier contends that it is now a separate transportation system for the craft or class of Pilots.

Frontier disputes IBT's contention that the certification bar, 29 C.F.R. § 1206.4 (a), should apply here because Frontier violated Section 2, Ninth in its

refusal to bargain with the IBT over the commercial agreement. Frontier distinguishes the facts of the present case and *Virgin Atlantic Airways*, 21 NMB 183 (1994) in several ways. In *Virgin Atlantic Airways,* there had been a "definitive finding" by the federal courts that the carrier had violated its Section 2, Ninth obligations by refusing to recognize the certification or treat with the IBT as the certified collective bargaining representative of its employees. Here, Frontier argues, there has been no definitive federal-court decision finding that Frontier refused to bargain with the IBT. Frontier then states that it and IBT have "indisputably" engaged in an ongoing collective bargaining relationship since the IBT was certified. Examples of Frontier's bargaining with the IBT include engaging in grievance processing, regularly meeting to discuss issues affecting Pilots, and adhering to union security and notification requirements in the Pilot CBA. Further, Frontier contends that the certification bar cannot permissibly apply since FAPA's application only covers the Pilots at Frontier, as opposed to all Pilots in the single system covered by the IBT's certification. Finally, Frontier argues that Frontier's spin-off from the prior Republic single transportation system warrants an "unusual or extraordinary circumstances" exception to the certification bar.

Frontier also disagrees with the IBT's argument that FAPA's application must be supported by a majority showing of interest of all Pilots in the single transportation system (including RA, Chautauqua, and Shuttle). Frontier argues that the Board's recent rulemaking clearly states that the 50 percent showing of interest is based on the craft or class of employees that the applicant seeks to represent. *See* 75 Fed. Reg. 75545, 29 C.F.R. § 1206.2, Section 19.6 Board Representation Manual.

## FINDINGS OF LAW

Determination of the issues in this case is governed by the RLA, as amended, 45 U.S.C. §§ 151-188. Accordingly, the Board finds as follows:

### I.

Chautauqua, Shuttle, RA, and Frontier are common carriers as defined in 45 U.S.C. § 181.



Case 2:14-cv-01441-RTR Filed 01/16/15 Page 7 of 18 Document 18-6

II.

IBT and FAPA are labor organizations as provided by 45 U.S.C. § 152, Ninth.

III.

45 U.S.C. § 152, Fourth, gives employees subject to its provisions, "the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter."

IV.

45 U.S.C. § 152, Ninth, provides that the Board has the duty to investigate representation disputes and to designate who may participate as eligible voters in the event an election is required. In determining the choice of the majority of employees, the Board is "authorized to take a secret ballot of the employees involved or to utilize any other appropriate method of ascertaining the names of their duly designated and authorized representatives . . . by the employees without interference, influence, or coercion exercised by the carrier."

## STATEMENT OF FACTS

### Corporate Transactions and Management

RAH, based in Indianapolis, Indiana, is an airline holding company which offers scheduled passenger service through its subsidiary airlines (RA, Shuttle, Chautauqua), each of which has its own operating certificate. Frontier and Lynx were acquired most recently, on October 1, 2009. Lynx was subsequently shut down in 2011.[4]

When Frontier was acquired by RAH, it was operated in a different manner than the other RAH subsidiaries. Frontier provided "branded" service: using its own brand and code and its distinct livery on aircraft, it held its own

[4] Midwest Airlines was acquired July 31, 2009. On November 3, 2009, all Midwest aircraft were removed from service and Midwest ceased operations. Midwest was a party to the November 3, 2009 agreement with RAH and its other subsidiaries to integrate Pilot seniority. The furloughed Midwest Pilots were included in the final award issued February 2, 2011.



