# EXHIBIT I

LEXSEE


Positive
As of: Jan 16, 2015

SCOTT CUNNINGHAM, ANDREW HOLZMANN, and TROY LOWN, individually and on behalf of all other similarly situated, Plaintiffs, v. UNITED AIRLINES, INC. and AIR LINE PILOTS ASSOCIATION, Defendants.

No. 13 C 5522

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2014 U.S. Dist. LEXIS 13414

February 4, 2014, Decided
February 4, 2014, Filed

**SUBSEQUENT HISTORY:** Affirmed by Cunningham v. Air Line Pilots Ass'n, Internat., 2014 U.S. App. LEXIS 19248 (7th Cir. Ill., Oct. 8, 2014)

**CASE SUMMARY:**

**OVERVIEW:** HOLDINGS: [1]-In union members' suit arising out of contractual changes after an airline merger, the court lacked jurisdiction under the Railway Labor Act (RLA), 45 U.S.C.S. § 151 et seq., over a breach of contract claim because it raised only a "minor dispute" subject to mandatory arbitration under the RLA; [2]-While the breach of the duty of fair representation claim was a non-minor dispute, the members did not properly plead such a claim because their allegations did not show arbitrariness, discrimination, or bad faith; at most, they alleged that the union dealt with a seniority conflict in a fashion contrary to their preferences, which did not give rise to such a claim; [3]-The members' claim that the company colluded with the union with respect to resolution of the seniority conflict failed because the duty of fair representation claim failed.

**OUTCOME:** Motions granted; case dismissed.

**CORE TERMS:** pilot, arbitration, longevity, grievance, airline, minor disputes, collusion, bargaining agreement, futility, pre-merger, failure to exhaust, exhaustion, discriminatory, conclusory, futile, bad faith, reasonableness, arbitrator, hostility, seniority, arbitral, hired, collective bargaining, wide range, articulated, negotiated, partisan, somehow, carrier, pled

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Motion Practice > General Overview*
[HN1]When ruling on a motion to dismiss, a court must accept as true all well-pleaded allegations in the complaint, drawing all reasonable inferences in favor of the plaintiff.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Motion Practice > General Overview*
[HN2]Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
[HN3]Under the Federal Rules of Civil Procedure, when deciding a Fed. R. Civ. P. 12(b)(6) motion, a court construes the complaint in the light most favorable to the

Page 1

plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN4]A complaint need contain only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN5]A complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests. Though detailed factual allegations are not required, labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN6]A complaint must include sufficient facts to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement*
[HN7]Under the Railway Labor Act (RLA), 45 U.S.C.S. § 151 et seq., the federal courts' jurisdiction to resolve disputes pursuant to a collective bargaining agreement is limited. As a threshold matter, courts are to sort labor disputes into two piles, major or minor. "Major disputes" under the RLA relate to disputes over the formation of collective agreements or efforts to secure them, arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. In contrast, "minor disputes" contemplate the existence of a collective agreement already concluded, where the dispute relates to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Authority*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement*
[HN8]Arbitral boards established pursuant to the Railway Labor Act, 45 U.S.C.S. § 151 et seq., have exclusive jurisdiction to resolve disputes over the application of collective bargaining agreements in the railroad and airline industries.

*Civil Procedure > Appeals > Reviewability > Preservation for Review*
[HN9]It is well settled that conclusory and underdeveloped arguments are waived.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Authority*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement*
[HN10]Congress has created a statutory schema vesting exclusive subject matter jurisdiction for Railway Labor Act, 45 U.S.C.S. § 151 et seq., minor disputes in an arbitral board.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Authority*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement*
[HN11]Congress intended the Railway Labor Act, 45 U.S.C.S. § 151 et seq., procedures, particularly the Adjustment Boards, to be the exclusive means of dealing with minor matters involving the interpretation of a collective bargaining agreement and for all aggrieved employees to have access to such procedures. It necessarily follows that an employer and a union, through a negotiated collective bargaining agreement, cannot deprive a category of employees of access to the grievance and arbitration process. Thus, if a collective bargaining agreement is read to deny such access, the relevant clauses, to that extent, are invalid and unenforceable. Therefore, if the Adjustment Board were to refuse to entertain a union member's claim, or if the employer were to refuse to participate in the arbitration proceedings, the member would be entitled to a judicial order compelling arbitration. Such an order would serve the competing policies of ensuring that employees are not left remediless, and that minor disputes are resolved through arbitration rather than litigation.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Fair Representation*
[HN12]Simple negotiation between an employer and union is not evidence of collusion.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Authority*

Page 2

*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Enforcement*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement*
[HN13]Just because parties appointing members may disagree with the plaintiffs on the merits of their claim does not mean that resort to an arbitral board would be absolutely futile. The Railway Labor Act, 45 U.S.C.S. § 151 et seq., imposes on system board of adjustment members an obligation to conduct a full and fair hearing and also imposes on individual arbitrators a duty to adjudicate particular cases fairly without regard to their institutional predilections.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement*
[HN14]Duty of fair representation claims are by definition "non-minor" under the Railway Labor Act, 45 U.S.C.S. § 151 et seq.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN15]Under Twombly and Iqbal, an amended complaint must do more than set forth threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, or show the mere possibility of misconduct. Rather, the plaintiffs' factual allegations must be enough to raise a right to relief above the speculative level and must allege more than acts that are merely consistent with a defendant's liability.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Duty to Bargain*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Fair Representation*
[HN16]The relationship between the courts and labor unions is similar to that between the courts and the legislature, and any review of union actions must be highly deferential, recognizing the wide latitude that unions need to perform the collective bargaining functions effectively. Consequently, a collective bargaining agreement, or the final product of the bargaining process, can only constitute evidence of a breach of duty where it can be fairly characterized as so far outside a wide range of reasonableness that it is wholly irrational or arbitrary.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Fair Representation*
[HN17]To state a duty of fair representation claim, a plaintiff must show that the union's actions are outside of the wide latitude granted to unions in performing their collective bargaining functions, either because those actions are: (1) arbitrary, meaning that the actions are so far outside a wide range of reasonableness accorded to union decisions as to be wholly irrational; (2) discriminatory, which requires substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives, or that is based on an invidious trait such as race, gender, national origin, union membership or internal union politics; or (3) in bad faith, which is demonstrated by substantial evidence of fraud, deceitful action or dishonest conduct.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Fair Representation*
[HN18]Inherent conflicts materialize when a union represents different classes of employees and that unhappiness for some of these classes is inevitable: Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Duty to Bargain*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Fair Representation*
[HN19]If a Railway Labor Act, 45 U.S.C.S. § 151 et seq., duty of fair representation claim against the union is dismissed, the claim against the employer for being a party to this breach must also be dismissed.

