# EXHIBIT L

Case 2:14-cv-01441-RTR   Filed 01/16/15   Page 1 of 5   Document 18-12

LEXSEE


Analysis
As of: Jan 16, 2015

**UNITED STATES OF AMERICA, Plaintiff, v. ARG CORPORATION and NORBERT R. TOUBES as distributee of ARG Corporation's assets, Defendants. ARG CORPORATION, Third-Party Plaintiff, v. CITY OF SOUTH BEND, acting through the SOUTH BEND REDEVELOPMENT COMMISSION, Third-Party Defendant.**

**CAUSE NO. 3:10-CV-311**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA, SOUTH BEND DIVISION**

**2011 U.S. Dist. LEXIS 86423; 41 ELR 20271; 74 ERC (BNA) 1537**

**August 4, 2011, Decided
August 4, 2011, Filed**

**PRIOR HISTORY:** United States v. ARG Corp., 2011 U.S. Dist. LEXIS 9770 (N.D. Ind., Jan. 31, 2011)

**CORE TERMS:** hazardous substances, ownership, clean-up, remediation, disposed, cleaning, remediating, disposal, closing date, solely responsible, contract language, financially responsible, failure to state a claim, environmental, unambiguous, site, environmental damage, unambiguously, pre-closing, groundwater, hazardous conditions, parties agreed, written contract, ordinary meaning, pre-contract, negotiations, ambiguous, removing, untimely, hook

**COUNSEL:** [*1] For United States of America, Plaintiff: Kristin M Furrie, US Department of Justice -, Washington, DC; Wayne T Ault - AUSA, US Attorney's Office - Ham/IN, Hammond, IN.

For ARG Corporation, Norbert R Toubes, as distributee of ARG Corporation's assets, Defendants: Robert W Mysliwiec, LEAD ATTORNEY, Robert W Mysliwiec PC, South Bend, IN.

For City of South Bend, Defendant: Daniel Philip Cory, Jeffrey D Claflin, Thao Trong Nguyen, LEAD ATTORNEYS, Plews Shadley Racher & Braun - SB/IN, South Bend, IN.

For ARG Corporation, ThirdParty Plaintiff: Robert W Mysliwiec, LEAD ATTORNEY, Robert W Mysliwiec PC, South Bend, IN.

For City of South Bend, ThirdParty Defendant: Cheryl A Greene, LEAD ATTORNEY, City of South Bend Attorney's Office, South Bend, IN; Daniel Philip Cory, Jeffrey D Claflin, Thao Trong Nguyen, LEAD ATTORNEYS, Plews Shadley Racher & Braun - SB/IN, South Bend, IN.

**JUDGES:** PHILIP P. SIMON, CHIEF JUDGE.

**OPINION BY:** PHILIP P. SIMON

**OPINION**

**OPINION AND ORDER**

The United States brought the original complaint in this case alleging that ARG Corp. and Norbert Toubes are liable for costs the Government incurred in responding to cleanly up environmentally hazardous substances on property formerly owned by ARG. ARG then filed a [*2] third-party complaint against the property's current owner, the City of South Bend. Before the Court is the City of South Bend's Motion to Dismiss the third party complaint. [DE 25.] For the following reasons, the motion is granted.

Page 1

Case 2:14-cv-01441-RTR   Filed 01/16/15   Page 2 of 5   Document 18-12

I begin with the facts as alleged in the original and the third-party complaint, which at this point I must accept as true. From 2000 to 2006, ARG owned a 440,000 square-foot industrial site in South Bend, Indiana. [DE 1 ¶¶ 4-5, 10.] On October 2, 2006, ARG entered into a contract to sell the property to the City of South Bend. [*Id*. ¶ 16.] Days after the closing, South Bend feared that hazardous substances on the property posed a danger to the public's health, and so it notified the Environmental Protection Agency of the problem. [*Id*. ¶ 17.] The EPA investigated the property and determined that the site presented an imminent danger to the public and ordered ARG to address the hazardous conditions. [*Id*. ¶¶ 17-26.] When ARG refused, the Government expended over $841,310.46 in costs removing hazardous substances from the property. [*Id*. ¶¶ 27, 29.]

