People Exp. Pilot Merger Committee v. Texas Air Corp., Not Reported in F.Supp. (1987)
127 L.R.R.M. (BNA) 2879

MPMC Attachment B

1987 WL 18450
United States District Court, D. New Jersey.

PEOPLE EXPRESS PILOT
MERGER COMMITTEE, Plaintiff,
v.
TEXAS AIR CORP., Continental Airlines,
Inc., People Express Inc., and People
Express Airlines, Inc., Defendants.

Civ. A. No. 87–1155.  |  October 14, 1987.

**Attorneys and Law Firms**

Daniel Katz, Katz & Ranzman, Washington, D.C., D.F. Moore Craig, West Caldwell, N.J., for plaintiff.

John J. Gallagher, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., Andrew T. Berry, McCarter & English, Newark, N.J., for defendants.

**OPINION**

SAROKIN, District Judge.

*1 Plaintiff, People Express Pilot Merger Committee, instituted the action which underlies the two motions currently before the court. In this action, plaintiff challenges the integration of the seniority lists of People Express and Continental pilots following the acquisition of People Express, Inc. ('PEI') by Texas Air Corporation ('Texas Air'), the parent company of Continental Airlines, Inc. ('Continental'). By Opinion and Order dated July 13, 1987, this court denied plaintiff's application preliminarily to enjoin the implementation of a management-created pilot seniority integration list, on the grounds that although plaintiff was likely to succeed on the merits, it had failed to demonstrate irreparable harm. Currently pending before this court are defendants' motion to dismiss the complaint for lack of federal jurisdiction and plaintiff's motion for partial summary judgment.

For the reasons set forth below, the court finds jurisdiction over the plaintiff's claims under the Railway Labor Act and accepts pendent jurisdiction over the state and common law claims. However, the court dismisses that portion of plaintiff's complaint which seeks injunctive relief due to the absence of an indispensable party. The court therefore retains only that portion of the complaint which seeks reliance damages, and denies plaintiff's motion for partial summary judgment compelling arbitration.

**BACKGROUND**

The court relies on the facts as set forth in the Background section of its July 13, 1987 Opinion at pages 1–6, but pauses to note one correction to that account. At page seven, footnote six, of its July 13 Opinion, this court noted that in their Memorandum on Integration, which announced that defendants had integrated the two seniority lists themselves rather than resort to arbitration, defendants claimed to have received input from the 'CAL/EWR Pilot Seniority Integration Committee.' See Plaintiff's Exhibit G at 3. The court, believing that the CAL/EWR Pilot Seniority Integration Committee and the plaintiff in this action were distinct entities, expressed concern that plaintiff not be permitted to undermine the efforts of an already existing representative.

At subsequent oral argument on the pending motions, however, plaintiff explained that CAL/EWR Pilot Seniority Integration Committee and the plaintiff Pilot Merger Committee were, in fact, one and the same. The designation set forth in defendants' Memorandum was simply a misnomer. The court acknowledges this correction and finds that plaintiff is the only existing seniority integration committee currently constituted to represent former People Express pilots.

**DISCUSSION**

The court has for decision two potentially dispositive motions, one for dismissal by defendants, and one for partial summary judgment by the plaintiff. As defendants' motion attacks the court's jurisdiction, this motion must receive the court's first attention.

**I. The Motion to Dismiss**

Defendants move to dismiss plaintiff's cause of action for lack of federal jurisdiction. The complaint seeks to establish federal jurisdiction pursuant to the Railway Labor Act, 45 U.S.C. § 152, First, et seq., and the United States Arbitration Act, 9 U.S.C. § 1, et seq.[1] As to the United States Arbitration Act, defendants argue that this statute does not itself confer federal jurisdiction. Defendants contend, and the court agrees, that a federal court, in order to enforce the Arbitration Act, must have an independent source of federal question jurisdiction. Moses H Cone Memorial Hospital v Mercury

**People Exp. Pilot Merger Committee v. Texas Air Corp., Not Reported in F.Supp. (1987)**
127 L.R.R.M. (BNA) 2879

MPMC Attachment B

Construction Corp., 460 U.S. 1, 25 n.32 (1983). Therefore, the court immediately turns to defendants' argument that the complaint is unsupported by jurisdiction under the Railway Labor Act.

**\*2** In support of their contention that plaintiff has failed to state a claim under the Railway Labor Act, 45 U.S.C. § 151 et seq. ('the Act'), defendants urge that (1) the plaintiff is not a proper 'representative' as that term is defined by the Act, and that (2) the Labor Protection Agreement does not constitute an 'agreement' within the scope of the Act. See Defendants' Brief in Support of the Motion to Dismiss, at 5–11. The court finds both allegations lacking in merit.

