2012 WL 683525
United States District Court,
D. Colorado.

Jeffrey THOMAS, Scott Gould, Michael Haffling, John Stemmler, and Trevor Jenkins, as the Frontier Pilots Merger Committee, Plaintiffs,
v.
REPUBLIC AIRWAYS HOLDINGS, INC., on behalf of itself and its operating subsidiaries Chautauqua Airlines, Inc., Republic Airlines, Inc., Shuttle America, Inc., Midwest Airlines, Inc., Frontier Airlines, Inc., and Lynx Aviation, Inc.; Daniel Sneddon, as Chairman of the Republic Airways Holdings Pilots Merger Committee; Anthony Freitas, as Chairman of the Midwest Pilots Merger Committee; and John Previsich, as Chairman of the Lynx Pilots Merger Committee, Defendants,
and
International Brotherhood of Teamsters, Airline Division, Intervenor–Defendant.

Civil Action No. 11–cv–01313–RPM.    |    March 2, 2012.

**Attorneys and Law Firms**

Joseph Martin Goldhammer, Buescher, Goldhammer, Kelman & Dodge, P.C., Denver, CO, Wesley Gehl Kennedy, Allison Slutsky & Kennedy, PC, Chicago, IL, for Plaintiff.

Lilia Rosa Bell, Ford & Harrison, LLP, Atlanta, GA, Matthew John Rita, Ford & Harrison, LLP, Denver, CO, William Randell Wilder, Baptiste & Wilder, PC, John O'Brien Clarke, Jr., Highsaw, Mahoney & Clarke, P.C., Washington, DC, Clinton J. Miller, III, United Transportation Union, North Olmsted, OH, for Defendants.

### MEMORANDUM OPINION AND ORDER

RICHARD P. MATSCH, Senior District Judge.

*1 Republic Airways Holdings, Inc. (RAH), owner of Republic Airlines, Inc (Republic). Chautauqua Airlines, Inc. (Chautauqua) and Shuttle America Corporation (Shuttle) acquired three additional carriers, Midwest Airlines, Inc. (Midwest), Frontier Airlines, Inc. (Frontier) and Lynx Aviation, Inc. (Lynx) in 2009. Before the mergers, the pilots of the airlines owned by RAH were represented by the International Brotherhood of Teamsters, Airline Division (IBT). The Midwest pilots were represented by the Airline Pilots Association (ALPA). The Frontier pilots were represented by the Frontier Pilots Association (FAPA). There were collective bargaining agreements in place with these unions and the employers. The United Transportation Union (UTU) represented the Lynx pilots but did not have a collective bargaining agreement with that employer.

Before enactment of the Airline Deregulation Act in 1978, the Civil Aeronautics Board (CAB) had developed and imposed certain labor protective provisions (LLPs) in the merger of Allegheny and Mohawk Airlines. *Allegheny–Mohawk Merger Case,* 59 C.A.B. 22, 45–49 (1972).

Relevant to this case are sections 3 and 13, as follows:

> Section 3. Insofar as the acquisition or merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in a fair and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees affected. In the event of failure to agree, the dispute may be submitted by either party for adjustments in accordance with Section 13.

\* \* \*

> Section 13(a). In the event that any dispute or controversy ... arises with respect to the protections provided herein which cannot be settled by the parties within 20 days after the controversy arises, it may be referred by any party to an arbitrator selected from a panel of seven names furnished by the National Mediation Board for consideration and determination. The parties shall select the arbitrator from such panel by alternatively striking names until only one remains, and he shall serve as the arbitrator. Expedited hearings and decisions will be expected, and a decision shall be rendered within 90 days after the controversy arises, unless an extension of time is mutually agreeable to all parties. The salary and expenses of the arbitrator shall be borne equally by the carrier and (i) organization or organizations representing the employee or employees or (ii) if unrepresented, the employee or employees or group or groups of employees. The decision of the arbitrator shall be final and binding on the parties.

