*ADMINISTRATIVE MANUAL*

## TABLE OF CONTENTS

**MERGER AND FRAGMENTATION POLICY** ..................................................................2

**PART 1 – STATEMENT OF PURPOSE AND PREAMBLE** ..................................................2

**PART 2 – APPLICATION AND SCOPE OF MERGER POLICY, MERGER AGREEMENTS, INTERPRETATION OF MERGER POLICY AND EXTENSIONS** .........................................4

   A.   Merger Policy Changes.................................................................................4
   B.   Application and Scope of Merger Policy .....................................................4
   C.   Merger Agreements Between or Among Mecs ..............................................5
   D.   Interpretation of Merger Policy ..................................................................7
   E.   Extensions ...................................................................................................7

**PART 3 – MERGER POLICY AND PROCEDURES**...........................................................7

   A.   Communications Upon Knowledge of Probably Transaction and Determination of Merger ....................................................................................7
   B.   Joint Negotiating Committee (JNC) and Joint Negotiations ...............................8
   C.   Seniority List Integration ..........................................................................11
   D.   Implementation of Integrated Seniority List............................................19
   E.   Merger of Local Councils and MECs ........................................................21
   F.   Funding and Payment of Merger-Related Expenses..................................22
   G.   Disposition of Merger Assessment Funds ................................................23

**PART 4 – CARRIER FRAGMENTATION POLICY** ........................................................24

   A.   Interpretation of Carrier Fragmentation Policy........................................24
   B.   Application of Carrier Fragmentation Policy.............................................24
   C.   Identification of Pilots to Be Transferred ................................................24
   D.   Integration Timetable ...............................................................................24
   E.   Assessment.................................................................................................25
   F.   Disposition of Merger Assessment Fund...................................................25

**PART 5 – REQUESTS TO ALPA FOR DATA AND INFORMATION** ...................................25

   A.   Data Categories .........................................................................................25

**INDEX** ..................................................................................................................26

1

Case 2:14-cv-01441-RTR    Filed 02/09/15    Page 1 of 27    Document 24-1

 *ADMINISTRATIVE MANUAL*

## MERGER AND FRAGMENTATION POLICY

SOURCE – In April 2009, the Executive Board adopted major revisions to ALPA Merger and Fragmentation Policy. Future amendments will be noted where they occur in the policy and will include the governing body and amendment date.

### PART 1 –STATEMENT OF PURPOSE AND PREAMBLE

The purpose of ALPA Merger Policy is to provide protection for the employment interests of ALPA represented flight deck crew members by establishing orderly and expeditious processes for (1) concluding a joint collective bargaining agreement (JCBA), (2) concluding the fair and equitable merger of seniority lists and (3) merging Master Executive Councils (MECs).

The policy rests on a number of premises:

- A successful merger requires the full support of ALPA MEC and Local Council leadership for its implementation.

- ALPA members will be kept informed and up to date through responsible communications, and an environment developed to foster unity and strength in negotiating the JCBA.

- Unity of purpose, based on close cooperation among Joint Negotiating Committee (JNC) members and between the participating MECs, is essential to bringing about a work force that will obtain benefit from the merger through successful negotiations.

- Integration of seniority lists is one step in the entire merger process; the merger is one transaction, consisting of the seniority integration *process*, the contract negotiation *process*, the ratification *process,* and the transition *process (both as to the carriers and ALPA governance),* all leading to a single pilot group and MEC.

This policy establishes processes based on these premises, to be followed by pilot groups from the outset through the completion of the merger. However, broad authority is provided to MECs to design and agree on alternative processes that meet their own needs. The basic policy serves as a "governing" process in the event that the MECs do not desire to or cannot reach such agreements.

The policy recognizes that MECs may be required to deal with a variety of types of corporate transactions and that innovation by MECs dealing with different types of corporate transactions may best serve the interests of their pilot groups and ALPA. MECs are strongly encouraged to consider using flexible arrangements available under policy to design processes tailored to the needs of their particular pilot groups and transaction. MECs are encouraged to keep in mind that flexibility is made available in recognition that a "one size fits all" process is not the best approach when dealing with transactions.

This policy provides at the outset that its scope (Part 2B 1) should not be defined in terms of particular types of transactions or the timing or announcement of transactions, all of which are controlled by corporate interests, but rather in terms of situations when there is a need to protect employee interests.

Case 2:14-cv-01441-RTR  Filed 02/09/15  Page 2 of 27  Document 24-1

Thus, a "merger" is defined as a situation where there is a reasonable probability of sufficient operational integration between or among two or more ALPA airlines that there is or will be a need for an integrated seniority list, a JCBA and a merged MEC to adequately protect the employment interests of the flight deck crew members. Its scope also recognizes that MECs may desire to make agreements "at any time" – for example, before there is a "merger" as defined by policy – to enable them to be involved in a potential merger at an early stage. The policy embraces the concept that MECs can enter into such agreements.

The policy provides for its implementation using either of two methods.

Under one method, the involved MECs may determine "at any time" (Part 2B 2) that it is in the best interests of their flight deck crew members to enter into agreements which provide for an alternative process for seniority integration, negotiating a JCBA or both. If this determination is made, with the approval of the President, the MECs have wide latitude to fashion their own process, subject only to meeting certain fundamental requirements of policy (Parts 2B 2 and 2C 1).

This feature of the policy provides the MECs with the flexibility to deal with their particular situation. It is also important that these policy provisions enable MECs to make these agreements "at any time," even before there is a "merger" as defined by policy, so that cooperating MECs can be involved in a potential merger at an early stage.

Under the second method, if there is a "merger" as defined by policy and the MECs do not enter into agreements which provide for an alternative process for seniority integration *and* negotiating a JCBA, the policy is implemented through a "Process Implementation Date" (PID). The policy calls for the PID to be established on the earlier of the date on which the Executive Council, in its judgment, determines there is a merger or the date on which the President agrees with the determination of all involved MECs that there is a merger (Part 2B 3).

The policy also provides MECs with the opportunity to make two additional types of agreements on processing their merger, whether functioning under the first or second method described above.

1. MECs, with approval of the Executive Council, may voluntarily enter into an agreement to establish an Interim Joint Governing Council (IJGC) which will function as a single MEC for purposes of making joint decisions on defined subjects relating to the merger other than seniority integration (Part 2C 2).

2. MECs are required to make an effort to negotiate and enter into an agreement to establish terms for merger of their MECs. These provisions encourage and enable cooperating MECs to carry out a smooth transition by agreeing on terms for their MEC merger.

Based on experience, use of the procedures in this policy (Part 3B) for negotiation of the JCBA or any alternative process should be accompanied by recognition that:

• The JCBA is the means by which the employment interests of the flight deck crew members are protected and economic benefit – value for ALPA members – is obtained from the merger.

• Unity of purpose is essential to successful JCBA negotiations.

3


- Negotiating sessions should be scheduled consistent with the high priority goal of concluding the JCBA prior to the date for conclusion of the seniority list integration process.

