

Search the Next-Generation
EDGAR System

**U.S. Securities and Exchange Commission**

## Filing Detail

SEC Home » Search the Next-Generation EDGAR System » Company Search » *Current Page*

---

| *Form 8-K* - Current report | | SEC Accession No. 0001159154-13-000084 |
|---|---|---|

| **Filing Date** | **Period of Report** | **Items** |
|---|---|---|
| 2013-12-09 | 2013-12-03 | Item 2.01: Completion of Acquisition or Disposition of Assets |
| **Accepted** | **Filing Date Changed** | Item 5.02: Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers: Compensatory Arrangements of Certain Officers |
| 2013-12-09 17:12:23 | 2013-12-09 | |
| **Documents** | | |
| 5 | | Item 9.01: Financial Statements and Exhibits |

---

**Document Format Files**

| Seq | Description | Document | Type | Size |
|---|---|---|---|---|
| 1 | 8-K | dispositionoffrontier.htm | 8-K | 25996 |
| 2 | STOCK PURCHASE AGREEMENT | falcon-stockpurchaseagreem.htm | EX-2.1 | 885652 |
| 3 | AIRBUS ASSIGNMENT AGREEMENT | frontier-assignmentandassu.htm | EX-2.2 | 52267 |
| 4 | PRESS RELEASE | pressreleasesaleoffrontier.htm | EX-99.1 | 5379 |
| 5 | PRO FORMA FINANCIALS | proformafinancials.htm | EX-99.2 | 300864 |
| | Complete submission text file | 0001159154-13-000084.txt | | 1271473 |

---

### REPUBLIC AIRWAYS HOLDINGS INC (Filer) CIK: 0001159154 (see all company filings)

IRS No.: **061449146** | State of Incorp.: **DE** | Fiscal Year End: **1231**
Type: **8-K** | Act: **34** | File No.: **000-49697** | Film No.: **131266282**
SIC: **4512** Air Transportation, Scheduled
Assistant Director 5

**Business Address**
*8909 PURDUE ROAD*
*SUITE 300*
*INDIANAPOLIS IN*
*46268*
*317-484-6000*

**Mailing Address**
*8909 PURDUE ROAD*
*SUITE 300*
*INDIANAPOLIS IN*
*46268*

EX-2.1 2 falcon-stockpurchaseagreem.htm STOCK PURCHASE AGREEMENT

**Portions of this Exhibit 2.1 have been omitted based upon a request for confidential treatment. This Exhibit 2.1, including the non-public information, has been filed separately with the Securities and Exchange Commission. "[*]" designates portions of this document that have been redacted pursuant to the request for confidential treatment.**

*Execution Copy*

# STOCK PURCHASE AGREEMENT

dated as of September 30, 2013

by and between

Republic Airways Holdings Inc., as Seller,

and

Falcon Acquisition Group, Inc., as Buyer

62587121_2
SV\1145690.24

TABLE OF CONTENTS

| | | |
|---|---|---|
| ARTICLE I. | PURCHASE AND SALE OF SHARES | 1 |
| 1.1. | Purchase and Sale | 1 |
| 1.2. | Share Purchase Price Adjustment | 1 |
| 1.3. | Closing | 5 |
| 1.4. | Seller Deliveries at the Closing | 5 |
| 1.5. | Buyer Deliveries at the Closing | 7 |
| 1.6. | Withholding Rights | 8 |
| ARTICLE II. | REPRESENTATIONS AND WARRANTIES OF SELLER AS TO ITSELF | 8 |
| 2.1. | Incorporation | 8 |
| 2.2. | Authority | 8 |
| 2.3. | Ownership of Shares; Title | 8 |
| 2.4. | No Conflict | 8 |
| 2.5. | Governmental Authorizations | 9 |
| 2.6. | Brokers | 9 |
| ARTICLE III. | REPRESENTATIONS AND WARRANTIES OF SELLER WITH RESPECT TO THE COMPANY | 9 |
| 3.1. | Organization and Good Standing of the Company | 9 |
| 3.2. | Capitalization; Authorization of Shares; Subsidiaries | 10 |
| 3.3. | Authority; No Conflict | 11 |
| 3.4. | Financial Statements; Undisclosed Liabilities; Corporate Records | 11 |
| 3.5. | Absence of Certain Changes or Events | 13 |
| 3.6. | Compliance with Law; Litigation; Injunctions | 13 |
| 3.7. | Contracts; Defaults | 14 |
| 3.8. | Employment-Related Matters | 16 |
| 3.9. | Employee Benefit Plans | 17 |
| 3.10. | Taxes | 20 |
| 3.11. | Permits | 21 |
| 3.12. | Real Property | 21 |
| 3.13. | Title; Condition of Assets | 22 |
| 3.14. | Intellectual Property and IT Assets | 22 |
| 3.15. | Insurance | 24 |
| 3.16. | Aircraft | 24 |
| 3.17. | Airline Slots | 25 |
| 3.18. | Citizenship; Air Carrier | 26 |
| 3.19. | Affiliated Transactions | 26 |
| 3.20. | Environmental Matters | 26 |
| 3.21. | Airports | 26 |
| 3.22. | Privacy | 27 |
| ARTICLE IV. | REPRESENTATIONS AND WARRANTIES OF BUYER | 27 |
| 4.1. | Incorporation; Ownership | 27 |
| 4.2. | Authority | 28 |

