LAW OFFICES
**ALLISON, SLUTSKY & KENNEDY, P.C.**
SUITE 2600
230 WEST MONROE STREET
CHICAGO, ILLINOIS 60606
www.ask-attorneys.com

THOMAS D. ALLISON
MICHAEL H. SLUTSKY
WESLEY G. KENNEDY
KAREN I. ENGELHARDT
N. ELIZABETH REYNOLDS
(LICENSED IN ILLINOIS AND TEXAS)
ANGIE COWAN HAMADA
SARA S. SCHUMANN
RYAN M. THOMA

TELEPHONE
(312) 364-9400

FACSIMILE
(312) 364-9410

June 2, 2014

**BY EMAIL AND FIRST CLASS MAIL**

Arbitrator Dana E. Eischen
P.O. Box 730
Spencer, New York 14883

Re: Republic Airlines, Inc., *et al.*
(Dispute Pursuant to November 26, 2013
Agreement to Arbitrate)

Dear Arbitrator Eischen:

Pursuant to your request in your May 7, 2014 email, the Frontier Pilots Merger Committee provides these comments regarding the impact of the pending National Mediation Board ("NMB") representation proceeding, Case No. R-7381, on the above-referenced matter.

On December 3, 2013, Frontier was sold by Republic Airways Holdings ("RAH") to Indigo Partners ("Indigo"); at that time, Frontier ceased to be an "affiliate" of RAH. On December 18, 2013, FAPA petitioned the NMB for a finding that Frontier is a separate carrier, and for certification as the bargaining representative of the separate Frontier pilot craft or class. On March 31, 2014, the NMB found that Frontier is a separate transportation system. The NMB is conducting a representation election in the separate Frontier pilot craft or class which closes on June 12, 2014; and will certify a bargaining representative for the separate Frontier pilot craft or class upon the completion of that election.

Based on established principles under the Railway Labor Act, following such certification, you will retain the authority to resolve the specific issues submitted in the November 26, 2013 Agreement to Arbitrate (Exhibit 40), with respect to the period of time in which your February 19, 2011 Award (Exhibit 5) (the "Eischen Award") remained in effect. However, it is clear from the face of the Eischen Award and the November 3, 2009 Dispute Resolution Agreement (the "DRA") (Exhibit 4) that your Award and the DRA ceased to be effective when Frontier was no longer an RAH affiliate and became a separate carrier – i.e., no later than March 31, 2014. Any issue arising thereafter regarding the administration of seniority at Frontier would be within the scope of the collective bargaining relationship between Frontier and the bargaining representative of the Frontier Pilots. Any contrary assertion with respect to the scope of your authority would raise an issue of

Arbitrator Dana E. Eischen

June 2, 2014
Page 2

substantive arbitrability, which would itself be beyond your authority.

Even as to the merits of the issues during the period over which you have authority, the NMB's finding that Frontier is a separate carrier, and the NMB's pending certification of a bargaining representative in the separate Frontier craft or class, lend further support to the Frontier Merger Committee's position, and represent a further reason for denying the Republic Merger Committee's claim in this matter. There has never been a collectively-bargained mechanism to effect the transfer of an incumbent RAH Pilot to Frontier, even when Frontier was an affiliate of RAH, and part of a single transportation system with a combined craft or class. If Frontier could not be compelled to create such a mechanism under those circumstances, certainly that result cannot be compelled once even those circumstances no longer obtain.

## The NMB Proceeding

As set forth in the parties' Stipulation of Facts in this matter, on October 1, 2013 RAH announced that it had entered into a definitive agreement to sell Frontier Holdings and Frontier to an investment fund affiliated with Indigo. On December 3, 2013, RAH announced that it had closed on the sale of Frontier. (Stipulation ¶¶ 57-58; Exhibit 41.) On December 17, 2013, FAPA filed a petition with the NMB, seeking a finding that Frontier is a separate transportation system, and certification as the exclusive bargaining representative of the pilot craft and class in that system. (Stipulation ¶ 59; Exhibit 42.)

