LAW OFFICES
## ALLISON, SLUTSKY & KENNEDY, P.C.
SUITE 2600
230 WEST MONROE STREET
CHICAGO, ILLINOIS 60606
www.ask-attorneys.com

THOMAS D. ALLISON
MICHAEL H. SLUTSKY
WESLEY G. KENNEDY
KAREN I. ENGELHARDT
N. ELIZABETH REYNOLDS
(LICENSED IN ILLINOIS AND TEXAS)
ANGIE COWAN HAMADA
SARA S. SCHUMANN
RYAN M. THOMA

TELEPHONE
(312) 364-9400

FACSIMILE
(312) 364-9410

June 16, 2014

**BY EMAIL AND FIRST CLASS MAIL**

Arbitrator Dana E. Eischen
P.O. Box 730
Spencer, New York 14883

Re: Republic Airlines, Inc., *et al.*
(Dispute Pursuant to November 26, 2013
Agreement to Arbitrate)

Dear Arbitrator Eischen:

Pursuant to your June 3, 2014 email, the Frontier Merger Committee provides these further comments regarding the National Mediation Board ("NMB") representation proceeding, Case No. R-7381, in reply to the comments submitted by the Republic and Midwest Merger Committees.

For your information, the NMB tallied the ballots in the representation election on June 12, 2014. The vote totals were:

| | |
|---|---|
| Eligible Employees | 651 |
| Total Valid Votes | 583 |
| IBT | 3 |
| FAPA | 507 |
| Write In (ALPA) | 73 |

Pursuant to that tally, the NMB has certified FAPA as the bargaining representative of the Frontier Pilot craft or class, effective June 13, 2014. (Appendix O hereto.) The IBT's June 28, 2011 certification has therefore been extinguished with respect to Frontier and the Frontier Pilots.

The Republic and Midwest Committees correctly state the basic proposition that a change in certified representative by the NMB does not affect existing collectively-bargained agreements; the new representative assumes the existing agreements, and succeeds to the predecessor representative as the union party to such agreements. (Republic Committee Comments, at 1-3;

Arbitrator Dana E. Eischen                                              June 16, 2014
                                                                              Page 2

Midwest Committee Comments, at 2-3.)[1] The Frontier Committee and Frontier acknowledge that principle. (Frontier Committee Comments, at 4-5; Frontier Comments, at 1-2.) Accordingly, the Frontier Committee has acknowledged that you retain the authority to resolve the specific issues submitted in the November 26, 2013 Agreement to Arbitrate,[2] for the period in which the Eischen Award and November 3, 2009 Dispute Resolution Agreement remained in effect. (Frontier Committee Comments, at 4-5.)[3]

However, those collective bargaining agreements remain in effect only in accordance with their terms. Here, as set forth in the Frontier Committee's Comments, <u>by their terms the Eischen Award and the DRA were effective at Frontier only to the extent that Frontier was part of a single transportation system, and the Frontier Pilots were part of a combined craft or class.</u> Those circumstances no longer exist, and the Eischen Award and DRA are no longer effective with respect to Frontier for the period after those circumstances changed. (Frontier Committee Comments, at 5-10.)

The Republic and Midwest Committees rely on the provision of the DRA making your Award "final and binding," and your admonition that the Award could not be modified. (Republic Committee Comments, at 4; Midwest Committee Comments, at 3-4.) However, by its terms, under the DRA the Award was "final and binding on <u>the parties to this Agreement</u> and on the pilots employed <u>by RAH and its affiliates</u>." (Exhibit 4, at 4 [emphasis added].) Frontier is no longer an "affiliate" of RAH and is therefore no longer party to the DRA (<u>see</u> Frontier Committee Comments, at 8); and the Frontier Pilots are no longer "employed by RAH and its affiliates," and are no longer in the combined craft or class. To the same effect, as the Republic Committee acknowledges, your

---

[1] The Midwest Committee asserts that "Midwest and Republic pilots currently have seniority on the seniority list ..." (Midwest Committee Comments, at 4.) As you will recall, insofar as furloughed Midwest Pilots who were never recalled are concerned, that is not the case – those pilots were removed from the IMSL by RAH based on their failure to accept recall pursuant to the Chautauqua CBA. You have ruled that any dispute over that circumstance is beyond the scope of this proceeding.