Case 2:14-cv-01441-RTR Filed 01/16/15 Page 8 of 18 Document 18-6

FAA operating certificate and website, and it maintained some separate day-to-day management at the holding company level. *Republic Airlines et al./Frontier*, 38 NMB 138, 143 (2011). The Board found Frontier to be part of the single transportation system as it was wholly owned and controlled by RAH, and management, personnel functions, and labor relations between the carriers were integrated. *Id.* at 154-55, 157. Also relevant, Frontier was held out to the public as being part of the RAH system. *Id.* at 155.

On December 3, 2013, RAH completed the sale of all of the outstanding shares of its wholly-owned subsidiary, Frontier Airlines Holdings, Inc., to the Falcon Acquisition Group, Inc., an affiliate of Indigo Partners, LLC. On the same day of Frontier's sale to Indigo Partners, LLC, David Siegel, President and CEO of Frontier, resigned from RAH's Board of Directors. RAH no longer holds any ownership interest in Frontier, and has no common ownership of, nor any common directors or managers with, any affiliate of Frontier, including Indigo Partners, LLC.

As of the eligibility cut-off date of December 15, 2013, Frontier employed 673 Pilots.

Labor Relations/Personnel Functions

Frontier's senior management team, including those responsible for personnel functions and labor relations, is wholly separate from and does not overlap with that of RAH or the remaining RAH carriers. Frontier's senior labor relations official is Director of Human Resources and Labor Relations Jacalyn Peters. Frontier maintains separate hiring, a separate employee handbook, and separate personnel policies.

Seniority Integration Agreement

Arbitrator Eischen issued the IMSL on February 19, 2011, before the Board's single system determination. Eischen noted that if the Board were to find Frontier separate from the Republic system, "the integration methodology of the Award will be applied with the Frontier pilots excluded." Further, the Award noted that its application may change if "facts and circumstances have materially changed."

While the 2011 IMSL covers all Pilots at Frontier and the RAH carriers, no collectively-bargained implementing agreement has even been concluded.



Case 2:14-cv-01441-RTR Filed 01/16/15 Page 9 of 18 Document 18-6

Jacalyn Peters, Senior Director of Human Resources and Labor Relations for Frontier, stated that since the IBT's certification, Frontier has dealt with the IBT on a number of matters including contractual grievances, disciplinary investigations, and to enforce union dues. However, the IBT has not sought to enter into any Letters of Agreement or otherwise modify the existing Pilot CBA language. Further, neither the IBT nor Republic has requested negotiations over a joint CBA governing Pilots of the single transportation system determined by the NMB in 2011.

Accordingly, the Pilots at Frontier continue to work separately under the Frontier CBA. The issue of whether all Pilots on the merged seniority list established by Arbitrator Eischen have present and vested rights to jobs at Frontier has been presented to Arbitrator Eischen with a final briefing scheduled for March 24, 2014.

Pilot Operations

The operations of Frontier with respect to the Pilots are completely separate from that of RAH and the remaining RAH carriers. Frontier has a separate operational structure, independent flight operations, separate operational control, and maintains a separate FAA operating certificate.

Marketing

Frontier is now held out to the public as a separate entity and is no longer included in RAH's consolidated reporting. In addition, Frontier's website, http://www.flyfrontier.com/who-we-are/company-info/fact-sheet,provides that their headquarters is in Denver, Colorado. In describing Frontier, the website provides the following:

> Currently in its 20th year of operations, Frontier employs more than 3,900 aviation professionals and operates more than 350 daily flights. Its primary hub is at the Denver International Airport. Frontier offers service to more than 75 destinations in the United States, Costa Rica, the Dominican Republic, Jamaica, and Mexico.



Case 2:14-cv-01441-RTR Filed 01/16/15 Page 10 of 18 Document 18-6

In contrast, RAH's website, http://www.shuttleamerica.com/Who_We_Are/Airlines.aspx, states:

> Republic Airways Holdings, based in Indianapolis, Indiana, is an airline holding company that owns Chautauqua Airlines, Republic Airlines and Shuttle America.