**COUNSEL:** [*1] For Scott Cunningham, individually and on behalf of all others similarly situated, Andrew Holzmann, individually and on behalf of all others similarly situated, Troy Lown, individually and on behalf of all others similarly situated, Plaintiffs: Allen P Press, Green Jacobson, P.c., Clayton, MO.

For Inc United Airlines, Defendant: Aparna Bhagwan Joshi, LEAD ATTORNEY, Omelveny & Myers, LLP, Washington, DC; John D. Ryan, LEAD ATTORNEY, LATHROP AND GAGE, LLP, Clayton, MO; Robert A. Siegel, LEAD ATTORNEY, O'MELVENY AND MYERS, Los Angeles, CA.

Page 3

For Air Line Pilots Association, Defendant: Sally E. Barker, LEAD ATTORNEY, SCHUCHAT AND COOK, St. Louis, MO.

**JUDGES:** JAMES F. HOLDERMAN, United States District Court Judge.

**OPINION BY:** JAMES F. HOLDERMAN

**OPINION**

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On February 22, 2013, plaintiffs Scott Cunningham, Andrew Holzmann, and Troy Lown (collectively "Plaintiffs"), on behalf of themselves and all other similarly situated individuals, filed their three-count Amended Class Action Complaint (Dkt. No. 2, "Am. Compl.") in the Eastern District of Missouri against defendants United Airlines, Inc. ("United") and the Air Line Pilots Association ("ALPA") (collectively "Defendants"). [*2] Plaintiffs' Amended Complaint alleges claims for breach of contract, breach of duty of fair representation, and complicity in breach of duty of fair representation arising out of the October 1, 2010 merger of United Air Lines, Inc. ("pre-merger United") and Continental Airlines ("Continental"). On August 2, 2013, the case was transferred to this court. (Dkt. No. 29.)

Pending before the court are ALPA's motion to dismiss (Dkt. No. 39) and United's motion to dismiss (Dkt. No. 42), both of which argue that this court lacks jurisdiction over Plaintiffs' claims, because they raise only "minor disputes" subject to mandatory arbitration under the Railway Labor Act, 45 U.S.C. §§ 151, *et seq.* ("RLA"). For the reasons stated in this order, the court grants Defendants' motions to dismiss.

BACKGROUND

[HN1]When ruling on a motion to dismiss, a court must accept as true all well-pleaded allegations in the complaint, drawing all reasonable inferences in favor of the plaintiff. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). Accordingly, this court accepts the allegations in Plaintiffs' Amended Class Action [*3] Complaints as true in articulating the relevant background facts below.

On October 1, 2010, pre-merger United acquired Continental in what was termed a "merger of equals." (Am. Compl. ¶ 8.) In March 2012, United ceased operating Continental as a separate airline. (*Id.*)

ALPA is an international pilot union, representing nearly 51,000 pilots at 35 airlines in the United States and Canada. (*Id.* ¶ 31.) ALPA is the certified collective bargaining agent for all of United's pilots, including Plaintiffs. (*Id.* ¶ 9.) ALPA's organizational structure includes a governing body called the "Master Executive Council" ("MEC") for each ALPA-represented airline, with each individual MEC responsible for carrying out ALPA's business at that particular airline. (*Id.* ¶ 33.) Prior to the merger, ALPA represented the pilots of both pre-merger United and Continental through separate MECs elected by each airline's pilots. (*Id.* ¶ 34.) After the merger, ALPA continued to represent the pilots of the merged airline through its separate legacy pre-merger United and Continental MECs. (*Id.* ¶ 35.)

In December 2012, United and ALPA entered into a new collective bargaining agreement that governs the pay and work rules of [*4] United's pilots known as the "United Pilot Agreement" ("UPA").[1] (*Id.* ¶ 9.) The UPA was jointly negotiated by committees from the legacy pre-merger United and Continental MECs. (*Id.* ¶ 36.) Under the UPA, a pilot's hourly pay rate is determined by three basic factors: (1) his or her "longevity;" (2) his or her rank (Captain or First Officer); and (3) the type of aircraft he or she flies. (*Id.* ¶ 22.) A pilot's pay longevity, in turn, is determined by the date he or she was "hired as a Pilot" by pre-merger UAL or Continental, and includes time while he or she was furloughed from either airline. (*Id.* ¶ 23.) For pay purposes, longevity is capped at 12 years under the UPA. (*Id.*) The UPA was made effective on December 15, 2012, with pay provisions made retroactive to December 1, 2012. (*Id.* ¶ 21.)

> 1   United and ALPA have both attached the United Pilot Agreement as an exhibit to their pending motions to dismiss. (*See* Dkt. Nos. 45, Ex. 2; 46, Exs. 6-9.) Because this contract is central to Plaintiffs' claims and is explicitly referred to in Plaintiffs' Amended Class Action Complaint, the court may rely on it without converting to a motion for summary judgment. *See Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) [*5] ([HN2]"Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.")

Although each of the Plaintiffs' longevity exceeds 12 years, United has given each Plaintiff and purported Class [2] member credit for only 4 years and 7 months of longevity for purposes of determining their pay--specifically, from May 7, 2008 through December 1, 2012-- beginning December 1, 2012. (*Id.* ¶¶ 10, 25.) United did so at the insistence of the Continental MEC,

to the detriment of the Class and in favor of the junior legacy Continental pilots, the most junior of which were hired in May 2008. (*Id.* ¶ 39.) United and ALPA's agreement in this regard is evidenced in a side "Letter of Agreement" identified as "LOA 25" entered into between United and ALPA as part of the UPA, paragraph 4 of which provides as follows:

> Upon date of signing [the UPA], any pilot who is, or previously was, furloughed and whose accrued pay longevity is less than that of pilots hired on or before 5/6/08 shall receive additional pay longevity credit for time spent on furlough, but only to the extent that such credit does not provide a pay longevity [*6] date prior to 5/7/08.