The Government then filed this suit against ARG and Toubes under the Comprehensive Environmental Response, Compensation, [*3] and Liability Act ("CERCLA"), 42 U.S.C. § 9607, seeking reimbursement for the costs it incurred, and will continue to incur, addressing the hazardous conditions on the property. [*Id*. ¶ 29.] ARG responded by filing a third-party complaint against South Bend alleging that, pursuant to the parties' Contract of Purchase and Sale, South Bend is financially responsible for the Government's clean-up costs. [DE 12.] South Bend now moves to dismiss the third-party complaint for failure to state a claim. South Bend argues that dismissal is appropriate because it is not responsible for cleaning up hazardous substances that resulted from ARG's ownership under the parties' agreement.[1]

> 1   ARG attached the contract to the third-party complaint, so it's part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for failure to state a claim. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). [*4] Determining whether a complaint states a plausible claim for relief requires me to draw on my judicial experience and common sense. *Id*. at 1950. And although at this stage I must accept all allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by mere conclusory statements. *Id*. at 1949-50.

In addition, to recover against a third-party defendant, the third-party plaintiff must meet the demands of Federal Rule of Civil Procedure 14. This rule states that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a). This means that "the third-party defendant [must] be potentially liable for the original plaintiff's claim." *West Bend Mut. Ins. Co. v. Willmez Plumbing, Inc*., 2011 U.S. Dist. LEXIS 48756, 2011 WL 1706833, at *2 (S.D. Ind. May 5, 2011) (citing *U.S. Gen., Inc. v. City of Joliet*, 598 F.2d 1050, 1053 (7th Cir. 1979) (holding that secondary liability "is a plain condition on the face of Rule 14").

The issue before me is whether South Bend is responsible for the Government's clean-up costs under [*5] ARG and South Bend's purchase and sale contract. Under Indiana law, the goal of contract interpretation is to ascertain the intent of the parties. *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc*., 802 N.E.2d 901, 906 (Ind. 2004). In the case of a written contract, the parties' intent is determined by looking first to the plain and ordinary meaning of the contract language. *USA Life One Ins. Co. v. Nuckolls*, 682 N.E.2d 534, 538 (Ind. 1997). If the language of a contract is "clear and unambiguous," the court shall give that language "its plain and ordinary meaning." *Barclay v. State Auto Ins. Cos*., 816 N.E.2d 973, 975 (Ind. App. 2004). In other words, when a contract is unambiguous, the terms expressed within the four corners of the document are conclusive, and I must apply the contractual provisions as written. *Fackler v. Powell*, 891 N.E.2d 1091, 1096 (Ind. App. 2008), *trans. denied*. A provision is ambiguous if it is susceptible to more than one reasonable interpretation. *Am. Family Ins. Co. v. Globe Am. Cas. Co*., 774 N.E.2d 932, 935 (Ind. App. 2002). But the mere fact that the parties disagree as to the interpretation of the policy language does not create an ambiguity. [*6] *Id*.

Here, neither party argues the contract is ambiguous. Instead, South Bend alleges that the terms of the contract unambiguously demonstrate that ARG is solely responsible for cleaning up hazardous substances that arose from ARG's ownership, use, or operation of the property prior to the property's sale. As a result, South Bend cannot be liable for any clean-up costs that ARG may owe the Government. Not surprisingly, ARG disagrees. It argues that the same contract language unambiguously goes the other way -- that the parties intended South Bend to pay all clean-up costs related to hazardous substances found on the property. Moreover, ARG alleges that pre-contract negotiations indicate that intent. In any event, ARG asserts that because the Government seeks damages for cleaning up hazardous substances that arose from, and were disposed of during, South Bend's -- not ARG's -- ownership of the property, South Bend is on the hook for the clean-up costs.[2]

Page 2

2  South Bend filed a motion to strike ARG's response because it was untimely under this Court's local rules. *See* N.D. Ind. L. R. 7.1(a) (response due 14 days after motion is filed). But because ARG's untimely response will not change the end [*7] result, the motion is **DENIED**. [DE 27.] ARG should note that failure to meet future deadlines will not be well-taken.

I agree with South Bend. My analysis begins and ends with the contract language, which states:

> The Seller shall remain solely financially responsible for the Remediation Activities arising from the Seller's ownership, use or operation of the property prior to the Closing Date, provided however, that the Purchaser covenants not to execute against any of the Seller's assets to satisfy the Seller's financial responsibilities for remediation of pre-closing environmental damage except for the proceeds of recoveries under the general liability insurance polices issued to the Seller prior to the closing.
>
> The Purchaser shall be solely financially responsible for the Remediation Activities arising from the Purchaser's ownership, use or operation of the property after to the Closing Date.
>
> "Remediation Activities" shall mean investigation and remediation activities, including but not limited to installing, operating, and maintaining all monitoring wells; collecting soil and/or groundwater samples; measuring groundwater levels in measuring wells; soil removal; groundwater treatment; [*8] and performing other related assessment activities, necessary to investigate and remediate environmental damage caused by the release of hazardous substances in accordance with any environmental laws.