**A. Plaintiff's Representative Status**

Defendants contend that plaintiff cannot invoke the Railway Labor Act as a basis for relief because it is not a proper 'representative' of the former People Express pilots. Defendants challenge plaintiff's representative status on the grounds that the plaintiff Merger Committee was never certified by the National Mediation Board. See Defendants' Brief in Support of the Motion to Dismiss at 8. While this factual allegation is true, and conceded by the plaintiff, defendants have failed to demonstrate that such certification is prerequisite to achieving representative status under the Act. [2]

The term 'representative' is defined by the Act as 'any person or persons, labor union, organization, or corporation designated either by a carrier or group of carriers or by its employees, to act for it or them.' 45 U.S.C. § 151, Definitions Sixth. This definition makes no mention of a certification requirement in order to validate representational capacity. Similarly, in establishing the process for employee designation of representatives, the Act does not mandate Board certification. Rather, it provides that

> [r]epresentatives . . . shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives. Representatives of employees for the purposes of this chapter need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier.

45 U.S.C. § 152, Third. Thus, the language of the statute does not condition the ability to act as a representative upon Board recognition.

The Railway Labor Act, on its face, conveys a plain intent to afford employees wide latitude in the designation of a representative. Courts interpreting the Act have ruled that '[t]here are no qualifiers attached to the Act's simple definition of 'representative.'" Rusell v National Mediation Board, 714 F.2d 1332, 1341 (5th Cir.), cert. denied, 467 U.S. 1204 (1983). 'The 'representative' of a craft of employees is, simply, a person or union designated to act on their behalf, to accomplish what they seek to accomplish, and is not necessarily a man for all seasons. . . . [T]he Act nowhere requires collective representation.' Id. (emphasis in original). Accordingly, the Act permits the former People Express pilots to designate the plaintiff Committee as its 'representative' for the sole purpose of enforcing the procedures outlined in the Labor Protection Agreement, irrespective of the fact that plaintiff does not seek to act generally as the exclusive collective bargaining agent of the People Express pilots. Nor do defendants dispute that plaintiff has been selected by a vast majority of the People Express pilots to act on their behalf. Plaintiff has received written authorization from 900 of the 976 People Express pilots granting the plaintiff committee the authority to pursue this action. [3]

**\*3** Thus, defendants misconstrue the clear intent of the Act in arguing that plaintiff is not a proper representative. The Act mandates certification by the National Mediation Board only in those instances where a dispute arises among competing organizations or individuals each of which claims to be the employee's exclusive representative. The Act requires Board intervention to mediate such representational disputes and further provides that the individual or organization ultimately chosen as the proper representative shall be certified by the Board. 45 U.S.C. § 152, Ninth. Jurisdiction over such representational disputes rests exclusively with the National Mediation Board. See ALEA v Republic Airlines, Inc., 798 F.2d 967 (7th Cir.), cert. denied, —— U.S. ——, 107 S.Ct. 458 (1986).

The action now before this court does not present a representational dispute. No competing committee has come

**People Exp. Pilot Merger Committee v. Texas Air Corp., Not Reported in F.Supp. (1987)**
127 L.R.R.M. (BNA) 2879

MPMC Attachment B

forward claiming to represent the People Express pilots in the matter of seniority integration. Nor have any of the 76 pilots whao have not chosen to endorse plaintiff's authority come forward to challenge plaintiff's representative capacity. Moreover, since the statute explicitly limits representational disputes to those disputes 'arising among a carrier's employees,' defendants, as representatives of the carriers, are not free to transform the underlying action into a representational dispute simply by challenging plaintiff's authority. 45 U.S.C. § 152, Ninth. For these reasons the court rejects defendants' assertions both that absent certification plaintiff cannot represent the People Express pilots in this RLA action and their assertion that exclusive jurisdiction over this action is vested in the National Mediation Board.