(b) The above condition shall not apply if the parties by mutual agreement determine that an alternative method for dispute settlement or an alternative procedure for selection of the arbitrator is appropriate in their particular dispute. No party shall be excused from complying with the above condition by reason of having suggested an alternative method or procedure unless and until the alternative method or procedure shall have been agreed to by all the parties.

**\*2** (Compl., Ex. 3, Standard *Allegheny–Mohawk* LLPs, sections 3 & 13.)

The CAB's role in airline mergers was eliminated, effective January 2, 1985, and the Department of Transportation was given authority. Its authority expired January 1, 1989.

That left the matter of labor protections in mergers subject to collective bargaining negotiations and the labor dispute procedures in Title I of the Railway Labor Act, 45 U.S.C. § 151 et seq.

Among the many provisions of the Consolidated Appropriations Act of 2008 was the McCaskill–Bond Amendment, including the following provision:

**(a) Labor integration.**—With respect to any covered transaction involving two or more covered air carriers that results in the combination of crafts or classes that are subject to the Railway Labor Act [Act May 20, 1926, c. 347, 44 Stat. 577] (45 U.S.C. 151 et seq.), sections 3 and 13 of the labor protective provisions imposed by the Civil Aeronautics Board in the Allegheny–Mohawk merger (as published at 59 C.A.B. 45) shall apply to the integration of covered employees of the covered air carriers; except that —

(1) if the same collective bargaining agent represents the combining crafts or classes at each of the covered air carriers, that collective bargaining agent's internal policies regarding integration, if any, will not be affected by and will supersede the requirements of this section; and

(2) the requirements of any collective bargaining agreement that may be applicable to the terms of integration involving covered employees of a covered air carrier shall not be affected by the requirements of this section as to the employees covered by that agreement, so long as those provisions allow for the protections afforded by sections 3 and 13 of the Allegheny–Mohawk provisions.

Pub.L. 110–161, Div. K, Title I, § 117, Dec. 26, 2007, 121 Stat. 2383, codified at 49 U.S.C. § 42112, note.

Thus, sections 3 and 13 of the CAB's labor protective provisions in the Allegheny–Mohawk merger became statutory law.

The Midwest/RAH merger closed on July 31, 2009. The Frontier/RAH merger closed on October 1, 2009.

The unions representing the pilots of the six airlines formed merger committees to negotiate an agreement with RAH to resolve the issue of seniority integration in accordance with sections 3 and 13 of the labor protective provisions enacted by the McCaskill–Bond Amendment and provided in the collective bargaining agreements. Those negotiations resulted in an agreement, effective November 3, 2009, entitled Section 13(b) Dispute Resolution Agreement (Agreement). The parties agreed to arbitration and Section V(g) of the Agreement provides:

> The award of the arbitrator shall be stated in writing and shall be final and binding on the parties to the Agreement and on the pilots employed by RAH and its affiliates. The award shall include the date on which the seniority integration will become effective, which date shall not be before the [National Mediation Board] issues its ruling on whether the RAH affiliates comprise a single transportation system and certifies the Organization, if any, that is the duly designated representative of the pilot craft or class on that transportation system.

**\*3** (Agreement at 4–5.)

Section V(j) of the Agreement stated that the Arbitration Award, "shall be considered as a part of the collective bargaining agreement(s) applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system." (*Id.* at 5.)

Section V(c) of the Dispute Resolution Agreement provided that "the arbitrator shall have the authority to resolve any dispute arising out of the interpretation or application of this Agreement." (*Id.* at 4.)

Arbitrator Dana E. Eischen conducted 13 days of evidentiary hearings in Washington, D.C. on March 15–19, May 21–25, and August 9–11, 2010. The following procedures were employed:

> Each party presented direct and rebuttal evidence in support of disparate proposals for integrating the respective lists. Revised final proposals were submitted and exchanged, following which post-hearing briefs were filed on September 24, 2010. In accordance with the DRA [i.e., the November 3, 2009 § 13(b) Agreement], a proposed Award was circulated for review and Counsel submitted comments and suggestions for modifications, a number of which were ... incorporated into the final Award.