Many years of experience call for a seniority integration policy based on the following principles:

1. This policy calls for fair and equitable integration of seniority lists, but aside from the specific requirements embodied in policy, what appears to be "fair and equitable" typically differs depending upon the eyes of the beholder and it may be difficult to reach a consensus or there may be no consensus on what is "fair and equitable."

2. The merger representatives are strongly encouraged to consider themselves primarily as negotiators charged with reaching agreement, to use negotiating skills and to make a strong and focused effort to reach agreement through negotiations or mediation, without invoking arbitration.

3. The merger representatives for the pilot groups bear responsibility for the integrated seniority list, with ALPA having no position on the merits.

4. The merger representatives should recognize the difficulty of forecasting what will occur well into the future.

5. ALPA's role through this policy is solely to provide the process by which the pilot groups conclude the integrated seniority list for presentation to management, using arbitration if necessary, together with the opportunity for MECs to agree on alternative processes that meet their own needs.

6. If agreement cannot be reached, final and binding arbitration is mandated by this policy on unresolved issues. Each pilot group must recognize that the arbitration process involves the assumption of very substantial risk to the interests of the pilot group, since there is no means of predicting the outcome.

Experience also calls for cooperative arrangements between the participating MECs prior to the merger of the MECs, either through formal governance arrangements permitted by this policy or informal means, if the pilot groups are to be brought together as a unified work force that will obtain benefit from the merger.

### PART 2 – APPLICATION AND SCOPE OF MERGER POLICY, MERGER AGREEMENTS, INTERPRETATION OF MERGER POLICY AND EXTENSIONS

#### A. MERGER POLICY CHANGES

No changes to this policy shall apply to any merger which is in progress by virtue of the establishment of a Policy Initiation Date prior to the adoption of such changes, unless specifically mandated to be applied to any such merger or otherwise permitted to be applicable by this policy.

#### B. APPLICATION AND SCOPE OF MERGER POLICY

4


1. This policy recognizes that the scope of a viable ALPA Merger Policy may not be defined in terms of particular types of transactions or the timing or announcement of a particular transaction. Under these circumstances, "merger" means a situation where there is a reasonable probability of sufficient operational integration between or among two or more ALPA airlines that there is or will be a need for an integrated seniority list, a JCBA and a merged MEC to adequately protect the employment interests of the flight deck crew members. The scope of this policy also recognizes that MECs may desire to make agreements "at any time" – for example, before there is a "merger" as defined by policy – to enable them to be involved in a potential merger at an early stage. The policy embraces the concept that MECs can enter into such agreements.

2. The terms and conditions set forth in Part 2C 1 below shall be applicable when two or more MECs determine at any time it is in the best interests of their flight deck crew members to enter into discussions, negotiations and agreements which provide for a process for seniority list integration, negotiating a JCBA or both.

3. Except when the MECs for the merging pilot groups ("involved MECs") enter into agreements under Part 2C 1 below providing an alternative process for seniority list integration *and* for negotiating a JCBA, a Process Implementation Date (PID) for a merger shall be established on the earlier of the date on which the Executive Council, in its judgment, determines or the date on which the President agrees with the determination of all of the involved MECs that there is a merger.

4. This policy shall also be applicable under the terms and conditions and to the extent provided in Part 4, Carrier Fragmentation Policy.

5. When a transaction that would be a merger under this policy if between or among ALPA airlines involves a non-ALPA or unorganized pilot group, the involved MEC(s) shall confer with the President and his designees on application of legislative rights and steps to be taken by the President to seek acceptance of a procedure that will enable the parties to proceed to a fair and equitable resolution in a timely and expeditious manner.

6. "ALPA airline" or "ALPA carrier" as used in this policy means an airline whose pilots are represented by ALPA.

## C. MERGER AGREEMENTS BETWEEN OR AMONG MECS

1. Upon making a determination under Part 2B 2 above, and with the approval of the President, the involved MECs may enter into discussions, negotiations and agreements which provide for a process for seniority list integration, negotiating a JCBA or both.

   a. The President may approve an agreement or agreements between or among the involved MECs which provide(s) for an alternative process for seniority list integration or concluding a JCBA or both.

      (1) With respect to seniority list integration, such agreements may provide for but are not limited to including an expedited schedule to complete the processes set forth in Part 3C below, shortening time periods, commencing negotiations and/or mediation and arbitration during the processing of employment data requirements, utilizing a

5


neutral facilitator from the outset, utilizing a combined mediation-arbitration process rather than a separate negotiations process followed by mediation and arbitration, using a single neutral rather than an Arbitration Board, providing for informal or conference style proceedings before a mediator-arbitrator rather than formal hearings or a combination thereof, and limiting the participation of legal counsel in the process.

(a) All such agreements shall be subject to the following provisions of this merger policy:

> Part 3A 1c and 1d (communications)
> Part 3C 1 (merger representatives)
> Part 3C 2 and 4b, subject to an agreed alternative arbitration process (compilation and verification of employment data)
> Part 3C 4c ("grandfather" rights)
> Part 3C 4d (not change order on own seniority list)
> Part 3C 4e and 5a(2) (fair and equitable integrated seniority list)
> Part 3C 4f (no integrated seniority list subject to MEC or membership ratification)
> Part 3C 5c(8) (use of communications in arbitration proceedings discouraged)
> Part 3C 5e(2) (arbitration award final and binding)
> Part 3D (implementation of integrated seniority list)
> Part 3F (funding and payment of merger related expenses)
> Part 3G (disposition of merger assessment funds)
> Part 5 (requests to ALPA for data and information)

(b) All such agreements shall include a final and binding arbitration process for seniority list integration (which may or may not be the arbitration process set forth in this policy), unless the agreement actually includes a negotiated integrated seniority list.

(2) With respect to concluding a JCBA, all such agreements shall be subject to the following provisions of this merger policy:

> Part 3B 1, except for timeline reference to PID (JNC composition)
> Part 3B 2 (consultation with Director of Representation)
> Part 3B 5 (JNC duties and support)
> Part 3B 6 (President's role)
> Part 3B 7 (ratification procedures, unless alternative procedure is established)
> Part 3B 8 (strike votes, unless alternative procedure is established)
> Part 3B 9 (no use of integrated seniority list prior to conclusion of JCBA, except by agreement)
> Part 3F (funding and payment of merger related expenses)
> Part 3G (disposition of merger assessment funds)
> Part 5 (requests to ALPA for data and information)

Case 2:14-cv-01441-RTR   Filed 02/09/15   Page 6 of 27   Document 24-1


(a) The President in his discretion may waive the application of all provisions except Parts 3B 9, 3F, 3G and 5 prior to the time that there is a "merger" as defined in this policy.

(3) Each MEC involved in a merger should consider entering into such agreements.

2. Prior to the required time for merging of MECs under this policy, whether subject to Part 2B 2 or 2B 3 above, the involved MECs may, with approval of the Executive Council, voluntarily enter into an agreement to establish an Interim Joint Governance Council (IJGC) which will function as a single MEC for purposes of making joint decisions on defined subjects relating to the merger other than seniority integration. Each involved MEC must separately ratify a proposed IJGC agreement. An IJGC agreement may provide for a single joint strike vote and/or merged contract ratification vote by the IJGC and/or the membership. Each MEC involved in a merger should consider establishing an IJGC.