4.3.          No Conflict                                                    28

- i -

62587121_2

SV\1145690.24

TABLE OF CONTENTS
(Continued)

| | | Page |
|---|---|---|
| 4.4. | Governmental Authorizations | 28 |
| 4.5. | Buyer Financing; No Other Liabilities | 28 |
| 4.6. | Compliance with Law; Litigation; Injunctions | 28 |
| 4.7. | Experience; Acquisition of Shares for Investment | 29 |
| 4.8. | Citizenship | 29 |
| 4.9. | Brokers | 29 |
| 4.10. | Solvency | 29 |
| ARTICLE V. | COVENANTS | 30 |
| 5.1. | Access; Confidentiality | 30 |
| 5.2. | Consummation of Agreement | 31 |
| 5.3. | Filings and Authorizations | 31 |
| 5.4. | Notice of Proceedings; Agreement to Defend | 32 |
| 5.5. | Consents; Releases | 32 |
| 5.6. | Conduct of Business of the Company and its Subsidiaries Prior to the Closing | 33 |
| 5.7. | LaGuardia Airport Slots | 37 |
| 5.8. | Employee Transition Matters | 38 |
| 5.9. | No Solicitation | 38 |
| 5.10. | Intentionally Omitted | 39 |
| 5.11. | Notification of Certain Matters | 39 |
| 5.12. | Affiliate Transactions | 39 |
| 5.13. | Financing | 39 |
| 5.14. | Engine Matter | 40 |
| ARTICLE VI. | CONDITIONS | 40 |
| 6.1. | Conditions to Each Party's Obligation to Effect the Closing | 40 |
| 6.2. | Additional Conditions to Obligation of Seller to Effect the Closing | 40 |
| 6.3. | Additional Conditions to Obligation of Buyer to Effect the Transactions | 41 |
| ARTICLE VII. | TAX MATTERS | 42 |
| 7.1. | Tax Covenant | 42 |
| 7.2. | Preparation and Filing of Pre-Closing Tax Returns and Claims for Refund | 43 |
| 7.3. | Straddle Tax Periods | 44 |
| 7.4. | Indemnification by Seller | 45 |
| 7.5. | Contests | 45 |
| 7.6. | Other Matters | 46 |
| 7.7. | Section 338(h)(10) Election | 46 |
| 7.8. | Allocation of Share Purchase Price | 47 |
| 7.9. | Cooperation | 47 |

| 7.10. | Transfer Taxes | 48 |
| ARTICLE VIII. | SURVIVAL; INDEMNIFICATION | 48 |
| 8.1. | Survival | 48 |
| 8.2. | Indemnification | 49 |
| ARTICLE IX. | TERMINATION | 57 |
| 9.1. | Termination of Agreement on or Prior to Closing | 57 |

- ii -

62587121_2

SV\1145690.24

## TABLE OF CONTENTS
(Continued)

| | | Page |
|---|---|---|
| 9.2. | Liabilities Upon Termination | 57 |
| 9.3. | Special Termination Right Related to Certain Closing Conditions | 58 |
| ARTICLE X. | MISCELLANEOUS | 58 |
| 10.1. | Exclusivity of Representations | 58 |
| 10.2. | Expenses | 59 |
| 10.3. | Further Assurances | 59 |
| 10.4. | Notices | 59 |
| 10.5. | Assignment | 60 |
| 10.6. | Construction | 60 |
| 10.7. | Governing Law | 61 |
| 10.8. | Waiver of Provisions | 61 |
| 10.9. | Counterparts | 61 |
| 10.10. | Entire Agreement | 62 |
| 10.11. | Disclosure Schedules | 62 |
| 10.12. | Submission to Jurisdiction; Waivers | 62 |
| 10.13. | No Third Party Beneficiary | 63 |
| 10.14. | No Presumption | 63 |
| 10.15. | Severability | 63 |
| 10.16. | Access to Books and Records | 64 |
| 10.17. | Publicity | 65 |
| 10.18. | Specific Performance | 66 |
| | | |
| Exhibit A | Defined Terms | |
| Exhibit B | Form of Mutual Releases | |
| Exhibit C | Form of E190 Agreement | |
| Exhibit D | Form of Non-Competition and Non-Solicitation Agreement | |
| Exhibit E | Form of Transition Services Agreement | |
| Exhibit F | Allocation Principles | |