The parties submitted position statements to the NMB which, *inter alia*, addressed the significance of the Eischen Award and the Integrated Master Seniority List ("IMSL") created thereunder. Appendices A through I to these comments are the three rounds of position statements submitted to the NMB by FAPA, Frontier and the IBT (without exhibits). Among other things:

* The IBT argued that, before the NMB could investigate the petition, FAPA was required to submit a showing of interest representing more than half of the IMSL (Appendix C, at 6-7); and that the NMB should find a continued single transportation system based on the existence of the IMSL. (Appendix F.)

* FAPA and Frontier disputed those contentions. (Appendix D, at 23-34; Appendix E, at 5-8; Appendix G; Appendix H.) In particular, both FAPA and Frontier emphasized that your February 19, 2011 Award was issued before any single carrier finding by the NMB; assumed the existence of a single transportation system; and expressly contemplated that, if Frontier was not part of the single transportation system, the IMSL would not apply to Frontier. (Appendix G, at 5-7; Appendix H, at 1-3.) Indeed, Frontier took the position that "[t]he IMSL was not intended to be controlling, or even applicable, in a circumstance where Frontier is not part of a single transportation system with the RAH carriers ... Because

Arbitrator Dana E. Eischen

June 2, 2014
Page 3

Frontier constitutes a separate transportation system for the craft or class of Pilots [citation omitted], the IMSL Award, by its own terms, is no longer applicable to Frontier and its pilots." (Appendix H, at 1, 2.)

On March 31, 2014, the NMB issued its Findings Upon Investigation, finding that Frontier is a separate carrier from the RAH-affiliated carriers. (Appendix J hereto.) The NMB acknowledged the contentions of the parties recited above (Appendix J, at 34, 35, 36), and found as follows:

### Seniority Integration Agreement

Arbitrator Eischen issued the IMSL on February 19, 2011, before the Board's single system determination. <u>Eischen noted that if the Board were to find Frontier separate from the Republic system, "the integration methodology of the Award will be applied with the Frontier pilots excluded." Further, the Award noted that its application may change if "facts and circumstances have materially changed."</u>

<u>While the 2011 IMSL covers all Pilots at Frontier and the RAH carriers, no collectively-bargained implementing agreement has even been concluded</u>. Jacalyn Peters, Senior Director of Human Resources and Labor Relations for Frontier, stated that since the IBT's certification, Frontier has dealt with the IBT on a number of matters including contractual grievances, disciplinary investigations, and to enforce union dues. However, the IBT has not sought to enter into any Letters of Agreement or otherwise modify the existing Pilot CBA language. Further, neither the IBT nor Republic has requested negotiations over a joint CBA governing Pilots of the single transportation system determined by the NMB in 2011.

<u>Accordingly, the Pilots at Frontier continue to work separately under the Frontier CBA</u> ...

...

There still remains an IMSL covering all Pilots on the formerly-found Republic Airlines, et al./Frontier single transportation system. However, <u>no collectively bargained implementing agreement was ever concluded so the Frontier Pilots have been effectively operating separately under the Frontier CBA. Further, the only indicia still supporting Frontier's inclusion in the RAH single transportation system is the IMSL. This factor alone is insufficient to support finding Frontier part of the RAH transportation system</u>. *See Republic Airlines, et al./Frontier*, 38 NMB 138, 154 (2011), *Northwest Airlines, Inc./Delta Air Lines, Inc.*, 37 NMB 88 (2009) (Board finds a single transportation system only when there is substantial integration of operations, financial control, and labor and personnel functions.); *See also*

Arbitrator Dana E. Eischen						June 2, 2014
								Page 4

> *Precision Valley Aviation, Inc., d/b/a Precision Airlines and Valley Flying Serv., Inc., d/b/a Northeast Express Reg'l Airlines*, 20 NMB 619 (1993) (a substantial degree of overlapping ownership, senior management, and Boards of Directors is critical to finding a single transportation system.).