[2] The Midwest Committee again asserts that your authority extends to the interpretation and application of the Frontier and Chautauqua CBAs. (Midwest Committee Comments, at 2.) To the contrary, as demonstrated in the Frontier Committee's Brief and Reply Brief, your authority is limited to issues arising from the interpretation and application of your Award and Supplemental Award. (Frontier Committee Brief, at 36-40; Frontier Committee Reply Brief, at 6-9.)

[3] The November 23, 2013 Agreement to Arbitrate confers authority on you only over matters within the scope of arbitration under Section V.(j) of the DRA. (Frontier Committee Brief, at 36-37; Frontier Committee Reply Brief, at 7.) Accordingly, to the extent that the DRA no longer has effect at Frontier, the same is true of the Agreement to Arbitrate, to which FAPA is now the union signatory.

Arbitrator Dana E. Eischen

June 16, 2014
Page 3

Award barred modification of the Award <u>by the single carrier and the "certified representative of the single transportation system craft or class covering the pilot groups ..."</u> (Republic Comments, at 4 [emphasis added].)[4] While your Award and the DRA may continue to apply to RAH and its affiliates, and to pilots employed by RAH "affiliates," they have no more application to Frontier or the Frontier Pilots.[5]

And, as set forth in the Frontier Committee's Comments, any issue with respect to the scope of your authority after Frontier ceased to be part of a single carrier is a substantive arbitrability issue which is itself beyond your authority. Your authority extends only as far as the DRA. Once Frontier ceased to be part of a single transportation system – and, certainly, once the Frontier Pilots ceased to be part of a combined craft or class – the DRA ceased to have any application to Frontier, and <u>there is no agreement to arbitrate issues arising thereafter</u> before you. (Frontier Committee Comments, at 10.) At any rate, even if the DRA provided for continued authority of the Merger Committees with respect to Frontier (which it does not), the Merger Committees were kept in existence under Section V.(h) of the DRA "solely for the purpose of adjusting any dispute or disputes

---

[4] Apparently cognizant of that limitation on your admonition, the Republic Committee erroneously implies that the NMB's certification of FAPA is somehow the resurrection of FAPA's pre-2009 certification, and binds FAPA to your Award and the DRA based on its original status as a party to the DRA. (Republic Committee Comments, at 4.) To the contrary, the certification is a <u>new</u> certification, with a <u>new</u> NMB certification number, R-7381, distinct from the certification FAPA held prior to 2011. See <u>Frontier Airlines, Inc.</u>, 26 NMB 94 (1998)(Case No. R-6630). At any rate, any relation to the prior certification is irrelevant, since it cannot alter the facts that Frontier is not an RAH "affiliate;" Frontier is not part of the single carrier; and the Frontier Pilots are not part of a combined craft or class.

[5] The Republic Committee is thus correct that you have no authority to modify the terms of the Eischen Award or the DRA. (Republic Committee Comments, at 3-4.) The Frontier Committee asks no such thing; the Frontier Committee's position is based on the terms of the Eischen Award and DRA themselves.

The Republic Committee notes that the Eischen Award "provided that if the NMB determined in its investigation pending at the time of the Award that one of the pilot groups was not part of a single craft or class with the other pilot groups then your Award would not be applicable to those employees;" and that "that scenario never came about."(Republic Committee Comments, at 3.) The critical language of the Award was that, "if the NMB concludes that Frontier is not part of the Republic single transportation system for the pilot craft or class, the integration methodology of the Award will be applied with the Frontier pilots excluded ..." (Eischen Award, at 45.) Even if you did not specifically foresee a scenario in which Frontier would initially be included in a single carrier, only to be subsequently spun off into a separate carrier, the apparent intent of your Award was that the Award apply to Frontier and the Frontier Pilots only in the context of a single transportation system and combined bargaining unit. As pointed out by the Frontier Committee in its Comments (Frontier Committee Comments, at 3-4), the NMB specifically cited your holding in this regard in finding that Frontier is now a separate carrier. (<u>Id.</u>, Appendix J, at 39, 41.)

Arbitrator Dana E. Eischen  
June 16, 2014  
Page 4

that might arise <u>as to the interpretation or application of the award</u>" (Exhibit 4, at 5 [emphasis added]) – <u>not</u> to resolve disputes over the scope of your authority.