Uniforms

Pilots at Frontier wear Frontier's uniforms.

Equipment

Frontier's fleet is all painted with the Frontier livery.

Insignia and Logos

Frontier retained its corporate insignia and logos post-merger with RAH and continues to do so.

DISCUSSION

I.

The Board's Authority

45 U.S.C. § 152, Ninth, authorizes the Board to investigate disputes arising among a carrier's employees over representation and to certify the duly authorized representative of such employees. The Board has exclusive jurisdiction over representation questions under the RLA. *General Comm. of Adjustment v. M.K.T. R.R. Co.*, 320 U.S. 323 (1943); *Switchmen's Union of N. Am. v. Nat'l Mediation Bd.*, 320 U.S. 297 (1943). In *Air Line Pilots Ass'n, Int'l v. Texas Int'l Airlines, Inc.*, 656 F.2d 16, 22 (2d Cir. 1981), the court stated, "[t]he NMB is empowered to . . . decide representation disputes arising out of corporate restructurings."

II.

Single Transportation System

The Board's Representation Manual (Manual) Section 19.4 provides that: "Any organization or individual may file an application, supported by evidence of representation or a showing of interest . . . seeking a NMB determination that a single transportation system exists." Manual Section 19.501 provides the factors for making a determination whether a single system of transportation exists.

In *Trans World Airlines/Ozark Airlines*, the Board cited the following indicia of a single transportation system:

> [W]hether a combined schedule is published; how the carrier advertises its services; whether reservation systems are combined; whether tickets are issued on one carrier's stock; if signs, logos and other publicly visible indicia have been changed to indicate only one carrier's existence; whether personnel with public contact were held out as employees of one carrier; and whether the process of repainting planes and other equipment, to eliminate indications of separate existence, has been progressed.
>
> Other factors investigated by the Board seek to determine if the carriers have combined their operations from a managerial and labor relations perspective. Here the Board investigates whether labor relations and personnel functions are handled by one carrier; whether there are a common management, common corporate officers and interlocking Boards of Directors; whether there is a combined workforce; and whether separate identities are maintained for corporate and other purposes.

14 NMB 218, 236 (1987).

In this case, the Board must look to see whether a prior single transportation system was extinguished. Frontier is now owned by Indigo

Partners, LLC and does not share Boards of Directors or other senior managers with RAH. Frontier controls all aspects of its flight operations, holding its own FAA operating certificate, flying its aircraft under the Frontier livery and code, with Pilots wearing Frontier uniforms. Frontier additionally controls all aspects of its labor relations and all personnel policies. Frontier is also held out to the public as separate from the RAH carriers, both on its website and in financial reporting.

There still remains an IMSL covering all Pilots on the formerly-found Republic Airlines, et al./Frontier single transportation system. However, no collectively bargained implementing agreement was ever concluded so the Frontier Pilots have been effectively operating separately under the Frontier CBA. Further, the only indicia still supporting Frontier's inclusion in the RAH single transportation system is the IMSL. This factor alone is insufficient to support finding Frontier part of the RAH transportation system. *See Republic Airlines, et al./Frontier*, 38 NMB 138, 154 (2011), *Northwest Airlines, Inc./Delta Air Lines, Inc.*, 37 NMB 88 (2009) (Board finds a single transportation system only when there is substantial integration of operations, financial control, and labor and personnel functions.); *See also Precision Valley Aviation, Inc., d/b/a Precision Airlines and Valley Flying Serv., Inc., d/b/a Northeast Express Reg'l Airlines*, 20 NMB 619 (1993) (a substantial degree of overlapping ownership, senior management, and Boards of Directors is critical to finding a single transportation system.).

Based upon the application of the principles cited above to the facts established by the investigation, the Board finds that Frontier is operating as a single transportation system for the craft or class of Pilots.

III.