(*Id.* ¶ 40.) Plaintiffs allege that this agreement has caused United to under-pay Plaintiffs and the Class members since December 1, 2012. (*Id.* ¶ 45.)

> 2    Plaintiffs have sought to bring this action on behalf of 470 other similarly situated United pilots, and have proposed the following class definition:
>
> > All persons employed as pilots by United and/or Continental on or after December 1, 2012 who were initially hired by [pre-merger] United before May 6, 2008, were furloughed by [pre-merger] United after May 6, 2008, and were subsequently hired by Continental and/or [pre-merger] United after October 1, 2010.
>
> (Am. Compl. ¶¶ 10, 13.) This court has not yet ruled on the appropriateness of class certification in this case, but uses the term "Class" to refer to the proposed class defined above.

Plaintiffs allege in Count 1 that United's actions in reducing Plaintiffs' and the Class members' longevity to only 4 years and 7 months violates the express terms of the UPA. (*Id.* ¶ 26.) Plaintiffs allege in Count 2 that ALPA breached its duty to fairly represent Plaintiffs and the Class (1) by entering into paragraph 4 of LOA 25 and (2) by agreeing that its provisions apply to Plaintiffs [*7] and the Class to reduce their longevity at United to 4 years and 7 months. (*Id.* ¶ 47.) Plaintiffs allege in Count 3 that United "colluded with ALPA" in entering into paragraph 4 of LOA 25, and in agreeing to the above interpretation of paragraph 4 of LOA 25, "in order to secure ALPA's approval" of the UPA. (*Id.* ¶ 51.)

LEGAL STANDARD

As stated earlier, [HN3]under the Federal Rules of Civil Procedure, when deciding a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole*, 634 F.3d at 903. [HN4]A complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

However, [HN5]the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Though "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

[HN6]The complaint [*8] must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole*, 634 F.3d at 903. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

ANALYSIS

1. Count 1 -- Breach of Contract Against UAL

Again, in Count I, Plaintiffs allege that their longevity for purposes of pay determinations exceeds 12 years, but United has only given them credit for 4 years and 7 months. (Am. Compl. ¶ 25.) According to Plaintiffs, this act violates "the express terms of the CBA." (*Id.* ¶ 26.) Plaintiffs acknowledge that Count I raises a "minor dispute" that would usually be considered "arbitrable" under the RLA. (*Id.* ¶ 29.)

However, Plaintiffs claim that this court has jurisdiction over its breach of contract claim since "plaintiffs' administrative remedy is wholly futile." (*Id.*) The arbitration panel "would consist of one arbitrator selected by United, one selected by ALPA, and a third independent arbitrator". (*Id.*) Plaintiffs assert this remedy "would be a basically 'rigged' arbitration", largely based [*9] on allegations Defendants were colluding to discriminate against Plaintiffs. (*Id.*)

Page 5

[HN7]Under the RLA, the federal courts' jurisdiction to resolve disputes pursuant to a collective bargaining agreement is limited. As a threshold matter, "Courts are to sort labor disputes into two piles, major or minor." *Bhd. of Maint. of Way Emps. v. Atchison, Topeka & Santa Fe Ry. Co.*, 138 F.3d 635, 638 (7th Cir. 1997). The Supreme Court has stated that "major disputes" under the RLA relate "to disputes over the formation of collective agreements or efforts to secure them", "arise where there is no such agreement or where it is sought to change the terms of one", and "therefore the issue is not whether an existing agreement controls the controversy." *Consol. Rail Corp. v. Ry. Labor Exec. Ass'n*, 491 U.S. 299, 302, 109 S. Ct. 2477, 105 L. Ed. 2d 250 (1989) (quoting *Elgin, Joliet & E. Ry. Corp. v. Burley*, 325 U.S. 711, 723, 65 S. Ct. 1282, 89 L. Ed. 1886 (1945)). In contrast, "minor disputes" contemplate "the existence of a collective agreement already concluded", where "[t]he dispute relates [] to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case." *Id.* at 303.

As discussed above, Plaintiffs admit that their [*10] breach of contract claim against UAL is minor. (Am. Compl. ¶ 29.) Therefore, it is not debatable that Count I would generally be subject to the exclusive jurisdiction of an arbitral board established under the RLA. See *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 314 (7th Cir. 2002) ([HN8]"Arbitral boards established pursuant to the Railway Labor Act have exclusive jurisdiction to resolve disputes over the application of collective bargaining agreements in the railroad and airline industries.").

Plaintiffs set forth a handful of theories for why this court should ignore these mandates and assert subject matter jurisdiction over Count I in their Opposition to Defendants' Motions To Dismiss (Dkt. No. 77, "Opp'n".) This court will respond to these theories, and explain why they must fail as a matter of law in the order Plaintiffs listed them.

First, Plaintiffs argue that defendant UAL should be bound to positions the airline previously asserted in prior litigation and that these positions somehow confer jurisdiction on this court where Congress has withheld it. (Opp'n at 3-4.) In *Santiago v. United Air Lines, Inc.*, No. 11-09109 (N.D. Ill. Dec. 27, 2011), UAL stated that if individuals could "invoke [*11] the jurisdiction of a contractually created adjustment board without support of the union" that "would raise significant practical problems for both unions and carriers." (Def's Mem. for Summ. J., Dkt. No. 129, at 23-24.) Additionally, UAL stated that "contractually-created system boards of adjustment cannot function without participation of 'partisan' members appointed by the union and carrier, and a neutral arbitrator". (*Id.*)

This Court finds Plaintiffs' attempt to bind UAL to these positions without any further discussion or legal authority unhelpful. We refuse to guess what Plaintiffs' legal position or authority, if any, is without the benefit of actual legal analysis and briefing. *Purepecha Ents., Inc. v. El Matador Spices & Dry Chiles*, No. 11-2569, 2012 U.S. Dist. LEXIS 120499, 2012 WL 3686776, at *14 (N.D. Ill. Aug. 24, 2012) ([HN9]"It is well settled in this Circuit that conclusory and underdeveloped arguments are waived.") (citing *Puffer v. Allstate*, 675 F.3d 709, 718 (7th Cir. 2012)). That said, even assuming that Defendants could somehow be bound to these statements in the current litigation, Plaintiffs' subsequent argument defies logic.