[DE 12-1 ¶ 7.] This language unambiguously states that ARG is solely responsible for remediating hazardous substances on the property arising from ARG's ownership, use, or operation prior to the closing date. And, conversely, South Bend is solely responsible for remediating hazardous substances on the property arising from South Bend's ownership, use, or operation after the closing date. In other words, the parties agreed that South Bend would not be responsible for cleaning up hazardous substances that arose from ARG's ownership of the property.

Nonetheless, ARG points to the fact that South Bend agreed "not to execute against any of [ARG's] assets to satisfy [ARG's] financial responsibilities for remediation of pre-closing environmental damage except for the proceeds of recoveries under the general liability insurance polices issued to [ARG] prior to the closing" as evidence that South Bend accepted responsibility for any clean-up costs. [*Id.*] I disagree. This language simply means that [*9] if South Bend believes ARG is responsible for cleaning up pre-closing hazardous substances, it will only seek recovery from ARG's insurance policies. It does not indicate that South Bend agreed to indemnify ARG if ARG was forced to pay the Government for remediating hazardous substances. Moreover, ARG's reading is contrary to the first part of the sentence, which clearly states that ARG is *solely responsible* for remediating hazardous substances on the property that arose from its ownership.

In addition, ARG's claim that the parties' pre-contract negotiations indicate "that the City of South Bend would fully pay for any remediation costs" is irrelevant. [DE 26 at 4 (quoting Third-Party Complaint ¶ 11).] This is because, as noted above, the clear language in the contract suggests otherwise. And when a contract contradicts a complaint to which it's attached, the contract trumps the complaint. *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007). Moreover, the parties agreed that the contract "embodies the entire agreement between the parties and cannot be varied except by the written agreement of the parties," and "[n]o representation, promise, [*10] or inducement not included in this Agreement shall be binding upon the parties hereto." [DE 12-1 ¶ 9.] So even if the parties negotiated a term not in the contract, the contract governs. *See Bock v. Computer Assocs. Int'l, Inc.*, 257 F.3d 700, 707 (7th Cir. 2001) (holding that the presumption that a written contract is complete in and of itself is even stronger when the contract contains a merger clause).

Finally, ARG's assertion that South Bend is responsible for the clean-up costs because "any hazardous substances at the site were disposed of, not during ownership the of ARG, but during the ownership of the City of South Bend," has no merit. [DE 26 at 6-7.] CERCLA holds liable "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2). And "disposal" means the "discharge, deposit, injection, dumping, spilling, leaking, or placing" of hazardous waste into or onto land or water. *See* 42 U.S.C. § 9601(29); 42 U.S.C. § 6903. So the hazardous substances were "disposed of" when they were

Page 3

released on the property, not when they were cleaned up. And the owner of the property at [\*11] the time the substances were released is liable for the clean-up.

This is important because the Government sued ARG because "ARG was the owner of [the property] at the time of disposal of hazardous substances." [DE 1 ¶ 34.] And, for the third-party complaint to be proper under Rule 14(a), South Bend must be liable for the Government's claim against ARG. *See* Fed. R. Civ. P. 14(a). This means South Bend must have agreed to pay for the costs the Government incurred cleaning up hazardous substances that were disposed of during ARG's ownership of the property. But, again, the parties' contract says no such thing. And the Government has not sued South Bend (or anyone, for that matter) for the clean-up of hazardous substances disposed of when South Bend owned the property. So just because the clean-up occurred while South Bend owned the property does not mean the hazardous substances arose from South Bend's ownership, use, or operation of the property. To the contrary, as the owner at the time of disposal, ARG is on the hook for the clean-up costs if the Government proves its case.

To sum up: the Government sued ARG for costs it incurred removing hazardous substances that were disposed of on [\*12] property owned by ARG during the time ARG owned the property. For South Bend to be liable to ARG for the Government's costs under Rule 14(a), it must have accepted responsibility for these clean-up costs. But the clear and unambiguous language in the parties' purchase and sale contract demonstrates that ARG -- not South Bend -- is responsible for remediating hazardous substances that arose while ARG owned the property. As a result, ARG's third-party complaint against South Bend must be dismissed for failure to state a claim.

Accordingly, South Bend's Motion to Dismiss is **GRANTED**. [DE 25.] South Bend's Motion to Strike is **DENIED** as moot. [DE 27.]

**SO ORDERED**.

ENTERED: August 4, 2011.

/s/ Philip P. Simon

PHILIP P. SIMON, CHIEF JUDGE

UNITED STATES DISTRICT COURT