The court, however, appreciates defendants' concern that plaintiff, as 'representative' of the People Express pilots, must possess the legal authority to bind <u>all</u> People Express pilots such that any adverse judgment will be <u>res judicata</u> as to the entire group. It is therefore desirable to determine whether there are any People Express pilots who wish to exclude themselves from the class represented by the plaintiff, and to put those individuals who have selected plaintiff as their representative on notice that they will be precluded from subsequently challenging the pilot seniority integration procedure following a final judgment in this matter. The court will issue an order to show cause why this suit should not be converted into a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). [4]

**B. Status of Labor Protection Agreement under the RLA**

As an additional basis for dismissing the complaint, defendants argue that the Labor Protection Agreement ('LPA') does not qualify as an 'agreement' within the scope of the RLA and that such statute therefore may not be invoked in an effort to enforce the LPA's terms. Citing the language of 45 U.S.C. § 152, First, defendants argue that only those agreements entered into by 'carriers, their officers, [or] agents' are enforceable under the RLA's general duty to 'make and maintain agreements concerning rates of pay, rules, and working conditions.' They note that the LPA was negotiated by Texas Air and PEI, which are the parent companies and 'holding corporations' of the Continental and People Express carriers. They conclude that the LPA was an agreement entered into by merging <u>corporations</u> and not by '<u>carriers</u>' as required by the RLA. Further, defendants deny that they are proper 'agents' for the carriers under the RLA, and conclude that without an agency relationship, their signing of the LPA cannot bind the carrier subsidiaries. The court finds defendants' arguments disingenuous.

\*4 First, the court finds that Texas Air and PEI acted with apparent authority to bind their carrier subsidiaries during the negotiation of the LPA and at its signing. The agency law doctrine of apparent authority holds that 'manifestations by [a] principal to a third person, and reasonable belief by the third person that the alleged agent is authorized to bind the principal,' will preclude the principal from subsequently denying liability for the agent's actions. <u>See</u> <u>Gizzi v Texaco, Inc.</u>, 437 F.2d 308, 309 (3d Cir.), <u>cert. denied</u>, 404 U.S. 829 (1971). In the case at bar, the corporate parents negotiated seniority integration procedures which were to be relied upon and implemented by the subsidiary carriers, and which directly and significantly affected the carriers' relationship with their employees. In these circumstances, the corporations were unquestionably acting with the apparent authority of the carriers.

Moreover, the facts in this case lend strong support to plaintiff's allegation that defendants were authorized to act as agents for the carriers. For example, plaintiff notes that Frank Lorenzo, who made oral representations to the People Express pilots assuring them of an opportunity for committee input in the seniority integration process, and who negotiated the LPA, is simultaneously the chairman of Texas Air and of its subsidiary, Continental Airlines. This dual role authorizes him to bind the subsidiary carrier by his agreements. <u>See</u> Plaintiff's Memorandum in Support of its Motion for Partial Summary Judgment at 17–18. In addition, the court finds that PEI, the holding corporation, and People Express Airlines had sufficiently overlapping directorship, management, and employee staff to permit the corporate parent's actions to bind the carrier subsidiary. <u>See</u> Deposition of Fred Abbott, at 40–44. Since Texas Air and PEI were acting as agents of their respective carrier subsidiaries in negotiating the LPA, the court concludes that 'carriers, their officers, [or] agents' entered into that agreement. 45 U.S.C. § 152, First. The LPA is therefore an agreement within the scope of the Railroad Labor Act.

Finally, the court finds that although neither the People Express pilots nor the plaintiff Merger Committee were parties to the LPA, they are proper third party beneficiaries to the LPA and are entitled to seek the enforcement of the agreement. It is the law both of this state and this circuit that 'a third party acquires enforceable contract rights if the parties to the contract intended to confer a benefit upon him.' <u>Angleton v Pierce</u>, 574 F. Supp. 719, 735 (D.N.J. 1983), <u>aff'd</u>, 734 F.2d

**People Exp. Pilot Merger Committee v. Texas Air Corp., Not Reported in F.Supp. (1987)**
127 L.R.R.M. (BNA) 2879

MPMC Attachment B

3 (3d Cir.), cert denied, 469 U.S. 880 (1984). See also Dravo Corp v Robert B Kerris, Inc., 655 F.2d 503, 510 (3d Cir. 1981). An individual is an intended third party beneficiary if 'the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.' Restatement (Second) of Contracts § 302. The advantage to being an intended, as opposed to an incidental, third party beneficiary is that 'a promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty.' Restatement (Second) of Contracts § 304.

 *5 The Labor Protection Agreement could hardly have made more plain that its purpose was to protect and benefit the People Express pilots. In its second paragraph, the LPA recires that

> TAC and PEI desire to provide assurances to the employees of the air carrier subsidiaries of PEI with regard to their seniority interests in the event of any future merger of airline operations involving any air carrier subsidiary of PEI.