(Award at 9.)

On October 4, 2010 (after the evidentiary hearings were concluded and before the final Arbitration Award issued), the IBT filed an application with the National Mediation Board, alleging a representation dispute among the various pilot groups of the RAH subsidiaries. *See In re Application of the Int'l Bhd. of Teamsters, Airline Division,* 38 N.M.B. 138, 2011 WL 1361415 (April 7, 2011).

Arbitrator Eischen issued the Award on February 19, 2011.

On April 7, 2011, upon consideration of IBT's application, the National Mediation Board found that "Chautauqua, Shuttle, [Republic], Frontier, and Lynx are operating as a single transportation system (Republic Airlines et al./ Frontier) for the craft or class of Pilots for representation purposes under the [Railway Labor Act]" and that "the former Midwest Pilots are included in the single transportation system." *In re Application of Int'l Bhd of Teamsters,* 38 N.M.B. at 157, 2011 WL 1361415 at * * 13.

The members of the Frontier Pilots Merger Committee filed this civil action on May 18, 2011 to vacate the Award, alleging jurisdiction under the McCaskill Bond Act, 49 U.S.C. § 42112, note § 117, and the Railway Labor Act, 45 U.S.C. § 151 et seq., naming as defendants RAH and the chairmen of the other merger committees, signatories to the Agreement.

After an election among the pilots of these airlines, the National Mediation Board, on June 28, 2011, designated and certified IBT as the exclusive representative of the pilots employed by all of these airlines in accordance with the Railway Labor Act, 45 U.S.C. § 152, Ninth.

Section V(h) of the Agreement provides:

> The Organization, if any, designated by the [National Mediation Board] as the duly designated representative of the combined craft or class of Flight Deck Crew Members for the single transportation system shall continue the Merger Committees in existence and delegate to the Merger Committees authority solely for the purpose of adjusting any dispute or disputes that might arise as to the interpretation or application of the award, including the authority to compromise such disputes, and to initiate, defend, mediate, and litigate such issues in the dispute resolution mechanism under this Agreement. The Organization shall have authority over the manner in which the Merger Committees' operations are financed. The Merger Committees which are parties to this agreement represent that they have been authorized by their principals (the duly designated representatives of their airline's pilots) to enter into the commitments set forth in this paragraph and in this Agreement. Each Merger Committee shall fill its own vacancies by selection made by the remaining members of that Merger Committee.

**\*4** (Agreement at 5.)

The IBT intervened in this civil action as an additional defendant. On July 8, 2011, it delivered a letter to the plaintiffs, reading as follows:

> In accordance with Section V.h [sic] of the parties agreement, the IBT, the Organization designated by the NMB as the duly designated representative of the combined craft or class of Flight Deck Crewmembers for the single transportation system, hereby notifies you that your Merger Committee is continued in existence "solely for the purpose of adjusting any dispute or disputes that might arise as to the interpretation or application of the award." Your committee is not authorized to act for any other purpose.
>
> Further you are hereby directed to dismiss the litigation captioned *Thomas, et al, v. Republic Airways Holdings, Inc., et al.*, Civil Action No. 11–CV–1313, in the United States District Court for the District of Colorado. You are not authorized to maintain that litigation since it does not concern a dispute "as to the interpretation or application of the award" issued by Arbitrator Eischen. Further, your committee is authorized solely to litigate disputes "in the dispute resolution mechanism established under" §§ V.i and V.j of the DRA. You have no authority to initiate, maintain or defend litigation in any other forum, irrespective of the subject of the dispute in question.

(Intervenor–Def. IBT's Mot. for Summ. J., Ex. 2.)