3. Prior to the required time for merging of MECs under this policy, whether subject to Part 2B 2 or 2B 3 above, the involved MECs are required to make an effort to negotiate and enter into an agreement to establish terms for merger of the MECs consistent with Part 3E below.

4. MECs may enter into these types of agreements for a merger which is in progress as of the date of adoption of these amendments to policy by the Executive Board.

## D. INTERPRETATION OF MERGER POLICY

1. Issues as to application or interpretation of merger policy shall be determined by the Executive Council.

## E. EXTENSIONS

The President may, for cause, grant extensions of the time limits set forth in this policy.

## PART 3 – MERGER POLICY AND PROCEDURES

## A. COMMUNICATIONS UPON KNOWLEDGE OF PROBABLE TRANSACTION AND DETERMINATION OF MERGER

1. Communications with the membership shall objectively educate the pilots on the merger process and the need to begin building a unified pilot group from the outset. Upon knowledge of a probable transaction that may be subject to this policy, but no later than determination of the PID, a communications and education program shall be initiated, including but not limited to the following:

a. The President shall convene a joint meeting of the MEC Chairmen and the merger representatives of each involved airline and orient the participants on the provisions of this policy. The President may also include negotiating committee chairmen and/or members in this meeting.

7

b.  The President will send a letter to all pilots on the involved airlines clearly indicating what ALPA Merger Policy is intended to accomplish. In addition, upon request of the MEC Chairmen or in the President's discretion, the President may distribute or make available a communication in electronic format to all pilots on the involved airlines explaining the merger process.

c.  The MEC Chairmen, other MEC officers, Local Council officers and merger representatives shall (jointly or separately) communicate with the pilots on their airlines, explaining the merger process, incorporating the following in their communications:

   (1)  The obligation of MEC and Local Council leadership to begin building a unified pilot group from the outset.

   (2)  Objective education on the merger process.

   (3)  Potential risks of third party determination of seniority list integration by arbitration as compared to an agreement reached through negotiations and mediation.

   (4)  Reports on agreements between the involved MECs and with management.

d.  Reasonable efforts should be made to establish a joint communications committee and/or process for communications with respect to specified subjects related to the transaction.

**B.  JOINT NEGOTIATING COMMITTEE (JNC) AND JOINT NEGOTIATIONS**

1.  Upon knowledge of a probable transaction, but no later than ten days after determination of the PID, each of the affected MECs shall designate three Negotiating Committee members to serve on the JNC for the purpose of jointly negotiating transition agreements, if deemed appropriate, and a JCBA. The MEC Chairmen of the respective airlines shall be ex officio members of the JNC. The JNC shall promptly select its Chairman or select Co-Chairmen from among its members. The President shall, if necessary, appoint the members of the JNC and a Chairman or Co-Chairmen of the JNC if this action is not taken in a timely manner.

2.  The MEC Chairmen and the members of the JNC shall promptly consult with the Director of Representation to consider whether joint negotiations with the management(s) for a transition agreement are appropriate under the circumstances and for  preparation for negotiation of a JCBA. The President, in his discretion, may also convene meetings of MEC officers and representatives as are deemed necessary to address such issues.

3.  If a decision is made that a transition agreement would benefit flight deck crew members, the subject matter for transition agreement negotiations should include those issues necessary to expeditiously process the merger, including but not limited to the following:

   a.  Appropriate employee protective provisions for the transfer of employment and seniority rights from one company to another.

8

  *ADMINISTRATIVE MANUAL*

*SECTION 45 – MERGER AND FRAGMENTATION POLICY*                    *4/30/09*

    b.   Management acceptance of the integrated seniority list arrived at pursuant to this policy.

    c.   Measures to provide for separation of flight operations, equipment, and existing flying of each involved carrier until such time as there is an integrated seniority list and JCBA or until the involved MECs agree otherwise. Any dispute shall be decided by the Executive Council.

    d.   Process for expeditious negotiation of a JCBA.

    e.   Economic improvements.

    f.   Single carrier process for representation purposes.

    g.   Payment or reimbursement by management of all expenses (including flight pay loss) incurred in connection with the proposed or actual merger.

    h.   Expedited dispute resolution process, incorporating a process for resolution of disputes between or among the involved MECs, which once resolved will be the position of ALPA with the carrier.

4.   Transition agreement negotiations, if undertaken, shall be conducted by the JNC or a subcommittee of the JNC, unless the involved MECs agree otherwise.

5.   The JNC shall conduct negotiations for the JCBA.

    a.   The JNC shall commence preparation for negotiation of the JCBA immediately upon appointment.

    b.   The JNC shall make every reasonable effort to conclude preparation of opening proposals for the JCBA as soon as possible.

    c.   The JNC shall make every reasonable effort to commence negotiations for the JCBA promptly after the preparation of opening proposals.

    d.   The JNC shall schedule negotiating sessions consistent with the high priority goal of concluding the JCBA prior to the date for conclusion of the seniority list integration process under Part 3C below or an earlier date established by agreement of the involved MECs.

    e.   It shall be a standing obligation of JNC members to attend both JNC preparation meetings and joint sessions with management.

    f.   The JNC shall be provided appropriate ALPA staff support and resources to successfully complete negotiations.

6.   The President or his designee(s) shall closely monitor all aspects of preparation and negotiations. The President may in his discretion take any or all of the following actions as called for in his judgment to successfully conclude negotiations:

9

Case 2:14-cv-01441-RTR   Filed 02/09/15   Page 9 of 27   Document 24-1


     a. Calling meetings of the JNC for any purpose related to negotiations, including but not limited to resolving outstanding issues within the committee.

     b. Calling simultaneous meetings of the involved MECs at the same location in order to address and resolve outstanding issues related to negotiations.

     c. Setting dates for the completion of proposals and submission to management.

     d. Setting a date as a goal for completion of negotiations.

     e. Appointing a special representative(s) to actively work with and assist the JNC in resolving issues in an expeditious manner and to report directly to the President.

     f. Appointing replacement JNC members and/or a replacement Chairman or Co-Chairmen if JNC members refuse to attend scheduled preparation meetings or joint sessions with management or, in the alternative, authorizing JNC members who are willing to attend such meetings to proceed with preparation and negotiations sessions.

     g. Reporting directly to the membership.

     h. Requiring the MEC Chairmen and the JNC to report directly to the Executive Council, following which the Executive Council may direct additional action to be taken with respect to negotiations.

7. A tentative transition agreement, JCBA or other joint agreement shall be subject to the following ratification procedures:

     a. If the particular tentative agreement is subject to membership ratification by all the involved pilot groups, each MEC shall vote separately on submitting the agreement to the membership for a ratification vote and there shall be a combined membership ratification vote of all involved pilot groups if each MEC votes to submit the agreement for a membership ratification vote. In such instances, a simple majority of valid ballots returned, with no specific minimum required, shall govern the ratification vote.

     b. If the particular tentative agreement is subject only to MEC ratification by the involved MECs, each MEC using MEC ratification shall vote separately on ratification.

     c. If the particular tentative agreement is subject to different ratification procedures by the involved pilot groups (i.e., MEC ratification and membership ratification), each MEC or membership, as applicable, shall vote separately on ratification.