- iii -

# STOCK PURCHASE AGREEMENT

STOCK PURCHASE AGREEMENT (together with the Schedules and Exhibits attached hereto and as the same may be amended, supplemented or modified in accordance with the terms hereof, this "**Agreement**"), dated as of September 30, 2013, by and between Republic Airways Holdings Inc., a Delaware corporation ("**Seller**"), and Falcon Acquisition Group, Inc., a Delaware corporation ("**Buyer**").

WHEREAS, Seller owns 1,000 shares (the "**Shares**") of common stock, par value $.0001 per share (the "**Common Stock**"), of Frontier Airlines Holdings, Inc., a Delaware corporation (the "**Company**"), constituting all of the shares of Common Stock issued and outstanding as of the date hereof;

WHEREAS, the Company owns all of the issued and outstanding capital stock of Frontier Airlines, Inc., a Colorado corporation (the "**Airline**");

WHEREAS, Buyer desires to purchase the Shares from Seller, and Seller desires to sell the Shares to Buyer, all on the terms and conditions hereinafter set forth; and

WHEREAS, the definitions of certain defined terms used herein are set forth in Exhibit A hereto.

Accordingly, in consideration of the premises and of the respective covenants and agreements contained herein, the parties hereto hereby agree as follows:

ARTICLE I.

PURCHASE AND SALE OF SHARES

1.1.  Purchase and Sale.

(a)  Upon the terms and subject to the satisfaction or waiver of the conditions set forth in this Agreement, Seller shall sell, transfer, assign and deliver to Buyer, and Buyer shall purchase from Seller, the Shares for an aggregate purchase price equal to thirty six million dollars ($36,000,000) (the "**Share Purchase Price**") (as adjusted pursuant to the terms hereof).

(b)  The Share Purchase Price shall be (i) increased or reduced, respectively, on a dollar-for-dollar basis by (A) the amount, if any, by which the Final Closing Net Working Capital Amount is more or less than the Minimum Net Working Capital Amount, and (B) the amount, if any, by which the Final Closing Unrestricted Cash Amount is more or less than the Minimum Unrestricted Cash Amount, and (ii) reduced by (A) the amount, if any, by which the Final Closing Debt Amount is more than the Target Debt Amount, and (B) the amount of the Equity Obligations Adjustment (as defined in Schedule A hereto). At the Closing, Buyer shall pay to Seller an amount equal to the Estimated Adjusted Share Purchase Price (as determined in accordance with Section 1.2(b)). After the consummation of the Closing, the Share Purchase Price shall be

further adjusted as set forth in <u>Section 1.2</u>. <u>Schedule B</u> hereto sets forth an illustrative example of the calculation of the adjusted Share Purchase Price.