(Appendix J, 41 NMB at 39, 41 [emphasis added].)[1]

On May 1, 2014, the NMB issued a notice that it would conduct an election among the persons employed in the craft or class as of December 15, 2013. (Appendix K hereto.) On May 5, 2014, the NMB issued a direction of election, scheduling the balloting for May 15, 2014 through June 12, 2014, together with a sample notice and same voting instructions. (Appendices L, M, N hereto.) The NMB will announce the results of the tally on the afternoon of June 12, 2014. (Appendix L, at 1.)

Accordingly, as of December 3, 2013, Frontier was no longer an "affiliate" of RAH. As of no later than March 31, 2014, Frontier became a separate carrier under the RLA. And, at the conclusion of the pending representation election, the NMB will certify a bargaining representative for the separate Frontier pilot craft or class, and the IBT's certification will be extinguished, at least as it relates to Frontier.

## The Frontier Merger Committee's Comments

**1.	You Retain The Authority To Decide The Specific Issues
Submitted In The November 26, 2013 Agreement To
Arbitrate, For The Period In Which Your Award And
The DRA Remained In Effect With Respect To Frontier**

As you know, under the merger provisions of the NMB's Representation Manual, existing certifications in previously-determined crafts or classes remain in effect until the issuance of a new certification in a craft or class. NMB Representation Manual § 19.7. The NMB recited as much in its Findings Upon Investigation in the pending case. (Appendix J, 41 NMB at 46.) In addition, as you know, a change in bargaining representatives does not generally have any impact on existing collective bargaining agreements covering the craft or class; the new representative assumes the existing agreements. E.g., Metro-North Railroad, 10 NMB 345, 350 (1983), citing Oklahoma Railway Co., 1 NBM 35 (1937). See, e.g., The Railway Labor Act, at 175-176, 611-612 (3d ed.,

---

[1]	While the NMB noted that "[t]here still remains an IMSL covering all pilots on the formerly-found Republic Airlines, et al./Frontier single transportation system" (id., at 40), the Board expressed no view as to the continued application of the IMSL following a finding that Frontier is a separate transportation system; and would have no authority to do so.

Arbitrator Dana E. Eischen  June 2, 2014
Page 5

Hollinger, ed. 2012). As part of that transition in representation, pending grievances filed under the existing agreements survive the certification of a new representative. Cf. AFA v. Delta Air Lines, Inc., 879 F.2d 906, 910 (D.C.Cir. 1989), citing Nolde Brothers v. Bakery Workers Local 358, 430 U.S. 243 (1977), and Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711 (1945)(obligation to arbitrate grievance arising under expired CBA); Freitas v. RAH, 192 LRRM 2271, 2011 WL 5506679 (E.D.Wis. 2011)(same).

Pursuant to these principles, the November 26, 2013 Agreement to Arbitrate will survive the certification of a bargaining representative in the separate Frontier pilot craft or class,[2] with the newly-certified representative of the Frontier Pilots succeeding to the IBT as a signatory party to the Agreement. Accordingly, <u>for the period in which the Eischen Award and the DRA remained effective with respect to Frontier</u>, you will retain the authority to resolve the issues submitted in that Agreement:

> 3. The RMC's proposed statement of the issue for resolution in the arbitration is: Whether the Eischen Award compels Frontier to offer new first officer positions on Airbus aircraft to pilots on the IMSL according to their IMSL seniority before Frontier may hire new pilots off the street.
>
> 4. The Carriers' proposed statement of the issue for resolution in the arbitration is: Whether the Eischen Award compels Frontier to create and offer a bid process by which Republic pilots may bid for new first officer positions on Airbus aircraft based on their IMSL status before Frontier may hire new pilots off the street.

(Exhibit 40, at 1.)

However, as discussed in the ensuing section of these comments, <u>the Eischen Award and the DRA have no application for the period in which Frontier has no longer been an affiliate of RAH, and Frontier has been a separate carrier as found by the NMB</u>. Any issue regarding the interpretation and application of seniority at Frontier thereafter is beyond your authority, and would represent a matter for resolution between Frontier and the bargaining representative of the Frontier Pilots.