Similarly, the IBT no longer has any authority under the DRA with respect to Frontier or the Frontier Pilots; Frontier is no longer an "affiliate" of RAH, and FAPA has succeeded to the IBT's representative status at Frontier. Even if the DRA remained applicable to Frontier and the Frontier Pilots, the Merger Committees were retained in existence pursuant to the authority of the bargaining representative of the combined bargaining unit. Even if the DRA still required a Frontier Merger Committee, that Merger Committee could only operate on the authority of the bargaining representative at Frontier, now FAPA. The Republic Committee effectively concedes as much, asserting that FAPA is now a party to the DRA. (Republic Committee Comments, at 3, 4.)[6]

Finally, the Comments of the Republic and Midwest Committees contradict their position on the merits of the pending dispute. The Republic and Midwest Committees are correct that the existing collective bargaining agreements survive a change in representation, and that you have no authority to modify those agreements. And, the Republic Committee correctly acknowledges (as did the Frontier Committee [Frontier Committee Brief, at 41]) that "seniority is a creature of contract like other terms of a collective bargaining agreement." (Republic Committee Comments, at 3.) Yet, on the merits, the Republic and Midwest Committees take the opposite position – that your Award somehow repealed, *sub silento*, any provision of the Frontier and Chautauqua CBAs that contradicts their desire for the unfettered use of IMSL seniority. (Republic Committee Brief, at 1-2, 5-20; Midwest Committee Brief, at 8, 10-15, 17.) That assertion cannot be reconciled with the basic principles which the Republic and Midwest Committees now acknowledge in their Comments.[7]

---

[6] The District Court decision in <u>Thomas v. Frontier Airlines</u>, No. 11-cv-01313-RPM (March 2, 2012)(Republic Committee Brief, Exh. 1), relied on by the Republic and Midwest Committees (Republic Committee Brief, at 3, 7-8; Midwest Committee Brief, at 9-10), confirms that a Merger Committee's authority is limited by the DRA and the terms of the "agency" conferred on them by the bargaining representative – which at Frontier is now FAPA, even if the DRA applied at Frontier.

[7] The Midwest Committee repeatedly refers to "seniority <u>rights</u>" purportedly created by your Award. (Midwest Committee Comments, at 2, 3, 4, 5.) This is an overstatement. As you found in your Supplemental Award, your Award conferred a "seniority rank status" – <u>a place on the seniority list</u> – subject to the limited conditions and restrictions of your Award. (Exhibit 31, at 13-14.) Whatever "rights" were conferred by placement on the list <u>were otherwise a matter of contract</u>, through the applicable collective bargaining agreements. <u>No such contract "rights" were ever negotiated by the carriers and the IBT</u>.

The Midwest Committee also implies that a ruling sustaining the claim would lead to a multi-carrier agreement with multiple bargaining representatives. (Midwest Committee Comments, at 5.) At least in the absence of a history of multi-carrier bargaining – of which there is none here – the separate Frontier and

(continued...)

Arbitrator Dana E. Eischen

June 16, 2014
Page 5

For the reasons set forth in the Frontier Committee's principal Comments and above, you retain the authority to resolve the specific issues submitted in the November 26, 2013 Agreement to Arbitrate, for the period of time in which Frontier was an affiliate of RAH and part of the single transportation system. However, you have no authority with respect to Frontier or the Frontier Pilots thereafter. Any assertion to the contrary would raise an issue of substantive arbitrability, which would itself be beyond your authority.

In the end, you can resolve the issues submitted to you in the November 26, 2013 Agreement to Arbitrate without reaching these questions. The claim should be denied on the merits for the reasons set forth in the Frontier Committee's Brief and Reply Brief. If you so rule, the issues submitted will be fully resolved, and it will be unnecessary to reach any question regarding the application of your Award and the DRA following the NMB's separate carrier finding, or whether you have authority to resolve such issues.

Thank you for your attention.

Very truly yours,

Wesley Kennedy
Counsel for Frontier Pilots
Merger Committee

WK:td
encl.

cc w/encl. (By Email):   Frontier Merger Committee

---

[7](...continued)
RAH -affiliated carriers would have no such obligation. E.g., General Committee of Adjustment, UTU v. Burlington N. & Sante Fe Ry., 295 F.3d 1337 (D.C.Cir. 2002), cert. denied, 537 U.S. 1191 (2003); UTU v. Grand Trunk W. R.R., 901 F.2d 489 (6th Cir. 1990); The Railway Labor Act, at 364-365 (3d ed., Hollinger, ed. 2012).