The Certification Bar/*Virgin Atlantic* Doctrine

The IBT relies on *Virgin Atlantic Airways*, 21 NMB 183 (1994), for the proposition that the two year certification bar in 29 C.F.R. § 1206.4(a) be tolled during a period in which a carrier violates its Section 2, Ninth duty to deal with the representative certified by the NMB. *See* Section 2, Ninth ("Upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class …"). The certification bar is based on the principle that "labor stability is enhanced by providing labor and management with a reasonable amount of time" to establish a collective



Case 2:14-cv-01441-RTR Filed 01/16/15 Page 13 of 18 Document 18-6

bargaining representative. *Jet America*, 11 NMB 173 (1984).

29 C.F.R. § 1206.4 of the NMB Rules provides instruction on time limits for applications. It provides:

> Except in unusual or extraordinary circumstances, the National Mediation Board will not accept an application for investigation of a representation dispute among employees of a carrier:
>
> (a) For a period of two (2) years from the date of a certification covering the same craft or class of employees on the same carrier.

In *Virgin Atlantic Airways*, the carrier challenged the IBT's 1988 certification to represent customer service employees of the carrier, because the Board had counted the votes of four challenged individuals. *Virgin Atlantic Airways, Ltd. v. NMB*, 956 F.2d 1245, 1249 (1992). The carrier also refused to deal with the IBT as the representative of the customer service employees. The IBT counterclaimed to enforce the Board's certification. *See Virgin Atlantic Airways*, 21 NMB 183, 189-90 (1994).

The Court of Appeals held that the IBT's certification should be reinstated and that Virgin violated its duty under Section 152 Ninth to "sit down at the bargaining table with the union." *Virgin Atlantic Airways, Ltd. v. NMB*, 956 F.2d 1245, 1252 (1992). On remand, the district court subsequently entered a final order enforcing the NMB's certification and directing Virgin to deal with the IBT. *See Virgin Atlantic Airways,* 21 NMB 183, 190 (1994). Subsequently, an in-house organization filed an application to represent the craft or class of employees represented by the IBT. The Board initially denied the IBT's request for a dismissal of the application, but reversed itself on a Motion for Reconsideration. *Id.* at 186.

In applying the certification bar and dismissing the application as premature under the two year bar, the Board stated two important principles.

> … [W]here a carrier refuses to bargain with a certified representative despite the representative's reasonable efforts to initiate such bargaining, the NMB's certification bar shall be tolled….Where bargaining has



Case 2:14-cv-01441-RTR Filed 01/16/15 Page 14 of 18 Document 18-6

> been refused and is the subject of enforcement litigation, the two-year certification bar shall commence *on the date the courts act with finality to compel such bargaining.*
>
> …
>
> In this case, the Board has not 'evaluated' the bargaining between the carrier and the certified representative. Rather, the Board here appropriately takes administrative notice of the definitive findings of the Federal courts as to the carrier's refusal to bargain and applies its certification bar rule consistent with the unusual circumstances identified in those judicial findings.

*Id.* at 186-87 (Emphasis added), 196.

Here, the IBT argues that Frontier violated Section 2, Ninth, by refusing to bargain over terms covered by the commercial agreement it had entered into with FAPA prior to the representation election. IBT filed a lawsuit in the United States District Court for the District of Colorado against Frontier, RAH, and FAPAInvest, LLC, on the issue of whether there was a violation of Section 2, Ninth. *International Brotherhood of Teamsters, Airline Division v. Frontier Airlines, Inc., et al*, Case No. 11-cv-2007 (D. Colo.). The Court has not issued a final decision in the matter.