As discussed above, [HN10]Congress has created a statutory schema vesting exclusive [*12] subject matter jurisdiction for RLA minor disputes in an arbitral board. *Am. Airlines, Inc.*, 288 F.3d at 314. Plaintiffs cite no authority, nor is this court aware of any, standing for the proposition that statements made in motion practice by a private party, like those made here by UAL, could somehow alter the Congressionally expressed jurisdictional limits of this court.

Additionally, it is particularly disingenuous for Plaintiffs to rely on statements Defendants made in the *Santiago* case, while failing to acknowledge the conclusions Judge Feinerman reached, in the very same case, that directly contradict another argument Plaintiffs set out. Plaintiffs have argued that they "obviously lack ALPA's support in this case" and that "[f]or this reason alone, the Court has jurisdiction of Count 1." (Opp'n at 4.) According to Plaintiffs, if their Union disagrees with them, they cannot appear before the Board, and this Court has jurisdiction as the only body left capable of vindicating their rights. (*Id.*) However, Judge Feinerman's determination persuasively discredited Plaintiffs' premise that Union disapproval forestalls employee appearances before the Board in *Santiago v. United Air Lines, Inc.*, No. 11-09109, 969 F. Supp. 2d 955, 2013 U.S. Dist. LEXIS 119304, 2013 WL 4501024, at *10-*11 (N.D. Ill. Aug. 22, 2013). [*13] There, Judge Feinerman affirmed that "an individual employee" "has a right to bring a grievance before an adjustment board" based on the text of 45 U.S.C. § 184. See also 2013 U.S. Dist. LEXIS 119304, [WL] at *11 ("Nothing in § 184 suggests that the union and employer could agree to place a limitation upon an individual employee's right to unilaterally seek relief before an adjustment board.").

The only citation Plaintiffs provides to support the contrary position is *Martin v. American Airlines, Inc.*, 390 F.3d 601, 608 (8th Cir. 2004). However, like the court in *Santiago*, this court is more persuaded by Third Circuit authority, that Defendants are precluded "from

Page 6

deciding, on [their] own" "to bar [Plaintiffs] from bringing [] grievance[s] to the System Board." *Santiago, 969 F. Supp. 2d 955, 2013 U.S. Dist. LEXIS 119304, 2013 WL 4501024, at \*11-\*14*. As both Judge Feinerman and the Third Circuit have articulated:

> [HN11]Congress intended the RLA's procedures, particularly the Adjustment Boards, to be the exclusive means of dealing with minor matters involving the interpretation of a collective bargaining agreement and for all aggrieved employees to have access to such procedures. It necessarily follows that an employer and a union, through a negotiated collective bargaining [*14] agreement, cannot deprive a category of employees of access to the grievance and arbitration process. Thus, if the collective bargaining agreement here is read to deny such access, the relevant clauses, to that extent, are invalid and unenforceable. Therefore, if the Adjustment Board were to refuse to entertain Capraro's claim (or if UPS were to refuse to participate in the arbitration proceedings), Capraro would be entitled to a judicial order compelling arbitration. Such an order would serve the competing policies of ensuring that employees are not left remediless, and that minor disputes are resolved through arbitration rather than litigation.

2013 U.S. Dist. LEXIS 119304, [WL] at \*11 (quoting *Capraro v. United Parcel Service Co.*, 993 F.2d 328, 336-37 (3d Cir. 1993)).

Next, Plaintiffs seek to establish jurisdiction for Count I by noting that "courts have discretion to decide whether to require exhaustion of internal union procedures" and that "[t]o require exhaustion in this case would be an abuse of that discretion." (Opp'n at 4-5 (quoting *Arnold v. United Mine Workers of Am.*, 293 F.3d 977, 979 (7th Cir. 2002).) Plaintiffs proceed from this principal and conclusion to the core of their futility argument. (*Id.* at 5-7.) [*15] However, this court will briefly discuss (1) the effect of the passage quoted from *Arnold* on this court and (2) whether the *Arnold* case actually supports the conclusion that a failure to find futility would be an abuse of discretion.

In *Arnold*, the Seventh Circuit sought to minimally impinge on a district court's discretion to require exhaustion of internal remedies in union cases. The *Arnold* court recognized that it had "generally been deferential" to a "district court's decision regarding whether to excuse plaintiffs' failure to exhaust remedies" in the union context. *Arnold, 293 F.3d 977, at 979*. The Seventh Circuit also stated that there is "little reason to substitute our judgment for the district court's, given the case-specific nature of the decision whether to excuse exhaustion." *Id. at 980 n.2*. Keeping these statements in mind, contrary to Plaintiffs' suggestion, there is little reason to believe the legal principals articulated in *Arnold* somehow compel a futility ruling in this case.

Nor do *Arnold*'s facts support the conclusion that this court must find futility here. Consistent with the above principals, the Seventh Circuit actually rejected plaintiffs' futility arguments [*16] in *Arnold*, and affirmed the district court's grant of summary judgment based on a failure to exhaust internal union remedies. *Id. at 980-81*. The Seventh Circuit took this step even though the *Arnold* plaintiffs had alleged that "the union's general counsel" had "stated that the union would fight the plaintiffs 'to the end'"--a far more specific allegation potentially supporting futility than anything found here in the Amended Complaint. *Id. at 980*.

Finally, Plaintiffs here argue that resort to the System Board would have been futile for the following reasons: (1) "ALPA has colluded" with UAL "in its discriminatory treatment of Plaintiffs"; (2) the "Systems Board consists of two members selected by United and ALPA, and a fifth neutral member"; (3) "ALPA, however, is not adverse to United in its discriminatory treatment of Plaintiffs"; and (4) this process is thus "completely rigged against Plaintiffs". (Opp'n at 5-6.) This court will first separately discuss Plaintiffs' allegations of collusion, and then proceed to analyze the other allegations in conjunction with each other.