The parties to the agreement thereupon agree to submit the integration of the seniority lists to arbitration. The court finds in this contract more than ample grounds for concluding that the People Express pilots are its intended third party beneficiaries and are entitled to seek its enforcement against the defendants.

Having determined that plaintiff is a proper representative under the RLA and that the LPA does constitute an 'agreement' within the scope of the Act which the plaintiff is entitled to enforce, the court finds that subject matter jurisdiction does exist pursuant to the Railroad Labor Act. Accordingly, the court accepts jurisdiction of plaintiff's RLA and Arbitration Act claims. Moreover, the existence of federal jurisdiction enables the court to exercise its discretion to accept pendent jurisdiction over the state and common law claims. See United Mine Workers of America v Gibbs, 383 U.S. 715 (1966).

**C. Continental Pilots as Indispensable Parties**

In addition to stating a claim for money damages for breach of the Labor Protection Agreement, plaintiff also seeks specific enforcement of that agreement. Should the court grant this relief, its order would require the defendants 'to establish the agreed upon process for the People Express pilots to submit the controversy involving the integration of the pilot seniority list of People Express and Continental, and the appropriate conditions and restrictions attendant thereto, to a neutral mediator for final and binding arbitration.' Complaint, Prayer for Relief at A. In effect, the court would be ordering the defendants to accede to the arbitrated integration of the seniority lists, as hammered out by the plaintiff and the Continental pilots.

Were the Continental pilots parties to this litigation, the court would be able to reach the merits of plaintiff's contention that defendants breached the LPA and that specific performance is proper relief. However, the court finds that the Continental pilots are necessary parties under F.R.C.P. 19(a) in whose absence the case cannot proceed in equity and good conscience. Accordingly, the action must be dismissed unless the Continental pilots are capable of joinder.

Rule 19 of the Federal Rule of Civil Procedure imposes a two-step analysis on the question of whether a party is indispensable to a lawsuit. In the context of this suit, the court must first determine whether the Continental pilots are 'persons to be joined if feasible' under Rule 19(a). The Continental pilots fit this description if they are subject to service of process, if their joinder will not deprive the court of subject-matter jurisdiction, and if

> *6 (1) in [their] absence complete relief cannot be accorded among those already parties, or (2) [they] claim[ ] an interest relating to the subject of the action and [are] so situated that the disposition of the action in [their] absence may (i) as a practical matter impede [their] ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

If, for reasons of process service or subject-matter jurisdiction, the Continental pilots are necessary but cannot be joined, then the court must determine 'whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person[s] being thus regarded as indispensable.' F.R.C.P. 19(b). The factors which must shape the court's holding on this issue are

> first, to what extent a judgment rendered in the person's absence might be

**People Exp. Pilot Merger Committee v. Texas Air Corp., Not Reported in F.Supp. (1987)**
127 L.R.R.M. (BNA) 2879

MPMC Attachment B

> prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

F.R.C.P. 19(b).

The Continental pilots are 'parties to be joined if feasible' under Rule 19(a). Indeed, they satisfy all three of the criteria under that Rule. If this court were to order specific performance of the LPA, the order would require that the Continental pilots participate in an arbitration proceeding with the plaintiff. Yet 'the courts have held that specific performance will not be decreed where compliance rests upon the will or discretion of an uncontrolled third party.' Dworman v Mayor & Board of Aldermen, 370 F.Supp. 1056, 1077–78 (D.N.J. 1974). The Continental pilots are not before the court, and the plaintiff has not demonstrated that the Continental pilots ever expressed any desire or agreement to arbitrate the integration of the seniority lists. Rather, the promise in the LPA that the Continental pilots would participate in the arbitration was made not by the pilots but by their employer's parent company, Texas Air Corporation.

In the absence of some showing that the Continental pilots either authorized their employer to commit them to arbitration, or now intend to acquiesce in arbitration even without having promised to do so, the court cannot order specific enforcement of the LPA with confidence that the Continental pilots will obey the order. See Villa Corp v S.D. Walker, 187 F.2d 493, 495 (3d Cir. 1951) (specific performance refused where condition in deed required adjoining property owner to maintain use of that property as a park, and plaintiff made no showing that such continuing use was certain). 'Complete relief' in this action is compulsory arbitration, and the court cannot be certain that its order will produce that result. See McCormick & Company v Bedford Industries, Inc., 301 F.Supp. 29, 34 (D. Md. 1969). Therefore the court concludes that 'complete relief cannot be accorded among those already parties.' F.R.C.P. 19(a)(1).