The Plaintiffs continued this action, contending they have authority to seek to vacate the Award as being in violation of the Agreement to which they are a party.

All parties except RAH have filed motions for summary judgment. There are no factual issues to be adjudicated.[1]

[1] RAH answered the complaint on behalf of itself and its subsidiaries, stating they take no position on whether the Plaintiffs are entitled to have the Arbitration Award vacated and the Complaint fails to raise a justiciable controversy as to them.

The Plaintiffs presented their representation dispute with the IBT to Arbitrator Eischen by letter dated September 13, 2011, and on October 25, 2011, he issued his Dispute Resolution Award No. 1, containing the following findings:

> The Merger Committees remain in existence following issuance of the Award, with authority limited by DRA § V(h) solely to that delegated by the IBT for the purpose of adjusting any dispute or disputes that might arise as to the interpretation or application of the award, including authority to compromise such disputes, and to initiate, defend, mediate, and litigate such issues in the dispute resolution mechanisms under DRA §§ V(c), V(i) and V(j).
>
> Except for the authority delegated by the IBT under DRA § V(h) and reserved to the Merger Committees by DRA §§ V(i) and (j), the DRA provides no authority for any Merger Committee to undertake any other post-Award purpose or activity.
>
> Resolution of disputes concerning whether, or to what extent, the law of principal/agent relationships, the Railway Labor Act [45 U.S.C. § 151, et seq.] and/or the Labor–Management Reporting and Disclosure ("Landrum–Griffin") Act of 1959 [29 U.S.C.A. § 401 et seq.] authorizes the disputed post-Award actions of the [Frontier Merger Committee] and the IBT is beyond the limited scope of the reserved arbitral jurisdiction and authority conferred upon me by the terms of DRA § V(c) and retained by me in the Award.

**\*5** (IBT Suppl. Ex. 4, DRA Dispute Resolution Award No. 1 at 11.)

The parties to the Agreement recognized that the airline pilots would be represented by a single organization designated by the NMB. The Frontier Pilots who are the plaintiffs in this action are employees in a single transportation system and their bargaining representative is the IBT. That union has authorized the continuation of committees formed by the other unions, including the FAPA for the "sole purpose of adjusting any dispute or disputes that might arise as to the interpretation or application of the award," such as its impact on the existing collective bargaining agreements with their unions. It does not include any authority to seek vacation of the Award. The result is that the plaintiffs neither collectively as a committee nor individually have any authority to represent the Frontier pilots in this case. The other defendants do not dispute IBT's revocation of the plaintiffs' authority. Accordingly, the case must be dismissed under basic principles of agency law.

The individual defendants and the IBT have also addressed the merits of the plaintiffs' claims. It is irrelevant whether the issues raised by the plaintiffs are under either the McCaskill–Bond Amendment or the Railway Labor Act. The scope of judicial review is the same under either act.

The Plaintiffs argue that the Arbitrator exceeded his authority by imposing an effective date that restricted the period for collective bargaining about implementation of the Award to a 60–day period. They contend that the Arbitrator had no authority to modify the existing CBAs, arguing that the effective date imposed by the Arbitrator improperly modified the parties' statutory and collective bargaining obligations by restricting the time for bargaining about implementation of the Award.

There is no merit to this claim. An arbitrator acts within his authority when the award "draws its essence" from the agreement and does not "simply reflect the arbitrator's own notions of industrial justice." *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38 (1987). "[A]s long as the arbitrator is even arguably construing the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.*

Section V(g) of the Dispute Resolution Agreement authorized the Arbitrator to determine the effective date of the integrated master seniority list. The only restriction on that authority was the proviso that the date "shall not be before the NMB issues its ruling on whether the RAH affiliates comprise a single transportation system and certifies the Organization, if any, that is the duly designated representative of the pilot craft or class on that transportation system." The effective date specified in the Award is consistent with that requirement.