8. A strike vote shall be subject to the following procedures:

     a. Subject to subsection 8b below, a membership strike vote shall be approved separately by each involved MEC in accordance with Article IV, Section 2B of the Constitution and By-Laws and then submitted for a secret ballot vote by the combined membership of all involved pilot groups.

Case 2:14-cv-01441-RTR    Filed 02/09/15    Page 10 of 27    Document 24-1


   b.  If there is a determination that a strike by a particular pilot group would not be appropriate under the circumstances, the MEC approval and membership vote shall be restricted to the pilot group(s) as to whom a strike is deemed appropriate.

   c.  In either instance, a simple majority of valid ballots returned, with no specific minimum required, shall govern the strike vote.

9.  In no event, except by mutual agreement of all parties, will the company be given the right to use the merged seniority list prior to the successful conclusion of the JCBA.

## C.  SENIORITY LIST INTEGRATION

1.  Each MEC is encouraged to have a standing Merger Committee at all times. The Merger Committee for each MEC shall consist of at least two but not more than four merger representatives elected by the MEC from the active members in good standing on its seniority list. In the event an MEC fails to elect merger representatives within ten days following the PID, the President may, at his discretion and subject to an opportunity for the affected MEC to be heard by him, appoint any active member of ALPA in good standing from the affected airline to fill any merger representative vacancy. These representatives shall have complete and full authority to act for and on behalf of the flight deck crew members of their respective airlines for the purpose of concluding a single flight deck crew member seniority list and appropriate conditions and restrictions, which shall not be subject to ratification. Nothing herein is intended to limit the discretion of respective MECs in the selection or replacement of their merger representatives prior to the election of merged MEC officers.

   a.  There shall be an annual orientation program for all merger representatives conducted under the supervision of the Vice President-Administration/Secretary, which in his discretion may be conducted in person, by telephone or by electronic format.

2.  Compilation of Employment Data

   a.  Each MEC will maintain a system seniority list including at least the following data: seniority number, name, date of hire, and date of birth.

   b.  The merger representatives shall be responsible for determining the date of hire, date of birth, seniority number, furlough time and leaves of absence time for each flight deck crew member on its current seniority list utilizing Company payroll records and/or other records as necessary. ALPA staff may be utilized to compile this data. Each furlough and leave of absence or any intervening periods of service other than as a flight deck crew member with this Company shall be listed separately with an explanation covering the period. Furlough time directly related to a labor dispute or work stoppage, ALPA leaves, military leaves, FMLA (or Canadian equivalent) leaves and sick leaves shall not be included.

   c.  In cases where one or more parties to the merger has flight deck crew members with grandfather or similar special rights by agreement with ALPA that are limited as to job classification or status within the flight deck crew, employment data with respect to said special classification or rights shall also be compiled.

11

 
    d.    The date of hire shall be the date upon which a pilot first appears upon the Company's payroll as a pilot and also begins initial operational training required to perform such duties in airline operations. Pilots who initially function as flight deck crew members in positions other than that of a pilot, but whose working agreement allows normal progression in accordance with seniority to pilot status, shall be considered as being employed as a pilot for purposes of this Section. Persons who initially function as flight deck crew members, but in a classification which did not allow normal progression to pilot status in accordance with seniority, and who have subsequently gained the right of progression to pilot status by agreement with ALPA, shall acquire date of hire as a pilot as of the date specified by such agreement. Where an initial date of hire as a flight deck crew member is different from an initial date of hire as a pilot as defined above, both sets of data, together with explanations, shall be compiled for the purpose of resolving any inconsistencies among the parties to the merger with respect to special rights for such individuals.

    e.    Verification of employment data described above shall be accomplished as soon as possible after compilation in the manner set forth in Part 3C 3 below, regardless of whether seniority list integration is being undertaken pursuant to the procedures set forth in this policy or alternative procedures under an agreement between the involved MECs pursuant to Part 2C 1a(1) above.

3.    Verification and Exchange of Employment Data

    a.    The merger representatives will commence the verification and updating of employment data of those flight deck crew members not previously verified and updated no later than the PID.

    b.    The merger representatives shall forward the individual employment data described in Part 3C 2 via certified mail, Return Receipt Requested, to each non-verified and non-updated flight deck crew member within twenty (20) days of the PID, provided that the merger representatives may forward such data by email, with provision for electronic return receipt, to those flight deck crew members who have designated electronic communications as their preference for receiving ALPA communications. The merger representatives shall also post such data as to all flight deck crew members on their MEC website in a manner providing for access by all flight deck crew members.

    c.    It is the responsibility of the individual flight deck crew member to verify or challenge the findings of the merger representatives within twenty (20) days following receipt and to support his protest, if any, by written statement of fact. In addition, such protesting member may request a hearing before the merger representatives. All such timely requests shall be granted. Any flight deck crew member may transmit such verification or challenge or request for a hearing by email, in which case the merger representatives may use email to schedule a requested hearing and advise the flight deck crew member of their decision by email.

    d.    The merger representatives will receive and evaluate all protests and will adjudge the validity of the claims. Their decision will be final and such decision shall be in writing and shall be forwarded to the flight deck crew member making the protest within ten

Case 2:14-cv-01441-RTR   Filed 02/09/15   Page 12 of 27   Document 24-1


(10) days following receipt or following completion of the hearing, if any, by the means outlined above.

e.   Upon completion of the processes outlined above, the merger representatives shall prepare a certified Flight Deck Crew Member Seniority List which shall reflect the proper relative position of each member thereon.   Such list shall contain that data described in Part 3C 2b.

f.   Employment data verified as outlined above shall be exchanged no later than sixty (60) days following the PID.  For purposes of this initial exchange of data, said data need not pertain to events more recent than the date of the first Company notification of intent to merge.

g.   Additional employment data pertinent to the solution of integration problems shall be made available to all merger representatives.

13


4.  Seniority List Integration – Negotiations

    a.  The merger representatives shall meet and commence efforts to arrive at a mutually satisfactory method of integration and compilation of a single acceptable flight deck crew member seniority list no later than sixty (60) days following the PID. The merger representatives shall make a strong and focused effort to resolve all issues through negotiations. If all issues cannot be resolved, the merger representatives shall make a strong and focused effort to reduce outstanding issues and limit the issues for mediation and/or arbitration. The merger representatives shall proceed to mediation under Part 3C 5 below if negotiations have not resulted in an agreement within one hundred (100) days following the PID.

    b.  The merger representatives shall resolve any and all disputes and inconsistencies with regard to the employment data exchanged. The representatives shall be empowered to compromise their differences to the extent necessary to reach agreement except that the relative position of the flight deck crew members on their respective seniority lists shall be maintained. Areas remaining in disagreement shall be reduced to writing, stating the contentions of the parties, and shall be resolved, if necessary, by utilizing the mediation and arbitration procedures set forth in Part 3C 5 below.

    c.  In cases where one or more parties to the merger has flight deck crew members with grandfather or similar special seniority rights that are limited as to job classification or status within the flight deck crew, the merger representatives shall commence efforts to arrive at a mutually satisfactory method of integration and compilation of such separate special seniority lists as may be necessary and appropriate to preserve and protect such rights in addition to the flight deck crew member seniority list.

    d.  No integrated list shall be constructed which would change the order of the flight deck crew members on their own respective seniority lists.

    e.  The merger representatives shall carefully weigh all the equities inherent in their merger situation. In joint session, the merger representatives should attempt to match equities to various methods of integration until a fair and equitable integrated seniority list is reached. Factors to be considered in constructing a fair and equitable integrated seniority list, in no particular order and with no particular weight, shall include but not be limited to the following:

        ▪  Career expectations.