- 1 -

62587121_2

SV\1145690.24

1.2.  Share Purchase Price Adjustment.

(a)  On or prior to the fifth (5th) Business Day prior to the Closing Date (provided, that if the Closing Date has not been set prior to such fifth (5th) Business Day, such period shall be shortened to the extent necessary (but in no event later than the third (3rd) Business Day prior to the Closing Date unless otherwise agreed by Buyer in writing) to allow the Closing to occur on the applicable date determined under Section 1.3), (i) Seller shall, and shall cause the Company and its Subsidiaries to, determine in good faith the Estimated Closing Unrestricted Cash Amount, the Estimated Closing Net Working Capital Amount and the Estimated Closing Debt Amount (collectively, the "**Estimated Closing Amounts**") and (ii) Seller shall deliver to Buyer (x) a certificate duly executed by the Company's Chief Financial Officer on behalf of the Company (the "**Preliminary Statement**") setting forth in reasonable detail the calculation by Seller of the Estimated Closing Amounts and the computations used in connection therewith, together with reasonable supporting documentation used in the preparation thereof (provided that it is acknowledged and agreed that, notwithstanding anything to the contrary in this Agreement, neither Seller nor such certifying officer shall have any liability whatsoever as a result of, arising out of, relating to, or in connection with such certificate (or the forecasted balance sheet referred to in the following clause (y)) other than an adjustment to the Share Purchase Price (if applicable) in accordance with this Section 1.2), and (y) a forecasted consolidated balance sheet of the Company as of the close of business on the applicable Adjustment Measurement Date prepared in accordance with the Company Accounting Methodology. Buyer shall review the Preliminary Statement in good faith and shall be provided with a meaningful opportunity to discuss the Preliminary Statement with Seller. Within three (3) Business Days after receipt of the Preliminary Statement (provided, that if the first parenthetical in the preceding sentence applies, such period shall be shortened to the extent necessary (but in no event earlier than two (2) Business Days after receipt of the Preliminary Statement unless otherwise agreed by Buyer in writing) to allow the Closing to occur on the applicable date determined under Section 1.3), Buyer shall notify Seller in writing whether Buyer consents to the Estimated Closing Amounts included in the Preliminary Statement, which consent shall not be unreasonably withheld, conditioned or delayed; and in the event that Buyer does not consent to all of the Estimated Closing Amounts, such notice (the "**Buyer Disagreement Notice**") shall include the amounts that Buyer believes in good faith to be the correct Estimated Closing Amounts and shall set forth in reasonable detail the basis therefor. If the Buyer Disagreement Notice disputes less than all of the Estimated Closing Amounts, then the Estimated Closing Amounts which are not disputed in the Buyer Disagreement Notice shall be used to determine the Estimated Adjusted Share Purchase Price.

(b)  If Buyer consents to the Estimated Closing Amounts as provided in Section 1.2(a), or if the Buyer Disagreement Notice is not received by Seller within the three (3) Business Day (or, if applicable, shorter) period referred to therein, then the Estimated Closing Amounts as included in the Preliminary Statement shall be used in order to determine the Estimated Adjusted Share Purchase Price. If the Buyer Disagreement Notice is received by Seller within such three (3) Business Day (or, if applicable, shorter) period, then: (i) in the event that the Buyer Disagreement Notice disputes the Estimated Closing Unrestricted Cash

Amount as included in the Preliminary Statement, the Estimated Closing Unrestricted Cash Amount used in order to determine the Estimated Adjusted Share Purchase Price shall equal the average of (x) the Estimated Closing Unrestricted Cash Amount as included in the Preliminary Statement and (y) the Estimated Closing Unrestricted Cash Amount as included in the Buyer Disagreement Notice, (ii) in the

- 2 -

62587121_2

SV\1145690.24

event that the Buyer Disagreement Notice disputes the Estimated Closing Working Capital Amount as included in the Preliminary Statement, the Estimated Closing Working Capital Amount used in order to determine the Estimated Adjusted Share Purchase Price shall equal the average of (x) the Estimated Closing Working Capital Amount as included in the Preliminary Statement and (y) the Estimated Closing Working Capital Amount as included in the Buyer Disagreement Notice, and (iii) in the event that the Buyer Disagreement Notice disputes the Estimated Closing Debt Amount as included in the Preliminary Statement, the Estimated Closing Debt Amount used in order to determine the Estimated Adjusted Share Purchase Price shall equal the average of (x) the Estimated Closing Debt Amount as included in the Preliminary Statement and (y) the Estimated Closing Debt Amount as included in the Buyer Disagreement Notice. For purposes of the Closing, the Share Purchase Price shall be adjusted in accordance with the first sentence of Section 1.1(b) as if the Estimated Closing Amounts set forth on the Preliminary Statement (or, in the event of a timely Buyer Disagreement Notice, determined in accordance with the preceding sentence of this Section 1.2(b)) were the actual Final Closing Amounts (such Share Purchase Price as adjusted in accordance with the first sentence of Section 1.1(b), including Section 1.1(b)(ii)(B), the "**Estimated Adjusted Share Purchase Price**").

(c) As promptly as reasonably practicable after the Closing Date, but in no event later than sixty (60) days thereafter, Buyer shall prepare in good faith and deliver to Seller (i) a certificate duly executed by Buyer's Chief Financial Officer on behalf of Buyer (the "**Buyer Statement**") setting forth in reasonable detail Buyer's respective calculations of the Closing Unrestricted Cash Amount, the Closing Net Working Capital Amount and the Closing Debt Amount (collectively, the "**Closing Amounts**"), together with reasonable supporting documentation used in the preparation thereof (provided that it is acknowledged and agreed that, notwithstanding anything to the contrary in this Agreement, neither Buyer nor such certifying officer shall have any liability whatsoever as a result of, arising out of, relating to, or in connection with such certificate (or the balance sheet referred to in the following clause (ii)) other than an adjustment to the Share Purchase Price (if applicable) in accordance with this Section 1.2), and (ii) an unaudited consolidated balance sheet of the Company as of the close of business on the applicable Adjustment Measurement Date prepared in accordance with the Company Accounting Methodology.