## 2. The Eischen Award And The DRA Have No Application To Frontier As A Separate Carrier

Your Award demonstrates that the IMSL was intended to apply at Frontier only insofar as Frontier was part of a single transportation system with the RAH carriers.

---

[2] FAPA and Frontier acknowledged as much in their submissions to the NMB. (Appendix G, at 9-10; Appendix H, at 3.)

Arbitrator Dana E. Eischen    June 2, 2014
                              Page 6


Your Award <u>pre-dated, and was expressly conditioned on, a then-unknown NMB finding that there was a single transportation system.</u> In your February 19, 2011 Award, you recited that the parties agreed to a process for the integrated seniority list, <u>before</u> it was known whether a single transportation system would be found. As you summarized:

> ... In Section V (g) of the [Dispute Resolution Agreement], the Parties specify that "the award shall include the date on which the seniority integration will become effective" but that such date <u>"shall not be before the NMB issues its ruling on whether the RAH affiliates comprise a single transportation system and certifies the Organization, if any, that is the duly designated representative of the pilot craft or class on that transportation system."</u>

(Eischen Award, at 40 [emphasis added].) You acknowledged the unknown contingencies which had to occur in order for the IMSL to be effective (<u>id.</u>, at 42-43); and that, "[w]ith respect to the flight attendant craft or class, the record also shows NMB has determined that RAH and Midwest constitute a single transportation system, which, at this time, does not include Frontier or Lynx. See Chautauqua Airlines, Inc., 37 NMB 148 (2010)." (Eischen Award, at 46.)

Accordingly, you made clear:

> <u>It is unknown whether the NMB will find a single transportation system for the pilot craft or class; if so, which of the pre-acquisition carriers will be included; and what organization, if any, will be certified by the NMB as the representative of the combined pilot craft and class in such a single transportation system.</u> As I understand the RLA and the NMB regulations, unless and until the NMB rules otherwise, the existing separate certifications of bargaining representatives of the respective pre-acquisition pilot groups remain in effect ... <i>See</i> <u>NMB Representation Manual</u> §19.

(<u>Id.</u>, at 42 [emphasis added].) You therefore made the effectiveness of your Award contingent on an NMB finding of a single transportation system and certification of a single bargaining representative – "The IMSL ... shall become effective ... on the sixtieth (60th) day following the date of the National Mediation Board rulings and certification referenced in DRA §V (g), unless an earlier date is agreed upon by the designated pilot representative and the single carrier." (Eischen Award, at 49.)[3]

---

[3]  You were openly derisive of a process which created an integrated seniority list before it was known whether any of those future contingencies would occur, or how (if at all) the integrated seniority list would be utilized – "these Parties not only have the cart before the horse but also have yet to attach the
(continued...)

Arbitrator Dana E. Eischen  June 2, 2014
Page 7

Moreover, you recognized "the 'dynamic' nature of NMB single-carrier determinations" (Eischen Award, at 46), and expressly contemplated a scenario in which Frontier was not part of a future single transportation system. In that scenario, you contemplated that your Award would not apply to the Frontier Pilots:

> The Award also expressly provides that the awarded seniority integration would still be implemented, with appropriate adjustments in the IMSL, if the NMB rules that fewer than all of the carriers are included in a single transportation system for the pilot craft or class. This comports with the unanimous agreement of the Parties, as expressly set forth in the written record. For example, all Parties to the DRA agree that, if the NMB concludes that Frontier is not part of the Republic single transportation system for the pilot craft or class, the integration methodology of the Award will be applied with the Frontier pilots excluded. Thus, the Award makes clear that this is the intended result in the event that the NMB so rules in the instant case.

(Eischen Award, at 45 [emphasis added].)