The Board does not have jurisdiction to "evaluate" whether Frontier treated with the IBT as the certified representative as required under Section 2, Ninth. *See* Section 2, Ninth; *Virgin Atlantic Airways*, 21 NMB 183, 196 (1994). That is a matter currently being adjudicated in federal court. As there has been no "definitive finding" of the federal court, the Board cannot appropriately apply the certification bar. *Id.*

Further, the language of the certification bar specifically states that it bars applications covering "the same craft or class of employees on the same carrier." 29 C.F.R. § 1206.4. Here, the application is covering the Pilots on Frontier, rather than the Pilots on Republic Airlines, et al./Frontier. *See also* NMB Representation Manual Section 19.6. ("If the NMB determines that a single transportation system exists, the investigation will proceed to address

the representation of the proper craft or class. *The bar rules in NMB Rule § 1206.4 (29 CFR § 1206.4) do not apply to applications filed under this section*)." (Emphasis added).

Accordingly, the Board's certification bar will not be applied here.

IV.

Showing of Interest After a Merger or Spin-off

The Board's Representation Manual outlines the steps that will occur after the Board determines a single transportation system exists. Section 19.6 provides that after the NMB determines that a single transportation system exists, the investigation will proceed to address the representation of the proper craft or class. Section 19.601 discusses the necessary showing of interest on the single transportation system and provides that, "all applicants must submit evidence of representation or showing of interest from at least fifty (50) percent of the employees in the craft or class."

The IBT argues that FAPA's application must be dismissed because it has not provided a majority showing of interest among all the Pilots at RA, Shuttle, Chautauqua, and Frontier. The IBT is incorrect in its interpretation of Section 2, Twelfth, which now requires a showing of interest from not less than 50 percent of the employees in the applied-for craft or class for all applications. 45 U.S.C. § 152, Twelfth.

The Board in its recent rulemaking following the adoption of Section 2, Twelfth, clarified its procedure of first determining the appropriate system post-merger or divestiture, and then moving to address whether the applicant provided a sufficient showing of interest for the new craft or class created by the merger or divestiture. In its rulemaking, the Board stated:

> After the Board makes a single carrier determination, the issue becomes who is the representative of the new craft or class created by the merger; it is not simply a question of existing certifications....The applicant is seeking to 'be certified' as the representative of the newly created craft or class.... Congress is now saying,



Case 2:14-cv-01441-RTR Filed 01/16/15 Page 16 of 18 Document 18-6

> with Section 2, Twelfth, that the Board must require the same showing of interest requirement for any application.

77 Fed. Reg. 75543, 75545 (Dec. 21, 2012).

Accordingly, here the Board determined whether Frontier was a single transportation system after its sale from RAH to Indigo Partners, LLC. The Board found that Frontier is operating as a single transportation system for the craft or class of Pilots.

CONCLUSION

The Board finds that Frontier is operating as a single transportation system for the craft or class of Pilots for representation purposes under the RLA. Accordingly, FAPA's application in File No. CR-7107 is converted to NMB Case No. R-7381. Pursuant to Manual Section 19.6, the investigation will proceed to address the representation of this craft or class.

Frontier notified the Board that as of the eligibility cut-off date of December 15, 2013, Frontier had an employer-employee relationship with 673 Pilots. Frontier has also provided an alphabetized list of potential eligible voters to the Board and all participants. Signatures samples were provided to the Board.

Any Intervenor has thirty (30) calendar days from the date of this determination to file an application supported by a showing of interest of at least 50 percent of the single transportation system or to supplement the showing of interest in accordance with Manual Sections 19.601 and 19.602. The participants are reminded that under Manual Section 19.7, existing certifications remain in effect until the Board issues a new certification or dismissal.

By direction of the NATIONAL MEDIATION BOARD.

Mary L. Johnson

Mary L. Johnson
General Counsel

Copies to:

Jacalyn W. Peter, Esq.
Scott Gould
Chris Hollinger, Esq.
David P. Bourne
Nicholas M. Manicone, Esq.
William R. Wilder, Esq.
Wesley Kennedy, Esq.
Brian Ketchum
Joseph Goldhammer, Esq.



Case 2:14-cv-01441-RTR Filed 01/16/15 Page 18 of 18 Document 18-6