The closest Plaintiffs get to pleading collusive action on the part of UAL is the following. UAL and ALPA entered [*17] into, and interpreted, a side-agreement to their CBA that reduced Plaintiffs' longevity, and UAL consented to these steps as part of its effort to secure a new CBA from ALPA. (Am. Compl. ¶¶ 50-51.) As UAL correctly notes, [HN12]simple "negotiation between [an] employer and union is not evidence of collusion." *Air Wisc. Pilots Protection Comm. v. Sanderson*, 124 F.R.D. 615, 617 (N.D. Ill. 1988); *see also United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1274, 1282-83 (7th Cir. 1985) (rejecting as "patently fallacious" the argument that negotiation between a carrier and union "necessarily entails collusion"). Thus, even if Plaintiffs are correct, and UAL did exactly what Plaintiffs complain of, UAL's acts do not rise to the level of collusion without more.[3]

---

3 Any attempt by Plaintiffs to distinguish this case law on the basis of the fact that this is a

side-agreement to the CBA misses the mark. It would make little sense to (1) protect management defendant's from conclusory allegations of collusion, merely because they negotiated a CBA with a Union, while at the same time (2) refusing to extend the same protection to a side-agreement Plaintiffs admit was essential to securing [*18] that very same CBA. (Am. Compl. ¶ 51.)

Plaintiffs are mistaken to the extent they argue that, *Steffens v. Brotherhood of Railway, Airline & Steamship & S.S. Clerks, Freight Handlers, Express & Station Employees*, 797 F.2d 442, 445 (7th Cir. 1986), requires a different result. UAL correctly notes that the *Steffens* court dismissed the relevant claim on statute of limitations grounds making the passage Plaintiffs rely on *dicta*, that the facts supporting collusion were stronger in *Steffens*, and that *Steffens* was decided under a more permissive pleading standard before *Iqbal* and *Twombly*. (Dkt. No. 83, at 10 n.5, "UAL Reply".)

Plaintiff cites Second Circuit authority allegedly standing for the proposition that potential knowledge of a Union's discrimination against its members is enough to support a finding of collusion on the part of UAL. (Opp'n at 14.) However, this court is loath to place an affirmative obligation on an employer to supervise unions, which are the entity properly entrusted with employees' interests at the collective bargaining table, in the absence of an extreme factual scenario not present here. As stated in *Carroll v. Brotherhood of Railroad Trainmen*, 417 F.2d 1025, 1028 (1st Cir. 1969): [*19] a "union must often make good-faith tactical decisions in spite of employee disagreement"; "the employer must in most circumstances be able to rely on the union's disposition" in spite of some employee objections; and it would have a "detrimental effect on labor-management relations" if an employer were "forced to ignore union representations and take the initiative in dealing with employees whenever it suspects a discriminatory union motive." *Id.*

In the absence of well-pled allegations of collusion against UAL, Plaintiffs' futility argument merely rests on the following premise. Because Plaintiffs' claim is generally not supported by the Union or UAL management, the Systems Board procedure will necessarily be "completely rigged against Plaintiffs." (Opp'n at 5-6.) Although this court understands what Plaintiffs consider to be the practical difficulties of their situation, the court, as a matter of law, is not willing to go so far as to rule that the current facts, without more, necessarily require a finding of futility.

This court will not assume that panel members "obligated to determine disputes . . . in an independent, impartial manner," are partial or biased simply because a certain [*20] party selected them. *Del Casal v. E. Airlines, Inc.*, 634 F.2d 295, 299 (5th Cir. 1981). And likewise we reject any possible contention made by Plaintiffs "that a System Board's holding must be set aside because there was no one on the board 'partisan' to the employee's interests." *Id.* Other courts have also upheld systems boards where the party-appointed members sit with a neutral arbitrator, including where the union and company disagree with the grievant's contract interpretation. *See, e.g., Stumo v. United Air Lines, Inc.*, 382 F.2d 780, 787 (7th Cir. 1967); *Haney v. Chesapeake & Ohio R.R. Co.*, 498 F.2d 987, 992, 162 U.S. App. D.C. 254 (D.C. Cir. 1974).

As the Ninth Circuit has stated, [HN13]just because parties appointing members may disagree with the plaintiffs "on the merits of their . . . claim[,] does not mean that resort to the Adjustment Board would be 'absolutely futile'". *Bautista v. Pan Am. World Airlines, Inc.*, 828 F.2d 546, 552 (9th Cir. 1987). The RLA imposes on system board of adjustment members an obligation to conduct a "full and fair hearing" and also "impose[s] on individual arbitrators a duty to adjudicate particular cases fairly without regard to their institutional predilections". *See Wells v. S. Airways, Inc.*, 616 F.2d 107, 110 (5th Cir. 1980).

To [*21] adopt a contrary assumption (that appointees are *per se* biased) would vitiate Congress' mandate that minor disputes pursuant to a CBA be funneled to arbitration panels. Clever plaintiffs "could almost always . . . tack on a [DFR] claim against their union", predict that their union and management would oppose them in arbitration, and thereby demand a futility holding. *Id.*[4]

> 4 Even if this court could ignore the above legal principals, others articulated by UAL would still give us pause. As defendant UAL notes in its motion to dismiss, Plaintiffs "have not alleged that they were hindered in their efforts to file a grievance or seek arbitration before the System Board" nor have they "alleged that they made any effort at all to file a grievance." (Dkt. No. 42 at 3-4.) According to UAL, this failure to exhaust administrative remedies requires dismissal. (*Id.* at 3-4.)
>
> Having failed to even begin the administrative process, Plaintiffs ask this court for the following awkward solution: (1) assume Defendants would seat individuals so loyal to them on the Board that Plaintiffs' appearance would be definitively futile, Opp'n at 6; and (2) due to this assumption, thwart the Congressionally expressed [*22] mandate that minor disputes be placed in

Page 8

front of Systems Boards, *supra*, pg. 6. The former speculative assumption strikes this court as dangerously close to an impermissible advisory opinion on a board yet to be formed and having taken no official act.