 *7  The court also entertains serious doubts about the enforceability of the Labor Protection Agreement against the Continental pilots. A person may only be bound by a written contract if he or she, or his or her agent, is a party to that contract. The Continental pilots were not parties to the LPA. The LPA is an agreement between two corporations, and was executed only by those corporations. Moreover, the plaintiff has failed to produce any evidence that Texas Air possessed any authority to bind the Continental pilots to arbitration of seniority. See Lind v Schenley Industries, Inc., 278 F.2d 79, 85 (3d Cir.), cert denied, 364 U.S. 835 (1960) (express authority); Gizzi v Texaco, Inc., 437 F.2d 308, 309 (3d. Cir.), cert denied, 404 U.S. 829 (1971) (apparent authority).

Despite these technical deficiencies of contract and agency law, plaintiff seeks a pronouncement from this court that the Labor Protection Agreement is a binding contract and that the Continental pilots must submit the integration of their seniority to arbitration. Although not holding that the Labor Protection Agreement is unenforceable against the Continental pilots as a matter of law, the court finds that those pilots are entitled to assert that the LPA is unenforceable. Any holding by this court would, therefore, 'as a practical matter impair or impede the [pilots'] ability' to protect their interest in assailing the enforceability of the LPA. F.R.C.P. 19(a)(2)(i). Moreover, the court must take notice of the possibility that the Continental pilots, in the wake of an order of specific performance of the LPA, might seek and obtain from another court a ruling that the LPA is unenforceable against them for the reasons set out above. In light of this possibility, the court cannot say with confidence that disposition of the case in the Continental pilots' absence would not 'leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.' F.R.C.P. 19(a)(2)(ii).

In this connection, the court finds Window Glass Cutters League v American St. Gobain Corp., 428 F.2d 353 (3d Cir. 1970), instructive. In Window Glass Cutters, a union brought suit to compel the employer to comply with a collective bargaining agreement by submitting to arbitration a grievance that the union filed over the employer's assigning certain work to workers who were not members of the plaintiff union. The employer had actually assigned the work to employees who were members of another union, with which the employer had also signed a collective bargaining agreement. The district court ordered the plaintiff to join this second union as a necessary party, and when the plaintiff refused, the court dismissed the suit. The Third Circuit affirmed:

> It is clear that the court felt that there was a substantial risk that arbitration of the dispute between only the Company and

**People Exp. Pilot Merger Committee v. Texas Air Corp., Not Reported in F.Supp. (1987)**
127 L.R.R.M. (BNA) 2879

MPMC Attachment B

the League would expose the Company to the risk that the Ceramics Union would in turn institute a separate grievance against the Company leading potentially to conflicting awards. In this context, the application of Clause (2)(ii) of Rule 19's provisions to require the joinder of an additional party was clearly justified.

*8 428 F.2d at 355. The defendants in the instant case run the same risk as the employer in Window Glass Cutters, and that risk can be eliminated only by the joinder of the Continental pilots. [5]

Having found the Continental pilots to be necessary parties under Rule 19(a), the court need spend little time on the question of indispensability under Rule 19(b). [6] Under the criteria set forth in that section, the Continental pilots are clearly indispensable. A pronouncement by this court that the LPA is enforceable would clearly be prejudicial to the Continental pilots, since it might deprive them of the opportunity to challenge the LPA. The court also finds that it is unable to shape a remedy of specific performance which would avoid that prejudice. There can be no question, moreover, that a judgment rendered in the absence of the Continental pilots would not be adequate, since they may refuse to participate in the court-ordered arbitration. Finally, if plaintiff can find a jurisdiction in which the courts have jurisdiction over all the parties, including the Continental pilots, then it will surely have an adequate remedy despite this court's dismissal. Thus this action cannot proceed in equity and good conscience among the current parties alone.

This is not to say, however, that the Continental pilots are indispensable to each of plaintiff's claims. In addition to seeking an injunction compelling arbitration of the integration of the pilot seniority lists, plaintiff states a cause of action for reliance damages. Plaintiffs allege that they reasonably relied to their detriment on the LPA and on oral and written representations made by certain officers of the defendant corporations. As this claim has nothing to do with the enforceability of the LPA, the Continental pilots have nothing to say on the issue.

## CONCLUSION

The merger of any two corporations necessitates addressing the issue of seniority rights of the combined employees. By necessity the position of some will be enhanced and others diminished. This case poses the questions of who has the authority to make such decisions and whether one group of employees is bound by promises made to another.