The Plaintiffs' contention that the Arbitrator had no authority to modify the existing CBAs ignores Section V(j) of the Dispute Resolution Agreement, which states that the Arbitrator's Award "shall be considered as part of the collective bargaining agreement(s) applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system." By entering into the Dispute Resolution Agreement, the Frontier Merger Committee (and FAPA) agreed to be bound by the arbitrator's decisions about seniority integration in the event that the National Mediation Board ruled that the RAH affiliates comprise a single transportation system. Thus, to the extent that the Arbitration Award effected changes in the existing collective bargaining agreements, those changes resulted from agreement.

**\*6** The Plaintiffs disputed the meaning of Section V(j) of the Dispute Resolution Agreement and presented that dispute to the Arbitrator after the Award issued. In Dispute Resolution No. 1, dated October 25, 2011, the Arbitrator rejected the Plaintiffs' arguments. Thus any question about the meaning of Section V(j) of the Dispute Resolution Agreement has been resolved.

The Plaintiffs allege that the Arbitrator refused to consider relevant evidence. The facts relevant to this issue are as follows:

During the hearings, the parties presented evidence in accordance with the procedures established in the Dispute Resolution Agreement. The Dispute Resolution Agreement required the Arbitrator, prior to issuing a final award, to submit a proposed award and allowed the parties to submit comments and suggested changes. (Agreement § V(f) .) However, the Dispute Resolution Agreement expressly provided during this comment period, "no new evidence may be submitted." (*Id.*) When the Frontier Merger Committee submitted comments and suggested changes to the Arbitrator's draft award, it attached Appendices to its comments. IBT moved to strike the Appendices, arguing that the time for the presentation of evidence had closed. The Arbitrator granted the motion to strike.

In short, the Plaintiffs do not complain that they were precluded from presenting evidence during the evidentiary hearings or that the Arbitrator refused to consider evidence presented during those hearings. Rather, they complain about his refusal to consider evidence they submitted in the form of appendices to their comments on the draft award, after the presentation of evidence had closed.

The Plaintiffs' argument about the Arbitrator's refusal to consider relevant evidence is without merit.

The Plaintiffs assert the Award should be vacated because the Award bears no rational relationship to the Arbitrator's underlying findings and does not explain how it derives from the Dispute Resolution Agreement and the fair and equitable standard.

The Plaintiffs do not dispute any of the Arbitrator's factual findings. The Plaintiffs complain that the Arbitrator failed to consider the impact of his award on the future allocation of jobs among the pre-transaction groups and refused to consider evidence relevant to that factor.

The Plaintiffs are asking this court to review the merits of the seniority integration devised by the Arbitrator, and the court

has no authority to do so under the Railway Labor Act or the McCaskill–Bond Amendment.

The Award is not fundamentally flawed. In the final Award, the Arbitrator described the proposals submitted by the four labor organizations, as well as RAH's position. (Award at 24–28.) He explained his reasons for rejecting those proposals. (Award at 35.) With respect to the Frontier pilots' proposal, the Arbitrator stated that it "posit[s] incorrectly that [its] own pilot group alone is entitled to first class placement at the head of the table, while asserting that less valuable overall contributions warrant placement of the other primary contributor to the merged enterprise well below the salt." (Award at 35.) The Arbitrator further stated, "FAPA's proposal also brings to the table overly complicated and expansive conditions and restrictions...." (*Id.*)

**\*7** In short, the Plaintiffs have not shown that the Award was procedurally unfair or that the Arbitrator exceeded his authority.

While the defendants' and intervenor-defendant's motions for summary judgment are granted and the plaintiffs' are denied, the action cannot be characterized as frivolous warranting the award of attorney's fees as requested by defendant Freitas.

Upon the foregoing, it is

ORDERED that the Clerk shall enter judgment for the defendants and intervening defendant, dismissing this civil action and for an award of costs.

**Parallel Citations**

193 L.R.R.M. (BNA) 2144

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.