        ▪  Longevity.

        ▪  Status and category.

    f.  No integrated seniority list shall be subject to MEC or membership ratification.

    g.  It is recommended that outside legal counsel not participate in direct negotiations.

Case 2:14-cv-01441-RTR   Filed 02/09/15   Page 14 of 27   Document 24-1


h. For the purposes of limiting confrontation and expediting the merger process, the President shall, when he deems advisable, appoint a neutral facilitator to assist the merger representatives in arriving at a fair and equitable solution.

i. The merger representatives shall report to the President, upon request, on their progress once negotiations begin. If, at any time after receiving the first report, in the opinion of the President, satisfactory progress is not being made, the President may unilaterally intervene and invoke arbitration.

5. Mediation and Arbitration

   a. General

      (1) The process described below includes two steps: mediation and arbitration.

      (2) The purpose of mediation and arbitration shall be to reach a fair and equitable integrated seniority list, consistent with ALPA policy. The merger representatives and any Arbitrator serving in a mediation or arbitration capacity shall be bound by the provisions of Part 3C, subsections 4c, 4d and 4e above in constructing an integrated seniority list.

      (3) Arbitration shall be mandatory if, within one hundred twenty (120) days from the PID, negotiations and mediation have not resulted in an integrated flight deck crew member seniority list.

      (4) If, prior to the beginning of Arbitration Board hearings, an additional transaction causes another pilot group(s) to be affected by a seniority integration process in progress, said arbitration may, at the discretion of the President, be delayed for the purpose of allowing the additional affected MEC(s) to become party to the seniority integration process in progress. In the event such discretion is exercised, the President shall set the extent of such delay not to exceed an amount of time equal to the time limits specified in this policy.

   b. Mediation Process

      (1) The mediation step shall be conducted under the direction of the Chairman of the Arbitration Board.

      (2) The merger representatives shall use the period after conclusion of negotiations and prior to one hundred twenty (120) days from the PID for mediation, subject to resumption of mediation under subsection c(9) below.

      (3) The mediator shall meet with the merger representatives to:

         (a) Identify and agree upon the issues;

         (b) Receive stipulations and aid in arriving at stipulations;

Case 2:14-cv-01441-RTR   Filed 02/09/15   Page 15 of 27   Document 24-1


    (c) Determine with the merger representatives the scope of evidence necessary to conduct the mediation;

    (d) Conduct mediation in an effort to arrive at a resolution of all issues or as many issues as possible;

    (e) Have the merger representatives execute agreements reached at the mediation step;

    (f) Define the issues unresolved through mediation to be heard at the arbitration step.

c. Arbitration Board and Proceedings

    (1) Issues to be decided at the arbitration step shall be heard by a three-person Arbitration Board.

    (2) The Arbitration Board shall be composed of three persons, all of whom shall be neutrals chosen by the merger representatives within twenty (20) days of the PID from a list of Arbitrators approved by ALPA, unless the involved MECs agree to have an Arbitration Board composed pursuant to subsection c(2)(a) below. The Chairman of the Arbitration Board shall be designated by agreement among the merger representatives or by the members of the Arbitration Board in the absence of such agreement.

        (a) In the alternative, the involved MECs may agree within ten (10) days of the PID to have an Arbitration Board composed of three persons, two of whom shall be non-voting ALPA members chosen within twenty (20) days of the PID from the Master List of Pilot Board Members and a third member and Chairman of the Board chosen within twenty (20) days of the PID from a list of Arbitrators approved by ALPA.

        (b) The primary role of non-voting Pilot Board Members is to provide assistance to the Arbitrator in achieving a fair and equitable integrated seniority list in accordance with this policy. The Arbitrator may utilize the services of the Pilot Board Members as determined by the Arbitrator in his discretion.

    (3) If the merger representatives are unable to agree on the Arbitrators (or an Arbitrator under subsection c(2)(a) above), they will alternately strike names (or a name) from the ALPA approved list until the list is reduced to the number of Arbitrators upon which they cannot agree. In the event a selected Arbitrator is unable to serve, the President shall retrace the strike procedure in reverse order until the vacancy has been filled.

        (a) In the event of a dispute over selection of an arbitrator in a merger between/among two or more airlines in Canada, the ALPA approved list of Arbitrators shall be made up of Canadian Arbitrators.

16

 *ADMINISTRATIVE MANUAL*

SECTION 45 – MERGER AND FRAGMENTATION POLICY

4/30/09

(4) The first meeting of the Arbitration Board shall be held no later than one hundred twenty (120) days following the PID.

(5) Hearing time before the Arbitration Board will be limited to fifteen (15) full hearing days. A full hearing day shall be nine hours, including a lunch break of up to ninety (90) minutes and reasonable convenience breaks. Hearings shall be open to Active members in good standing, unless closed by the Arbitration Board for cause.

(6) The merger representatives shall attempt to agree on ground rules for the hearing process, including ground rules for equitable allocation of hearing time. In the absence of such agreement, all ground rules shall be determined by the Arbitration Board. The Arbitration Board shall in any event have the final authority to establish such procedural and evidentiary rules as deemed appropriate.

(7) The merger representatives of the involved airlines shall be charged with the preparation of their contentions regarding the merger and their subsequent presentation before the Arbitration Board. Such contentions may be made orally or may be made in writing as the Arbitration Board shall deem advisable.

(8) In recognition of the provisions of Part 3A above and the value of full and frank communications with the membership on merger issues, the Arbitration Board is discouraged from admitting such communications from ALPA representatives into evidence or permitting the use of such communications in examining a witness to (i) prove or show an admission by the communicating representative(s) or pilot group (for example, that a particular result in the proceeding is likely or unlikely) or (ii) prove or show a particular fact (or facts) that can be proved by any other means.

(9) At any time during the arbitration process, the Chairman shall have the authority to resume mediation.

d.  Pilot Board Members

(1) The Executive Council shall select and maintain a current Master List of Pilot Board Members comprised of no more than the number of MECs and no less than fifteen (15) ALPA members who have consented to serve as members of a seniority integration Arbitration Board.

(2) The merger representatives from each pilot group shall select one non-voting Pilot Board Member from the most current Master List of Pilot Board Members. In the event a selected individual is unwilling or unable to serve as a Pilot Board Member, the merger representatives who selected him shall make another selection from the Master List.

(3) In the unlikely event that either or both pilot group's merger representatives refuse to select a Pilot Board Member, the resulting vacancy or vacancies shall be filled by the President based upon a secret ballot vote of the Executive Council.