(i) Subject to Section 10.16(b), during the period commencing on the Closing Date and prior to Seller's receipt of the Buyer Statement, Seller shall cause any independent accountants employed or engaged by Seller or its Affiliates in connection with the preparation of the Preliminary Statement to give Buyer, the Company and their respective Representatives prompt and reasonable access (upon reasonable notice and during normal business hours) to any computations and workpapers used in the preparation of the Preliminary Statement (subject to the execution of any customary access letters that such accountants may require in connection with the review of such workpapers) solely to assist them in Buyer's review of the Preliminary Statement. Seller and its Representatives shall give Buyer and its Representatives access to the personnel, books and records of Seller and its Subsidiaries relating to the Company and its Subsidiaries in accordance with Section 10.16 to assist them in Buyer's review of the Preliminary Statement and Buyer's preparation of the Buyer Statement.

- 3 -

62587121_2

SV\1145690.24

(ii) Subject to <u>Section 10.16(b)</u>, during the period commencing on Seller's receipt of the Buyer Statement from Buyer and ending on the earlier of (x) thirty (30) days following receipt of the Buyer Statement and (y) Buyer's receipt of the Seller Dispute Notice (if any), if Buyer employs or engages a firm of independent accountants in connection with the preparation of the Buyer Statement, Buyer shall cause such independent accountants to give Seller and its Representatives prompt and reasonable access (upon reasonable notice and during normal business hours) to any computations and workpapers used in the preparation of the Buyer Statement (subject to the execution of any customary access letters that such accountants may require in connection with the review of such workpapers). Buyer and its Representatives shall give Seller and its Representatives prompt access (upon reasonable notice and during normal business hours) to the personnel, books and records of the Company and its Subsidiaries in accordance with <u>Section 10.16</u> to assist them in Seller's review of the Buyer Statement.

(iii) As promptly as reasonably practicable after receiving the Buyer Statement, but in no event later than thirty (30) days thereafter, Seller shall notify Buyer in writing (the "**Seller Dispute Notice**") if in good faith Seller disagrees with Buyer's calculation of any or all of the Closing Amounts as set forth in the Buyer Statement (the amount or amounts in dispute, collectively, the "**Disputed Amount**"), which notice shall set forth in reasonable detail the basis for such disagreement. If the Seller Dispute Notice disputes less than all of the Closing Amounts set forth in the Buyer Statement, then the Closing Amounts set forth in the Buyer Statement which are not disputed in the Seller Dispute Notice shall be final and binding upon the parties hereto. If no Seller Dispute Notice is received by Buyer within such thirty (30)-day period, Buyer's respective calculations of the Closing Amounts as set forth in the Buyer Statement shall be final and binding upon the parties hereto.

(d) Upon receipt by Buyer of the Seller Dispute Notice, Seller and Buyer shall negotiate in good faith to resolve any disagreement set forth in the Seller Dispute Notice. Seller and its Representatives shall give Buyer and its Representatives access to the personnel, books and records of Seller and its Subsidiaries in accordance with <u>Section 10.16</u> to assist them in Buyer's review of the Seller Dispute Notice. To the extent that Buyer and Seller are unable to resolve any disagreement within thirty (30) days after receipt by Buyer of the Seller Dispute Notice, Buyer and Seller shall promptly engage an internationally recognized independent accounting firm which is mutually acceptable to Buyer and Seller (the "**Accounting Firm**"), and shall submit their dispute to the Accounting Firm for a binding resolution. Except as specified in the following sentence, the fees and expenses of the Accounting Firm in connection with the Accounting Firm's determination of the Disputed Amount pursuant to this <u>Section 1.2</u> shall be borne (and paid) by Seller and Buyer in proportion to the amount by which their respective determinations of the items in dispute differed from the amount determined by the Accounting Firm. The fees and expenses of Buyer's independent auditors (if any), attorneys (if any) or any other advisors incurred in connection with the issuance of the Buyer Statement shall be borne by Buyer, and the fees and expenses of the independent auditors (if any), attorneys (if

any) or any other advisors of Seller incurred in connection with their review of the Buyer Statement shall be borne by Seller.