Given the NMB's finding that Frontier is no longer part of the previously-determined single transportation system (Appendix J), clearly "facts and circumstances have materially changed," just as you stated in your Award. (Eischen Award, at 46, quoted, Appendix J, at 39.) In light of the NMB's separate carrier finding, the conditions underlying the effectiveness of your Award at Frontier have not existed since no later than March 31, 2014, the date on which the NMB found that Frontier is a separate carrier. Accordingly, your Award is thereafter without effect at Frontier.[4]

This is confirmed by the terms of the DRA, entered into by the parties on November 3, 2009,

---

[3](...continued)
wheels and seat the driver." (Eischen Award, at 43.)

[4]
This is particularly so since there has never been any collectively-bargained agreement implementing of your Award, providing for the transfer of pilots between the operations covered by the Frontier and Chautauqua CBAs. (See Frontier Merger Committee Brief, at 23-25, 43-46; Frontier Merger Committee Reply Brief, at 1-3.) No incumbent Chautauqua/Republic/Shuttle America Pilot has ever been an employee of Frontier. (See Stipulation ¶53.)

Moreover, Letter of Agreement 39 of the Frontier CBA remains in effect, including the provision that the IMSL would be applied for the transfer of pilots between Frontier and the RAH entities "only as may be hereafter agreed to by RAH, FAPA (or any properly-designated successor to FAPA) and the properly-designated representative of Republic pilots or any other pilot group of an RAH entity." (Exhibit 1, at LOA 39.2.)

Arbitrator Dana E. Eischen                                        June 2, 2014
                                                                   Page 8


following RAH's acquisitions of Midwest Air Group and Frontier Holdings, Inc. (Exhibit 4.) It is clear from the face of the document that <u>the DRA was intended to apply to Frontier only insofar as Frontier was part of a single transportation system and the Frontier Pilots were part of a combined craft or class</u>. For example:

*   The carrier party to the DRA is defined as follows in the DRA: "Republic Airways Holdings Inc. (RAH), on behalf of itself and <u>its wholly owned affiliates</u> Republic Airline Inc., Chautauqua Airlines, Inc. and Shuttle America Corp. (hereinafter collectively, 'Republic'), Midwest Airlines, Inc., <u>Frontier Airlines, Inc.</u> and Lynx Aviation, Inc. (RAH and its affiliates together one 'party' under this Agreement)." (Exhibit 4, at 1 [emphasis added].) Accordingly, the only carrier party to the DRA is <u>RAH</u>. <u>Frontier is subject to the DRA only insofar as it is "a wholly owned affiliate" of RAH</u>. Since the purchase was closed on December 3, 2013, Frontier has no longer been an affiliate of RAH; and now has no relationship with RAH whatsoever.

*   Section II.e. of the DRA provided that any agreement on an integrated seniority list "shall not be before the National Mediation Board (NMB) issues its ruling on whether the RAH affiliates comprise a single transportation system and certifies <u>the Organization, if any, that is the duly designated representative of the pilot craft or class on that transportation system</u>." (Exhibit 4, at [emphasis added].)

*   Similarly, Section V.g. of the DRA provided, in the event of a seniority integration arbitration: "The award of the arbitrator shall be stated in writing and shall be final and binding on the parties to this Agreement and <u>on the pilots employed by RAH and its affiliates</u>. The award shall include the date on which the seniority integration will become effective, which date shall not be before the NMB issues its ruling on whether the RAH affiliates comprise a single transportation system and certifies <u>the Organization, if any, that is the duly designated representative of the pilot craft or class on that transportation system</u>." (Exhibit 4, at [emphasis added].)