The court acknowledges that perhaps its opinion exposes it to the following criticism from Plaintiffs' perspective. Due to the entities appointing the Board, there is little theoretical difference in either refusing to assume partiality on the part of the Board (the court's holding) or assuming the Board could not function impartially (Plaintiffs' request). Both, as the argument goes, ultimately pass judgment on whether the Plaintiffs have been provided a process capable of vindicating their rights given the facts of the case.

This argument misses several points. First, again, Congress has explicitly mandated that such disputes should be funneled to arbitration panels. *Nat'l Ry. Labor Conference v. Int'l Ass'n of Machinists & Aerospace Workers*, 830 F.2d 741, 749 (7th Cir. 1987) (noting "Congress's clear intent to exclude courts" from the interpretation of CBAs in minor disputes). Second, given that expressed will, this court must be content [*23] with its lot of safeguarding the process the Board implements. As the D.C. Circuit articulated, district courts must provide Plaintiffs "further protection" with "the general doctrines of law permitting limited judicial surveillance in an action [subsequently] complaining of administrative abuse." See *Haney*, 498 F.2d at 992 (cited UAL MTD, Dkt. No. 42 at 12, 13; UAL Reply at 2-3). Finally, Plaintiffs' procedural rights "require[] a fair tribunal, not one which is optimal from [Plaintiffs'] point of view". *Id.*

None of the authority Plaintiffs cite in their Opposition requires this court to decide otherwise. Plaintiffs cite *Graf v. Elgin, Joliet and Eastern Ry. Co.*, 697 F.2d 771, 781 (7th Cir. 1983) for the proposition that a worker must "channel his complaint against a company" through the RLA's remedial system "even though he is properly in court against the Union, **unless** there is collusion between the union and the company." (Opp'n at 5.) As previously discussed, Plaintiffs' allegations of collusion against UAL must fail, *supra* pg. 10-11, and therefore the Seventh Circuit's statement actually mandates Plaintiffs channel their complaint through the Systems Board.

Plaintiffs' reliance [*24] on *Int'l Broth. of Elec. Workers v. CSX Transp., Inc.*, 446 F.3d 714, 717 (7th Cir. 2006) is similarly misplaced. (Opp'n at 6.) While discussing the presence of "disputing" parties for RLA claims, that court was not passing judgment on the current set of facts. *Id.* Instead, the court was commenting on a dispute where one union filed for arbitration to seek work that management assigned to another union. *Id.* In essence, the court mentioned "disputing" parties in the context of whether the favored union, receiving the work, participated in the arbitration as an interested third-party.[5]

> 5   The quote Plaintiffs pull from this case reads in full as follows. *Int'l Broth.*, 446 F.3d 714, 717 ("[T]he participatory structure envisioned by the RLA fundamentally requires the disputing union and carrier to participate as partisan members **but does not envision partisan membership for other interested unions**." (emphasis added)).

This court also agrees with Defendants that the Supreme Court's holding in *Glover v. St. Louis-S.F. Ry. Co.*, 393 U.S. 324, 330, 89 S. Ct. 548, 21 L. Ed. 2d 519 (1969) must be placed in relevant context. In *Glover*, the Court excused plaintiffs' failure "to exhaust exclusive grievance and arbitration procedures [*25] established by the bargaining agreement", because of the egregious facts alleged by plaintiffs. *Id.* at 331. Plaintiffs' union had allegedly "been acting in concert with the railroad employer to set up schemes and contrivances to bar [African Americans] from promotion wholly because of race" in breach of the CBA. *Id.* Additionally, plaintiffs' alleged that they made repeated complaints to both their union and employer, but were ridiculed and were actually denied any formal grievance procedure. *Id.* at 326-27. It is for these reasons that the Supreme Court found that requiring exhaustion would be futile.

Simply put, Plaintiffs have alleged no facts that come close to supporting the inference they suffered from such open hostility, thereby rendering arbitration futile. Plaintiffs' allegations clearly do not rise to intentionally "set[ting] up schemes and contrivances" to discriminate against Plaintiffs "wholly because of race", or any other impermissible characteristic. *Id.* at 331. Moreover, Plaintiffs here may also not claim they were ridiculed or denied any formal grievance procedure like the plaintiffs in *Glover*. Again, as Defendants note, Plaintiffs "have not alleged that they were hindered [*26] in their efforts to file a grievance or seek arbitration before the System Board", nor have they "alleged that they made any effort at all to file a grievance." (UAL Reply at 3-4.)

Similarly, in *McCoy v. Maytag Corp.*, 495 F.3d 515, 524 (7th Cir. 2007), the Seventh Circuit merely noted that failure to exhaust could be excused if "union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim." *Id.* Moreover, the *McCoy* Court cited *Hammer v. UAW*, 178 F.3d 856, 858-59 (7th Cir. 1999), where the Seventh Circuit provided further commentary on this doctrine. There, the

Page 9

Seventh Circuit held the principal to be "\well-settled" that "a plaintiff must show that union hostility is so pervasive that it infects every step of the internal appeals process". *Id*. Again, as discussed above, Plaintiffs have not alleged any facts demonstrating they have ever begun any formal proceedings, let alone that such proceedings would necessarily be "infected" by open "hostility" "at every step of the process."

In *Clayton v. UAW*, 451 U.S. 679, 689, 101 S. Ct. 2088, 68 L. Ed. 2d 538 (1981), the Supreme Court also mentioned in passing the exhaustion could be excused if "union officials are so hostile to the [*27] employee that he could not hope to obtain a fair hearing". *Id.* However, the plaintiff in *Clayton* conceded "that he could have received an impartial hearing on his claim had he exhausted the internal union procedures." *Id.* at 689-90. Thus, *Clayton* provides minimal discussion on the principal Plaintiffs cite it for. And, again, Plaintiffs have not pled the type of hostility *Clayton* was presumably referring to--*i.e.*, the pervasive hostility found in the *Glover* line of cases.