Plaintiffs here insist that they were promised that their seniority rights would be the subject of arbitration and negotiation with representatives of the Continental pilots, and that such promise was not kept. This court is confronted with a claim for specific performance of an agreement which will affect the Continental pilots without those pilots being parties to the agreement or parties to this suit. No matter how fair the procedure relied upon or how substantial the reliance that such procedure would be effectuated, this court lacks the authority to enforce the agreement made solely with the People Express pilots. Their remedy lies only in a suit for damages.

The court therefore retains jurisdiction over the claim for reliance damages. The remainder of the complaint shall be dismissed without prejudice, unless the plaintiff joins the Continental pilots within sixty days. Plaintiff's motion for partial summary judgment compelling enforcement of the Labor Protection Agreement is denied.

### ORDER

*9 This matter having been opened to the court by defendants' motion for dismissal; and the plaintiff having moved for partial summary judgment; and the court having considered the written submissions and having heard oral argument; and for the reasons expressed in the accompanying opinion,

IT IS this 14 day of October, 1987, hereby

ORDERED that plaintiff's motion for partial summary judgment is denied, and it is further

ORDERED that defendants' motion to dismiss the complaint shall be granted as to injunctive relief, unless plaintiff joins the indispensable parties within sixty (60) days.

1  In addition, the complaint alleges pendent jurisdiction over claims arising under the New Jersey Arbitration Act, N.J.S.A. § 2A:24–3 and the common law doctrine of collateral estoppel. However, defendants correctly note that the court must first establish a basis of federal jurisdiction before accepting pendent jurisdiction over related state law claims. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966). Accordingly, this court will first address the federal claims asserted.

2   In opposing defendants' motion to dismiss, plaintiff challenges defendants' assertion that the protections of the Railway Labor Act may only be triggered if the employees are represented by a representative designated in accordance with the Act. Plaintiff argues that the designation of a representative is not required in actions to enforce labor agreements pursuant to § 152, First, of the Act. See Plaintiff's Brief in Opposition to the Motion to Dismiss, at 5.
The court does not reach the merits of plaintiff's argument as it finds that plaintiff qualifies as a proper representative under the Act and that plaintiff is therefore entitled to hold itself out as the representative of the former People Express pilots.

3   Plaintiff's Brief in Support of the Application for Partial Summary Judgment states that the plaintiff Committee has received authorization from more than 800 of the 950 People Express pilots to represent them in this seniority dispute. See Plaintiff's Brief at 19. However, at oral argument, plaintiff averred that 900 of the 976 People Express pilots had endorsed plaintiff's representation through the submission of written authorizations.

4   It appears to be settled that a 'trial court has an independent obligation to decide whether an action was properly brought as a class action, even where neither party moves for a ruling on class certification.' McGowan v Faulkner Concrete Pipe Co., 659 F.2d 554, 559 (5 Cir. 1981). See also Senter v General Motors Corp., 532 F.2d 511, 520–21 (6th Cir. 1976); Castro v Beecher, 459 F.2d 725, 731 (1st Cir. 1972). A court should have the same latitude to raise sua sponte the question of whether an action most equitably and properly should proceed as a class action in the first place.

5   The plaintiff argues that the Continental pilots actually have no interest in the outcome of this litigation, and that their failure to intervene proves that they do not perceive this suit to pose a threat to their interests. A similar contention was made and rejected in the Window Glass Cutters case: 'The League contends that the Ceramics Union in fact has no interest in the outcome of this litigation. . . . If this contention is correct, . . . it would have been a simple matter for the Ceramics Union to so state in its responsive pleadings once it had been properly joined. When the additional defendant was joined, the court would have been in a position to assess the contentions of all parties, thus assuring that an appropriate record was made to enable it to rule on the plaintiff's request for relief.' 428 F.2d at 355.

6   Technically, a court should only proceed to a Rule 19(b) inquiry into indispensability if it has been shown that the absent party is incapable of joinder without destroying jurisdiction or exceeding the reach of the court's personal jurisdiction. Although the parties have offered no proof on this issue, the defendants have asserted in their legal memoranda that this court would not have personal jurisdiction over the Continental pilots. The plaintiff has not refuted this assertion. Accordingly, the court will perform the Rule 19(b) analysis and leave the plaintiff the option of joining the Continental pilots if possible.

**Parallel Citations**

127 L.R.R.M. (BNA) 2879

---

**End of Document**                                  © 2015 Thomson Reuters. No claim to original U.S. Government Works.