(4) No Pilot Board Member shall be selected to serve as a member of an Arbitration Board involving his own pilot group.

17

Case 2:14-cv-01441-RTR   Filed 02/09/15   Page 17 of 27   Document 24-1

(5) Any pilot who is a merger representative in an announced merger shall be disqualified from selection as a member of any Arbitration Board.

(6) On or about January 1 of each year, the Vice President-Administration/Secretary shall cause to be sent to each member of ALPA's Master List of Pilot Board Members an inquiry as to current willingness and/or ability to serve as a Pilot Board Member should the individual be selected for such service by merger representatives involved in a merger dispute. At the same time, the Vice President-Administration/Secretary shall forward the current Master List of Pilot Board Members, as well as the roster of currently approved nominees for service, to all MEC Chairmen seeking their revalidation of current Master List members and nominees and soliciting new nominees for Master List service.

    (a) It is recommended that MEC Chairmen consider members who are aware they are under consideration for this position, express willingness to serve and have experience with negotiations, mediation, arbitration and/or seniority list integration.

(7) A report shall be made at a regular meeting of the Executive Council following such mailing outlining the results of the inquiries, following which the roster of nominees shall be brought up to date and any necessary appointments to the Master List made. Absent any response, current Pilot Board Members and nominees shall be considered revalidated.

(8) The Vice President-Administration/Secretary shall provide ALPA members serving on the Master List of Pilot Board Members with an orientation and training program.

e. Opinion and Award

(1) The Opinion and Award of the Arbitration Board shall be made and written in executive session and shall bear the signature of the three Arbitrators, unless the Arbitration Board is constituted under subsection c2(a) above in which case it shall bear the signature of the single Arbitrator (Chairman of the Arbitration Board). Such Opinion and Award shall be issued simultaneously and within fifty (50) days following the convening of said Arbitration Board unless extensions are agreed to by all parties to the proceeding, including the President. Participation in executive sessions shall be limited to Arbitration Board members only and the Arbitrators (or single Arbitrator of an Arbitration Board constituted under subsection c2(a) above) shall decide all issues.

(2) The Award of the Arbitration Board shall be final and binding on all parties to the arbitration and shall be defended by ALPA. The Award shall include any agreements reached at the mediation step. The Arbitration Board will include in its Award a provision retaining jurisdiction until all the provisions of the Award have been satisfied for the limited purpose of resolving disputes which may arise between the pilot groups with regard to the meaning or interpretation of the Award.

18


6.  Seniority Integration Timeline

| Process Implementation Date (PID) ↓ | Not Later Than (NLT) PID + 10 ↓ | NLT PID + 20 ↓ | NLT PID + 60 ↓ | NLT PID + 100 ↓ | NLT PID + 120 ↓ |
|---|---|---|---|---|---|
| • Communications and Education Plan initiated unless already under way | • Merger reps may opt for Arbitration Board including pilot board members rather than three Arbitrators | • Merger reps choose Arbitration Board members<br>• Complete verification process | • Employment data exchanged<br>• Initiate negotiations | • Initiate mediation | • Initiate arbitration<br>• Hearing limited to 15 days<br>• Arbitration Award within 50 days |

7.  Multiple Autonomous Operations

(a) It is the intent of this policy that in every case the process will continue until a merger of the MECs takes place, subject to extensions granted in accordance with this policy.

(b) In mergers where the carriers continue to operate as completely separate and independent entities, and where the employment interests of each pilot group are clearly distinguishable from those of the other pilot group or groups, and where there is reasonable certainty that the employment interests of one or more pilot group or groups are not jeopardized by doing so, the President may, with the unanimous consent of the MEC Chairmen involved, temporarily suspend the timetable.

(c) In the event any involved MEC Chairman or the President determines that the carriers are not in fact being operated as provided in subsection 2 above, and that as a consequence the employment interests of one or more pilot group or groups may be adversely impacted, the President will reinstitute the merger policy timetable.

**D.  IMPLEMENTATION OF INTEGRATED SENIORITY LIST**

1.  The integrated seniority list, together with applicable conditions and restrictions, will be presented to management and ALPA will use all reasonable means at its disposal to compel the company to accept and implement the integrated seniority list, together with applicable conditions and restrictions.

2.  The merger representatives shall remain in office, in the case of a negotiated or mediated agreement, until the provisions of that agreement have been satisfied, or in the case of arbitration, until the Arbitration Board relinquishes jurisdiction.

Case 2:14-cv-01441-RTR   Filed 02/09/15   Page 19 of 27   Document 24-1

3. Should a merger representative become unable or unwilling to continue in office once the merged MEC officers have been elected, the remaining merger representative will select his replacement from his respective pilot group. Such replacement shall have all the duties, responsibilities, and authority of his predecessor.

4. The merger representatives shall be empowered to resolve any and all disputes arising from the interpretations or implementation of either a negotiated/mediated agreement or arbitration award. The disputes shall be resolved by a majority vote of the merger representatives except where a pilot's actual position on the seniority list is concerned, in which case a unanimous vote will be required. All decisions reached by the merger representatives shall be final and binding and not subject to appeal. The decisions of the merger representatives shall be the position of ALPA with management.

5. When disputes arising under a negotiated or mediated agreement cannot be resolved by the merger representatives, such disputes shall be submitted to an arbitrator. The President shall, within thirty (30) days of notification of the existence of a dispute, provide the merger representatives a list of seven (7) arbitrators approved by ALPA from which the respective merger representatives will select an arbitrator by the alternate striking method.

6. When disputes arising under an arbitration award cannot be resolved by the merger representatives, such disputes shall be remanded to the Arbitration Board for resolution.

7. The arbitration award issued after proceedings under Part 3C 5 above shall be the position of ALPA with management.

8. The pre-merger MECs may by agreement, with approval of the President, establish a dispute resolution process for the resolution of disputes arising from interpretation or implementation of a negotiated/mediated agreement or arbitration award, which may include a Dispute Resolution Committee (DRC) and designated DRC members.

9. In the event that the two DRC members from either of the pre-merger pilot groups or all DRC members believe at some time in the future that the merged MEC is not providing them with flight pay loss and expenses, authorized releases or use of resources to adequately and properly perform their legitimate functions, and they have brought the matter to the attention of the merged MEC without receiving satisfaction, they shall then have access to the ALPA Executive Council and an opportunity to be heard in order to request that the Executive Council act accordingly under the circumstances.

10. Communications

    a. After the merged MEC has been established under ALPA Merger Policy, merger representatives and DRC members representing the interests of pre-merger pilot groups shall not meet or confer with management concerning administration of the integrated seniority list and related conditions and restrictions unless each pre-merger pilot group is represented in any such meeting or conference. If reasonable notice of time, place and subject matter has been provided by the party requesting such meeting or conference and one party fails to attend without cause, a meeting or conference may proceed in the absence of that party.

20

 *ADMINISTRATIVE MANUAL*

    b. A written summary of the substance of any communication occurring at any such meeting or conference with management shall be simultaneously copied to the merger representatives of the other pre-merger pilot group(s) and the MEC Chairman.

    c. This subsection shall be applicable to mergers in process, mergers that have been completed and to future mergers.