- 4 -

62587121_2

SV\1145690.24

(e)  Not later than thirty (30) days after the engagement of the Accounting Firm (as evidenced by its written acceptance by facsimile or otherwise to the parties), unless other procedures are agreed upon at such time, Seller and Buyer shall submit simultaneous briefs to the Accounting Firm (with a copy to the other party) setting forth their respective positions regarding the issues in dispute, and not later than thirty (30) days after the submission of such briefs, Seller and Buyer shall submit simultaneous reply briefs (with a copy to the other party). If an additional briefing, a hearing or other information is required by the Accounting Firm, the Accounting Firm shall give notice thereof to the parties as soon as practicable before the expiration of such thirty (30)-day period, and the parties shall promptly respond with a view to minimizing any delay in the decision date. Seller and Buyer shall instruct the Accounting Firm to render its decision resolving the dispute within thirty (30) days after submission of the reply briefs or, in the event additional briefing, a hearing or other information is required, within thirty (30) days after the completion of such additional briefing, the completion of such hearing, or the submission of such additional information, as the case may be, but in no event more than sixty (60) days after submission of the reply briefs (such applicable period, the "**Decision Period**"). Seller and Buyer shall cause the Accounting Firm to deliver a written report to each of Seller and Buyer setting forth its determination of the amount or amounts in dispute, which shall be final and binding upon the parties.

(i)  In resolving any disputed item, the Accounting Firm (x) shall determine the Closing Unrestricted Cash Amount, Closing Net Working Capital Amount and Closing Debt Amount in accordance with the respective definitions thereof, (y) shall limit its review to matters still in dispute as specifically set forth in the Seller Dispute Notice (and only to the extent such matters are still in dispute) and (z) shall act as an expert and not as an arbitrator.

(ii)  Notwithstanding Section 1.2(e)(i), the determination of any item that is a component of the Disputed Amount cannot be in excess of, or less than, the greatest or lowest value, respectively, claimed for any particular item in the Buyer Statement or the Seller Dispute Notice.

(f)  Seller and Buyer agree that judgment may be entered upon the determination of the Accounting Firm in any court having jurisdiction over the party against which such determination is to be enforced. The Closing Unrestricted Cash Amount, the Closing Net Working Capital Amount and the Closing Debt Amount as agreed upon by Seller and Buyer, as deemed agreed upon pursuant to the last sentence of Section 1.2(c)(iii), or as determined by the Accounting Firm in accordance with Sections 1.2(d) and 1.2(e), are referred to herein as the "**Final Closing Unrestricted Cash Amount**", the "**Final Closing Net Working Capital Amount**", and the "**Final Closing Debt Amount**", respectively, and collectively as the "**Final Closing Amounts**".

(g)  To the extent that the Share Purchase Price as adjusted in accordance with the first sentence of Section 1.1(b) using the Final Closing Amounts determined in accordance with this Section 1.2 is less than the Estimated Adjusted Share Purchase Price paid by Buyer at Closing, Seller shall pay to Buyer the amount of such shortfall. Such payment shall be made by Seller within five (5) Business Days after the

determination of all Final Closing Amounts become final and binding on the parties hereto by wire transfer in immediately available funds to a bank account designated by Buyer.

- 5 -

62587121_2

SV\1145690.24

(h) To the extent that the Share Purchase Price as adjusted in accordance with the first sentence of <u>Section 1.1(b)</u> using the Final Closing Amounts determined in accordance with this <u>Section 1.2</u> is greater than the Estimated Adjusted Share Purchase Price paid by Buyer at Closing, Buyer shall pay to Seller the amount of such excess. Such payment shall be made by Buyer within five (5) Business Days after the determination of all Final Closing Amounts become final and binding on the parties hereto by wire transfer in immediately available funds to a bank account designated by Seller.

(i) Any payment required to be made under this <u>Section 1.2</u> shall be deemed an adjustment to the Share Purchase Price.

1.3. <u>Closing.</u> Unless Seller and Buyer shall agree in writing upon a different location, time or date, the closing of the Transactions (the "**Closing**") shall take place at the offices of Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004, at 12:00 P.M. (local time), on a date determined in accordance with the proviso below, after the satisfaction or waiver of the last of the conditions required to be satisfied or waived pursuant to Article VI of this Agreement (other than those requiring the delivery of a certificate or other document, or the taking of other action, at the Closing), but shall be no later than the End Date (subject to <u>Section 9.1(b)(i)</u>); <u>provided</u>, <u>however</u>, that (i) if the conditions referred to above are satisfied or waived before the fifteenth (15th) day of a month, then the Closing shall take place on the date that is two (2) Business Days thereafter (<u>provided</u> that the conditions required to be satisfied or waived pursuant to Article VI of this Agreement (other than those requiring the delivery of a certificate or other document, or the taking of other action, at the Closing) remain satisfied as of such time), and (ii) if the conditions referred to above are satisfied or waived on or after the fifteenth (15th) day of a month, then the Closing shall be deferred until the first Business Day of the immediately following month (<u>provided</u>, that the conditions required to be satisfied or waived pursuant to Article VI of this Agreement (other than those requiring the delivery of a certificate or other document, or the taking of other action, at the Closing) remain satisfied as of such time) (such a deferred Closing, a "**Month-End Closing**"). The term "**Closing Date**" means the date on which the Closing occurs. The parties shall confer at least semi-monthly to estimate the anticipated Closing Date.