Indeed, it is clear from the face of Sections V.h. and V.J. of the DRA that <u>the dispute resolution process established by the DRA has no application at Frontier to events after the date on which Frontier became a separate carrier based on the NMB's finding, and certainly following the certification of a separate bargaining representative for the Frontier pilot craft or class</u>:

> (h). The Organization, if any, <u>designated by the NMB as the duly designated representative of the combined craft or class of Flight Deck Crew Members for the single transportation system</u> shall continue the Merger Committees in existence and delegate to the Merger Committees authority solely for the purpose of adjusting any dispute or disputes that might arise as to the interpretation or application of the award, including authority to compromise such disputes, and to initiate, defend,

Arbitrator Dana E. Eischen

June 2, 2014
Page 9

mediate, and litigate such issues in the dispute resolution mechanism under this Agreement. The Organization shall have authority over the manner in which the Merger Committees' operations are financed. The Merger Committees which are parties to this agreement represent that they have been authorized by their principals (the duly designated representative of their airline's pilots) to enter into the commitments set forth in this paragraph and in this Agreement. Each Merger Committee shall fill its own vacancies by selection made by the remaining members of that Merger Committee.

...

(j). The award of the arbitrator issued under either Section V (g) or V (I) shall be considered as a part of the collective bargaining agreement(s) <u>applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system</u>. Any dispute arising out of the interpretation or application of the award more than one-hundred and twenty (120) days after the effective date of the seniority integration shall be handled in the usual manner by the applicable Merger Committees up to and including the highest carrier official designated to handle such disputes, but failing to reach an adjustment in this manner, the dispute may be submitted by any party to the dispute to <u>the adjustment board established by the designated representative of the combined craft or class and the single carrier for final and binding resolution</u>. All Merger Committees shall be given notice of the dispute and, in addition to the Merger Committee invoking the adjustment board jurisdiction, may be heard by the system board of adjustment in resolving the dispute, with the decision of the board being made by the arbitrator selected pursuant to the applicable agreement to sit with the system board (without a vote by the other members of the system board).

(Exhibit 4, at [emphasis added].) Thus, under Section V.h., the obligation to maintain the Merger Committees in existence extends only to "[t]he Organization, if any, designated by the NMB as the duly designated representative of <u>the combined craft or class of Flight Deck Crew Members for the single transportation system</u>;" the Award is to be considered part of "the collective bargaining agreement(s) <u>applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system</u>;" and arbitration under Section V.j. is before "the adjustment board established by <u>the designated representative of the combined craft or class and the single carrier</u> for final and binding resolution." That DRA process has no application at Frontier once Frontier is no longer an "affiliate" of RAH and no longer part of a "single carrier" obliged to establish an adjustment board with "the designated representative of the combined craft or class ...;" the Frontier CBA is no longer a "collective bargaining agreement[] applicable to the combined craft or class of Flight Deck Crew Members for the single transportation system;" and/or the Frontier pilots are no longer represented by "[t]he Organization, if any, designated by the NMB as the duly designated representative of the

Arbitrator Dana E. Eischen

June 2, 2014
Page 10

combined craft or class of Flight Deck Crew Members for the single transportation system."

Accordingly, even to the extent that you continue to possess the authority to resolve the issues submitted in the November 26, 2013 Agreement to Arbitrate, <u>you have no authority to review or direct Frontier's conduct once Frontier ceased to be part of the single transportation system; and certainly once the Frontier Pilots are no longer included in the combined craft or class</u>. The administration of seniority at Frontier thereafter is within the scope of the bargaining relationship between Frontier and the bargaining representative of the Frontier Pilots, including (without limitation) the resolution of any issue involving the interpretation and application of the Frontier CBA.[5]

### 3. Any Dispute Regarding The Scope Of Your Authority Would Raise An Issue Of Substantive Arbitrability

Based on the foregoing, the Frontier Merger Committee submits that your authority is limited to the resolution of the specific issues submitted in the November 26, 2013 Agreement to Arbitrate,[6] for the period until Frontier ceased to be an affiliate of Frontier and was no longer part of a single transportation system, a date no later than March 31, 2014. Any assertion that you have authority over this matter extending beyond that time would itself raise an issue of substantive arbitrability beyond your authority. <u>In entering into Sections V.h. and j. of the DRA, the parties did not agree to the arbitration of any dispute under those provisions regarding the administration of seniority at Frontier, arising outside the context of a single carrier including Frontier and a single bargaining representative for the combined craft or class. The agreement to arbitrate established by the DRA does not extend to any such dispute.</u>

### 4. The NMB's Separate Carrier Finding And Pending Certification Of A Bargaining Representative Further Supports The Frontier Merger Committee's Position On The Merits Of The Issues

The foregoing discussion demonstrates that, in light of the NMB proceeding, your authority

---

[5] The IMSL (without the Frontier Pilots) will presumably still constitute the seniority list under the Chautauqua CBA. (<u>See</u> Eischen Award, at 45.)