Finally, *Dean v. Trans World Airlines, Inc.*, 924 F.2d 805, 810-811 (9th Cir. 1991) is also distinguishable from the current case, because Plaintiffs fail to set forth specific allegations of procedural abuse on the part of UAL or ALPA. In *Dean*, the Ninth Circuit refused to require exhaustion of internal union remedies after plaintiff "wrote 11 letters" protesting his union's actions, "received no meaningful response", advised his company "four separate times that he had received no notice" of his discharge as required by a CBA, in response "received only cursory consideration", and was told by his employer "that his grievance could not be considered". *Id.* The Ninth Circuit concluded that "the record supports the finding [*28] that Dean's repeated complaints went unheeded, that the union controlled [the] grievance procedures, and that [Plaintiffs'] initial attempts to pursue administrative remedies were unsuccessful." *Id.* at 811.

2. Count 2 -- Breach of Duty of Fair Representation Against ALPA

In Count II, again, Plaintiffs allege that ALPA breached its duty to fairly represent Plaintiffs and the Class (1) by entering into paragraph 4 of LOA 25 and (2) by agreeing that its provisions apply to Plaintiffs and the Class to reduce their longevity at United to 4 years and 7 months. (*Id.* ¶ 47.) Plaintiffs allege in a conclusory fashion that these agreements "were wholly arbitrary, discriminatory on their face, and entered in bad faith". (*Id.*) Without further explication, Plaintiffs vaguely point to a desire by ALPA to act "in favor of the most junior legacy Continental pilots." (*Id.*)

As a threshold matter, Plaintiffs and Defendants dispute whether this court also has subject matter jurisdiction to hear Plaintiffs DFR claim. Defendant ALPA argues that (1) "Plaintiffs' contention that Letter of Agreement 25 reduces their longevity necessarily requires an interpretation of that Letter of Agreement and the 2003 CBA to [*29] prove such a reduction" and that (2) this dispute "over the meaning of a collective bargaining agreement is a 'minor dispute' subject to the exclusive jurisdiction of the arbitral system board". (Opp'n at 7.) In support of this proposition, ALPA cites *Brown v. Illinois Central Railroad Company*, 254 F.3d 654, 658 (7th Cir. 2001). Defendant ALPA then cites multiple Seventh Circuit opinions where DFR claims were dismissed, in part, for failure to exhaust internal remedies. (*Id.* at 7-8. (citing *Copeland v. Penske Logistics LLC*, 675 F.3d 1040, 1042 (7th Cir. 2012) (limited discussion); *Bell v. Daimler Chrysler Corp.*, 547 F.3d 796, 804 (7th Cir. 2008).)

In *Brown*, the Seventh Circuit wrestled with whether *federally* granted rights can be heard in federal court when they touch upon a CBA and consequently may implicate the RLA's mandatory arbitration regime. *Id.* at 661-62 (holding "the RLA's preemption of state law will not by itself conclusively resolve the question of whether the RLA precludes another federal claim, because the latter question requires courts first to analyze the two federal statutes in an effort to ascertain Congressional intent".). That said, the *Brown* court found in the [*30] history of the ADA there was "nothing that amounts to a clearly expressed Congressional intent to override any requirement of the RLA." *Id.* at 663. Considering that DFR claims are "not set forth in any labor statute", but rather "the result of judicial interpretation of federal labor policies", it may logically follow that Congressional intent to override the RLA is lacking. *See Frandsen v. Brotherhood of Ry., Airline and S.S. Clerks, Frieght Handlers, Exp. and Station Emps.*, 782 F.2d 674, 678 (7th Cir. 1986)).

In response, Plaintiffs point to another Seventh Circuit opinion to support the argument that ALPA is improperly attempting to "bootstrap United's [incorrect] jurisdictional argument into one of its own." (Opp'n at 3 n.1.) Plaintiffs note that the Seventh Circuit has called DFR claims "by definition a 'non-minor' dispute since it involves the implied statutory relationship between a union and those it represents". (Opp'n at 3 n.1 (quoting *Frandsen*, 782 F.2d at 685).)

Both parties positions surrounding this body of case law are not lost on the court. As discussed earlier, if clever plaintiffs were as a matter of course permitted to avoid internal union remedies, style CBA related [*31] disputes as DFR grievances against their union, and bring suit in federal court, Congress' mandate that minor

Page 10

disputes be adjudicated in front of arbitral boards would be vitiated. *See Wells v. S. Airways, Inc.*, 616 F.2d 107, 110 (5th Cir. 1980). That said, unions should not be permitted to repackage DFR claims tangentially related to a CBA as a minor dispute, and then claim such a dispute necessarily requires arbitration and exhaustion of internal remedies.

Perhaps, this latter concern is less pressing in a case like this where Plaintiffs, rather than Defendants, by-and-large point to CBA related provisions as granting and depriving them of their rights. (*See, e.g.*, Am. Compl. ¶¶ 36, 39, 40, 42, 47.) In any event, given *Fransden's* admonition that[HN14] DFR claims are by definition "non-minor", and the fact that opinion has not been explicitly overturned, this court will not exercise its discretion to find Plaintiffs' DFR claim must fail for failure to exhaust internal remedies. Such a ruling is unnecessary, because even if this court assumes subject matter jurisdiction and justification for Plaintiffs' failure to exhaust, Plaintiffs have not properly pled a DFR claim.

Plaintiffs point to a [*32] Seventh Circuit case, decided in 1972, for the proposition that this court should apply a "highly deferential standard in construing such [DFR] claims" and ultimately "avoid dismissals based on technical deficiencies in the specificity of the allegations." (Opp'n at 8 (quoting *Orphan v. Furnco Constr. Corp.*, 466 F.2d 795, 803-04 (7th Cir. 1972).) However, [HN15]under *Twombly* and *Iqbal*, the Amended Complaint must do more than set forth "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[,]" *Iqbal*, 556 U.S. at 678, or show the "mere possibility of misconduct[,]" *id.* at 679. Rather, Plaintiffs'"[f]actual allegations must be enough to raise a right to relief above the speculative level" and must allege more than acts "that are merely consistent with a defendant's liability[.]" *Twombly*, 550 U.S. at 555, 556. Thus, in a 2013 Seventh Circuit case, the court dismissed a DFR claim because it "offer[ed] nothing to support the[] claim of bad faith apart from conclusory labels" and failed to supply "factual detail to support these conclusory allegations such as (for example) offering facts that suggest a motive for the union's alleged failure to deal with [*33] the grievances." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (7th Cir. 2013) (citing *Iqbal* and *Twombly*).