**E. MERGER OF LOCAL COUNCILS AND MECS**

   1. When a duplication of Local Councils exists at a domicile as the result of a merger, a single Local Council shall be established. The Vice President-Administration/Secretary shall conduct Local Council Officer elections for the combined Local Council within thirty (30) days after conclusion of the JCBA or the initial implementation of the integrated seniority list, whichever occurs later. Said elections shall be conducted as provided in Article III, Sections 7 and 8, of the Constitution and By-Laws, as implemented by this policy. Pending completion of said elections, the Vice President-Administration/Secretary shall call a meeting of each combined Local Council for the purpose of electing Interim Status Representatives and Temporary Council Officers. The Vice President-Administration/Secretary shall, in his discretion, decide the time and place for the meeting and whether to call such combined Local Council meeting prior to the meeting for nominations or to hold Interim Status Representative and Temporary Council Officer elections at the meeting called for nominations. The Vice President-Administration/Secretary, or his designee, shall chair such meeting until a Temporary Chairman has been elected.

    a. When nominating ballots are distributed, members of both pre-merger Local Councils will be advised of their right to nominate from among the pilots of the combined Local Council and all nominating ballots shall be returned to the Vice President-Administration/Secretary at the Home Office. The Vice President-Administration/Secretary will arrange for their security and for their being brought to the combined Local Council meeting for certification. The successful nominees will be certified at such meeting for placement on an election ballot for distribution to all members of the combined Local Council under the provisions of Article III, Section 8 of the Constitution and By-Laws.

   2. After any Local Council Interim Status Representative elections required by subsection E1 above and within forty-five (45) days following the conclusion of the JCBA or the initial implementation of the integrated seniority list, whichever occurs later, the President shall call an MEC meeting of the merged MEC for the purpose of electing MEC officers. Notwithstanding this requirement, MECs of merging airlines may, by agreement, request that the President call the MEC meeting of the merged MEC or the President in his discretion may call such meeting for the purpose of electing new MEC Officers prior to the consolidation of Local Councils as required above.

    a. The merged MEC will begin functioning as the single MEC for the merged pilot group at the commencement of the foregoing meeting.

    b. The President or his designee shall conduct such meeting and election. Subject to an agreement under subsection 2c below, the President shall establish procedures for such meeting and election.

Case 2:14-cv-01441-RTR   Filed 02/09/15   Page 21 of 27   Document 24-1


c. As required by Part 2C 3 above, the involved MECs are required to make an effort to negotiate and enter into an agreement to establish terms for merger of the MECs. Issues to be addressed by the MECs should include procedures for nomination and election of MEC officers, an initial MEC Policy Manual, the MEC committee structure, a transition plan for MEC finances and a Local Council membership affiliation policy. The President may call meetings of the involved MEC Chairmen with the President or his designee for the purpose of initiating such negotiations and facilitating an agreement. Any such agreement between the involved MECs shall be subject to approval by the President.

## F. FUNDING AND PAYMENT OF MERGER-RELATED EXPENSES

1. Flight pay loss, expenses and direct support are chargeable to the MEC account. A group of pilots who are being transferred under Carrier Fragmentation Policy will be treated in the same manner after identification of the number and identity of the transferring pilots and commencement of the seniority integration time table, under a budget to be approved by the Executive Council and subject to a merger assessment for spending overages.

2. All spending of any MEC involved in a merger will be reported to the Executive Council, which will determine those expenses required to be paid with merger assessment monies.

3. An MEC may at any time levy an assessment(s) and maintain a Merger Assessment Fund. Any such assessment shall be levied and administered in accordance with applicable provisions of the ALPA Constitution and By-Laws, ALPA Policy, including this Merger Policy and ALPA Accounting and Finance Policy, ALPA Administrative Manual, Section 60, and applicable MEC policies. Monies derived from an assessment must be recorded in a manner showing the amount paid by each pilot.

4. The payment of legal and consulting fees in a merger between an ALPA airline and a non-ALPA airline are a proper expense of the pilots involved in the merger and shall be charged either to the MEC account or paid through an assessment of the pilot group, as provided in subsections 1, 2 and 3 above.

5. ALPA shall not, under any circumstances, pay any legal and consulting fees incurred by pilot groups involved in merger activity between any two ALPA represented carriers. This policy also applies to any legal and consulting fees incurred to resolve a dispute between pre-merger pilot groups over interpretation or application of the terms of an existing seniority integration agreement.

   a. STATEMENT OF INTENT: It is the intent that no ALPA pilot group should approach a merger without proper representation. Further, in an ALPA airline to ALPA airline merger, ALPA Merger Policy provides a vehicle for proper pilot representation. It is of particular concern that there is the potential that a smaller or less financially able ALPA pilot groups could face a merger with a non-ALPA carrier without sufficient means to provide adequate representation for its membership. As provided by ALPA Finance Policy, nothing in this policy restricts the MEC Chairman of such a pilot group from petitioning the President for supplemental funding to allow proper representation throughout the merger process.

22

Case 2:14-cv-01441-RTR   Filed 02/09/15   Page 22 of 27   Document 24-1


6.  The use of a Merger Assessment Fund or Merger Dispute Fund for communications by merger representatives with their constituents, regarding matters within the scope of the merger representatives' responsibilities, is appropriate and authorized.

7.  Prior to merger of the MECs involved in a merger, each MEC shall consider the need for levying a standing assessment to provide for post-merger legal fees and expenses in connection with resolution of disputes which may arise from interpretation or implementation of a negotiated/mediated agreement or arbitration award, with knowledge that the post-merger MEC will not have authority to levy such an assessment.

## G.  DISPOSITION OF MERGER ASSESSMENT FUNDS

1.  If an MEC establishes a Merger Assessment Fund and, without consummating a merger, subsequently elects to liquidate the Fund, in whole or in part, the Fund will be reviewed by independent auditors under the direction of the Vice President-Finance/Treasurer and distributed as provided in this section. At the discretion of the Vice President-Finance/Treasurer, additional review procedures may be performed.

2.  A review of each Merger Assessment Fund shall be conducted within sixty (60) days after the conclusion of the JCBA or the initial implementation of the integrated seniority list, whichever occurs later. This review is to be conducted by the Office of the Vice President-Finance/Treasurer, and at the discretion of the Vice President-Finance/Treasurer, additional review procedures may be performed. The results of the review shall be reported to the Executive Council and the merged MEC.

3.  Except as provided in Part 4, Carrier Fragmentation Policy, monies remaining in the Merger Assessment Fund shall be transferred within ten (10) working days of the completion of the review, to the custody of the Vice President-Finance/Treasurer. Such Fund shall subsequently be known as the Merger Dispute Fund.

4.  Merger Dispute Fund Trustees

    a.  Each pre-merger MEC shall elect two Merger Dispute Fund trustees who will jointly authorize expenditures from that Fund. It is recommended that the trustees not be merger representatives. Should a trustee, once elected, become unable or unwilling to continue in that position once the merged MEC officers have been elected, the remaining trustee will select a replacement from his pre-merger pilot group.

    b.  Should both trustees, once elected, become unable or unwilling to continue in that position once the merged MEC officers have been elected, the merger representatives will select two replacements from their pre-merger pilot group.