1.4. <u>Seller Deliveries at the Closing</u>. Subject to the conditions set forth in this Agreement, at the Closing, Seller shall deliver or cause to be delivered to Buyer:

(a) an original stock certificate representing all of the Shares, accompanied by a stock power duly executed in blank, together with (i) evidence reasonably satisfactory to Buyer of the transfer of the Shares to Buyer in the Company's books and records, and (ii) an original stock certificate for the Airline;

(b) the E190 Agreement, duly executed by Seller, the Airline, the Company and Republic Airline;

(c) the Transition Services Agreement, duly executed by Seller and the Airline;

(d) the NEO Assignment Agreements (including the consents thereto referred to in <u>Section 6.1(c)</u> and confirmation by each of Airbus S.A.S. and CFM International, Inc. of Seller's payment

- 6 -

62587121_2

SV\1145690.24

of the pre-delivery deposits described in Section 1.5), duly executed by Seller, the Company and the respective other parties thereto;

(e)   the Standalone Commercial Agreements, duly executed by the Airline and the respective other parties thereto;

(f)   the Non-Competition and Non-Solicitation Agreement, duly executed by Seller and the Company;

(g)   (i) a mutual release, dated as of the Closing Date, duly executed by Seller, for itself and on behalf of its Subsidiaries (other than the Company and its Subsidiaries) on the one hand, and the Company and each of its Subsidiaries, on the other hand, for the benefit of the other(s), in the form attached hereto as Exhibit B-1, and (ii) mutual releases, dated as of the Closing Date, duly executed by the Company and each of its Subsidiaries, as applicable, on the one hand, and each of the members of the board of directors and the officers of the Company and its Subsidiaries immediately prior to the Closing listed on Section 1.4(g) of the Seller Disclosure Schedule, on the other hand, for the benefit of the other(s), in each case in the form attached hereto as Exhibit B-2;

(h)   duly executed resignations of (i) the directors of the Company and its Subsidiaries listed on Section 1.4(g) of the Seller Disclosure Schedule from the respective board of directors of the Company and its Subsidiaries and (ii) the officers of the Company and its Subsidiaries listed on Section 1.4(g) of the Seller Disclosure Schedule from the positions listed thereon, in each case effective as of the Closing;

(i)   all necessary forms and certificates complying with applicable Law, duly executed and acknowledged, certifying that the Transactions are exempt from withholding under Section 1445 of the Code;

(j)   an executed original of the Section 338(h)(10) Election Forms;

(k)   the certificate called for by Section 6.3(c), duly executed on behalf of Seller;

(l)   copies of the Guarantee Releases, duly executed by Seller (or its applicable Affiliate) and the respective other parties thereto;

(m)   one or more payoff letters, duly executed by the applicable lenders, with respect to Debt of the Company or its Subsidiaries set forth on Section 1.4(m) of the Seller Disclosure Schedule, accompanied by UCC termination statements, releases and any other documentation reasonably requested by Buyer to evidence the satisfaction in full of such Debt, in each case, in form and substance reasonably satisfactory to Buyer;

(n)   copies of the other standalone commercial agreements (or amendments to agreements currently in effect) referred to in <u>Section 6.3(g)</u>, duly executed by Seller (or its applicable Affiliate) and the Airline;

- 7 -

62587121_2

SV\1145690.24

(o)   copies of the written consents referred to in Section 6.3(h);

(p)   the AFA Amendment, duly executed by the Airline and the AFA and ratified by the membership of the AFA;

(q)   the Omnibus Amendments, duly executed by the Airline and the respective other parties thereto; and

(r)   all other documents which are expressly required pursuant to this Agreement to be delivered by Seller to Buyer at the Closing.

Notwithstanding anything to the contrary herein and without limitation of Buyer's rights under this Section 1.4 or Article VI of this Agreement, if, and to the extent that, Buyer waives Seller's obligation to deliver or cause to be delivered to Buyer any of the documents or agreements set forth in this Section 1.4 to be executed or otherwise provided by any Person other than Seller, the Company or any of their respective Subsidiaries as a condition to Closing in accordance with Section 6.3, Seller's failure to deliver or cause to be delivered to Buyer any such document or agreement shall not in and of itself be deemed to be a breach of Seller's covenants under this Section 1.4 to the extent of such waiver.