[6] As set forth in the parties' separate correspondence with respect to the Midwest Merger Committee's purported submission of "grievances" to you on or about February 27, 2014 and thereafter, the Frontier Merger Committee does not agree that those matters are substantively arbitrable, and agrees with Frontier that the dispute regarding your authority over those "grievances" is one of substantive arbitrability. Even if you otherwise had authority to hear those matters, that authority (as it relates to Frontier) would be limited to the period in which your Award and the DRA remained effective with respect to Frontier.

Arbitrator Dana E. Eischen  June 2, 2014
Page 11

in this matter extends only to the specific issues submitted in the November 26, 2013 Agreement to Arbitrate, for the period until Frontier ceased to be an affiliate of Frontier and was no longer part of a single transportation system. In addition, on the merits of the issues, the NMB's findings give further support to the Frontier Merger Committee's position.

In its Brief and Reply Brief, the Frontier Merger Committee has amply demonstrated that your authority is limited to the interpretation and application of the Eischen Award; that your Award does not compel or provide for the transfer of pilots from the RAH-affiliated operations to the Frontier operation, as you have already ruled in your prior Supplemental Award; and that the relief requested by the Republic Merger Committee would require the interpretation and application of the Frontier CBA and the Chautauqua CBA. Among other things, there has never been an implementing agreement modifying Letter of Agreement 39 or otherwise providing for the application of the IMSL to effect the transfer of any pilot from RAH to Frontier; and no incumbent Chautauqua, Republic or Shuttle America Pilot has ever been an employee of Frontier or worked under the Frontier CBA.

That was true, even when Frontier was an affiliate of RAH and part of the RAH single transportation system with a combined craft or class. Beyond that, as of December 3, 2013, Frontier has no longer been an "affiliate" of RAH. The NMB has found that, by no later than March 31, 2014 (the date on which the NMB found Frontier to be a separate carrier), Frontier is no longer part of a single transportation system with the RAH carriers. Frontier is entirely separate, independent carrier and operation. And, at the conclusion of the pending NMB election, the Frontier Pilots will be separately represented, in a craft or class separate from the incumbent RAH Pilots. There is no prospect that there will ever be an implementing agreement or other collectively-bargained mechanism to effect the transfer of an incumbent RAH Pilot to Frontier. And, there certainly is no contractual or legal basis on which to compel Frontier to fill staffing needs by hiring pilots (with super-seniority at Frontier) who have never been Frontier employees, and who are employed by an entirely separate carrier, in an entirely separate craft or class.

## Conclusion

In summary, you retain the authority to resolve the specific issues submitted in the November 26, 2013 Agreement to Arbitrate, for the period of time in which Frontier was an affiliate of RAH and part of the single transportation system. However, you have no authority with respect to the period thereafter. Any assertion to the contrary would raise an issue of substantive arbitrability, which would itself be beyond your authority. Even as to the merits of the issues during the period over which you have authority, the NMB's finding that Frontier is a separate carrier, and its pending certification of a bargaining representative in the separate Frontier craft or class, lends further support to the Frontier Merger Committee's position, and is a further reason for denying the Republic Merger Committee's claim.

Arbitrator Dana E. Eischen

June 2, 2014
Page 12

Thank you for your attention.

Very truly yours,

Wesley Kennedy
Counsel for Frontier Pilots
Merger Committee

WK:td
encl.

cc w/encl. (By Email):     Frontier Merger Committee