As the Supreme Court has stated, [HN16]"the relationship between the courts and labor unions [i]s similar to that between the courts and the legislature," and any review of union actions "must be highly deferential, recognizing the wide latitude" that unions need to perform the collective bargaining functions effectively." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 78, 111 S. Ct. 1127, 113 L. Ed. 2d 51 (1991). Consequently, a CBA, or the "final product of the bargaining process", can only "constitute evidence of a breach of duty" where "it can be fairly characterized as so far outside a wide range of reasonableness" that "it is wholly irrational or arbitrary." *Id.* at 78.

[HN17]To state a DFR claim, a plaintiff must show that the union's actions are outside of the "wide latitude" granted to unions in performing their collective bargaining functions, *id.* at 78, either because those actions are: (1) "arbitrary," meaning that the actions are "so far outside a 'wide range of reasonableness'" accorded to union decisions as to be "wholly 'irrational,'" *id.* (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S. Ct. 681, 97 L. Ed. 1048 (1953)); (2) "discriminatory," [*34] which requires "substantial evidence" of discrimination that is "intentional, severe, and unrelated to legitimate union objectives," *Amalgamated Ass'n of St., Elec., Ry. & Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 301, 91 S. Ct. 1909, 29 L. Ed. 2d 473 (1971), or that is based on an "invidious" trait such as race, gender, national origin, union membership or internal union politics, *Breininger v. Sheet Metal Workers Local Union No. 6*, 493 U.S. 67, 77-78, 110 S. Ct. 424, 107 L. Ed. 2d 388 (1989); or (3) in "bad faith," which is demonstrated by "'substantial evidence of fraud, deceitful action or dishonest conduct[.]'" *Lockridge*, 403 U.S. at 299 (citation omitted)).

In developing these standards, the Supreme Court has recognized that [HN18]inherent conflicts materialize when a union represents different classes of employees and that unhappiness for some of these classes is inevitable:

> Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative [*35] in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

*Huffman*, 345 U.S. at 338. Relative seniority is one such inherent conflict because it is a "zero-sum game" where one employee's enhanced seniority is another's reduced seniority. *Rakestraw v. United Airlines, Inc.*, 981 F.2d 1524, 1533 (7th Cir. 1992).

Plaintiffs are incorrect that they have adequately pled "arbitrary and hostile discrimination against the

Page 11

class". (Opp'n at 10.) Plaintiffs' allegations rest entirely on the theory that for purposes of longevity ALPA favored former pilots of Continental Airlines and other UAL pilots, as opposed to furloughed United pilots, because ALPA wanted these other pilots to obtain better placement on the integrated seniority lists. (*See, e.g.*, Am. Compl. ¶¶ 39, 41, 42, 44.) However, when pressed to specify why ALPA favored junior Continental pilots, Plaintiffs resort to an entirely mealy-mouthed response. (Opp'n at 10 ("[T]he background and facts that explain ALPA's bad faith and discriminatory motive are complex and not easily paraphrased.").)[6]

> 6 For this reason the case law Plaintiffs rely upon, for the proposition that [*36] intent to deprive employees of their contractual rights is enough to support a DRF claim is inapposite. (Opp'n at 9.) Simply put, Plaintiffs have proactively avoided describing what ALPA's specific intent was both in their pleadings and briefing.

As discussed above, more is required of Plaintiffs given that they are seeking to plead a DFR claim against their union in the context of a collective bargaining agreement. Nothing Plaintiffs have alleged meets the relevant standard for "arbitrariness", or action "so far outside a 'wide range of reasonableness'" accorded to union decisions. *See Air Line Pilots Ass'n, 499 U.S. at 78*. Nor have Plaintiffs pled actionable "discrimination" by providing "substantial evidence" of "intentional" discrimination unrelated to valid union objectives. *See Lockridge, 403 U.S. at 301*. Finally, Plaintiffs have not alleged "bad faith," which is demonstrated by "substantial evidence of fraud, deceitful action or dishonest conduct[.]" *Id.* at 299 (citation omitted)).

At best, Plaintiffs have alleged that ALPA, pursuant to the process of implementing a CBA, dealt with a seniority conflict in a fashion contrary to Plaintiffs' preferences. However, dealing with such [*37] an "inevitable difference", which affects "individual employees and classes of employees", in a manner consistent with a "wide range of reasonableness" does not give rise to a DFR claim. *See Huffman, 345 U.S. at 338*.

3. Count 3 -- Complicity in ALPA's DFR Breach Against UAL

Finally, Plaintiffs allege in Count 3 that United "colluded with ALPA" in entering into paragraph 4 of LOA 25, and in agreeing to interpret that agreement to decrease Plaintiffs' longevity. (Am. Compl. ¶ 51.) According to Plaintiffs, UAL was complicit in this ALPA DFR breach "in order to secure ALPA's approval" of the UP A. (*Id.*)

Defendant UAL correctly states the law that [HN19]if an "RLA-based DFR claim against the union is dismissed, the claim against the employer" for being a party to this breach "must also be dismissed." *United Indep. Flight Officers, Inc. v. United Air Lines, Inc., 756 F.2d 1274, 1282-83 (7th Cir. 1985)*. Therefore, because Plaintiffs failed to plead an RFA claim against ALPA, its complicity claim against UAL must fail.

Additionally, in order to maintain such a claim, it is only logical that Plaintiffs be forced to allege some sort of collusive act on the part of UAL acting in concert with ALPA. *See Rakestraw v. United Airlines, Inc., 765 F.Supp. 474, 493 (N.D. Ill. 1991)*, [*38] *aff'd in relevant part, rev'd in part*, *981 F.2d 1524 (7th Cir. 1992)*. As discussed in Count I, Plaintiffs have failed to plead specific allegations evidencing such impermissible collusion, *supra* pgs. 10-11.

CONCLUSION

For the reasons set forth above, both Defendants' Motions to Dismiss (Dkt. Nos. 39, 42) are granted with prejudice. Judgment is entered in favor of Defendants UAL and ALPA and against Plaintiffs. This case is concluded, and Plaintiffs may seek appellate review if they desire.

ENTER:

/s/ James F. Holderman

JAMES F. HOLDERMAN

United States District Court Judge

Date: February 4, 2014