5.  The Vice President-Finance/Treasurer will maintain custody of the Merger Dispute Fund for the effective period of the conditions and restrictions contained in the final merger document, except that the Fund may be terminated earlier by the mutual agreement of the majority of the respective merger representatives with the approval of the Vice President-Finance/Treasurer. The Vice President-Finance/Treasurer, upon the termination of the effective period of conditions and restrictions contained in the final merger document, shall contact the Merger Dispute Fund trustees and start the refund process.

Case 2:14-cv-01441-RTR   Filed 02/09/15   Page 23 of 27   Document 24-1


6. Upon termination of the Merger Assessment Fund or Merger Dispute Fund, distribution will be on a pro-rata basis to those pilots who contributed to the Fund unless the balance in the Fund (after paying expenses attributable to the Fund, including distribution expenses) drops below $50.00 U.S. or Canadian currency per covered pilot. In the event the pro-rata pilot share of the Fund drops below $50.00 U.S. or Canadian currency, the monies may, at the discretion of the Merger Dispute Fund trustees, be transferred to ALPA for the account of the successor merged MEC. If, after the pro-rata distribution has been made, any monies remain undistributed for any reason the Vice President-Finance/Treasurer will review the reasons and determine how long the monies should be held before they are turned over to the account of the successor merged MEC.

## PART 4 – CARRIER FRAGMENTATION POLICY

### A. INTERPRETATION OF CARRIER FRAGMENTATION POLICY

Issues as to interpretation of Carrier Fragmentation Policy shall be determined by the Executive Council.

### B. APPLICATION OF CARRIER FRAGMENTATION POLICY

Fragmentation policy shall apply if an acquiring ALPA carrier declares an intent to acquire assets of another ALPA carrier, and the acquiring carrier agrees to employ any of the other carrier's pilots in conjunction with the assets it acquires and to integrate transferring pilots in accordance with ALPA Merger Policy or an otherwise mutually satisfactory substitute process. In the event a carrier does not intend to employ and integrate transferring pilots in accordance with ALPA Merger Policy, or an otherwise mutually satisfactory substitute process, the President shall urge the acquiring carrier to do so.

### C. IDENTIFICATION OF PILOTS TO BE TRANSFERRED

Provided that Part 4B above is satisfied, absent a definitive determination by the carriers concerned of how many and which pilots will transfer, questions of number and identity, of the pilots to be involved in said move shall be determined by the merger representatives using negotiation, mediation, and arbitration if necessary, in accordance with the procedures in Part 3 above, or modifications thereof approved by the Executive Council, subject to negotiation and agreement with management.

### D. INTEGRATION TIMETABLE

The seniority integration process timetable shall be suspended until the carrier(s) have agreed to the number and identity of transferring pilots. The seniority integration process shall then commence using the timetables and negotiation, mediation and arbitration procedures delineated in Part 3C or other procedures approved by the Executive Council, subject to negotiation and agreement with management. For purposes of the seniority integration process, it is recommended that the merger representatives be selected from among the transferring pilots.

24

 *ADMINISTRATIVE MANUAL*

### E. ASSESSMENT

The Executive Board interprets Article IX, Section 7C, of the Constitution and By-Laws to affirm the assessment, on a nondiscriminatory basis, of only the affected pilots who are being transferred from the airline of the assessing MEC.

### F. DISPOSITION OF MERGER ASSESSMENT FUND

Monies in the Merger Assessment Fund of the MEC on the airline which transfers assets shall not be subject to Part 3F above except for those monies assessed from and for the benefit of the transferring pilots. Monies remaining in any separate Merger Assessment Fund assessed from and for the benefit of the transferring pilots shall be subject to Part 3F above except that the merger representatives shall designate the Merger Dispute Fund Trustees.

### PART 5 – REQUESTS TO ALPA FOR DATA AND INFORMATION

### A. DATA CATEGORIES

Requests to ALPA from authorized pilot representatives, whether subject to Part 2B 2 or 2B 3 above, for data and information will be governed by the following policies:

1. General Report Data - Data and reports already produced and generally disseminated within ALPA, both in hard copy and electronic format, will be made available. Included in this type of information is the Economic Library on the ALPA website. This Library contains all ALPA contracts and selected non-ALPA contracts as well as comparisons of various contract provisions. Any reports that have been generally disseminated within ALPA such as industry updates will also be made available.

2. Exchange Data - Proprietary ALPA information relating to a particular pilot group will be made available only with written approval by the MEC Chairmen for all involved airlines. Such approval is required before any of this data can be disseminated. Authorized representatives of all involved pilot groups will receive a full set of any such data.

3. Shared Data When Mutually Requested - Information jointly requested on behalf of the involved pilot groups by written request from the involved MEC Chairmen, or their designees, if available, will be produced and distributed to the designated parties.

4. Shared Data When NOT Mutually Requested - Information, including that from public sources, such as DOT Form 41 data or SEC filings, requested on behalf of one involved pilot group but not by the other involved pilot group(s) when furnished, will be provided to the authorized representatives of all involved pilot groups.

5. Exclusive Use Data – Information provided to ALPA staff under confidentiality agreements with an airline management, including financial results, business plans, financial projections, business strategies and analyses, and any analyses prepared by ALPA staff using this confidential data, which is requested on behalf of one involved pilot group for its own exclusive use will not be provided by ALPA.

25



## INDEX

Actions Taken Upon Determination of Merger ..................................................................................7
Application of Carrier Fragmentation Policy ...............................................................................24
Assessment......................................................................................................................................25
Communications Upon Knowledge of Probable Transaction and Merger ......................................7
Data Categories ..............................................................................................................................25
Disposition of Merger Assessment Fund .......................................................................................25
Exchange Data................................................................................................................................25
Exclusive Use Data.........................................................................................................................25
Extensions .................................................................................................................................4, 7
Funding and Payment of Merger-Related Expenses.......................................................................22
General Report Data .......................................................................................................................25
Identification of Pilots to Be Transferred .......................................................................................24
Integrated Seniority List, Implementation of..................................................................................19
Integration Timetable .....................................................................................................................24
Interpretation of Carrier Fragmentation Policy...............................................................................24
Interpretation of Merger Policy ........................................................................................................7
Joint Negotiating Committee (JNC).................................................................................................8
Joint Negotiations ............................................................................................................................8
Merger Agreements ..........................................................................................................................4
Merger Agreements Between or Among MECs................................................................................5
Merger Assessment Funds, Disposition of.....................................................................................23
Merger of Local Councils and MECs .............................................................................................21
Merger Policy Changes.....................................................................................................................4
Merger Policy, Application and Scope .............................................................................................4
Merger Policy, Application and Scope of .........................................................................................5
Merger Policy, Interpretation of .......................................................................................................4
Seniority List Integration ...............................................................................................................11
Shared Data, Mutually Requested ..................................................................................................25
Shared Data, Not Mutually Requested ...........................................................................................25

Case 2:14-cv-01441-RTR   Filed 02/09/15   Page 26 of 27   Document 24-1