1.5.   Buyer Deliveries at the Closing. Subject to the conditions set forth in this Agreement, at the Closing, Buyer shall:

(a)   accept and purchase the Shares from Seller and pay and deliver to Seller an amount equal to the Estimated Adjusted Share Purchase Price by wire transfer of immediately available funds to a bank account which is specified in writing by Seller at least two (2) Business Days prior to the Closing Date;

(b)   in connection with entry into the NEO Assignment Agreements at the Closing, pay or cause to be paid to Seller on behalf of the Company (provided, that the Company may make such payment to the extent legally permitted; and provided, further, that, notwithstanding anything to the contrary in this Agreement, any such payment by the Company shall not be factored into the calculation of the adjustment to the Share Purchase Price in any way), by wire transfer of immediately available funds to the aforementioned bank account, an amount in cash (such amount, the "**NEO Reimbursement**") equal to thirty two million dollars ($32,000,000); and

(c)   deliver or cause to be delivered to Seller:

(i)   the certificate called for by Section 6.2(c), duly executed on behalf of Buyer;

(ii)   an executed original of the Section 338(h)(10) Election Forms; and

(iii)  all other documents which are expressly required pursuant to this Agreement to be delivered by Buyer to Seller at the Closing.

- 8 -

62587121_2

SV\1145690.24

1.6.    <u>Withholding Rights</u>. Buyer shall be entitled to deduct and withhold from the amounts otherwise payable pursuant to this Agreement to Seller or any other Person such amounts as Buyer is required to deduct and withhold under the Code, or any Tax Law, with respect to the making of such payment. To the extent that amounts are so withheld, such withheld amounts shall be treated for all purposes of this Agreement as having been paid to the Person in respect of whom such deduction and withholding was made.


ARTICLE II.

REPRESENTATIONS AND WARRANTIES OF SELLER AS TO ITSELF

Subject to <u>Sections 8.1</u>, <u>8.2</u> and <u>10.1</u>, and as provided in <u>Section 10.11</u>, except as set forth in the Seller Disclosure Schedule, Seller represents and warrants to Buyer as of the date of this Agreement and as of the Closing as follows (in each case giving effect to the Seller Disclosure Schedule as provided in <u>Section 10.11</u>):

2.1.    <u>Incorporation</u>. Seller is a corporation, duly organized, validly existing and in good standing under the Laws of the State of Delaware.

2.2.    <u>Authority</u>. Seller has the requisite corporate power and authority to execute and deliver this Agreement and the Ancillary Agreements to be entered into by it at the Closing, to perform its obligations hereunder and thereunder, and to consummate the Transactions to be consummated by it. The execution and delivery by Seller of this Agreement and the Ancillary Agreements to be entered into by it at the Closing, the performance by Seller of its obligations hereunder and thereunder, and the consummation by Seller of the Transactions to be consummated by it have been duly authorized by all requisite action on the part of Seller. This Agreement constitutes, and, when executed and delivered at the Closing, the Ancillary Agreements (other than the Non-Competition and Non-Solicitation Agreement) to which Seller is a party will constitute, the legal, valid and binding obligations of Seller, enforceable against Seller in accordance with their respective terms except that such enforcement may be limited by any bankruptcy, insolvency, reorganization, moratorium, fraudulent transfer or other similar Laws (whether statutory, regulatory or decisional), now or hereafter in effect, relating to or affecting the rights of creditors generally or by equitable principles (regardless of whether considered in a Proceeding at law or in equity). Each executive officer of Seller as of the date of this Agreement has received a complete copy of a draft of (i) this Agreement with a draft date of September 27, 2013 (but not the Exhibits thereto other than <u>Exhibit A</u>) and (ii) the Seller Disclosure Schedule with a draft date of September 27, 2013, and has reviewed the matters set forth therein.

2.3.    <u>Ownership of Shares; Title</u>. Seller is the sole legal and beneficial owner of the Shares, which constitute all shares of Common Stock and other equity interests in the Company issued and outstanding as of the date of this Agreement and as of the Closing. Seller has, and shall transfer to Buyer at the Closing, good title to the Shares free and clear of all Liens except for (i) Liens created by this Agreement and (ii) Liens

http://www.sec.gov/Archives/edgar/data/1159154/000115915413000084/falcon-stockpurc...    1/27/2015